**UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **ROBERT K. HUDNALL,** | ) | |
| **Plaintiff** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 3:22-cv-00036-CM** |
| | ) | |
| | ) | |
| **STATE OF TEXAS, ET. AL** | ) | |
| **Defendants** | ) | |

**PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS**

Comes now the Plaintiff in the above styled action and makes this Motion for Judgement on the Pleadings, showing this Court as follows:

1. Though this is normally a defense raised by Defendants, under the federal rules of civil procedure (FRCP), a party (to include Plaintiffs) may move for judgment on the pleadings if the moving party states facts sufficient to constitute a cause of action against the defendant and the answer does not state facts sufficient to constitute a defense to the complaint.

2. Plaintiff does hereby incorporate by reference the Original Petition filed in the above cited case as to these defendants as if fully restated herein.

3. This case revolves around the roof placed on Plaintiff's home by Smith and Ramirez Restoration LLC (hereinafter Defendant roofers).

4. **Jurisdictional Issues**: As stated in the Original Complaint (page 3) this Court (or any court of competent jurisdiction, has jurisdiction over all defendants under the provisions of the **American with Disabilities Act (ADA)** and the **Americans with Disabilities Act**

1

Amendment Act (**ADAAA**) as clarified by the United States Supreme Court in **Tennessee v. Lane, 541 U.S. 509 (2004).**

5. **Answers of Defendants:** None of the defendants have submitted anything to show that any of the documents supporting Plaintiff's allegations are incorrect, invalid or wrongfully interpreted. Primarily they have raised basic defenses revolving around jurisdiction and various types of immunity. These objections do not in fact constitute any type of defense, as such, to Plaintiff's allegations. Additionally, everyone had been very careful to pretend to ignore the decision in 2015DCV3677, which has never been legally attacked nor appealed by anyone.

6. Under local ordinance, in order to hold themselves out as a roofing contractor, Defendant roofers had to post a blanket construction bond and liability insurance (**Original Complaint Exhibit A**). Under the contract between Plaintiff and his spouse and Defendant Roofers (**Original Complaint Exhibit B**) the Defendant Roofers alleged that they had posted the bond and had the proper liability insurance as conditions precedent to the contract.

7. As alleged in the original complaint, Plaintiff did pay Defendant Roofers 125% of their invoiced price.

8. However, the work performed was so substandard that the surety company that issued the bond held by Defendant Roofers (Old Republic Surety Company) sued Plaintiff and another customer of Defendant Roofers, in the County Court of Law #3, a court of competent jurisdiction, in a suit styled as **2015DCV3677** asking to forfeit the bond, and also alleging that the inspection purported to have been conducted by Chris Wells, an inspector for the City of El Paso's Department of Planning and Inspection was a conducted

2

from his desk and not a physical inspection as required by ordinance (**Original Complaint Exhibit E**).

9. The County Court of Law #3 granted the remedy requested by Old Republic Surety Company and allowed the bond to be forfeited under the terms of a final order.

*10.* Defendant Roofers were represented in this case by counsel who, the transcript shows, argued long and hard that the remedy not be granted, but who never directly denied the roof installed for Plaintiff failed to meet code, nor did he deny Old Republic's assertion that the inspection Defendant Roofers have relied on to claim the roof passed was not a physical inspection. It should also be noted that the Defendant Roofers did not appeal the decision of the County Court of Law #3 that the forfeiture of the bond be accepted by the court. ***Therefore, the decision of the County Court of Law #3 regarding 2015DC3677 was and is a final decision.***

11. Plaintiff would show that the forfeiture of the Defendant Roofer's surety bond did breach the contract between the parties as the surety bond was a condition precedent to the entering into the contract. Therefore, the rendering of the final decision in 2015DCV3677 voided the contract between the parties.

*12.* Rather than appeal the decision reached in 2015DCV3677, Defendant roofers ignored the decision in question and, with new counsel, sued Plaintiff and his spouse in the 448th District Court, in a case styled as 2015DCV1113 (**Original Complaint Exhibit F**) with Defendant Judge Sergio Enriquez as Judge. Again, Defendant Roofers claims were that they properly installed a roof and were not paid what they wanted. **NO mention was made of the final decision reached in 2015DCV3677[1] in their failing of 2015DCV1113.**

---

[1] Since the issues in 2015DCCV1113 were decided in 2015DCV3677, under Texas law when they raised the same issues Defendant roofers had no basis for their claim in 2015DCV1113 that the roof was installed as their claim was

13. At this juncture Plaintiff's attorney was offered a judgeship appointment if he dropped the case and he did. Plaintiff began to represent himself. As stated in the Original Complaint, when Plaintiff tried to submit the decision in 2015DCV3677 as well as letters showing that an actual physical inspection showed that the roof failed to meet code, Defendant Judge Sergio Enriquez refused to even hear Plaintiff as he was "just one of those Pro Se Litigants that wastes the court's time. Stating he had no choice in the matter[2], over Plaintiff's objections, Defendant Judge Sergio Enriquez finally sent the action in 2015DCV1113 to arbitration under the terms of the voided contract.

14. As cited in the Original Complaint (page 34), under Texas law, civil findings such as reached in 2015DCV3677 that the roof in question failed to meet code preclude a later administrative proceeding such as arbitration[3]. The refusal of Defendant Judge Sergio Enriquez to apply res judicata and collateral estoppel to the earlier decision in 2015DCV3677 and the referral to arbitration by Defendant Judge Sergio Enriquez was a very clear violation of Plaintiff's right to due process of law, equal protection of the law and denied Plaintiff meaningful participation in the court proceedings. These are violations of the ADA and the ADAAA.

---

already decided in 2015DCV3677 that the roof failed to meet code. Therefore, if they had no proper legal grounds for their claim, Defendant Judge Sergio Enriquez had no jurisdiction over the issue of the roof and could not legally send the matter to arbitration. Texas law also states that res judicata **bars** a party from attempting to relitigate a claim or cause of action that a competent tribunal has finally adjudicated (**Valverde v. Biela's Glass & Aluminum Prods., 293 S.W.3d 751, 755 (Tex. App-San Antonio 2009, pet Denied.**)

[2] The U.S. Supreme Court held in **Forrester v. White**, 484 U.S. 219, 224-225 (1988) that judges can be held liable for damages in suits where actions are administrative in nature are challenged (See page 4 of the Original Complaint).

[3] **Goldstein v. Comm'n for Lawyer Discipline** 199 S.W.3d 810 (Tex. App – Dallas 2003) pet. Denied.) (Tex. Alcoholic Beverage Comm'n v. Hadi Ali Yassine, Docket No. 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. 2004 WL 4465939 (Tex. State Office of Admin. Hearing Jan. 26, 2004)

15. The Federal Courts have also taken the position that collateral estoppel applied to previous court decisions that are attempted to be relitigated in an administrative setting on virtually the same facts[4].

16. As outlined above under both Texas State Law as well as decisions by the U.S. Supreme Court, (**see page 34 of the Original Complaint**) the final decision in the case cited as 2015DCV3677, rendered by the County Court of Law #3, a court of competent jurisdiction that the bond would be forfeited as the roof did not meet code, was sufficient to become the basis for res judicata and collateral estoppel in regard to all other later actions, both judicial as well as administrative.

17. It should be noted that the statement of the claim asked for by the arbitrator from the attorneys for the Defendant Roofers was that the roof passed inspection and they did not get paid what they wanted. This incorrect statement by a "real attorney" was accepted by Defendant Guy Bluff and Defendant American Arbitration Association (hereinafter AAA) over the presentations of the decision in 2015DCV3677 by "one of those pro se litigants" in several motions for Summary Judgement made by Plaintiff to Defendant Guy Bluff. It should also be noted that any testimony by Defendant roofers that the roof was successfully installed in a "secret" arbitration hearing, that Plaintiff could not attend due to surgical complications, was in fact perjury as the Court in 2015DCV3677 was very clear that the roof did not meet code.

18. It should also be kept in mind by the Court that res judicata also applies to claims that "could have been brought" in an earlier proceeding. Therefore, Defendant Roofers were not free to raise any other issues at arbitration since they had the opportunity to take part

---

[4] **U.S. v. Stauffer Chem. Co.** 464 U.S. 165, 104 S.Ct. 575 (1984)

in 2015DCV3677 and could have raised their claims there. It is also clear that the arbitrator, Defendant Guy Bluff, was bound by the earlier decision regarding the roof and was not free to allow the relitigation of the suitability of the roof, or for that matter any other issue[5].

19. It is further important to note that collateral estoppel will bind a party and those in privity with him even if the parties are not actually named as adverse parties in the first action. So, the mere fact that Defendant Roofers were not named parties to the suit cited as 2015DCV3677, they did participate in the suit and argued the action[6].

20. Since all actions Plaintiff is raising were decided under Texas law, (Page 22 of the Original Petition) Texas law is very clear "***the doctrine of res judicata prevents relitigation of a claim or cause of action that has been finally adjudicated, as well as related matters that, with use of diligence, should have been litigated in the prior suit[7].***"

21. It should also be noted that in arbitration the primary issues raised by the Defendant roofers were actually identical to the issues decided in 2015DCV3677, but the arbitrator, Defendant Guy Bluff refused to even consider the issue of res judicata and collateral estoppel as the "real attorneys" would not say things that were not true and they were all ignoring the decision in 2015DCV3677, so Plaintiff, as just a pro se litigant had to be wrong. Even when Plaintiff raised the issue of the forged contract submitted at arbitration (**Original Complaint Exhibit H**), his submissions were ignored. This attitude on the part of the Arbitrator, Defendant Guy Bluff was a clear violation of Plaintiffs right to due process of law, equal protection of the law and meaningful participation in the proceedings and violated Plaintiff's rights under the ADA and the ADAAA.

---

[5] **Bencor, Inc. v. Variable Annuity Life Ins. Co. No 01-09-00094-CV, 2011 WL 1330818 (Tex. App-Houston [1st Dist.] April 7, 2011.**
[6] <u>**Benson v. Wanda Petroleum C**</u>o. 468 S.W.2d 361, 363 (Tex. 1971)
[7] <u>**Barr v. Resolution Trust Corp**</u>., 837 S.W.2d 627, 628 (Tex. 1992)

22. When Plaintiff petitioned the AAA to replace Guy Bluff due to his attitude of favoring the "real attorneys" the AAA refused, ignoring all the issues raised by Plaintiff.

23. It should also be noted that regarding the Defendants, State of Texas and City of El Paso, Texas, and Judge Sergio Enriquez, in the face of the allegations made by Plaintiff, rather than state fact amounting to a defense, each defendant had pled some type of immunity, a defense that the U.S. Supreme Court has said does not apply to this type of suit as noted in **Tennessee v. Lane,** **541 U.S. 509 (2004).**

**CONCLUSION**

24. **It should be noted that Plaintiff has alleged violations of both state law and local laws which have not been denied or factually opposed by Defendants State of Texas or the City of El Paso. Under the FRCP regarding this motion, by failing to state facts sufficient to constitute a defense to the complaint, Plaintiff is entitled to the granting of the Motion for Judgement on the Pleadings regarding these two Defendants.**

25. As to Defendant, Judge Sergio Enriquez, rather than show facts that Plaintiff's allegations are not true, this Defendant also pled immunity, which does not constitute facts showing a defense as under Title II of the ADA and the ADAAA, it is not a fact that any of the Defendants are entitled to immunity and as such Plaintiff is entitled to the granting of the Motion for Judgment on the Pleadings against this Defendant

26. As to Defendant Roofers, (individually and as a company) they did not submit facts constituting a Defense to Plaintiffs allegations contained on pages 25-30 of the Original Complaint that they committed fraud, elder abuse, exploitation, abuse of process, invasion of privacy, breach of contract, forgery, conspiracy, extortion and bribery. In further support of this Motion, Plaintiff does submit an inspection report that confirms the final decision

of the County Court of Law #3 and the City of El Paso's Department of Planning and Inspection that the roof installed by Defendant Roofers was not installed correctly and thus does not meet code. This inspector does inspections for a federal agency and thus his opinions are well respected by the Courts. (Exhibit A) Therefore, under the FRCP, Plaintiff is entitled to the entry of Judgment on the Pleadings.

27. As to Defendant, Guy Bluff, as noted above, he is alleged to have committed conspiracy, violation of due process, Violation of Title II of the ADA and the ADAAA, Invasion of Privacy, elder abuse, and had a conflict of interest. In his answer at no time did he allege facts that would constitute a defense to these allegations. Therefore, under the FRCP, Plaintiff is entitled to the entry of a Judgment on the Pleadings.

28. As to Defendant AAA, Plaintiff alleged that they violated Title II of the ADA and the ADAAA, indulged in a conspiracy and committed fraud. In their answer, at no time did they submit facts that would constitute a defense to these allegations. Therefore, Plaintiff is entitled to the entry of a Judgment on the Pleadings as to this Defendant.

29. As to Defendant Evanston Insurance Company (hereinafter insurer), they held themselves out as the liability insurance company for Defendant Roofers as required under the Contractor Registration Requirements (**Exhibit A of the Original Petition**) of the City of El Paso. Under Texas law, Plaintiff was a 3rd party beneficiary to the contract between the Defendant roofers and the insurer. When the final decision was rendered in 2015DCV3677 that the roof did not meet local code, Plaintiff asked that Defendant Insurer to honor its obligations under the liability policy and make Plaintiff whole. To Date Defendant Insurer has refused to honor its obligations and funded the 8 year long war waged by Defendant roofers to unjustly enrich them at Plaintiff's expense. At no time has Defendant insurer

8

presented any facts that would constitute a defense to this action, not even denying that they had any liability. Therefore, Plaintiff is entitled to the entry of Judgement on the Pleadings.

**Therefore,** since none of the Defendants have presented facts that would constitute a defense to the Plaintiff's allegations, Plaintiff would ask that this Court enter a Judgement on the Pleadings.

Respectfully submitted,

ROBERT K. HUDNALL
915-478-1114
Kenhudnall0@gmail.com

## CERTIFICATE OF SERVICE

I, Robert K. Hudnall, do hereby certify that a true and correct copy of the above Motion for Judgment on the Pleadings was served on each defendant through their attorneys via email on this 18th day of February 2022. The served attorneys are:

Defendants State of Texas and Judge Sergio Enriquez
Scot M. Graydon
Scot.Graydon@oag.texas.gov

Defendants Guy Bluff and AAA
Raymond D. Martinez
raymond@martinezlawyers.com

Defendant Evanston Insurance Company
Stephen Melendi
stephenm@tbmmlaw.com

Defendant Alejandro C. Ramirez
James A. Martinez
martinez@jmeplaw.com

Defendant Tyrone Smith
James A. Martinez
martinez@jmeplaw.com

Defendant City of El Paso
Karla M. Nieman, City Attorney c/o Abbie Mullin Assistant City Attorney
mullin@elpasotexas.gov

ROBERT K. HUDNALL

Report Identification _ __ ____
Timothy A. Sank, 915-346-9553, timsproinspection@sbcglobal.net

| I=Inspected | NI=Not Inspected | NP=Not Present | D=Deficient |
|---|---|---|---|
| I | NI | NP | D |

# PROPERTY INSPECTION REPORT

| ____Robert Hudnall_____ | ___2/14/22_____ |
|---|---|
| Name of Client | Date of Inspection |

__297 Puesta Del Sol, El Paso TX 79912____
Address of Inspected Property

| TIMOTHY ALAN SANK | 7144 |
|---|---|
| Name of Inspector | TREC License # |

## PURPOSE OF INSPECTION

A real estate inspection is a visual survey of a structure and a basic performance evaluation of the systems and components of a building. It provides information regarding the general condition of a residence at the time the inspection was conducted. *It is important* that you carefully read ALL of this information. Ask the inspector to clarify any items or comments that are unclear.

## RESPONSIBILITY OF THE INSPECTOR

This inspection is governed by the Texas Real Estate Commission (TREC) Standards of Practice (SOPs), which dictates the minim um requirements for a real estate inspection.

The inspector IS required to:
- use this Property Inspection Report form for the inspection;
- inspect only those components and conditions that are present, visible, and accessible at the time of the inspection;
- indicate whether each item was inspected, not inspected, or not present;
- indicate an item as Deficient (D) if a condition exists that adversely and materially affects the performance of a system
     or component **OR** constitutes a hazard to life, limb or property as specified by the SOPs; and
- explain the inspector's findings in the corresponding section in the body of the report form.

The inspector IS NOT required to:
- identify all potential hazards;
- turn on decommissioned equipment, systems, utilities, or apply an open flame or light a pilot to operate any appliance;
- climb over obstacles, move furnishings or stored items;
- prioritize or emphasize the importance of one deficiency over another;
- provide follow-up services to verify that proper repairs have been made; or
- inspect system or component listed under the optional section of the SOPs (22 TAC 535.233).

## RESPONSIBILTY OF THE CLIENT

While items identified as Deficient (D) in an inspection report DO NOT obligate any party to make repairs or take other actions, in the event that any further evaluations are needed, it is the responsibility of the client to obtain further evaluations and/or cost estimates from qualified service professionals regarding any items reported as Deficient (D). It is recommended that any further evaluations and/or cost estimates take place prior to the expiration of any contractual time limitations, such as option periods.

**Please Note:** Evaluations performed by service professionals in response to items reported as Deficient (D) on the report may lead to the discovery of additional deficiencies that were not present, visible, or accessible at the time of the inspection. Any repairs made after the date of the inspection may render information contained in this report obsolete or invalid.

## REPORT LIMITATIONS

This report is provided for the benefit of the named client and is based on observations made by the named inspector on the date the inspection was performed (indicated above).

ONLY those items specifically noted as being inspected on the report were inspected.

REI 7-6 (8/9/21)
www.trec.texas.gov

Promulgated by the Texas Real Estate Commission  · (512) 936-30[0]

EXHIBIT
A

Report Identification _ _ _____
Timothy A. Sank, 915-346-9553, timsproinspection@sbcglobal.net

| I=Inspected | NI=Not Inspected | NP=Not Present | D=Deficient |
|---|---|---|---|
| I | NI | NP | D |

This inspection IS NOT:
- a technically exhaustive inspection of the structure, its systems, or its components and may not reveal all deficiencies;
- an inspection to verify compliance with any building codes;
- an inspection to verify compliance with manufacturer's installation instructions for any system or component and
  DOES NOT imply insurability or warrantability of the structure or its Components.

## NOTICE CONCERNING HA ZARDOUS CONDITIONS, DEFICI ENCIES, AND CONTRACTUA L AGREEMENTS

**Conditions may be present in your home that did not violate building codes or common practices in effect when the home was constructed but are considered hazardous by today's standards. Such conditions that were part of the home prior to the adoption of any current codes prohibiting them may not be required to be updated to meet current code requirements.  However, if it can be reasonably determined that they are present at the time of the inspection, the potential for injury or property loss from these conditions is significant enough to require inspectors to report them as Deficient (D). Examples of such hazardous conditions include:**

- malfunctioning, improperly installed, or missing ground fault circuit protection (GFCI) devices and arc-fault (AFCI) devices;
- ordinary glass in locations where modern construction techniques call for safety glass;
- malfunctioning or lack of fire safety features such as smoke alarms, fire-rated doors in certain locations, and functional
  emergency escape and rescue openings in bedrooms;
- malfunctioning carbon monoxide alarms;
- excessive spacing between balusters on stairways and porches;
- improperly installed appliances;
- improperly installed or defective safety devices;
- lack of electrical bonding and grounding; and
- lack of bonding on gas piping, including corrugated stainless steel tubing (CSST).

Please Note: items identified as Deficient (D) in an inspection report DO NOT obligate any party to make repairs or take other actions. The decision to correct a hazard or any deficiency identified in an inspection report is left up to the parties to the contract for the sale or purchase of the home.

This property inspection report may include an inspection agreement (contract), addenda, and other information related to property conditions.

INFORMATION INCLUDED UNDER "ADDITIONAL INFORMATION PROVIDED BY INSPECTOR", OR PROVIDED AS AN ATTACHMENT WITH THE STANDARD FORM, IS NOT REQUIRED BY THE COMMISSION AND MAY CONTAIN CONTRACTUAL TERMS BETWEEN THE INSPECTOR AND YOU, AS THE CLIENT. THE COMMISSION DOES NOT REGULATE CONTRACTUAL TERMS BETWEEN PARTIES. IF YOU DO NOT UNDERSTAND THE EFFECT OF ANY CONTRACTUAL TERM CONTAINED IN THIS SECTION OR ANY ATTACHMENTS, CONSULT AN ATTORNEY.

### ADDITIONAL INFORMATION PROVIDED BY INSPECTOR

Start Time of Inspection _9:00____, __x_AM, __PM, End Time _9:57____, __x_AM, ___PM

Temp. ___60_____   Weather ___ Cloudy, _x__ Clear, ___ Raining, ___ Other _____

___ Un-Occupied at the time of Inspection, _x__ Occupied, (when home is occupied no furniture is moved, some areas cannot be seen or inspected)

Charge $_250.00____ Payment Method: Check #__3323, 3324_____, Cash/Cash App____ Yes, ____ No, Card_____, Paid _x__ Yes, ____ No, Zelle _____ PO#_____

No warranty, condition of the house on date of inspection.  Claims limited to amount of inspection charge.

REI 7-6 (8/9/21)
www.trec.texas.gov                    Promulgated by the Texas Real Estate Commission  · (512) 936-3000  ·

Report Identification _ __ ____
Timothy A. Sank, 915-346-9553, timsproinspection@sbcglobal.net
I=Inspected        NI=Not Inspected        NP=Not Present    D=Deficient

| I | NI | NP | D |
|---|----|----|---|

## I. STRUCTURAL SYSTEMS

☐ ☒ ☐ ☐ **A. Foundations**
*Type of Foundation(s):* __ Slab-on–grade, ___ Pier and Beam, ___ Monolithic Slab, ___ Other
*Comments:* Functioning as intended.

Craw space accessible? ___ Yes, ___ No, ___ N/A
Method used to inspect craw space: _____

☐ ☒ ☐ ☐ **B. Grading & Drainage**
*Comments:*

☐ ☐ ☐ ☒ **C. Roof Covering Materials**
Types of Roof Covering: ___ 3-Tab/__ 20 year or ___ 30 year, ___ 90#
Rolled, ___ Wood/Cedar, ___ Tile, ___ Slate,___ Metal, ___ T-Loc, ___ Built-Up,
___ Other___(Plastic Roof Covering)_____
Viewed From: _x__ on Roof, ___ Ground, ____Other_____
*Comments:* 1. Damage and/or gaps around the edge flashing on the walls is allowing water into the wall system.

REI 7-6 (8/9/21)
www.trec.texas.gov
Promulgated by the Texas Real Estate Commission  · (512) 936-3000  ·

Report Identification _ __ ____
Timothy A. Sank, 915-346-9553, timsproinspection@sbcglobal.net

| I=Inspected | NI=Not Inspected | NP=Not Present | D=Deficient |
|---|---|---|---|
| I | NI | NP | D |



2. Old roofing was not removed before new roofing material was installed.



Report Identification ___ ___ _____
Timothy A. Sank, 915-346-9553, timsproinspection@sbcglobal.net

| I=Inspected | NI=Not Inspected | NP=Not Present | D=Deficient |
|---|---|---|---|
| I   NI   NP   D | | | |

3. Standard roofing instillation was not followed:
    A. Roofing material should be installed starting at the low
    end of the roof.  Then, each additional layer is installed
    higher on the roof and will then drain on to the lower
    material.
    B. The roofing material should run accost the
    (perpendicular) to the roof slope.

    Both of these standard was not used, the roofing material
    was started at the high end and layered down the slope so
    that water could run under the lower layer.  Also, on some
    of the slopes the material was installed parallel to the slope
    of the roof, allowing water under the edges to seep into the
    house.



REI 7-6 (8/9/21)
www.trec.texas.gov

Promulgated by the Texas Real Estate Commission  · (512) 936-3000  ·

Report Identification _ __ ____
Timothy A. Sank, 915-346-9553, timsproinspection@sbcglobal.net

| I=Inspected | NI=Not Inspected | NP=Not Present | D=Deficient |
|---|---|---|---|

| I | NI | NP | D |
|---|---|---|---|

3. Vent pipes and Air vents were covered over, trapping moisture in the house.



4. Very poor workmanship, sloppy.



Report Identification __ __ ____
Timothy A. Sank, 915-346-9553, timsproinspection@sbcglobal.net

| I=Inspected | NI=Not Inspected | NP=Not Present | D=Deficient |
|---|---|---|---|

| I | NI | NP | D |
|---|---|---|---|



Evidence of Previous Repairs _x_ Yes, ___ No, ___ N/A

| ☐ | ☒ | ☐ | ☐ | **D. Roof Structure and Attic** |
|---|---|---|---|---|

       *Viewed From: _____ On Roof, ___ Inside Attic, ___ No attic available*
       *Approximate Average Depth of Insulation: _ ____ inches.*
       *Approximate Average Thickness of Vertical Insulation: _____ inches,*
       *___ N/A*
       *Comments:*

Proper Ventilation of roof and attic ___ Yes, ___ No

REI 7-6 (8/9/21)
www.trec.texas.gov
Promulgated by the Texas Real Estate Commission · (512) 936-3000 ·

Report Identification ___ _____
Timothy A. Sank, 915-346-9553, timsproinspection@sbcglobal.net

| I=Inspected | | NI=Not Inspected | | NP=Not Present    D=Deficient |
|---|---|---|---|---|
| I | NI | NP | D | |

☐  ☒  ☐  ☐   **E. Walls (Interior and Exterior)**
*Comments*:

☐  ☒  ☐  ☐   **F. Ceilings and Floors**
*Comments*:

☐  ☒  ☐  ☐   **G. Doors (Interior and Exterior)**
*Comments*:

☐  ☒  ☐  ☐   **H. Windows**
*Comments*:

Missing or Damaged Screens ___ Yes, ___ No
Functional Emergency Openings in Bedrooms ___ Yes, ___ No

☐  ☒  ☐  ☐   **I. Stairways (Interior and Exterior)**
*Comments*:

☐  ☒  ☐  ☐   **J. Fireplace/Chimney**
*Comments*:

Gas Log Only ___ Yes, ___ No, ___ N/A

☐  ☒  ☐  ☐   **K. Porches, Balconies, Decks and Carports**
*Comments*:

☐  ☒  ☐  ☐   **L. Other** _____
*Comments*:

REI 7-6 (8/9/21)
www.trec.texas.gov
Promulgated by the Texas Real Estate Commission  · (512) 936-3000  ·

Report Identification _ __ ____
Timothy A. Sank, 915-346-9553, timsproinspection@sbcglobal.net

| I=Inspected | NI=Not Inspected | NP=Not Present | D=Deficient |
|---|---|---|---|

| I | NI | NP | D |
|---|---|---|---|

## II. ELECTRICAL SYSTEMS

☐ ☒ ☐ ☐ **A. Service Entrance and Panels**
*Comments*:

AFCI present: ____ Yes, ____ No (Arc Fault Circuit Interrupter, used for fire protection)
Service From: ____ Overhead, ____ Underground
Visible wiring type:   Service: ___ Copper, ___ Aluminum
                       Feeders: ___ Copper, ___ Aluminum
Appropriate connections?   ___ Yes, ___ No

☐ ☒ ☐ ☐ **B. Branch Circuits, Connected Devices and Fixtures**
Type of Wiring: ___ Copper, ___ Aluminum, ___ Other
*Comments*:

GFCI Lacking in: ___ Bathrooms, ___ Kitchen, ___ Garage, ___ Outside,
___ Basement/Craw Space, ___ Laundry/Utility, ___ Wet Bar. (Ground Fault Circuit Interrupter, for shock protection)

Smoke Alarms:
  Working, ___ Yes, ___ No
  Present in All Bedrooms, ___ Yes, ___ No
  Present outside Bedrooms, ___ Yes, ___ No
  Present on other floors, ___ Yes, ___ No, ___ N/A

☐ ☒ ☐ ☐ **C. Other** _____
*Comments*:

REI 7-6 (8/9/21)
www.trec.texas.gov
Promulgated by the Texas Real Estate Commission · (512) 936-3000 ·

Report Identification ___ ___ ____
Timothy A. Sank, 915-346-9553, timsproinspection@sbcglobal.net

| I=Inspected | NI=Not Inspected | NP=Not Present | D=Deficient |
| I | NI | NP | D |

## III. HEATING, VENTILATION AND AIR CONDITIONING SYSTEMS

❏ ☒ ❏ ❏ **A. Heating Equipment**

*Type of System:* ___ Forced air, ___ Wall Units, ___ Base board, ____ other
*Energy Source:* ___ natural gas, ___ Electric, ___ other
*Comments:*

___ There is rust inside the heat exchange, have unit checked by an HVAC company for CO leaks.
___ The unit was not on at the time of inspection could not check operation.

❏ ☒ ❏ ❏ **B. Cooling Equipment:**

*Type of System:* ____ Evaporative Cooler,
    ___ One Speed, ___ Two Speeds
    ___ Copper, ___ Plastic (Water Line)
    ____ Refrigerated Air
    ____ Other
*Comments:*

___ The unit was not on at the time of inspection could not check operation.
___ Winterized

❏ ☒ ❏ ❏ **C. Duct System, Chases, and Vents**
*Comments:*

❏ ☒ ❏ ❏ **D. Other** _____
*Comments:*

REI 7-6 (8/9/21)
www.trec.texas.gov
Promulgated by the Texas Real Estate Commission  · (512) 936-3000 ·

Report Identification ___ ___ _____
Timothy A. Sank, 915-346-9553, timsproinspection@sbcglobal.net
I=Inspected          NI=Not Inspected          NP=Not Present     D=Deficient

| I | NI | NP | D |
|---|----|----|---|

## IV. PLUMBING SYSTEM

☐ ☒ ☐ ☐  **A. Plumbing Supply, Distribution System and Fixtures**
*Location of water meter:* ___ *Street,* ___ *Front of House,* ___ *Back of House,*

___ *Side of House,* ___ *Allie,* ___ *Other*
_____
*Location of main water supply valve:* __ *Water Meter,* ___ *In House,* __ *Garage*
*Static water pressure reading:* _____ *PSI*
___ *Less Than 40,* ___ *Greater Than 80*
Type of Supply piping material: ___ Copper, ___ CPVC, ___ Plastic, ___ Other
*Comments:*

☐ ☒ ☐ ☐  **B. Drains, Wastes, Vents**
**Type of** Drain piping Material: ___ PVC, ___ Copper, ___ Metal, ___ Other
*Comments:*

☐ ☒ ☐ ☐  **C. Water Heating Equipment**
*Energy Source:* ___ Natural Gas, ___ LP Gas, ___ Electric, ___ Other
*Capacity:* ___ *20,* ___ *30,* ___ *40,* ___ *50,* ___ *Other (Gallons)*
*Comments:*

T & P Valve working ___ Yes, ___ No (Temperature and Pressure Relief Valve)
___ Gas shut off type (Watts 210)

☐ ☒ ☐ ☐  **D. Hydro-Massage Therapy Equipment**
*Comments:*

☐ ☒ ☐ ☐  **E. Gas Distribution Systems and Gas Appliances**
Location of gas meter: ___ Front, ___ Right side, ___ Left side, ___ Back yard, ___ Other _____
Type of gas distribution piping material: ___ Black Pipe, ___ Flex/ CST, ___Other
*Comments:*

☐ ☒ ☐ ☐  **F. Other** _____
*Comments:*

REI 7-6 (8/9/21)
www.trec.texas.gov
Promulgated by the Texas Real Estate Commission  · (512) 936-3000  ·

Report Identification __ __ ____
Timothy A. Sank, 915-346-9553, timsproinspection@sbcglobal.net
I=Inspected        NI=Not Inspected        NP=Not Present        D=Deficient

| I | NI | NP | D | |
|---|---|---|---|---|

### V. APPLIANCES

| | ☒ | | | **A. Dishwashers** |
| | | | | *Comments:* |

| | ☒ | | | **B. Food Waste Disposers** |
| | | | | *Comments:* |

| | ☒ | | | **C. Range Hood and Exhaust Systems** |
| | | | | *Comments:* |

___ Built into Microwave Oven

| | ☒ | | | **D. Ranges, Cooktops, and Ovens** |

___ Natural Gas, ___ LP Gas, ___ Electric
___ Tip Protection __ _ Yes, ___ No, ___ N/A
350º test of Oven = ____, Pass ___, Fail ___
*Comments:*

| | ☒ | | | **E. Microwave Oven** |
| | | | | *Comments:* |

| | ☒ | | | **F. Mechanical Exhaust Vents and Bathroom Heaters** |
| | | | | *Comments:* |

___ Fan present, Operating ___ Yes, ___ No
___ Heater present, Operating ___ Yes, ___ No

REI 7-6 (8/9/21)
www.trec.texas.gov
Promulgated by the Texas Real Estate Commission  · (512) 936-3000 ·

Report Identification _ __ ____
Timothy A. Sank, 915-346-9553, timsproinspection@sbcglobal.net

| I=Inspected | NI=Not Inspected | NP=Not Present | D=Deficient |
| --- | --- | --- | --- |
| I | NI | NP | D |

☐  ☒  ☐  ☐  **G. Garage Door Operator(s)**
*Comments*:

___ Manual Operation OK
___ Power Operation OK
___ Auto Reverse OK

☐  ☒  ☐  ☐  **H. Dryer Exhaust Systems**
*Comments*:

___ Through Wall, ___ Through Roof (Clean vent line out for safety)

☐  ☒  ☐  ☐  **I. Other:     Doorbell and Chimes**
*Comments*:

☐  ☒  ☐  ☐  **J. Other** _____
*Comments*:

REI 7-6 (8/9/21)
www.trec.texas.gov
Promulgated by the Texas Real Estate Commission  · (512) 936-3000  ·