UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| ROBERT K. HUDNALL AND SHARON ELIAS HUDNALL, <br><br> Plaintiffs, <br><br> v. <br><br> TY SMITH, Individually and as agent for Smith and Ramirez Restoration LLC; ALEJANDRO C. RAMIREZ, individually and agent for Smith and Ramirez Restoration LLC; KURT G. PAXSON, individually and agent for Mounce, Green, Myers, Safi, Paxson and Galatzan; GARRETT J. YANCEY, individually and as agent for Mounce, Green, Myers, Safi, Paxson and Galatzan; JAMES A. MARTINEZ, individually and as agent for Mounce, Green, Myers, Safi, Paxson and Galatzan; SMITH AND RAMIREZ RESTORATION LLC; EVANSTON INSURANCE COMPANY, Insurance company for Smith and Ramirez Restoration LLC; GUY BLUFF; MOUNCE, GREEN, MEYERS, SAFI, PAXSON, AND GALATZAN; CATHERINE HANNA, individually and as agent for Hanna and Plaut LLP; HANNA AND PLAUT LLP; LIBERTY LOYDS OF TEXAS INSURANCE COMPANY; and Does 1-100, <br><br> Defendants. | §§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§§ | EP-21-CV-00106-FM |

### ORDER GRANTING GUY M. BLUFF'S MOTION TO DISMISS

Before the court are "Defendant Guy M. Bluff's Amended Motion to Dismiss for Failure to State a Claim Upon Which Relief May be Granted" ("Motion") [ECF No. 45], filed July 1, 2021 by Guy M. Bluff ("Bluff"); "Plaintiff's [sic] Response to Defendant Guy M. Bluff's

1



Amended Motion to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted" ("Response") [ECF No. 46], filed July 6, 2021 by Robert K. Hudnall and Sharon Elias Hudnall (collectively, "Plaintiffs"); "Defendant Guy M. Bluff's Reply to Plaintiffs' Response to His Amended Motion to Dismiss for Failure to State a Claim Upon Which Relief May be Granted" ("Reply") [ECF No. 47], filed July 7, 2021 by Bluff; and "Plaintiff's [sic] Response to Guy M. Bluff's Reply" ("Sur-reply") [ECF No. 54], filed July 9, 2021.[1] Bluff moves for dismissal of all claims against him under Federal Rule of Civil Procedure 12(b)(6) ("Rule 12(b)(6)").[2] After due consideration of the Motion, Response, Reply, Sur-reply, and applicable law, the Motion is **GRANTED**.

**I. BACKGROUND**

This case arises from a contract between Plaintiffs and Defendants Ty Smith, Alejandro C. Ramirez, and Smith & Ramirez Restoration, LLC (collectively, the "SR Defendants") to replace Plaintiffs' roof.[3] A dispute over the performance of this conflict escalated to breach of contract litigation in the 448th District Court in El Paso, Texas.[4] The action was ultimately referred to arbitration pursuant to the arbitration agreement contained in the roofing contract.[5] Bluff acted as arbitrator over the dispute.[6]

---

[1] Pursuant to the local rules, sur-replies are not permitted absent leave of court. Local Rule CV-7(f)(1). In the interest of justice, the court exercises its discretion to consider Plaintiffs' sur-reply.

[2] "Defendant Guy M. Bluff's Amended Motion to Dismiss for Failure to State a Claim Upon Which Relief May be Granted" ("Mot.") 21, ECF No. 45, filed July 1, 2021

[3] *See generally* "First Amended Complaint" ("Am. Compl.") ECF No. 14, filed June 1, 2021.

[4] *Id.* at ¶ 9.

[5] *Id.* at ¶ 16.

[6] *Id.* at ¶ 31.

2

Plaintiffs allege Bluff conspired with the SR Defendants and the SR Defendants' attorneys to increase fees collected for his services by prolonging arbitration.[7] In furtherance of the alleged conspiracy, Bluff declined to grant Plaintiffs' summary judgment motion despite conclusive evidence supporting Plaintiffs' theory of recovery.[8] Plaintiffs further allege Bluff wrongfully permitted parties to introduce protected healthcare information to the arbitration proceedings. Specifically, Plaintiffs allege that Robert Hudnall's entitlement to grants from the Department of Veteran's Affair under the Special Adaptive Housing ("SAH") Program based on his disability is protected information.[9]

On these facts, Plaintiffs assert Bluff violated the Racketeer Influenced and Corrupt Organizations Act ("RICO") by colluding with the SR Defendants and the SR Defendants' attorneys.[10] They also contend that permitting the introduction of confidential medical information violated Health Insurance Portability and Accountability Act ("HIPAA") and the Texas Medical Records Privacy Act.[11] Plaintiffs also pleaded a number of state law offenses including fraud, fraudulent inducement, fraudulent misrepresentation, breach of contract, and promissory estoppel.[12] Bluff is excluded from Plaintiffs' promissory estoppel claim. He is named in all others, but at times only in the remedies portions of the count. To the extent he is named in any factual allegations corresponding to these claims, Plaintiffs allege only that he

---

[7] *Id.* at ¶ 38.

[8] Am. Compl. ¶ 38.

[9] *Id.* at ¶ 96.

[10] *Id.* at ¶¶ 40–80. *See also* 18 U.S.C. §§ 1961–1968.

[11] Am. Compl. ¶¶ 93–97. *See also* 42 U.S.C § 1320-6; TEX. HEALTH & SAFETY CODE ch. 181.

[12] *Id.* at ¶ 81–92.

3

conspired with or tacitly supported other defendants. At all times, Plaintiffs' allegations against Bluff refer to decisions Bluff made as an arbitrator.

## II. LEGAL STANDARD

Rule 12(b)(6) allows dismissal of a complaint for "failure to state a claim for which relief can be granted." "The central issue is whether, in the light most favorable to the plaintiff, the complaint states a valid claim for relief."[13] To survive a motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."[14] "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."[15] "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[16] Therefore, a complaint is not required to set out "detailed factual allegations," but it must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action."[17] Although the court must accept well-pleaded allegations in a complaint as true, it does not afford conclusory allegations similar treatment.[18]

---

[13] *Great Plains Trust Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 313 (5th Cir. 2002) (internal quotation marks and citation omitted); *see also In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007).

[14] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

[15] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

[16] *Id.* (citing *Twombly*, 550 U.S. at 556).

[17] *Twombly*, 550 U.S. at 555.

[18] *See Kaiser Aluminum & Chem. Sales, Inc.*, 677 F.2d 1045, 1050 (5th Cir. 1982) (citing *Associated Builders, Inc. v. Alabama Power Co.*, 505 F.2d 97, 100 (5th Cir. 1974)).

Federal Rule of Civil Procedure 9(b) requires that, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." This heightened pleading standard applies to RICO claims based on fraudulent predicate acts.[19]

## III. DISCUSSION

### A. Conversion to 12(c) Motion

A motion pursuant to Rule 12(b)(6) must be made before pleading.[20] Therefore, a motion to dismiss for failure to state a claim filed after the defendant's answer is untimely. However, a district court faced with an untimely 12(b) motion may choose to convert it to a Federal Rule of Civil Procedure 12(c) ("Rule 12(c)") motion for judgment on the pleadings.[21] Such a motion is appropriate after the pleadings are closed but early enough so that its consideration will not delay trial.[22] The standard for dismissal under Rule 12(c) is the same as that for dismissal for failure to state a claim under Rule 12(b)(6).[23] As Bluff moved to dismiss Plaintiffs' claims after filing an answer to Plaintiffs' amended complaint, his motion is untimely. However, the court exercises its discretion to convert it into a motion for judgment on the pleadings as this proceeding is in its infancy and consideration of the motion will not delay trial. Further, the motion can be decided as a matter of law.[24]

---

[19] *Molina-Aranda v. Black Magic Enters., LLC*, 983 F.3d 779, 784 (5th Cir. 2020); *Tel–Phonic Servs., Inc. v. TBS Int'l, Inc.*, 975 F.2d 1134, 1139 (5th Cir. 1992).

[20] FED. R. CIV. P. 12(b).

[21] *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999).

[22] FED. R. CIV. P. 12(c).

[23] *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004).

[24] *See Greenberg v. Gen. Mills Fun Grp., Inc.*, 478 F.2d 254, 256 (5th Cir. 1973).

B.   *Arbitral Immunity*

The resemblance of an arbitrator's role to that of a judge gives rise to immunity from suit similar to judicial immunity.[25] The scope of arbitral immunity does not exceed the bounds of judicial immunity.[26] This immunity protects arbitrators from civil liability arising from actions taken in the course of conducting arbitration proceedings.[27] Arbitral immunity "is essential to protect decision-makers from undue influence and the process from reprisals by dissatisfied litigants."[28] As such, immunity extends to intentional misconduct, fraud, and bias.[29]

Bluff, as an arbitrator, is immune from civil liability for all actions taken in the scope of that role. Plaintiffs emphasize that Bluff's immunity is not absolute. Specifically, they argue the doctrine of arbitral immunity does not apply as Bluff did not act neutrally and did not have "proper jurisdiction."[30] Despite the limitations of arbitral immunity, it encompasses all allegations against Bluff. An arbitrator does not lose immunity because he is not neutral or because he is biased.[31] Instead, Plaintiff must establish "clear absence of all jurisdiction over the subject matter," a markedly higher bar.[32] The Supreme Court long ago differentiated acts "in

---

[25] *E.C. Ernst, Inc. v. Manhattan Const. Co. of Texas*, 551 F.2d 1026, 1033 (5th Cir. 1977).

[26] *See id.*

[27] *Hawkins v. Nat'l Ass'n of Sec. Dealers*, 149 F.3d 330, 332 (5th Cir. 1998), *abrogated on other grounds by Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 578 U.S. 901 (2016).

[28] *Jason v. Am. Arb. Ass'n, Inc.*, 62 Fed. App'x 557 (5th Cir. 2003) (unpublished) (quoting *New England Cleaning Serv., Inc. v. Am. Arb. Ass'n*, 199 F.3d 542, 545 (1st Cir. 1999)).

[29] *See Hawkins*, 149 F.3d at 331 (dismissing claims for bias, misadministration and conspiracy to harm the plaintiff). *Cf. Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978) ("A judge will not be deprived of immunity because the action he took was in error, was done maliciously, or was in excess of his authority; rather, he will be subject to liability only when he has acted in the 'clear absence of all jurisdiction.'").

[30] "Plaintiff's [sic] Response to Defendant Guy M. Bluff's Amended Motion to Dismiss for Failure to State a Claim Upon Which Relief Can be Granted" ("Resp.") 1–2, ECF No. 46, filed July 6, 2021.

[31] *See Hawkins*, 149 F.3d at 331; *Stump*, 435 U.S. at 356–57.

[32] *Bradley v. Fisher*, 80 U.S. 335, 351–52 (1871).

excess of jurisdiction," for which immunity from civil liability applies and acts taken in "the clear absence of all jurisdiction," for which there is no legal protection.[33] The distinction lies in whether existing authority is wrongly exercised or not held at all. A probate judge who tries a criminal case acts in the absence of all jurisdiction and may be civilly liable.[34] A judge presiding over a criminal court acts in excess of his jurisdiction by convicting a defendant of a non-existent crime and is immune.[35]

The cases cited by Plaintiffs limiting arbitral immunity are inapposite. The allegations here are not comparable to those in *Harper v. Merckle*. There, the Fifth Circuit declined to extend immunity to a judge who ordered an impromptu hearing and arrest in his chambers stemming from a social visit.[36] The judge ordered bailiffs to chase, detain, and then incarcerate the plaintiff for the weekend due to a domestic dispute between the plaintiff and the judge's employee.[37] The court found there had not been any "judicial act" as no party "invoked the judicial machinery for any purpose at all."[38]

In contrast, Bluff's denial of Plaintiffs' dispositive motion and admission of contested evidence is clearly within his authority as arbitrator and the normal procedural bounds of arbitration. The Texas state court referred the action to arbitration using the usual "judicial

---

[33] *See Bradley*, 80 U.S. at 351–52 (holding a judge to be immune from civil liability for disbarring an attorney without sufficient notice to the attorney as disbarment was in excess of his jurisdiction, not without jurisdiction); *Stump v. Sparkman*, 435 U.S. 349, 356–57 (1978) (holding that a judge was immune from civil liability for ordering the sterilization of a minor without her knowledge as the order was in excess of his jurisdiction, not without jurisdiction).

[34] *Bradley*, 80 U.S. at 352.

[35] *Id.*

[36] *Harper v. Merckle*, 638 F.2d 848, 859 (5th Cir. 1981).

[37] *Id.* at 851.

[38] *Id.* at 859.

machinery." Bluff then exercised only those powers corresponding to his role by hearing evidence and ruling on parties' motions. This is a far cry from what the Fifth Circuit described as "the rarest of factual settings" arising in *Harper v. Merckle*, which merited an "exceedingly narrow" holding.[39] Any improper or malicious motive would certainly cause Bluff's actions to be in excess of his jurisdiction. However, this is insufficient to escape arbitral immunity as it does not clear the high threshold of being in absence of all jurisdiction. Therefore, Bluff cannot be civilly liable regardless of whether his decision was legally defensible or was part of a conspiracy to enrich himself as Plaintiffs claim.

Arbitration is a creature of contract law in which parties choose to forgo the traditional judicial process and to instead be bound by the decision of the arbitrator.[40] As such, the contents of an arbitration agreement may also provide a source of arbitral immunity.[41] The roofing contract between Plaintiffs and the SR Defendants contains an arbitration agreement that forms the basis of the state court's decision to refer Plaintiffs' contract claims to arbitration by Bluff.[42] The arbitration agreement stipulates that "the rules of the American Arbitration Association ('AAA') shall be sole and exclusive means of resolving [a] dispute [arising from the roofing contract]."[43] Under Rule 54 of the AAA, "[n]either the AAA nor any arbitrator in a proceeding under these rules is a necessary or proper party in judicial proceedings relating to the

---

[39] *Id.*

[40] *E.C. Ernst, Inc. v. Manhattan Const. Co. of Texas*, 551 F.2d 1026, 1033 (5th Cir. 1977) ("[The arbitrator] is a creature of contract, paid by the parties to perform a duty, and his decision binds the parties because they make a specific, private decision to be bound.").

[41] *See* 9 U.S.C. § 2 ("A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable.").

[42] *See* Mot., "Roofing Contract" ¶ 13, ECF No. 45-1, Ex. 2.

[43] *Id.*

arbitration."[44] "Parties to an arbitration under these Rules shall be deemed to have consented that neither the AAA nor any arbitrator shall be liable to any party in any action for damages, injunctive or declaratory relief for any act or omission in connection with any arbitration under these rules."[45]

As a party to the arbitration agreement, Plaintiff is contractually obligated to accept the AAA limitations on civil liability. The AAA language forecloses Plaintiffs from recovering damages from Bluff for any action he took as an arbitrator. As the court determined that all Bluff's actions cited in the complaint occurred within the scope of the role of arbitrator, Bluff has a contractual immunity from suit.

Finally, Plaintiffs raise new allegations of wrongdoing against Bluff in their Response. Plaintiffs assert Bluff informed the process server who delivered the summons and complaint for this lawsuit that Robert Hudnall is a disbarred attorney.[46] They further allege Bluff questioned the process server about the validity of service.[47] Plaintiffs assert these actions amount to libel and impermissible *ex parte* communication. As these are not mentioned in the amended complaint, they cannot form the basis of liability in this action.[48] Even if they were, they would not be actionable as they do not meet the requirements for either cause of action.

---

[44] *See* AMERICAN ARBITRATION ASSOCIATION, CONSTRUCTION INDUSTRY ARBITRATION RULES AND MEDIATION PROCEDURES, R-54(b) (2015).

[45] *Id.* at R-54(d).

[46] Resp. 3–4. Plaintiff disputes the truthfulness of the claim of disbarment.

[47] *Id.*

[48] *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (stating the procedure for determining the sufficiency of a complaint challenged by a 12(b)(6) motion to dismiss).

9

Bluff briefs several additional legal theories in support of his Motion. However, as the doctrine of arbitral immunity conclusively bars all Plaintiffs' claims against Bluff, it is unnecessary address them.

## IV. CONCLUSION

All claims against Bluff are barred by the doctrine of arbitral immunity. As such, Plaintiffs failed to plead enough facts to state a claim to relief that is plausible on its face.

Accordingly:

1. It is **HEREBY ORDERED** that "Defendant Guy M. Bluff's Amended Motion to Dismiss for Failure to State a Claim Upon Which Relief May be Granted" [ECF No. 45] is **GRANTED**.

2. It is **FURTHER ORDERED** that the Clerk of Court is instructed to **TERMINATE** Defendant Guy M. Bluff as a party to this cause.

**SIGNED AND ENTERED** this 10 day of **August 2021**.

**FRANK MONTALVO**
**UNITED STATES DISTRICT JUDGE**



# Construction
## Industry Arbitration Rules and Mediation Procedures

**Including Procedures for Large, Complex Construction Disputes**



Available online at adr.org/construction

Rules Amended and Effective July 1, 2015

EXHIBIT 2

### R-51. Modification of Award

(a) Within 20 calendar days after the transmittal of an award, the arbitrator on his or her initiative, or any party, upon notice to the other parties, may request that the arbitrator correct any clerical, typographical, technical, or computational errors in the award. The arbitrator is not empowered to redetermine the merits of any claim already decided.

(b) If the modification request is made by a party, the other parties shall be given 10 calendar days to respond to the request. The arbitrator shall dispose of the request within 20 calendar days after transmittal by the AAA to the arbitrator of the request and any response thereto.

(c) If applicable law provides a different procedural time frame, that procedure shall be followed.

### R-52. Release of Documents

The AAA shall, upon the written request of a party to the arbitration, furnish to that party, at its expense, copies or certified copies of papers in the AAA's possession that are not determined by the AAA to be privileged or confidential.

### R-53. Withdrawal of Claims or Counterclaims

(a) Once the AAA has provided notice to the parties that the filing requirements for a claim or counterclaim have been met, no claim or counterclaim may be withdrawn unless the parties agree or the arbitrator consents.

(b) Disputes regarding whether a claim or counterclaim is withdrawn with or without prejudice may be decided by the arbitrator.

### R-54. Applications to Court and Exclusion of Liability

(a) No judicial proceeding by a party relating to the subject matter of the arbitration shall be deemed a waiver of the party's right to arbitrate.

(b) Neither the AAA nor any arbitrator in a proceeding under these Rules is a necessary or proper party in judicial proceedings relating to the arbitration.

(c) Parties to these Rules shall be deemed to have consented that judgment upon the arbitration award may be entered in any federal or state court having jurisdiction thereof.

(d) Parties to an arbitration under these Rules shall be deemed to have consented that neither the AAA nor any arbitrator shall be liable to any party in any action for damages, injunctive or declaratory relief for any act or omission in connection with any arbitration under these rules.

(e) Parties to an arbitration under these Rules may not call the arbitrator, the AAA, or AAA employees as a witness in litigation or any other proceeding relating to the arbitration. The arbitrator, the AAA and AAA employees are not competent to testify as witnesses in any such proceeding.

### R-55. Administrative Fees

As a not-for-profit organization, the AAA shall prescribe filing and other administrative fees and service charges to compensate it for the cost of providing administrative services. The fees in effect when the fee or charge is incurred shall be applicable.

The filing fee shall be advanced by the party or parties, subject to final apportionment by the arbitrator in the award.

The AAA may, in the event of extreme hardship on the part of any party, defer or reduce the administrative fees.

### R-56. Expenses

The expenses of witnesses for either side shall be paid by the party producing such witnesses. All other expenses of the arbitration, including required travel and other expenses of the arbitrator, AAA representatives, and any witness and the cost of any proof produced at the direct request of the arbitrator, shall be borne equally by the parties, unless they agree otherwise or unless the arbitrator in the award assesses such expenses or any part thereof against any specified party or parties.

### R-57. Neutral Arbitrator's Compensation

(a) Arbitrators shall be compensated at a rate consistent with the arbitrator's stated rate of compensation.
(b) Absent an agreement of the parties otherwise, or as determined by an arbitrator appointed under the auspices of Section R-7, each party shall share equally in the compensation of the arbitrator, subject to reapportionment in the final award. In the event that multiple parties are participating in the arbitration through a single representative, the AAA may consider them a single party for the purpose of allocating arbitrator compensation.
(c) If there is disagreement concerning the terms of compensation, an appropriate rate shall be established with the arbitrator by the Association and confirmed to the parties.

**SMITH & RAMIREZ RESTORATION LLC**

Bonded & Insured  Angie's List      

500 Thunderbird Dr., Suite 103, El Paso, Texas 79912 • (915) 600-2866 Office
www.smithandramirezroofing.com • fax (877) 631-1557

## PROJECT INVESTIGATION

PROJECT MANAGER: Luis Stiles     REP CELL: 996-6832     DATE: 6-9-14
CUSTOMER: Ken Hudnall     HOME PH.: 478-1114     ALT PH.: _____
ADDRESS: 297 Puesta Del Sol Lane     CITY: El Paso     ST: TX   ZIP: 79912

☐ Is this a rental property? If yes, please provide billing address

### ROOFING

- ☒ We will obtain necessary permits.
- ☒ We will provide insurance and worker's comp as required by the state.
- ☒ We will inspect material and prepare job site for safety.
- ☐ We will remove and haul away _____ layer(s) of existing roofing.
- ☒ Slope factor: flat
- ☐ 1-story ☒ 2-story ☐ 2-story with 1-story access ☐ 3-story

### ADDITIONAL STRUCTURES

- ☐ Garage ☐ Shed ☐ Patio Cover ☐ Other_____
- ☐ Install _____ squares of _____

### CLEAN UP INSTRUCTIONS

- ☒ We will clean the roof and gutters.
- ☒ We will clean grounds and haul off debris.
- ☒ We will sweep the ground with a magnet to pick up nails.
- ☒ We will haul off excess material.
- ☒ Final Quality Control Inspection.

### "El Paso's Best Roofing Warranty"

| Standard | Upgrade | |
|---|---|---|
| 5 YRS | 10 YRS | **Installers Workmanship Coverage** Cost of ALL LABOR, MATERIALS, & DISPOSAL |
| OR | | **Manufacturer's Defect on Material Coverage** Cost of SHINGLES replacement |
| 5 | 10 YRS | Cost of LABOR |
| 5 | 10 YRS | Cost of TEAR-OFF and DISPOSAL |
| FREE | $300 | **Cost of Warranty Package** |

### SHINGLE / ROOFING SYSTEM

☐ **DECKING**
  ☐ Inspect decking for fastener adhesion
  We will remove and replace up to _____ sheets (☐ as needed) o decking for $_____ per sheet or ☐ remove and replace all decking.
☐ **UNDERLAYMENT**
  We will install _____ (#) felt over the entire roof area.
  We will add an additional layer of _____ in all valleys.
  We will install Ice & Water Leak Proof Shield around chimney, Flashings, and protrusions as needed for $_____
  We will install _____ additional rolls of Ice & Water Leak Proof Shield for $_____ per roll (☐ as needed).
☐ **SHINGLES**
  We will install _____ (yr) ☐ Architectual ☐ 3-Tab _____ (brand) _____ (color) using 6 nails per shingle.
  We will double enclose and seal valleys.
  We will install factory specific starter. Triple seal eaves and rakes.
  We will install matching 3-Tab Ridge or _____ with 4 nails. per shingle and seal.
☐ **FLASHING**
  We will step flash around walls, skylights and chimneys as needed.
  We will keep / replace all _____ (color) metal edging.
☐ **VENTILATION**
  We will cut in / replace ridge vent _____ linear feet for $_____ /ft.
  We will replace _____ (#) wind turbines and/or _____ (#) low profiles to match roof color.
  We will replace _____ 1½" _____ 2" _____ 3" _____ 4" plumbing vents.
  We will paint stacks and vents with matching color paint and seal bases.

### LEGAL INSTRUCTIONS

☐ See Contract Addendum

---

**TERMS:** This is a proposal only and Customer is not obligated unless the Customer's insurer provides an estimate of damage or recovery to the Customer which is acceptable to Smith & Ramirez Restoration LLC. The Customer authorizes Smith & Ramirez Restoration LLC. to pursue the Customer's best interest for the replacement or repair work outlined herein at a price agreeable to the Insurer and to Smith & Ramirez Restoration LLC. with NO ADDITIONAL COST to the Customer except for (i) the deductible, (ii) in the case of an ACV policy, any applicable non-recoverable deprecation, and (iii) any additional work requested by the Customer not covered by insurance. Upon acceptance by Smith & Ramirez Restoration LLC. of the insurer's estimate this proposal shall be binding and Smith & Ramirez Restoration LLC. shall receive all the insurance proceeds for the work completed.

Customer expressly authorizes his/their insurance company and his/their mortgage company to provide any appropriate information to Smith & Ramirez Restoration LLC. and authorizes Smith & Ramirez Restoration LLC. to communicate directly with such insurer and mortgagee for the purpose of securing payment or applying for supplemental claims as necessary for work completed.

☒ **WILL DO JOB FOR PRICE DESIGNATED BY YOUR INSURANCE COMPANY** (See Above) OR Contract Amount $ as per Insurance

**ACCEPTANCE:** Customer certifies having read and accepted the work specifications, prices and terms and conditions above on the reverse hereof. See

X _____ 6-9-2014    X _____
Customer's Signature   Date    Customer's Signature    Date

_____    _____    _____    _____
Insurance Company    Policy #    Claim #    Insurance Contact Phone Number

_____    Loan Number    _____
Mortgage Company    6/9/14    Mortgage Company
Project Manager    Date

Generated by CamScanner

**EXHIBIT 3**

## TERMS AND CONDITIONS

1. **GUARANTEE OF SATISFACTION:** We guarantee that the roofing system we install will perform as we have stated. If you are not 100% satisfied with your roofing system, we will remove it and 100% of your investment.

2. **CANCELLATION OF CONTRACT:** Customer shall have the right of rescission of this contract until midnight of the third day after the date hereof which right shall be exercised by written notice to Contract of Customer's election to rescind. This Contract is subject to approval by contractor's management, which reserves the right to reject a contract for any reason. Any completed contract, signed by Customer and Contractor's representative shall be considered a proposal only until the same shall have been accepted and approved by management. After acceptance by Contractor's Management and expiration of the Customer's 3-day right of rescission period, this contract shall be cancellable by Customer only upon payment of a restocking fee equal to 20% of the total cost of the job, whether or not delivered to the premises. If Contractor shall, at the behest or with the consent of Customer, have been active or instrumental in securing an insurance appraisal acceptable to the Customer for the work to be performed, then any requested cancellation of this agreement shall be accompanied by Customer's payment to contractor of not less than 10% of such insurance appraisal as compensation for Contractor's time and expertise in the negotiation and securing thereof, and this contract would not be entered into by Contractor without this explicit agreement on the part of Customer. No request or demand by Customer for cancellation of this contract shall be effective unless sent certified mail, with return receipt requested, and directed to the address of Contractor on the reverse hereof and enclosing payment, by a certified check, of the amounts described above. Once work on Customer's roof shall have commenced and any materials have been installed in the structure, this contract shall not be cancellable by Customer except upon payment of the full amount provided for herein.

3. **ENTIRE AGREEMENT:** Any representations, understandings or other communications not written in this contract are agreed to be immaterial, are not binding upon either party, and do not survive the execution of this contract. Any changes or additions to this contract must be in writing in the contract addendum form and signed by both parties.

4. **OTHER REPAIRS NECESSARY:** Replacement of deteriorated decking, fascia boards, roof jacks, ventilators, flashing, metal edging or other materials, unless stated in the contract, is not included and will be charges extra on a time and material basis over and above the original contract price.

5. **DAMAGES TO UTILITY LINES:** Contractor is not responsible for any damaged gas or other utility lines or pipes that are improperly placed within 3 inches of the roof decking or otherwise in violation of the Building Code, and Customer agrees that he shall not seek to hold Contractor liable for any damages, injuries or losses occasioned therefrom.

6. **CONTRACTOR'S RIGHT TO SUPPLEMENT:** Without regard to whether the work herein provided is priced at the "insurance allowance" or a "contract amount" Contractor reserves the right to file the Customer's insurer for a supplemental claim if necessary based upon any increase in cost of materials or labor between the time the contract was entered into and the time such labor and materials were supplied or installed, and any such supplemental amount allowed by the insurance company shall be paid over to Contractor the same as if such amount were included in the "insurance allowance" or "contract amount" from the beginning. Under no circumstances shall Customer be liable for such amounts unless approved and paid for by the insurance company.

7. **DELAYS:** Customer accepts that there may be delays caused by weather or other acts of nature or government, labor disputes, material shortages, or insurance approval which may cause inconvenience to customer, and agrees that Contractor shall not be liable for any loss or damage resulting from any such delays.

8. **ACCESS TO PREMISES:** Customer agrees to grant full access to the property for staging and execution of work including, but not limited to water and electricity.

9. **CONTRACTOR'S NON-LIABILITY:** Contractor is not liable for any situations arising from improper preparation on behalf of the Customer.

10. **CONTRACTOR'S WARRANTY:** Contractor's warranty provided herein is contingent upon customer full payment of the invoice for within ninety (90) days of completion. The warranty begins to run from the date of completion of the work hereunder but is not in effect until contract has been paid in full.

11. **MANNER OF MAKING PAYMENTS:** For the Customer's protection, all payments to the Contractor, if by check, shall payable to Smith & Ramirez Restoration LLC. And under no circumstances shall Customer make any check payable to an individual, to another contractor, sub-contractor, or any other firm name. Cash payments are strongly discouraged, and if customer desires to make a payment on this contract in cash such payment shall only be made to Contractor's office shown on the reverse, to the office Manager thereof, and with receipt demanded and received for such cash payment. Customer shall remain liable to Contractor do any sums or amounts paid on this contract in violation of this provision.

12. **CUSTOMER'S PAYMENT OF NOTICE:** The full amount of the invoice for work described under this contract shall be due upon receipt by Customers of insurance proceeds, but no event later than 30 days after completion of such work by Contractor. Any coupons, discounts, allowances or concessions of any nature whatsoever promised or provided to Customer, whether or not shown on this Contract, shall expire 30 days after the date of Contractor's invoice shall not have then been paid in full by Customer.

13. **SETTLEMENTS OF DISPUTES:** In the event any dispute shall arise between the parties to this contract, Customer and Contractor agree that final and binding Arbitration under the rules of the American Arbitration Association shall be sole and exclusive means of resolving such dispute with all expenses of such arbitration divided equally between Customer and Contractor. A single Arbitrator shall be selected by agreement between parties from among a list of qualified Arbitrators provided by the AAA, and if the parties cannot agree upon a single individual shall ask the AAA to nominate the Arbitrator, which choice shall be final. Nothing in the foregoing shall limit Contractor's right to file a Mechanics or Material's Lien and thereafter to file any necessary action for enforcement and foreclose of such lien if Customer shall fail or refuse to pay Contractor's invoice within 60 days after completion of all work under this Contract.

14. **CASH DISCOUNT:** The "Insurance Allowance" or "Contract Amount" on the reverse hereof, and all other prices stated herein are the "cash discount price" and should be paid with cash or check. If the Customers desire to pay any amount due hereunder with credit card the cash discount will not apply.