FILED
March 07, 2022
CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS
BY: _Michael Trujillo_
DEPUTY

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | |
|---|---|
| ROBERT K. HUDNALL<br>Plaintiff | )<br>)<br>) |
| v. | )<br>)<br>) |
| | ) Case No. 3:22-cv-00036-KC |
| STATE OF TEXAS, CITY OF EL PASO,<br>TEXAS, JUDGE SERGIO ENRIQUEZ<br>ALEJANDRO C. RAMIREZ, TYRONE SMITH,<br>DBA SMITH AND RAMIREZ RESTORATION<br>LLC, GUY BLUFF, AMERICAN ARBITRTION<br>ASSOCIATION AND EVANSTON INSURANCE<br>COMPANY<br>Defendants | )<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## SECOND MOTION FOR DECLARATORY JUDGMENT

Comes now the Plaintiff in the above styled action and makes this, his Second Motion for a Declaratory Judgment, showing this court as follows:

1. On February 28, 2022, Plaintiff did file a Motion for Declaratory Judgment under the Provisions of Federal Rules of Civil Procedure, Rule 57.

2. A declaratory judgment is appropriate when it will terminate the controversy giving rise to the proceeding, in this case the matter revolves around the suitability of a roof installed by Defendant roofers on the home of Plaintiff. The Defendant roofers did not do a proper job and all the other Defendants have attempted to aid them at Plaintiff's expense.

3. The elements of a Declaratory Judgment are as follows:

    - Disputes to be definite and concrete,

    - Touching on the legal relation of the parties having adverse legal interests,

    - Real and substantial

    - Admit of specific relief through a decree of a conclusive nature.

1

4. The Defendants, Alejandro C. Ramirez and Tyrone Smith, dba as Smith and Ramirez Restoration LLC (hereinafter Roofers) contracted to install a roof for Plaintiff. The installation was not proper and failed to meet code, but the Roofers were still paid 125% of their invoice. They wanted still more.

5. Defendant Roofers' own surety company, Old Republic Surety Company sued Plaintiff in County Court of Law #3, a court of competent jurisdiction asking to forfeit the surety bond as the work did not meet code. Also included was an allegation that the inspection conducted by the city of El Paso was performed from the desk of the inspector and was not a physical inspection.

6. Defendant Roofers filed an intervenor, and their attorney took part in the hearing. He never denied the roof failed to meet code and did not deny that the inspection was done from the inspector's desktop and was not a physical inspection.

7. The County Court of Law #3 issued a final order that the bond be forfeited. At that point, the contract between Plaintiff and Defendant roofers was void as they were no longer covered by a surety bond as required by City ordinance.

8. Additionally, the City of El Paso's Department of Planning and Inspections conducted an actual physical inspection and found that the roof did not meet code. A later letter (submitted by Plaintiff in his original petition,) superseded the desktop pass issued at the behest of the Defendant Roofers.

9. Under the legal principles of Res Judicata and Collateral Estoppel, the decision of the County Court of Law #3 answered for all time that the roof in question failed to meet code. It should also be noted that in federal court, under the concept of res judicata, a final judgment on the merits bars further claims by parties or their privies based on the same

2

cause of action[1]. In fact, res judicata prevents litigation of all grounds for, or defenses to, recovery that were previously available to the parties, regardless of whether they were asserted or determined in the prior proceeding[2].

10. In spite of the final decision of the County Court of Law #3 and the letters issued by the City of El Paso's Department of Planning and Inspection confirming that the roofer failed to meet code (all of which were included in Plaintiff's original petition) and the document attached as Exhibit A issued by a firm that does roof inspections for a federal agency Defendant Roofers and their numerous attorneys have continued to claim that the roof did passed and have kept litigation going for almost 8 years in order to be unjustly enriched at Plaintiff's expense.

11. A Declaratory judgment that the roof did in fact fail to meet code would terminate the controversy as it would end the continual attempts by Defendant Roofers to be unjustly enriched at Plaintiff's expense.

## OTHER SUPPORT FOR A DECLARATORY JUDGMENT

12. In a previous case filed by this Plaintiff against Defendant roofers and others, this Court took a magnifying glass to the RICO claim that Plaintiff filed to find that it did not apply to the Defendants that were "real" attorneys and a default by the Defendant roofers "did not hurt anything", so the Federal Rules of Civil Procedure regarding default were waived[3].

---

[1] **Brown v. Felsen**, 99 S.Ct. 2205, 2209 (1979)

[2] It should also be noted that the elements of federal claim preclusion are (there must have been a final judgment on the merits, which there was (2) the decision was rendered by a court of competent jurisdiction – which it was (3) the prior action must have involved the same parties or their privies – which was the case; and (4) the prior action must have involved the same claim – which is the case. Therefore, Plaintiff is entitled for the court to enforce red judicata or claim preclusion which renders the decision of Defendant Guy Bluff and the AAA that Defendant roofers should recover a judgment under their arbitration claim invalid as the claim brought by the Defendant Roofers at arbitration was that the roof passed inspection and was successfully installed.

[3] Since the Federal Rules of Civil Procedure were in fact designed and promulgated to govern civil proceedings in the U.S District Courts, to waive them to favor a Defendant, or a plaintiff for that matter is a violation of Plaintiff's right to due process of law and in effect denies him a meaningful opportunity to plead his case in court.

It should be noted that this strict review of Plaintiff's claim violated the holding of the U.S. Supreme Court in **Haines v. Kerner**[4] which very clearly stated that allegations made by a pro se litigant are to be held to less stringent standard than formal pleadings drafted by lawyers. It was also held that a refusal to liberally construe the pleadings of a Pro Se Litigant as required under **Haines v. Kerner** is tantamount to a withdrawal of the meaningful opportunity to access the court.

13. Based upon the evidence that Plaintiff has submitted, there is no support for Defendant Roofer's premise that the roof passed inspection[5] – therefore, Plaintiff is entitled to a declaratory judgment that the roof failed to pass inspection and failed to meet code.

14. Plaintiff would also show that under the provisions of Federal Rules of Evidence Rule 201, the court must take judicial notice of an adjudicative fact if a party requests it, and the court is supplied with the necessary information. Plaintiff would show that he has supplied the Court with a copy of 2015DCV3677, a case brought against this Plaintiff by the Defendant roofers own surety company claiming that the roof failed to meet code and asking that the surety bond be forfeited to the Court. A final decision was issued by a court of competent jurisdiction finding that the roof in question failed to meet code.

15. To date this Court has refused to enter a declaratory judgment which would harm the case of the "real attorneys" or allow any type of hearing, opting to spread a web of protection over all defendants protected by "real" attorneys at Plaintiff's expense. This although Plaintiff has a constitutionally protected interest in a meaningful opportunity to be heard

---

[4] **Haines v. Kerner**, 404 U.S. 519 (1972)
[5] For purposes of res judicata, if the latter case arises out of the same nucleus of operative facts or is based upon the same factual predicate as the former action, then the two cases are really the same claim or cause of action. **Ragsdale v. Rubbermaid, Inc.**, 193 F.3d 1235 (11th Cir. 1999)

which is a core due process value. His appeal to the Court of Appeals of the RICO case which was perfected in December has also been stalled due to the actions of the Court.

16. As a pro se litigant, Plaintiff is entitled to at least a minimum of due process rights to which all other litigants are entitled, even those represented by "real" attorneys. The most important of these rights is the opportunity to be heard, granted at a meaningful time and in a meaningful manner[6]. Other minimum due process protections include the requirement of adequate notice, the right to a neutral and detached decision maker, the right to hire counsel, the right to present evidence and confront and cross examine witness and the right to not be subjected to the jurisdiction or laws of a forum with which one has no significant contacts.

17. Plaintiff would also show that he has filed numerous motions that the Court has seen fit to ignore, to include one based on Judgment on the Pleadings wherein he showed that there is no legal basis for their contention that the roof passed inspection and met local code. He has also asked for numerous hearings and been ignored without comment.

18. Plaintiff would show that he has a protected interesting in a meaningful opportunity to be heard. It is Plaintiff's contention that he is being ignored by the court since he is representing himself pro se while "real" attorneys friendly to the court are representing the defendants. Ignoring pleadings and motions filed by Plaintiff is a denial of his right to meaningful access to the court which is the basis of the protection afforded to him as a disabled veteran under the Americans with Disabilities Act (ADA) and the Americans with Disabilities Act Amendment Act (ADAAA).

---

[6] **Logan v. Zimmerman Brush Co.**, 455 U.S. 422, 437 (1982) See also **Little v. Streater**, 452 U.S. 1, 5-6 (1981)

19. Plaintiff would show that he is entitled to represent himself under (1) The Judiciary Act of 1789 (2) 28 U.S.C. 1654 and (3) the 6th Amendment to the U.S. Constitution. Plaintiff would also show that before this court even the Federal Rules of Civil Procedure have not been properly applied when it would benefit Plaintiff and make "real" attorneys look bad.

20. To make it even more egregious, after Judge Frank Montalvo recused himself for bias, the Court has not even done Plaintiff the courtesy of notifying him of the current judge. This is clear sign that the Court does not care about Plaintiff's rights to due process of law and is a blatant violation of those rights.

THEREFORE, based on the foregoing, Plaintiff does ask this Court to issue a Declaratory Judgment that the roof in question failed meet local code as found by the County Court of Law #3, a Court of Competent Jurisdiction, and the City of El Paso's Department of Planning and Inspection and the Independent Inspection firm's report attached or give him leave to appeal the issue to the 5th Circuit based on the continuing violation of his right to due process of law and denial of meaningful access to the Court. If the Court does not want to give Plaintiff his due process rights as afforded under the law as outlined above, he asks that he be allowed to take the issue of the Court ignoring his rights to the Court of Appeals immediately.

Respectfully submitted,

*/s/ Robert K. Hudnall*

ROBERT K. HUDNALL
915-478-1114

**CERIFICATE OF SERVICE**

**CERTIFICATE OF SERVICE**

I, Robert K. Hudnall, do hereby certify that a true and correct copy of the above Second Motion for Declaratory Judgment was served on each defendant through their attorneys via email on this 7th day of March 2022. The served attorneys are:

Defendants State of Texas and Judge Sergio Enriquez
Scot M. Graydon
Scot.Graydon@oag.texas.gov

Defendants Guy Bluff and AAA
Raymond D. Martinez
raymond@martinezlawyers.com

Defendant Evanston Insurance Company
Stephen Melendi
stephenm@tbmmlaw.com

Defendant Alejandro C. Ramirez
James A. Martinez
martinez@jmeplaw.com

Defendant Tyrone Smith
James A. Martinez
martinez@jmeplaw.com

Defendant City of El Paso
Karla M. Nieman, City Attorney c/o Abbie Mullin Assistant City Attorney
mullin@elpasotexas.gov

*/s/ Robert K. Hudnall*
**ROBERT K. HUDNALL**

UPDATED
2-28-22

Report Identification _____
Timothy A. Sank, 915-346-9553, timsproinspection@sbcglobal.net
I=Inspected    NI=Not Inspected    NP=Not Present    D=Deficient

| I | NI | NP | D |
|---|----|----|---|

# PROPERTY INSPECTION REPORT

___Robert Hudnall___  ___2/14/22___
Name of Client                    Date of Inspection

__297 Puesta Del Sol, El Paso TX 79912__
Address of Inspected Property

TIMOTHY ALAN SANK                 7144
Name of Inspector                 TREC License #

## PURPOSE OF INSPECTION
A real estate inspection is a visual survey of a structure and a basic performance evaluation of the systems and components of a building. It provides information regarding the general condition of a residence at the time the inspection was conducted. *It is important* that you carefully read ALL of this information. Ask the inspector to clarify any items or comments that are unclear.

## RESPONSIBILITY OF THE INSPECTOR
This inspection is governed by the Texas Real Estate Commission (TREC) Standards of Practice (SOPs), which dictates the minim um requirements for a real estate inspection.

The inspector IS required to:
- use this Property Inspection Report form for the inspection;
- inspect only those components and conditions that are present, visible, and accessible at the time of the inspection;
- indicate whether each item was inspected, not inspected, or not present;
- indicate an item as Deficient (D) if a condition exists that adversely and materially affects the performance of a system or component **OR** constitutes a hazard to life, limb or property as specified by the SOPs; and
- explain the inspector's findings in the corresponding section in the body of the report form.

The inspector IS NOT required to:
- identify all potential hazards;
- turn on decommissioned equipment, systems, utilities, or apply an open flame or light a pilot to operate any appliance;
- climb over obstacles, move furnishings or stored items;
- prioritize or emphasize the importance of one deficiency over another;
- provide follow-up services to verify that proper repairs have been made; or
- inspect system or component listed under the optional section of the SOPs (22 TAC 535.233).

## RESPONSIBILTY OF THE CLIENT
While items identified as Deficient (D) in an inspection report DO NOT obligate any party to make repairs or take other actions, in the event that any further evaluations are needed, it is the responsibility of the client to obtain further evaluations and/or cost estimates from qualified service professionals regarding any items reported as Deficient (D). It is recommended that any further evaluations and/or cost estimates take place prior to the expiration of any contractual time limitations, such as option periods.

**Please Note:** Evaluations performed by service professionals in response to items reported as Deficient (D) on the report may lead to the discovery of additional deficiencies that were not present, visible, or accessible at the time of the inspection. Any repairs made after the date of the inspection may render information contained in this report obsolete or invalid.

## REPORT LIMITATIONS
This report is provided for the benefit of the named client and is based on observations made by the named inspector on the date the inspection was performed (indicated above).

ONLY those items specifically noted as being inspected on the report were inspected.

REI 7-6 (8/9/21)                1 | P a g e
www.trec.texas.gov       Promulgated by the Texas Real Estate Commission  · (512) 936-3000 ·

eport Identification _____

imothy A. Sank, 915-346-9553, timsproinspection@sbcglobal.net

=Inspected       NI=Not Inspected       NP=Not Present       D=Deficient

| NI | NP | D |
|----|----|---|

This inspection IS NOT:
- a technically exhaustive inspection of the structure, its systems, or its components and may not reveal all deficiencies;
- an inspection to verify compliance with any building codes;
- an inspection to verify compliance with manufacturer's installation instructions for any system or component

and

DOES NOT imply insurability or warrantability of the structure or its Components.

### NOTICE CONCERNING HAZARDOUS CONDITIONS, DEFICIENCIES, AND CONTRACTUAL AGREEMENTS

Conditions may be present in your home that did not violate building codes or common practices in effect when the home was constructed but are considered hazardous by today's standards. Such conditions that were part of the home prior to the adoption of any current codes prohibiting them may not be required to be updated to meet current code requirements. However, if it can be reasonably determined that they are present at the time of the inspection, the potential for injury or property loss from these conditions is significant enough to require inspectors to report them as Deficient (D). Examples of such hazardous conditions include:

- malfunctioning, improperly installed, or missing ground fault circuit protection (GFCI) devices and arc-fault (AFCI) devices;
- ordinary glass in locations where modern construction techniques call for safety glass;
- malfunctioning or lack of fire safety features such as smoke alarms, fire-rated doors in certain locations, and functional emergency escape and rescue openings in bedrooms;
- malfunctioning carbon monoxide alarms;
- excessive spacing between balusters on stairways and porches;
- improperly installed appliances;
- improperly installed or defective safety devices;
- lack of electrical bonding and grounding; and
- lack of bonding on gas piping, including corrugated stainless steel tubing (CSST).

Please Note: items identified as Deficient (D) in an inspection report DO NOT obligate any party to make repairs or take other actions. The decision to correct a hazard or any deficiency identified in an inspection report is left up to the parties to the contract for the sale or purchase of the home.

This property inspection report may include an inspection agreement (contract), addenda, and other information related to property conditions.

INFORMATION INCLUDED UNDER "ADDITIONAL INFORMATION PROVIDED BY INSPECTOR", OR PROVIDED AS AN ATTACHMENT WITH THE STANDARD FORM, IS NOT REQUIRED BY THE COMMISSION AND MAY CONTAIN CONTRACTUAL TERMS BETWEEN THE INSPECTOR AND YOU, AS THE CLIENT. THE COMMISSION DOES NOT REGULATE CONTRACTUAL TERMS BETWEEN PARTIES. IF YOU DO NOT UNDERSTAND THE EFFECT OF ANY CONTRACTUAL TERM CONTAINED IN THIS SECTION OR ANY ATTACHMENTS, CONSULT AN ATTORNEY.

### ADDITIONAL INFORMATION PROVIDED BY INSPECTOR

Start Time of Inspection _9:00____, __x_AM, __PM, End Time _9:57____, __x_AM, ___PM

Temp. ___60_____ Weather ___ Cloudy, _x__ Clear, ___ Raining, ___ Other _____

___ Un-Occupied at the time of Inspection, _x__ Occupied, (when home is occupied no furniture is moved, some areas cannot be seen or inspected)

Charge $_250.00____ Payment Method: Check #__3323, 3324_____, Cash/Cash App____ Yes, ____ No, Card_____, Paid _x__ Yes, ____ No, Zelle _____ PO#_____

No warranty, condition of the house on date of inspection. Claims limited to amount of inspection charge.

2 | P a g e

REI 7-6 (8/9/21)        Promulgated by the Texas Real Estate Commission · (512) 936-3000 ·
www.trec.texas.gov

eport Identification _____
mothy A. Sank, 915-346-9553, timsproinspection@sbcglobal.net

| Inspected | NI=Not Inspected | NP=Not Present | D=Deficient |
| NI | NP | D |

# I. STRUCTURAL SYSTEMS

☐ ☒ ☐ ☐  **A. Foundations**
   Type of Foundation(s): ___ Slab-on–grade, ___ Pier and Beam,
                          ___ Monolithic Slab, ___ Other
   Comments: Functioning as intended.

   Craw space accessible? ___ Yes, ___ No, ___ N/A
   Method used to inspect craw space: _____

☐ ☒ ☐ ☐  **B. Grading & Drainage**
   Comments:

☐ ☐ ☐ ☒  **C. Roof Covering Materials**
   Types of Roof Covering: ___ 3-Tab/__ 20 year or ___ 30 year, ___ 90#
   Rolled, ___ Wood/Cedar, ___ Tile, ___ Slate, ___ Metal, ___ T-Loc, ___
   Built-Up,
   ___ Other___(Plastic Roof Covering)_____
   Viewed From: _x_ on Roof, ___ Ground, ___ Other_____
   Comments: 1. Damage and/or gaps around the edge flashing on the walls is allowing water into the wall system.

Report Identification _ _ ____
Timothy A. Sank, 915-346-9553, timsproinspection@sbcglobal.net

| I=Inspected | NI=Not Inspected | NP=Not Present | D=Deficient |

| I | NI | NP | D |



2. Old roofing was not removed before new roofing material was installed.



Report Identification ___ ___
Timothy A. Sank, 915-346-9553, timsproinspection@sbcglobal.net
=Inspected      NI=Not Inspected      NP=Not Present    D=Deficient
   NI    NP    D

3. Standard roofing instillation was not followed:
   A. Roofing material should be installed starting at the low end of the roof. Then, each additional layer is installed higher on the roof and will then drain on to the lower material.
   B. The roofing material should run accost the (perpendicular) to the roof slope.

   Both of these standard was not used, the roofing material was started at the high end and layered down the slope so that water could run under the lower layer. Also, on some of the slopes the material was installed parallel to the slope of the roof, allowing water under the edges to seep into the house.



REI 7-6 (8/9/21)
www.trec.texas.gov

5 | P a g e
Promulgated by the Texas Real Estate Commission · (512) 936-3000 ·

Report Identification _____
Timothy A. Sank, 915-346-9553, timsproinspection@sbcglobal.net
I=Inspected     NI=Not Inspected     NP=Not Present     D=Deficient

| I | NI | NP | D |
|---|----|----|---|

3. Vent pipes and Air vents were covered over, trapping moisture in the house.



4. Very poor workmanship, sloppy.
Unknow why previous roof inspection did not identify these instillation flaws.



Timothy A. Sank, 915-346-9553, timsproinspection@sbcglobal.net

| I=Inspected | NI=Not Inspected | NP=Not Present | D=Deficient |
|---|---|---|---|
| I | NI | NP | D |

Evidence of Previous Repairs _x_ Yes, ___ No, ___ N/A

| | ☒ | ☐ | ☐ | **D. Roof Structure and Attic** |

Viewed From: ____ On Roof, ____ Inside Attic, ____ No attic available
Approximate Average Depth of Insulation: _ ____ inches.
Approximate Average Thickness of Vertical Insulation: _____ inches, ___ N/A
Comments:

Proper Ventilation of roof and attic ___ Yes, ___ No

REI 7-6 (8/9/21)
www.trec.texas.gov
7 | P a g e
Promulgated by the Texas Real Estate Commission · (512) 936-3000

Report Identification __ __ __
Timothy A. Sank, 915-346-9553, timsproinspection@sbcglobal.net
I=Inspected     NI=Not Inspected     NP=Not Present     D=Deficient

| I | NI | NP | D | |
|---|---|---|---|---|
| ☐ | ☒ | ☐ | ☐ | E. Walls (Interior and Exterior)<br>Comments: |
| ☐ | ☒ | ☐ | ☐ | F. Ceilings and Floors<br>Comments: |
| ☐ | ☒ | ☐ | ☐ | G. Doors (Interior and Exterior)<br>Comments: |
| ☐ | ☒ | ☐ | ☐ | H. Windows<br>Comments:<br>Missing or Damaged Screens ___ Yes, ___ No<br>Functional Emergency Openings in Bedrooms ___ Yes, ___ No |
| ☐ | ☒ | ☐ | ☐ | I. Stairways (Interior and Exterior)<br>Comments: |
| ☐ | ☒ | ☐ | ☐ | J. Fireplace/Chimney<br>Comments:<br><br>Gas Log Only ___ Yes, ___ No, ___ N/A |
| ☐ | ☒ | ☐ | ☐ | K. Porches, Balconies, Decks and Carports<br>Comments: |
| ☐ | ☒ | ☐ | ☐ | L. Other _____<br>Comments: |

REI 7-6 (8/9/21)
www.trec.texas.gov

8 | P a g e
Promulgated by the Texas Real Estate Commission · (512) 936-3000

Report Identification __ __ __
Timothy A. Sank, 915-346-9553, timsproinspection@sbcglobal.net
=Inspected    NI=Not Inspected    NP=Not Present    D=Deficient

| I | NI | NP | D |
|---|----|----|---|

## II. ELECTRICAL SYSTEMS

☐ ☒ ☐ ☐  **A. Service Entrance and Panels**
Comments:

    AFCI present: ___ Yes, ___ No (Arc Fault Circuit Interrupter, used for fire protection)
    Service From: ___ Overhead, ___ Underground
    Visible wiring type:    Service: ___ Copper, ___ Aluminum
                                Feeders: ___ Copper, ___ Aluminum
    Appropriate connections? ___ Yes, ___ No

☐ ☒ ☐ ☐  **B. Branch Circuits, Connected Devices and Fixtures**
Type of Wiring: ___ Copper, ___ Aluminum, ___ Other
Comments:

    GFCI Lacking in: ___ Bathrooms, ___ Kitchen, ___ Garage, ___ Outside,
    ___ Basement/Craw Space, ___ Laundry/Utility, ___ Wet Bar. (Ground Fault Circuit Interrupter, for shock protection)

Smoke Alarms:
    Working, ___ Yes, ___ No
    Present in All Bedrooms, ___ Yes, ___ No
    Present outside Bedrooms, ___ Yes, ___ No
    Present on other floors, ___ Yes, ___ No, ___ N/A

☐ ☒ ☐ ☐  **C. Other** _____
Comments:

REI 7-6 (8/9/21)
www.trec.texas.gov
9 | P a g e
Promulgated by the Texas Real Estate Commission · (512) 936-3000

Identification __ __ __
A. Sank, 915-346-9553, timsproinspection@sbcglobal.net
NI=Not Inspected    NP=Not Present    D=Deficient
NP   D

## III. HEATING, VENTILATION AND AIR CONDITIONING SYSTEMS

☒ ☐ ☐   **A. Heating Equipment**

Type of System: ___ Forced air, ___ Wall Units, ___ Base board, ___ other

Energy Source: ___ natural gas, ___ Electric, ___ other

Comments:

___ There is rust inside the heat exchange, have unit checked by an HVAC company for CO leaks.
___ The unit was not on at the time of inspection could not check operation.

☐ ☒ ☐ ☐   **B. Cooling Equipment:**

Type of System: ___ Evaporative Cooler,
___ One Speed, ___ Two Speeds
___ Copper, ___ Plastic (Water Line)
___ Refrigerated Air
___ Other

Comments:

___ The unit was not on at the time of inspection could not check operation.
___ Winterized

☐ ☒ ☐ ☐   **C. Duct System, Chases, and Vents**
Comments:

☐ ☒ ☐ ☐   **D. Other** _____
Comments:

10 | Page
Promulgated by the Texas Real Estate Commission  · (512) 936-3000
REI 7-6 (8/9/21)
www.trec.texas.gov

915-346-9553, timsproinspection@sbcglobal.net
NI=Not Inspected    NP=Not Present    D=Deficient

## IV. PLUMBING SYSTEM

☒ ☐ ☐    **A. Plumbing Supply, Distribution System and Fixtures**
Location of water meter: ___ Street, ___ Front of House, ___ Back of House,
___ Side of House, ___ Allie, ___ Other

Location of main water supply valve: ___ Water Meter, ___ In House, ___ Garage
Static water pressure reading: _____ PSI
___ Less Than 40, ___ Greater Than 80
Type of Supply piping material: ___ Copper, ___ CPVC, ___ Plastic, ___ Other
Comments:

☐ ☒ ☐ ☐    **B. Drains, Wastes, Vents**
Type of Drain piping Material: ___ PVC, ___ Copper, ___ Metal, ___ Other
Comments:

☐ ☒ ☐ ☐    **C. Water Heating Equipment**
Energy Source: ___ Natural Gas, ___ LP Gas, ___ Electric, ___ Other
Capacity: ___ 20, ___ 30, ___ 40, ___ 50, ___ Other (Gallons)
Comments:

T & P Valve working ___ Yes, ___ No (Temperature and Pressure Relief Valve)
___ Gas shut off type (Watts 210)

☐ ☒ ☐ ☐    **D. Hydro-Massage Therapy Equipment**
Comments:

☐ ☒ ☐ ☐    **E. Gas Distribution Systems and Gas Appliances**
Location of gas meter: ___ Front, ___ Right side, ___ Left side, ___ Back yard, ___ Other _____
Type of gas distribution piping material: ___ Black Pipe, ___ Flex/ CST, ___ Other
Comments:

☐ ☒ ☐ ☐    **F. Other** _____
Comments:

11 | Page
REI 7-6 (8/9/21)    Promulgated by the Texas Real Estate Commission · (512) 936-3000
www.trec.texas.gov

...tion ...-346-9553, timsproinspection@sbcglobal.net
...ank, 915  NP=Not Present   D=Deficient
NI=Not Inspected

NP  D

## V. APPLIANCES

☐ ☒ ☐ ☐ **A. Dishwashers**
Comments:

☐ ☒ ☐ ☐ **B. Food Waste Disposers**
Comments:

☐ ☒ ☐ ☐ **C. Range Hood and Exhaust Systems**
Comments:

___ Built into Microwave Oven

☐ ☒ ☐ ☐ **D. Ranges, Cooktops, and Ovens**
___ Natural Gas, ___ LP Gas, ___ Electric
___ Tip Protection ___ Yes, ___ No, ___ N/A
350° test of Oven = ___, Pass ___, Fail ___
Comments:

☐ ☒ ☐ ☐ **E. Microwave Oven**
Comments:

☐ ☒ ☐ ☐ **F. Mechanical Exhaust Vents and Bathroom Heaters**
Comments:

___ Fan present, Operating ___ Yes, ___ No
___ Heater present, Operating ___ Yes, ___ No

12 | Page
REI 7-6 (8/9/21)   Promulgated by the Texas Real Estate Commission · (512) 936-3000 ·
www.trec.texas.gov

timsproinspection@sbcglobal.net
915-346-9553,
NI=Not Inspected    NP=Not Present    D=Deficient

☐ ☒ ☐ ☐  **G. Garage Door Operator(s)**
Comments:

___ Manual Operation OK
___ Power Operation OK
___ Auto Reverse OK

☐ ☒ ☐ ☐  **H. Dryer Exhaust Systems**
Comments:

___ Through Wall, ___ Through Roof (Clean vent line out for safety)

☐ ☒ ☐ ☐  **I. Other:**    Doorbell and Chimes
Comments:

☐ ☒ ☐ ☐  **J. Other** _____
Comments:

REI 7-6 (8/9/21)
www.trec.texas.gov
13 | Page
Promulgated by the Texas Real Estate Commission · (512) 936-3000