**UNITED STATES DISTRICT COURT FOR THE**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| ROBERT K. HUDNALL, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. 3:22-cv-00036-KC |
| | § | |
| STATE OF TEXAS, CITY OF EL PASO, | § | |
| TEXAS, JUDGE SERGIO ENRIQUEZ, | § | |
| ALEJANDRO C. RAMIREZ, TYRONE | § | |
| SMITH, dba as SMITH AND RAMIREZ | § | |
| RESTORATION LLC, GUY BLUFF, THE | § | |
| AMERICAN ARBITRATION | § | |
| ASSOCIATION, AND EVANSTON | § | |
| INSURANCE COMPANY, | § | |
| | § | |
| Defendants. | § | |

---

**DEFENDANTS ALEJANDRO C. RAMIREZ, TYRONE SMITH AND**
**SMITH AND RAMIREZ RESTORATION, LLC'S RESPONSE TO PLAINTIFF'S**
**SECOND MOTION FOR DECLARATORY JUDGMENT**

---

TO THE HONORABLE JUDGE OF SAID COURT:

COME NOW **Alejandro C. Ramirez, Tyrone Smith and Smith and Ramirez Restoration LLC** (hereinafter collectively referred to as the "Defendants") and file this Response to Plaintiff's Second Motion for Declaratory Judgment and would respectfully show the Court as follows:

**I.**
**Introduction**

1.      This lawsuit is the latest iteration in a string of similar lawsuits filed by Plaintiff. *See Hudnall v. Smith & Ramirez Restoration, L.L.C.*, No. 08-17-00293-CV, 2020 WL 401840 (Tex.App.—El Paso, Jan. 24, 2020); *Hudnall v. Smith & Ramirez Restoration, L.L.C.*, No. 08-19-00217-CV, 2019 WL 4668508 (Tex.App.—El Paso, Sept. 25, 2019, no pet.)(mem. op.); *Robert K.*

1

*Hudnall and Sharon Elias Hudnall v. Ty Smith, et al.*, No. EP-21-CV-00106-FM, 2021 WL 3744580 (W.D. Tex. Aug. 10, 2021)(notice of appeal filed).

2.      Plaintiff filed this lawsuit in state court asserting claims under, inter alia, the U.S. Constitution, the Americans with Disabilities Act ("ADA"), and the ADA Amendments Act of 2008 ("ADAAA"). *See* Pl.'s Orig. Pet.

3.      Plaintiff then filed his first Amended Petition on December 20, 2021. Although cited to within the text of the Amended Petition, no exhibits were attached to Plaintiff's Amended Petition. *See* Pl.'s Am. Pet.

4.      Next, Plaintiff filed his Motion for Declaratory Judgment on February 28, 2022 to which Defendants filed their response on March 14, 2022. *See* Doc. 18 and Doc. 31.

5.      Subsequently, Plaintiff filed his Second Motion for Declaratory Judgment on March 7, 2022. *See* Doc. 26.

6.      For the reasons stated below, this Court should deny Plaintiff's Second Motion for Declaratory Judgment.

## II.  LEGAL STANDARD

7.      Under Rule 57, a litigant may bring an action seeking declaratory judgment. An action for a declaratory judgment is "an ordinary civil action." *Int'l Bhd. of Teamsters v. E. Conf. of Teamsters*, 160 F.R.D. 452, 456 (S.D.N.Y. 1995) (*citing* 10A Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure §2768 (1983) ("The incidents of pleading, process, discovery, trial, and judgment are the same.") (internal citations omitted)). Because an action for a declaratory judgment is an ordinary civil action, a party may not make a *motion* for declaratory relief, but rather, the party must bring an *action* for declaratory judgment. *Id.* (internal citations omitted).

2

# III. ARGUMENT

8.     In his motion, Plaintiff seeks relief for a declaratory judgment "[u]nder the Provisions of Federal Rules of Civil Procedure, Rule 57." [ECF No. 18]. Because Plaintiff seeks a declaratory judgment, and because Rule 57 governs an action for a declaratory judgment, Plaintiff must comply with Rule 57's requirements. *Int'l Bhd.*, 160 F.R.D. at 455. Because Plaintiff has made a *motion* seeking declaratory relief, Plaintiff's motion should be denied because such a motion is inconsistent with the Federal Rules. Because Plaintiff's claim for declaratory judgment is a claim for affirmative relief, he bears the burden of proof. Plaintiff is required to present evidence at trial or via a Motion for Summary Judgment to be entitled to that relief. Because he has not presented that evidence via the appropriate procedural vehicle, the Court should deny the motion.

9.     To the extent Plaintiff's Motion for Declaratory Judgment is interpreted as a Motion for Summary Judgment, it should be denied because disputed issues of material fact preclude summary judgment in favor of Plaintiff. Defendants filed a general denial in state court before this matter was removed to this Court. *See* Doc. 1, Ex. 1, Defendants Alejandro C. Ramirez, Tyrone Smith and Smith and Ramirez Restoration LLC's Original Answer. Pursuant to Fed. R. Civ. P. 81(c)(2), repleading is unnecessary unless the court orders it. Here, this Court has not ordered, nor is there any standing order requiring, Defendants to replead upon removal of a state court action to this Court. As a result, Defendants' general denial is Defendants' live pleading. *See* Doc. 1, Ex. 1, Defendants Alejandro C. Ramirez, Tyrone Smith and Smith and Ramirez Restoration LLC's Original Answer. It is well established law that a general denial puts the plaintiff on proof of every fact essential to his case and issue is joined on all material facts asserted by plaintiff, except those which are required to be denied under oath. *Shell Chem. Co v. Lamb*, 493 S.W.2d 742, 744 (Tex.1973). Stated differently, Defendants have denied each and every claim by Plaintiff and the burden is now on Plaintiff to prove the same. As a result, every single issue of material fact asserted by Plaintiff is currently in dispute. Therefore, Plaintiff's Motion should be denied. Alternatively,

3

if the Court does not accept Defendants' General Denial, Defendants would ask the Court grant Defendants time to file an Answer in this Court that complies with the Federal Rules of Civil Procedure before ruling on Plaintiff's Motion.

10.     In addition, the very facts as stated by Plaintiff in his Original Petition and Amended Petition are contradictory and create fact issues in and of themselves. *See* Pl.'s Orig. Pet. and Pl.'s Am. Pet. For example, Plaintiff claims that Defendants did not properly repair his roof and he suffered damages as a result. *Id.* However, Plaintiff explicitly states in both petitions that the roof passed inspection, albeit by an alleged conspiracy. *Id.* at ¶ 88. Furthermore, the evidence cited by Plaintiff in his Original Petition creates fact issues sufficient to deny Plaintiff's Motion. For example, Exhibit D to Plaintiff's Original Petition explicitly states, "October 30, 2014: An inspection was conducted by Inspector Wells. The inspection was passed." Ex. D to Pl.'s Orig. Pet. As a result, the very evidence cited by Plaintiff in his Original Petition creates fact issues. As a result, Plaintiff's Motion for Judgment on the Pleadings should be denied.

11.     Pleading in the alternative, Defendants would show Plaintiff's claims are barred by *res judicata* and collateral estoppel.

12.     Every single cause of action brought by Plaintiff in this lawsuit directly arises from Plaintiff's breach of contract claim which he brought against Defendants in the Arbitration Proceeding. *See* Plaintiff's Original Petition and Ex. K. As more thoroughly outlined above, this cause of action was already decided on the merits in favor of Defendants. *See* Ex. O. Therefore, the evidence has shown that there is no probability that Plaintiff will prevail on these same claims in the instant lawsuit. *See* Ex. O.

### *Plaintiff is attempting to relitigate issues that were determined adversely against him.*

13.     Each of the issues alleged by Plaintiff arise from the contract entered into by Plaintiff and S&R back in 2015. These issues were actually litigated in the Arbitration proceeding and decided in favor of Defendants. *See* Ex. O. Plaintiffs latest lawsuit, and the myriad of cause of action

4

asserted therein, is merely an attempt to re-frame and re-litigate those same issues that have already been decided against him. *Id.*

14.     Defendants Alejandro C. Ramirez and Tyrone Smith collectively own Smith and Ramirez Restoration LLC (sometimes referred to collectively as the "Defendants"). On June 9, 2014 Plaintiff Robert K. Hudnall and his spouse, Sharon Hudnall, entered into an agreement with Defendant Smith and Ramirez Restoration LLC ("S&R") for the repair of Plaintiff's home (the "Contract"). *See* Ex. A. After S&R completed the repairs to Plaintiff's home, Plaintiff refused to pay S&R in accordance with the Contract. As a result, S&R filed suit against Plaintiff on April 3, 2015 in El Paso County, Texas to recover the amount owed to it by Plaintiff in a case styled 2015DCV1113 (the "Original Lawsuit") before the Honorable Judge Sergio Enriquez, who is also a named Defendant herein. This is the first lawsuit in a long string of related lawsuits spanning from April 3, 2015 to present day. The Original Lawsuit, along with each and every subsequent lawsuit, appeal, and arbitration proceeding directly arises from the above facts.

15.     The second related lawsuit was filed by Old Republic Surety Company ("ORSC") on October 30, 2015, cause number 2015DCV3677 (the "Interpleader Lawsuit") before the Honorable Judge Javier Alvarez. *See* Ex. B. This lawsuit was an interpleader action by ORSC. *Id.* ORSC sought to deposit the amount of S&R's performance bond, $25,000.00, into the registry of the Court. *Id.* The Interpleader Lawsuit was never joined with the Original Lawsuit. As a result, S&R filed a Petition in Intervention in the Interpleader Lawsuit in order to advise Judge Alvarez of the pending Original Lawsuit. *See* Ex. C. On June 17, 2016, Judge Alvarez issued an Order Granting ORSC interpleader, awarded ORSC its attorneys fees, and then **directed the remaining parties (including Plaintiff and S&R, among others) to proceed on the merits of their respective claims and defenses**. *See* Ex. D. Specifically, the Order stated**, "this claim shall continue on the merits between Robert Hudnall, Benjamin Stevens, and Smith and Ramirez Restoration, LLC to determine their respective rights to any remaining funds on deposit in the registry**

**of the Court."** *Id.* The language of the above order clearly indicates that, at that time, there had been no decision on the merits. Subsequently, on February 22, 2018, following more than 20 months of inactivity, Judge Alvarez issued an Order Setting a Dismissal Hearing. No objection was filed by any of the remaining parties and **the Interpleader Case was dismissed without prejudice on March 26, 2018 without there ever being a final decision on the merits.** *See* Ex. E.

16.     Roughly 16 months later, and despite the fact that the Interpleader Lawsuit had already been dismissed, Plaintiff filed an Amended Motion for Declaratory Judgment. *See* Ex. F. Plaintiff's Amended Motion for Declaratory Judgment asked for the full amount of the $25,000.00 performance bond that had been deposited into the registry of the Court by ORSC. *Id.* In response to Plaintiff's Amended motion for Declaratory Judgment, Judge Alvarez conducted a hearing at which time attorney Michael J. Zimprich and Plaintiff appeared. S&R did not appear at this hearing due to lack of notice. *See* Ex. G. The Court's Order Setting Hearing dated July 2, 2019 reflects service only on Kendal B. Reed (attorney for ORSC), Richard Deck (former attorney for Plaintiff), and Michael J. Zimprich (Attorney for Benjamin Stevens). *Id*. Following the hearing, Plaintiff and Michael J. Zimprich prepared a form Amended Order Returning Cash Bond for presentment to the Court wherein Michael J. Zimprich identified himself as the "Attorney for Old Republic," although he was not in fact ORSC's attorney, and then obtained the "approval" of Plaintiff for the Order. *See* Ex. H. Notably absent on this proposed Order was approval by S&R. *Id.* Mr. Zimprich and Plaintiff then presented the Amended Order Returning Cash Bond to Judge Alvarez for signature. Since the case was previously dismissed for want of prosecution, and having been presented with an "approved" form of Order from the "Attorney for the Plaintiff," Judge Alvarez did exactly that which one would expect and entered an order returning the balance of the interpleaded funds to Mr. Zimprich, the purported attorney for ORSC, on July 17, 2019. *Id.*

6

17.    In the meantime, after a lengthy period of inactivity, the Court in the Original Lawsuit granted S&R's Motion to Invoke Preemptive Arbitration Clause. *See* Ex. I. This decision was appealed by Plaintiff to the Fifth Court of Appeals in cases No. 08-19-00217-CV and No. 08-19-00293-CV. The lower court's decision to order the parties to arbitration was upheld on both appeals. *Id.* Eventually, the parties attended an arbitration (the "Arbitration") with the American Arbitration Association, a Defendant herein, with Guy Bluff, also a Defendant herein, serving as Arbitrator. Prior to the final arbitration hearing, Plaintiff asserted an Objection to Arbitration wherein he made the same claims he makes in this lawsuit - that S&R's causes of action are barred by the doctrine of res judicata and collateral estoppel, based on the fact that the Court in the Interpleader Lawsuit returned the cash bond to the alleged attorney for ORSC, Mr. Zimprich. *See* Ex. H. Additionally, Plaintiff also counter-claimed for damages to his home and to his person caused by the alleged defective repairs made by S&R. *See* Ex. J.

18.    Plaintiff's Objection to Arbitration was overruled based on the above cited language in Judge Alvarez's Order ("this claim shall continue on the merits…") and on the simple fact that no trial on the merits ever took place in the Interpleader Lawsuit. *See* Ex. J and E. In response to Plaintiff's Objection to Arbitration, the Arbitrator held that, …"Hudnall's arguments that Judge Alvarez has issued a FINAL ruling on the merits thus precluding this Arbitration is not supported by the evidence." *See* Ex. L. The Arbitrator further stated, "Hudnall attempts to now capitalize on what can be nothing less than fraud upon the court and now seeks to avoid an agreed upon and Court Ordered Arbitration based on the principals of res judicata and collateral estoppel." *Id.* Not coincidentally, all of Plaintiff's claims against S&R in the current lawsuit are the same claims, or arise from the same claims, that Plaintiff made, or could have made, in the Arbitration proceeding - that S&R's claims against him are barred by collateral estoppel and res judicata based upon the court's decision to return the interpleaded funds to Mr. Zimprich in the Interpleader Lawsuit. *See* Plaintiff's Amended Petition.

19.     With Plaintiff's Objection to Arbitration now thoroughly denied, the Arbitration was scheduled to take place June 16, 2021. However, it was vacated to accommodate Plaintiff filing a subsequent Complaint in the County Court at Law 6, El Paso County, which was them removed to the United States District Court for the Western District of Texas, (the "Third Lawsuit") Cause No. 3:21-CV-00106 before the honorable Judge Montalvo. *See* Ex. M. There, based on the same facts before this Court, Plaintiff alleged an assortment of civil RICO violations, breach of contract, fraud, and conspiracy against, inter alia, the same Defendants who are presently before this Court. *See* Ex. N.  and Plaintiff's Original Petition. There, Plaintiff claimed that S&R did not properly repair his roof and that S&R then conspired with the other Defendants to prevent Plaintiff from receiving the justice he believes he deserved. *See* Ex. N. The majority of these claims have already been dismissed.

20.     In the meantime, the Arbitration between Plaintiff and S&R, as ordered in the Original Lawsuit, was held on October 18, 2021. *See* Ex. O. Plaintiff did not bother to attend the Arbitration, despite receiving the required notice. *Id.* During the final Arbitration, the Arbitrator found that "S&R completed all contracted for work in a timely and workmanship manner…" *Id.* Furthermore, the Arbitrator found that Plaintiff materially breached its contractual obligations with S&R by failing to pay the amount it was still owed for the roofing work. *Id.* **All of Plaintiff's counterclaims against S&R, which were again based on alleged roofing defects, the same facts which form the basis of this lawsuit, were denied on the merits.** S&R has filed suit in the County Court at Law 6 to confirm the arbitration award in the case numbered 2021DCV4380. *See* Ex. P.

21.     All of the above lawsuits, appeals, and arbitration have led us to the lawsuit currently before the Court. Here, in Plaintiff's latest attempt to re-litigate issues that have already been decided on the merits, Plaintiff alleges causes of action against S&R, Mr. Smith, and Mr. Ramirez for Fraud, Elder Abuse, Exploitation, Abuse of Process, Invasion of Privacy, Breach of Contract, Forgery,

Conspiracy, Extortion, and Bribery. *See* Plaintiff's Amended Petition. Every single one of these claims arises from the same underlying facts which were the basis of Plaintiff's previous lawsuits and counterclaims – the repair of Plaintiff's home by S&R. *See* Plaintiff's Original Lawsuit; Ex. J; Ex. N. In direct contravention to the Arbitrator's findings on the merits, Plaintiff again alleges that S&R did not correctly repair his home and thereby breached its contract with him. *See* Plaintiff's Original Petition; Ex. O. Plaintiff also tries to relitigate his collateral estoppel and res judicata arguments based on the court in the Interpleader Lawsuit returning the interpleaded funds to Mr. Zimprich. *See* Plaintiff's Original Petition. Therefore, Plaintiff's Motion requesting this Court to declare that the roof did not meet code, and that the doctrines of res judicata applies should be denied.

### ***Plaintiff's request that he be allowed leave to appeal directly to the Fifth Court of Appeals is without merit and should be denied.***

22.     Lastly, Plaintiff argues that this Court, and prior subsequent Courts, have violated his right to due process of law and denied him meaningful access to the courts. Plaintiff does not cite to any statutes, case law, or any other authority in support of this argument. Further, as outlined above, and more thoroughly detailed in Defendants' Motion to Declare Plaintiff a Vexatious Litigant (Doc. 34), it is clearly evident that Plaintiff has had continuous access to the courts, and to an arbitration proceeding, since 2015. Plaintiff's argument that he has been denied due process of law and meaningful access to the Courts is therefore without merit and should be denied.

### IV.
### Conclusion

**WHEREFORE, PREMISES CONSIDERED**, Defendants Alejandro C. Ramirez, Tyrone Smith, and Smith and Ramirez Restoration LLC respectfully pray that the Court deny Plaintiff's Second Motion for Declaratory Judgment and for such other and further relief, general and special, legal and equitable, to which Defendants may be justly entitled.

9

Respectfully submitted,

**MOUNCE, GREEN, MYERS,**
**SAFI, PAXSON & GALATZAN**
A Professional Corporation
P.O. Box 1977
El Paso, Texas 79999-1977
(915) 532-2000
(915) 541-1597 (fax)

By: */s/ James A. Martinez*
**James A. Martinez**
State Bar No. 00791192
**martinezja@jmeplaw.com**

*Attorneys for Defendants Alejandro C. Ramirez,*
*Tyrone Smith and Smith and Ramirez Restoration,*
*LLC*

## CERTIFICATE OF SERVICE

In compliance with Texas Rule of Civil Procedure 21a (e), I, **James A. Martinez**, hereby certify that on the 21st day of March, 2022, a true and correct copy of the foregoing document was sent via ECF to the following parties or attorney(s,) to: Nicole J. Anchondo, AnchondoNJ@elpasotexas.gov, P.O. Box 1890, El Paso, Texas 79950-1890; Scot Graydon, Assistant Attorney General, Scot.Graydon@oag.texas.gov, Office of the Attorney General, PO Box 12548, Capitol Station, Austin, Texas 78711-2548, and Raymond D. Martinez, raymond@martinezlawyers.com; Martinez & Martinez Law Firm, PLLC, 2110 E. Yandell Dr., El Paso, Texas 79903.

and

Sent via certified mail to:

Robert K. Hudnall
5823 N. Mesa, #839
El Paso, Texas 79912
# 7021 0350 0001 8981 4085

on this the 21st day of March, 2022.

*/s/ James A. Martinez*
**James A. Martinez**

10171-127/RREN/1678480

# EXHIBIT A

Ocwen #
shanavas

**SMITH & RAMIREZ**
RESTORATION LLC

Bonded & Insured



Angie's list.

500 Thunderbird Dr., Suite 103, El Paso, Texas 79912 • (915) 600-2868 Office
www.smithandramirezroofing.com • fax (877) 631-1557

PROJECT MANAGER _Luis Stiles_          REP CELL _996-6832_ DATE _6-9-14_

CUSTOMER _Ken Hudnall_          HOME PH. _478-1114_ ALT PH. _____

ADDRESS _297 Puesta Del Sol Lane_ CITY _El Paso_ ST _TX_ ZIP _79912_

☐ Is this a rental property? If yes, please provide billing address

☒ We will obtain necessary permits.

☒ We will provide insurance and worker's comp as required by the state.

☒ We will inspect material and prepare job site for safety.

☐ We will remove and haul away _____ layer(s) of existing roofing.

☒ Slope factor _4 (c)_

☐ 1-story ☒ 2-story ☐ 2-story with 1-story access ☐ 3-story

☐ Garage ☐ Shed ☐ Patio Cover ☐ Other_____

☐ Install_____ squares of _____

☒ We will clean the roof and gutters.

☒ We will clean grounds and haul off debris.

☒ We will sweep the ground with a magnet to pick up nails.

☒ We will haul off excess material.

☒ Final Quality Control Inspection.

**"El Paso's Best Roofing Warranty"**

| Standard | Upgrade | |
|---|---|---|
| 5 YRS | 10 YRS | Installers Workmanship Coverage |
| | | Cost of ALL LABOR, MATERIALS, & DISPOSAL |
| OR | | Manufacturer's Defect on Material Coverage |
| | | Cost of SHINGLES replacement |
| 5 | 10 YRS | Cost of LABOR |
| 5 | 10 YRS | Cost of TEAR-OFF and DISPOSAL |
| FREE | $300 | Cost of Warranty Package |

☐ **DECKING**
 ☐ Inspect decking for fastener adhesion
 We will remove and replace up to _____ sheets (☐ as needed) o decking
 for $_____ per sheet or ☐ remove and replace all decking.
☐ **UNDERLAYMENT**
 We will install _____ (#) felt over the entire roof area.
 We will add an additional layer of _____ in all valleys.
 We will install Ice & Water Leak Proof Shield around chimney, Flashings,
 and protrusions as needed for $_____.
 We will install _____ additional rolls of Ice & Water Leak Proof Shield for
 $_____ per roll (☐ as needed).
☐ **SHINGLES**
 We will install _____ (y) ☒ Architectual ☐ 3-Tab _____ (brand)
 _____ (color) using 6 nails per shingle.
 We will double enclose and seal valleys.
 We will install factory applellic starter. Triple seal eaves and rakes.
 We will install matching 3-Tab Ridge or _____ with 4 nails.
 per shingle and coat.
☐ **FLASHING**
 We will step flash around walls, skylights and chimneys as needed.
 We will keep / replace all _____ (color) metal edging.
☐ **VENTILATION**
 We will cut in / replace ridge vent _____ lineal feet for $_____ /ft.
 We will replace _____ (#) wind turbines and/or _____ (#)
 low profiles to match roof color.
 We will replace _____ 1¼" _____ 2" _____ 3" _____ 4" plumbing vents.
 We will paint stacks and vents with matching color paint and seal bases.

☐ See Contract Addendum

TERMS: This is a proposal only and Customer is not obligated unless the Customer's insurer provides an estimate of damage or recovery to the Customer which is acceptable to Smith & Ramirez Restoration LLC. The Customer authorizes Smith & Ramirez Restoration LLC. to pursue the Customer's best interest for the replacement or repair work outlined herein at a price agreeable to the insurer and to Smith & Ramirez Restoration LLC. with NO ADDITIONAL COST to the Customer except for (i) the deductible, (ii) in the case of an ACV policy, any applicable non-recoverable depreciation, and (iii) any additional work requested by the Customer not covered by insurance. Upon acceptance by Smith & Ramirez Restoration LLC. of the insurer's estimate this proposal shall be binding and Smith & Ramirez Restoration LLC. shall receive all the insurance proceeds for the work completed.

Customer expressly authorizes his/their insurance company and his/their mortgage company to provide any appropriate information to Smith & Ramirez Restoration LLC. and authorizes Smith & Ramirez Restoration LLC. to communicate directly with such insurer and mortgagee for the purpose of securing payment for applying for supplemental claims as necessary for work completed.

☒ **WILL DO JOB FOR PRICE DESIGNATED BY YOUR INSURANCE COMPANY** (See Above) OR Contract Amount $_@5 Rec_ _Insurance_

ACCEPTANCE: Customer certifies having read and accepted the work specifications, prices and terms and conditions above on the reverse hereof. _State_

x _____ _1-5-2014_  x _____
Contractor's Signature    Date    Customer's Signature    Date

Insurance Company    Policy #    Claim #    Insurance Contact Phone Number

Mortgage Company    Loan Number _6/9/14_    Mortgage Company

Project Manager    Date

**Generated by CamS...**

| EXHIBIT |
|---|
| "A" |

# EXHIBIT B

El Paso County - County Court at Law 3

Filed 10/30/2015 1:40:37 PM
Norma L. Favela
District Clerk
El Paso County
2015DCV3677

CAUSE NO._____

| | | |
|---|---|---|
| OLD REPUBLIC SURETY COMPANY, | § | IN THE DISTRICT COURT |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | _____ JUDICIAL DISTRICT |
| | § | |
| ROBERT K. HUDNALL and BENJAMIN | § | |
| STEVENS, | § | |
| | § | |
| *Defendants.* | § | EL PASO COUNTY, TEXAS |

## ORIGINAL PETITION IN INTERPLEADER

TO THE HONORABLE COURT:

Old Republic Surety Company ("ORSC"), files this Original Petition in Interpleader against Robert K. Hudnall and Benjamin Stevens ("Defendants"), and would respectfully show the Court as follows:

### I.
### DISCOVERY CONTROL PLAN

1.    Pursuant to TEX. R. CIV. P. 190.2., discovery in this action shall be governed by a Level 2 Discovery Control Plan.

### II.
### STATEMENT OF RELIEF SOUGHT

2.    Pursuant to TEX. R. CIV. P. 47, ORSC states that it seeks monetary relief of $100,000.00 or less and non-monetary relief, and demands judgment to all other relief to which it may be entitled.

### III.
### THE PARTIES

3.    Plaintiff Old Republic Surety Company is a foreign corporation doing business in

Texas.

4.     Defendant Robert K. Hudnall ("Hudnall") is an individual residing in El Paso County, Texas, and may be served at his place of residence at 297 Puesta Del Sol, El Paso, Texas 79912 or at 5823 N. Mesa, #839, El Paso, Texas, 79912 or wherever he may be found.

5.     Defendant Benjamin Stevens ("Stevens") in an individual residing in El Paso County, Texas, and may be served at his place of residence at 10905 Walden Pond Lane, El Paso, Texas, 79934 or wherever he may be found.

## IV.
## JURISDICTION & VENUE

6.     The Court has jurisdiction over Defendants because they are residents of the State of Texas.  The Court has jurisdiction over this controversy because the types and amounts of relief sought are within the jurisdictional limits of the Court.

7.     Pursuant to Texas Civil Practice and Remedies Code § 15.002, venue is proper in this Court because a substantial part of the events giving rise to the claim occurred in El Paso County, Texas, and because Defendants reside in El Paso County, Texas.

## V.
## STATEMENT OF FACTS

8.     On May 2, 2015, ORSC entered into contract with Smith and Ramirez Restoration, LLC ("Principal") by which ORSC became bound as surety in the amount of $25,000.00 for any damages caused by Principal's violations of Titles 9, 12, 13, or 18 of the El Paso City Code committed by Principal while engaged in the business of contracting or subcontracting (the "Bond"). The Bond provides an effective period of May 2, 2015 through May 2, 2016. A true and correct copy of the Bond is attached as Exhibit 1 and incorporated for all purposes herein.

9.      On June 23, 2015, Defendant Robert Hudnall asserted a claim against the Bond in the amount of $25,000 (the total amount of the bond) for damages resulting from alleged code violations committed by Principal in the summer of 2014 while replacing the roof on Hudnall's home at 297 Puesta Del Sol, El Paso, Texas 79912. On July 8, 2015, Hudnall's attorney, Richard Deck, clarified by letter that Hudnall's total claim was in excess of the total bond amount of $25,000, and that he therefore requested that the full bond amount be paid to Hudnall. A true and correct copy of this letter is attached as Exhibit 2 and incorporated for all purposes herein. As a result of the asserted claim, ORSC began its investigation of the claim.

10.     On August 11, 2015, Benjamin Stevens asserted a claim via e-mail against the Bond in the amount of $28,160.00 for damages resulting from alleged code violations committed by Principal in the summer of 2014 while replacing the roof of Stevens' home at 10905 Walden Pond Lane, El Paso, Texas 79934. A true and correct copy of this email is attached as Exhibit 3 and incorporated for all purposes herein.

11.     On September 25, 2015, Richard Deck, on behalf of Defendant Hudnall, sent a letter via fax to Kendal Reed, attorney for ORSC, in which he asserted Hudnall's right to the bond at the exclusion of any other claim, stating that "payment to anyone other than Hudnall would breach his rights as a third party beneficiary." A true and correct copy of this letter is attached as Exhibit 4 and incorporated for all purposes herein.

12.     On October 6, 2015, Kendal Reed sent a letter via email to counsel for each Defendant, in which he stated that Defendants' claims appeared to be adverse and conflicting, that ORSC was unable to determine which claimant was entitled to payment from the proceeds of the Bond, and that ORSC was now in the position of an innocent stakeholder faced with the possibility of multiple liability. The letter also advised Defendants of ORSC's intention to file

this interpleader action if Defendants did not indicate to ORSC their willingness to agree on distribution of the Surety Bond proceeds by October 14, 2015. A true and correct copy of this letter is attached as Exhibit 5 and incorporated for all purposes herein.

13.     To date, neither Defendant has responded to the October 6, 2015 letter necessitating the filing of this interpleader action.

## VI.
## PROPERTY AND CLAIMS

14.     The property subject to this Interpleader is the Bond proceeds of $25,000.

15.     Hudnall asserts that he is entitled to receive the full amount of the Bond Proceeds to the exclusion of Stevens.

16.     Stevens asserts that he is entitled to receive the full amount of the Bond Proceeds. Both Stevens and Hudnall have failed to compromise and agree to split the Bond Proceeds.

## VII.
## CAUSE OF ACTION

### INTERPLEADER

**A.     ORSC is or may be Subject to Multiple Liability**

17.     ORSC is facing rival claims as to the proper disposition of the Bond Proceeds. Defendants Hudnall and Stevens each claim the total amount of the Bond by reason of the fact that they claim to have suffered damages in excess of the total amount of the Bond due to alleged violations of the El Paso City Code by the Principal.

**B.     Claims are Adverse and Conflicting**

18.     These claims are adverse and conflicting, and ORSC is unable to determine which defendant is entitled to the proceeds of the Bond. Because each claim on its own is for in excess of the total amount of the Bond, ORSC cannot pay one defendant without excluding the other.

ORSC therefore is in the position of an innocent stakeholder faced with the possibility of multiple liability and incidental costs.

**C.    ORSC Claims No Interest**

19.    ORSC neither has, nor claims, any interest in the proceeds of the Bond, which ORSC at all times, has been willing to deliver to the person or persons entitled to possession.

**D.    ORSC is a Disinterested Stakeholder**

20.    ORSC has in no way colluded with any defendant concerning the matters of this cause. ORSC has not been, and will not be, indemnified in any manner by any defendant.

21.    ORSC timely filed this complaint after receiving notice of multiple claims and attempting to pursue a resolution without resorting to legal remedies.   ORSC is unable to determine whether the claims of Hudnall or Stevens to the Bond Proceeds are valid and filed this pleading to resolve this matter.

**E.    Tender to Court**

22.    In conjunction with the filing of this pleading, ORSC unconditionally offers to and is ready to deposit into the registry of the court the sum of $25,000.00, which represents the entire amount of the proceeds of Bond.  ORSC has actual possession and control of the property in dispute.

**VIII.**
**ATTORNEY'S FEES**

23.    ORSC is entitled to recover reasonable and necessary attorney fees and costs incurred as a result of these proceedings, payable directly from the Bond. *State Farm Life Ins. Co. v. Martinez*, 216 S.W.3d 799, 803 (Tex. 2007); *Beneficial Standard Life Ins. Co. v. Trinity Nat. Bank*, 763 S.W.2d 52, 56 (Tex. App.—Dallas 1998, writ denied). *See also Clayton v. Mony Life Ins. Co. of Am.*, 284 S.W.3d 398, 405 (Tex. App.—Beaumont 2009, no pet.).

**ORIGINAL PETITION IN INTERPLEADER**                                                      5 | P a g e

## PRAYER FOR RELIEF

For the reasons stated, ORSC requests that Defendants be cited to appear and answer, interpleading their claims to the proceeds of the Bond in the amount of $25,000, which ORSC has tendered to the court and that the Court order as follows:

A.   That ORSC be released and discharged from all liability to Defendants on all matters relating to the Bond;

B.   That ORSC have and recover its reasonable fees for the services of its attorneys, together with all costs of court and expenses incurred by ORSC in this suit, with all such fees, costs, and expenses, to be paid out of the $25,000 proceeds of the Bond; and

C.   Such other and further relief to which ORSC may be justly entitled.

Respectfully submitted,

**ANDERSON TOBIN, PLLC**

/s/ Kendal B. Reed
Aaron Z. Tobin
Texas Bar No. 24028045
Kendal B. Reed
Texas Bar No. 24048755
One Galleria Tower
13355 Noel Road, Suite 1900
Dallas, Texas 75240
Telephone: (972) 789-1160
Facsimile: (972) 789-1606
E-Mail: atobin@andersontobin.com
         kreed@andersontobin.com

ATTORNEYS FOR OLD REPUBLIC
SURETY COMPANY

# EXHIBIT 1



ENGINEERING & CONSTRUCTION MANAGEMENT
BLANKET BUILDING & CONSTRUCTION BOND

BOND # ____W150126735____

**KNOW ALL MEN BY THESE PRESENTS:**

    **THAT WE,** _____Smith and Ramirez Restoration LLC_____, as Principal, and

_____Old Republic Surety Company_____, a Corporation authorized to do business under the laws of the State of Texas with

its principal office in the City of _____Brookfield_____, as Surety, are held and firmly bound unto the City of El Paso, Texas in the

Sum of TWENTY FIVE THOUSAND and NO/100 DOLLARS ($25,000.00) lawful money of the United States of America, to the payment

of which sum, well and truly to be made, we bind ourselves, our executors, administrators, our successors, and assigns firmly by these

presents.

**SIGNED, SEALED AND DATED THIS** ____2nd____ **DAY OF** _____May_____, **20_12____.**

    **THE CONDITION OF THE ABOVE OBLIGATION IS SUCH** that, whereas the Principal is engaged or intends to engage in the

business of contracting or subcontracting for the erection, alteration, repair, removal, demolition, use and occupancy of buildings, or

construction of buildings, structures, and systems, or the installation and maintenance of Electrical, Gas, Mechanical, Plumbing, Irrigation

or Fire systems, as provided in Chapter 18.02 of the El Paso City Code, or is engaged or intends to engage in the business of cutting,

excavating or drilling of monitoring wells in city right-of-way or on city owned property as provided in Chapter 13.08 of the El Paso City

Code, or is engaged or intends to engage in any business within the city right-of-way which impedes or limits the general public from

traversing the right-of-way as provided in Chapter 12.30 of the El Paso City Code.

    **NOW THEREFORE,** if the Principal and its agents, employees, and subcontractors shall comply with all provisions, rules and

regulations of the El Paso City Code which have been or may be hereafter established by the City of El Paso, and shall pay any damages

which are sustained by the City or by the person for whom the work is done which are caused by failure of the Principal, its agents,

employees, or subcontractors to comply with Titles 9, 12, 13, or 18 of the El Paso City Code, and shall indemnify the City against all

claims arising out of such failure to comply, then this obligation shall be void, otherwise to remain in full force and effect. Provided,

however, that any suit against this bond or the Principal shall be filed within two years after completion of the work in connection with

which the violation occurred.

    Provided further, that regardless of the number of claims which may be made against this bond in any one annual license period,

the aggregate liability of the Surety for any and all claims, suits or actions under this bond in any one annual license period shall not

exceed the amount stated above. Any revision of the bond amount shall not be cumulative within any one annual license period.

    **IT IS FURTHER UNDERSTOOD AND AGREED** that the Surety may at any time terminate its liability by giving thirty days written

notice to the Building Official, El Paso, Texas, and the Surety shall not be liable for any loss after the expiration of thirty days except for

losses occurring while this bond is in full force and effect.

    **THIS BOND** is to remain in force and to be binding for a period commencing on the ____2nd____ day of

_____May_____, 20_12____, and ending on the ____2nd____ day of _____May_____, 20_13____.

PRINCIPAL'S NAME: Smith and Ramirez Restoration LLC        _____, Principal

ADDRESS & PHONE #: 500 Thunderbird Drive #103

CITY, STATE AND ZIP CODE: El Paso, TX 79912

    By: Name and Title

SURETY COMPANY: Old Republic Surety Company        _____, Surety

SURETY AGENT: Michael B Hill

SURETY TELEPHONE: (800) 217-1792

    By: Name and Title

Revised 10/24/2011 COSB

8

## IMPORTANT NOTICE

To obtain information or make a complaint:

You may call Old Republic Surety Company's and/or Old Republic Insurance Company's toll-free telephone number for information or to make a complaint at:

### 1-(800) 527-9834

You may also write to Old Republic Surety Company and/or Old Republic Insurance Company at:

### PO Box 569480
### Dallas, TX 75356-9480

You may contact the Texas Department of Insurance to obtain information on companies, coverages, rights or complaints at:

### 1-(800) 252-3439

You may write the Texas Department of Insurance:

P.O. Box 149104
Austin, TX 78714-9104
Fax: (512) 475-1771
Web: http://www.tdi.state.tx.us
E-Mail: ConsumerProtection@tdi.state.tx.us

**PREMIUM OR CLAIM DISPUTES:**
Should you have a dispute concerning your premium or about a claim you should contact the agent or Old Republic Surety Company and/or Old Republic Insurance Company first. If the dispute is not resolved, you may contact the Texas Department of Insurance.

**ATTACH THIS NOTICE TO YOUR POLICY:** This notice is for information only and does not become a part or condition of the attached document.

## AVISO IMPORTANTE

Para obtener informacion o para someter una queja:

Usted puede llamar al numero de telefono gratis de Old Republic Surety Company's / Old Republic Insurance Company's para informacion o para someter una queja al:

### 1-(800) 527-9834

Usted tambien puede escribir a Old Republic Surety Company / Old Republic Insurance Company:

### PO Box 569480
### Dallas, TX 75356-9480

Puede comunicarse con el Departamento de Seguros de Texas para obtener informacion acerca de companies, coberturas, derechos o quejas al:

### 1-(800) 252-3439

Puede escribir al Departamento de Seguros de Texas:

P.O. Box 149104
Austin, TX 78714-9104
Fax: (512) 475-1771
Web: http://www.tdi.state.tx.us
E-Mail: ConsumerProtection(@tdi.state.tx.us

**DISPUTAS SOBRE PRIMAS O RECLAMOS:**
Si tiene una disputa concerniente a su prima o a un reclamo, debe comunicarse con el agente o Old Republic Surety Company / Old Republic Insurance Company primero. Si no se resuelve la disputa, puede entonces comunicarse con el departamento (TDI).

**UNA ESTE AVISO A SU POLIZA:** Este aviso es solo para proposito de informacion y no se convierte en parte o condicion del documento adjunto.

# EXHIBIT 2

# Richard Deck

Mediator, Attorney and Counselor at Law
Child Welfare Law Specialist by the NACC and the ABA
521 Texas Avenue
El Paso, Texas 79901

Tel.   (915) 532-1122                                                    email rdecklaw@gmail.com
Fax.   (877) 434-6917

July 8, 2015

*Sent by email:*
Jeff Passafaro
claims@orsurety.com
Old Republic Surety Company
445 South Moorland Road, Suite 200
Brookfield, WI 53201

>          Claim No.      58085
>          Bond No.       W150126735
>          Principal:     Smith and Ramirez, LLC
>          Claimant:      Robert K. Hudnall
>          D/L:           07/01/2014

Dear Sir:

I am the retained attorney for Mr. Hudnall. I am responding to your letter dated 29 June, 2015 for the above referenced matter. In your letter you asked the total amount of the claim. We have filed against the Principal in excess of the bond amount. Accordingly, Mr. Hudnall is making a claim for the entire amount for the bond. The roof in question must be completely replaced and the damages to the interior of the home exceeds the amount of the bond. Further, Mr. Hudnall and his wife have lost the quiet enjoyment of their home due to the negligence of the Principal.

I will be happy to provide you with further information on this matter, to include the mold report and other documentation as you may need. Please do not hesitate to ask.

Very truly yours,

Richard Deck

# EXHIBIT 3

To whom it may concern,

I am initiating a claim against the above-referenced bond on behalf of my client, Benjamin Stevens. Attached to this email is the petition with factual allegations and causes of action against your principal. This is a claim for violations of the IRC for deficient and defective workmanship. Attachments are as follows:

1. Petition
2. Estimate from A-1 roofing to cure defects in the amount of $28,160.00
3. Photos of some of the deficient work
4. Notice from the City of El Paso confirming continuation of interior leaks on a brand new roof
5. Contract for services
6. Bond copy

Please contact me with any additional questions or concerns.

Thank you,

**Michael J. Zimprich**
*Attorney-Managing Member*
The Law Offices of Michael J. Zimprich, PLLC
7001 Westwind Drive, Suite 205
El Paso, TX 79912
(P) 915-317-1238 ext. 946
(F) 915-613-2881

1



*BENJAMIN M. STEVENS* §
§
*Plaintiff,* §
§
*v.* §
§
*SMITH AND RAMIREZ* §
*RESTORATION, LLC* §
§
*Defendant.* §

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF THIS COURT:

Plaintiff, Benjamin M. Stevens, complains of Defendant, Smith and Ramirez Restoration, LLC, and would show the Court the following:

### A. Discovery-Control Plan

Plaintiff seeks only monetary relief of $100,000 or less including damages of any kind, penalties, costs, expenses, pre-judgment interest, and attorney fees. Therefore Plaintiff intends to conduct discovery under Level 1 of the Texas Rules of Civil Procedure and under the rule of expedited actions.

### B. Parties

Plaintiff is an individual that resides within El Paso County.

Defendant, Smith and Ramirez Restoration, LLC, is a limited liability company registered with the Texas Secretary of State and doing business in El Paso County, Texas.

Defendant may be served with citation by serving its registered agent Ty Smith at 500 Thunderbird, Suite 103, El Paso, TX 79912 or wherever he may be found.

## C. Agency

Whenever in this Plaintiffs' Original petition, it is alleged that the Defendants, Smith and Ramirez Restoration, LLC did any act or thing, it is meant that Smith and Ramirez Restoration, LL@ either personally or through their agents, servants, employees, or representatives did such act or thing and that at the time such act or thing was done, it was done with the full authorization or ratification of or by Defendants, Smith and Ramirez Restoration, LLC, and was done in the normal and routine course and scope of employment and agency of Defendants' agents, servants, employees, or representatives.

## D. Facts

On or about May 10, 2014, Defendant visited Plaintiff's home located at 10905 Walden Pond Lane, El Paso, TX 79934 (the "Property") with the purpose of providing a repair estimate to repair a leaking roof and interior water damage as a result of the leaking roof. Plaintiff had already submitted a claim for the roof damage to his insurance and received an itemization of the work that needed to be completed from Milliken Construction Co., Inc. with a price quoted of $17,168.52. Defendant agreed to do all the work that was listed on this price quote for the same price as was quoted by the insurance and Milliken. Per the terms of the contract for repairs service between Plaintiff and Defendant, Defendant would remove the existing roof and replace with a new roofing system that would be free of leaks and installed in a good workmanlike manner. Additionally, Defendant stated that "the roofing system we install will

perform as we have stated. If you [Plaintiff] are not 100% satisfied with your roofing system, we will remove it and 100% of your investment" assuming that they mean return 100% of the buyers investment.

On or about May 16, 2014, Plaintiff's insurance company issued a check in the amount of $12,325.39 in the name of Plaintiff and Plaintiff's Mortgagee, Pioneer Bank (the "Bank"). Unknown to Plaintiff, Defendant cashed the check without the Banks authorization and used the funds for its own benefit.

On or about June 16, 2014, the Defendant began repair work on the Property and shortly thereafter completed such work. In an effort to cut costs and improve profitability, Defendant knowingly and intentionally cut corners in the work. Immediately after completing the roof work, Plaintiff noticed deficiencies in the work. These deficiencies consisted of the satellite dish was not replaced properly causing Plaintiff having to pay for removal and replacement with new holes in the roof, the cooler was not removed so that the shingles could be placed properly beneath but the shingles were shoved under the mounts causing buckling, damaged siding was not replaced according to the contract but was simply patched and began cracking, and there are numerous deficiencies in the installation of the shingles including gaps and opening thereby compromising the whole roofing system and causing interior leaks. Additionally, numerous contracted items were not completed as agreed by the parties.

Upon notification of the deficiencies by Plaintiff, Defendant began to send worker out to the Property in an **attempt** to fix the deficiencies. Defendant visited the Property and completed additional repairs on July 10, 2014, August 7, 2014, August 12, 2014, August 29, 2014, and again on September 4, 2014. All attempts to fix the deficiencies were mere bandages

on a gaping wound. Each time additional bandage efforts were used to patch holes and gaps on a brand new roof and each time the roof continued to leak causing additional interior damage. Defendant knowingly and intentionally failed to adequately repair the roof under is implied and express warranties in order to maximize profitability on the Plaintiffs roof replacement.

On October 24, 2014, Plaintiff sent to Defendant a DTPA notice letter requesting that Defendant reimburse the Plaintiff for actual damages as a result of Defendant's negligent repair work. Defendant has yet to offer a return of the funds paid according to its express warranty and has failed to offer a sufficient repair method for the roof to ensure that Plaintiff was going to receive what he had paid for – a new roof and interior repairs.

### E. Count –I Breach of the Implied Warranty
### of Good & Workmanlike Services

Defendant sold services to the Plaintiff consisting of the repair and modification of the Property owned by Plaintiff. Defendant did not perform the services in a good and workmanlike manner resulting in substantial damage to the Property. Plaintiff notified Defendant of the numerous deficiencies in the workmanship and Defendant refused to property repair the deficient work Defendant's breach of warranty directly and proximately caused injury to the Plaintiff, which resulted in substantial actual damages. Plaintiff seeks recovery of his actual damages and exemplary damages for Defendants knowing and intentional acts.

### F. Count –II Breach of Express Warranty

Defendant sold services to the Plaintiff consisting of the repair and modification of the Property owned by Plaintiff whereby the terms of their agreement, Defendant expressly warranted that "[i]f you [Plaintiff] are not 100% satisfied with your roofing system, we will remove it and 100% of your investment." Although Plaintiff notified Defendant on numerous occasions that he was not satisfied with the work and his roof continued to leak, Defendant did not honor this guarantee. Defendant's breach of this express warranty directly and proximately caused injury to the Plaintiff, which resulted in damages. Plaintiff seeks actual and exemplary damages within the jurisdictional limits of the court.

### G. Count III – DTPA Claim

Plaintiff is a consumer under the DTPA because Plaintiff is an individual who acquired services by purchase from Defendant. Defendant is an entity that can be sued under the DTPA. Defendant violated the DTPA when Defendant breached an implied warranty and also breached an express warranty. Specifically, Defendant breached the implied warranty of good and workmanlike services and also the express warranted stated within its contract. Defendant's wrongful conduct was a producing cause of the Plaintiff's injuries, which resulted in damages to Plaintiff's property.

Additionally, Defendant violated Texas Business and Commerce Code Section 17.45(b)(5) by representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he does not.

Defendant's actions were committed knowingly or intentionally and as a result,

Plaintiffs are entitled to recover treble damages from Defendant. Plaintiffs are entitled to recover reasonable and necessary attorney's fees for prosecuting this suit under Texas Business & Commerce Code section 17.50(d).

### H. Count IV – Breach of Contract

Plaintiff and Defendant entered into a valid and enforceable written contract. By this contract the parties agreed that Defendant would repair Plaintiff's property and Plaintiffs would pay for the repairs. Defendant's acts constitute a clear repudiation of the contract because Defendant failed to complete most of the interior repairs that were in the contract and abandoned such repair work. Defendant's breach has caused injury to Plaintiffs, which resulted in damages. Plaintiff seeks unliquidated damages within the jurisdictional limits of this Court.

### I. Count V – Negligence

The Defendants owed a legal duty to Plaintiffs to repair the Property in a reasonable manner and free from defects. Defendant breached this duty in repairing the Property incorrectly and improperly – not in conformance with the City of El Paso Building Codes thereby proximately causing damages to Plaintiff.

## J. Request for Disclosure

Under Texas Rule of Civil Procedure 194, Plaintiffs requests that defendant disclose, within the time prescribed, the information or material described in Rule 194.2 and 190.2(b)(6).

## K. Prayer

Plaintiff demands a jury trial and tenders the appropriate fee with this petition.

## L. Prayer

For these reasons, Plaintiff asks that Defendant be cited to appear and answer and that court render judgment for Plaintiffs and award the following:

      a.   Actual damages;

      b.   Treble damages for Defendant's knowing and/ or intentional conduct;

      c.   Prejudgment and post judgment interest;

      d.   Court costs;

      g.   Attorney fees; and

      f.   All other relief to which Plaintiffs is entitled.

Respectfully submitted,

The Law Offices of Michael J. Zimprich, PLLC
7001 Westwind Drive, Suite 205
El Paso, Texas 79912
Phone (915) 317-1238 ext. 946
Fax (915) 613-2881
Email: mjzimp@mjzlaw-ep.com

By:_____
Michael J. Zimprich
State Bar No. 24090710

ATTORNEY FOR PLAINTIFF

# CITY OF EL PASO



## ENGINEERING & CONSTRUCTION MANAGEMENT

CORRECTION NOTICE ☒
STOP WORK ORDER ☐
DISAPPROVAL NOTICE ☒

Job Address: _10 905 WALDEN RONE_ Permit No. _BRAK-14-015_

BLDG.☒ COMBO☐ C.H.P. ☐ ELEC ☐ HVAC ☐ PLBG ☐ SIGNS ☐ZONING☐ FIR

INSPECTION THIS DATE INDICATES THAT THE FOLLOWING ITEMS REQUIRE YOUR IMMEDIATE ATTEN

_1. GROSS INSIDE HOUSE_
_HAVE TO BE REPAIRED AT_
_LIVING ROOM AREA AND_
_STAIRS_

CONSTRUCTION MAY ☐ MAY NOT ☐ PROCEED PRIOR TO CORRECTION OF ABO

RE-INSPECTION IS ☒ IS NOT ☐ REQUIRED        RE-INSPECTION FEI

REC'D BY: _____ DATE/TIME: _8-20-14_

INSPECTOR: _____ PHONE: _472-5963_

---

23

Scanned by CamScanner

OLD REPUBLIC SURETY COMPANY
P O BOX 569480
DALLAS, TX 75356-9480
800-527-9834

# CONTINUATION CERTIFICATE

| BOND NUMBER | PRINCIPAL | BOND AMOUNT | EFFECTIVE DATE | EXPIRATION DATE |
|---|---|---|---|---|
| W150126735 | BLANKET BUILDING & C | 25,000 | 5/02/2014 | 5/02/2015 |

**PRINCIPAL**

SMITH AND RAMIREZ RESTORATION LLC
500 THUNDERBIRD
DRIVE, #103
EL PASO, TX 79912

**OBLIGEE**

EL PASO ENG AND CONS
TWO CIVIC CENTER
PLAZA - 5TH FLOOR
EL PASO, TX 79901

## ORIGINAL FOR BOND RENEWAL

THIS BOND CONTINUES IN FORCE TO THE ABOVE EXPIRATION DATE CONDITIONED AND PROVIDED THAT THE LOSSES OR RECOVERIES ON IT AND ANY AND ALL ENDORSEMENTS SHALL NEVER EXCEED THE PENALTY SET FORTH IN THE BOND AND WHETHER THE LOSSES OR RECOVERIES ARE WITHIN THE FIRST AND/OR SUBSEQUENT OR WITHIN ANY EXTENSION OR RENEWAL PERIOD, PRESENT, PAST OR FUTURE. ALL OTHER TERMS AND CONDITIONS REMAIN UNCHANGED.

SIGNED AND DATED THIS ___FIRST___ DAY OF ___MAY, 2014___

89-6069
BALDWIN-COX AGENCY LLC
5930 PRESTON VIEW BLVD.
SUITE 200
DALLAS, TX 75240

972-644-2688

(SEAL)

OLD REPUBLIC SURETY COMPANY
                SURETY

By _Karen M·Clusky_

# A-1 CONSTRUCTION
## REMODELING
## ROOFING
P.O. BOX 3984   EL PASO TX.79923
915-637-2580

### PROPOSAL                    10/06/14

Mr. Ben Stevens
10905 Walden Pond
El Paso TX. 79934

This est. is as follows:

Living rm. Damage above back door was not done correctly. Mold is still present. We must open up area and replace all insulation, and any damaged lumber. Treat area with mold inhibitor. Resheetrock, texature, and repaint entire wall to match. Also at stairway wall. Water damage present on walls and ceiling area. Replace/repair areas, and repaint walls to match.

$ 2575.00

Garage area. Replace ½ sheet on side wall near light. Mold is present, scrape areas of wall. Apply mold inhibiter. Retexture walls. And repaint area. And re-acoustic ceiling area.

$ 975.00

Bed rm.1. Areas around ceiling are not done correctly. Re-shoot entire ceiling with acoustic. Plus wall damage small repair

$ 950.00

Bed dm. 2. Re-shoot ceiling area not done correctly. Missing areas not done. Must re-shoot entirely.

$ 625.00

Upstairs hallway. Replace 3 sheet of sub decking water damaged and all baseboards. As well as install new wood flooring.

$ 1975.00

Master bed rm. Re-shoot ceiling entirely with acoustic.

$ 1400.00

Master bath rm. Drywall damage on wall done improperly, must redo area. And repaint areas entirely.

$ 650.00

Roof areas. The existing roof was not installed properly; there are not enough nails in shingles. Some have 3 some have 2 some have 4 to inconsistent. There is no 90lb. or flashing in valleys, no decking replaced were needed. Shingles are not aligned properly. The whole roof does not meet city and ibc codes. We recommend to replacement of all roofing materials. 26 sq. flat roof is not done correctly. No felt installed. Must replace.

$ 7930.00

Total cost for all repairs. $ 25,010.00 plus taxes and fees. $3150,

$28,160.00

All work will meet all codes. Permits will be provided.

All work will carry 1 yr.warranty on workmenship deffects

Roofs will carry a 15 yr. warranty on workmenship.

David Adams
President
A-1 Construction



Hispanic

Smith & Ramirez

Restoration LLC and

& Ramirez Restoration LLC  with NO ADDITIONAL

SIGNATED BY YOUR INSURANCE COMPANY (See Above) OR Contract Amount $

X







31



32

# EXHIBIT 4

# Richard Deck

Mediator, Counselor and Attorney at Law
Child Welfare Law Specialist by the ABA and the NACC
521 Texas Avenue
El Paso, Texas 79901

Tel. (915) 532-1122
Fax. (877) 434-6917

email rdecklaw@gmail.com

Anderson & Tobin PLLC
Attn: Kendal B. Reed
One Galleria Tower
13355 Noel Road, Suite 1900
Dallas, Texas 75240

> RE: Claim No.: 58085
> Bond No.: W150126735
> Principal: Smith and Ramirez Restoration, LLC
> Company: Old Republic Surety Company
> Claimant: Robert K. Hudnall

Dear Mr. Reed,

I read your letter with great interest and note several things that puzzle me. You state that the bond expressly conditions payment upon a loss or damage as a result of the principal's failure to comply with Titles 9, 12, 13 or 18 of the El Paso City Code. What puzzles me is that Old Republic was made aware of the fact that the roof in question failed drastically according to the City of El Paso. As I am sure you are well aware, Smith and Ramirez asked a city inspector to pass the roof without ever setting foot on it and he did so. My clients were never made aware of this inspection though Mr. Hudnall was home on the alleged date and time of the inspection. When it was brought to their attention that the leaking roof was alleged to have passed inspection, Mr. Hudnall asked for a second inspection which was done in his presence by a very experienced inspector. The roof not only failed but failed "drastically". Poor installation and an unsuited roofing material were two of the issues noted in the second inspection.

As for Smith and Ramirez contesting the payment of the bond due to their suing of my clients, it is interesting to note that they are suing to be paid for fixing things that they damaged due to their poor installation. Mr. Hudnall has not been compensated for the damages caused by Smith and Ramirez. This probably stems from the need of the Hudnalls to file a second claim with their insurance carrier for interior damage resulting from the shoddy workmanship on roof. Smith and Ramirez referred to the payments from this second claim as "free money" that should be split with them. Additionally, nowhere in the normal terms of a bond such as this is there any language which gives the principal the right to contest payment when the roof in question has failed.

As for a second claimant for the bond in question, payment to anyone other than the Hudnalls would breach their rights as a third party beneficiary. The bond was to pay if there was a loss or damage as a result of the principal's failure in performance of their contact vis a vis the home in question. Well, there has been a

substantial loss and extensive damage, which under the law, requires payment of the bond to the Hudnalls. Failure to honor your obligations under this bond will result in legal action to protect the rights of my client.

I await your response. Please do not hesitate to contact me if you require any further information.

Sincerely,

Richard Deck

EXHIBIT 5



Kendal B. Reed

Attorney at Law

972 788-3778
kreed@andersontobin.com

October 6, 2015

Mr. Richard Deck
Law Office of Richard Deck
521 Texas Avenue
El Paso, Texas 79901

**VIA EMAIL: RDECKLAW@GMAIL.COM**
**CERTIFIED MAIL # 9414 7266 9904 2040 5446 62**
**RETURN RECEIPT REQUESTED**

Mr. Michael J. Zimprich, Esq.
The Law Offices of Michael J. Zimprich
7001 Westwind Drive, Suite 205
El Paso, Texas 79912

**VIA EMAIL: MJZIMP@MJZLAW-EP.COM**
**CERTIFIED MAIL # 9414 7266 9904 2040 5446 79**
**RETURN RECEIPT REQUESTED**

|  |  |  |
|---|---|---|
| RE: | Claim No.: | 58085 |
|  | Bond No.: | W150126735 |
|  | Principal: | Smith and Ramirez Restoration, LLC |
|  | Company: | Old Republic Surety Company |
|  | Claimants: | Robert K. Hudnall and Benjamin Stevens |

Dear Counsel:

As you aware from our previous correspondence, Old Republic Surety Company received two claims against Bond # W150126735 (the "Bond") regarding work performed for your clients by Smith and Ramirez Restoration, LLC. The Bond expressly conditions payments upon a loss or damage as a result of the principal's failure to comply with Titles 9, 12, 13 or 18 of the El Paso City Code.

We have reviewed all of the materials you both have provided to Old Republic Surety Company regarding your clients' claims against the Bond. Both of your clients have claimed damages in excess of the entire amount of the bond. These competing claims each contain failed and passed inspections along with claims for damages alleged to have been caused by a failure of Smith and Ramirez Restoration, LLC to comply with the El Paso City Code.

While we have not received all of the documents requested to date, it does appear from the documents received and the investigation performed by Old Republic Surety Company that your client's claims are adverse and conflicting. At least one party has asserted that it is entitled to the full payment under the bond to the exclusion of the other. Therefore, Old Republic Surety Company is unable to determine which of your clients is entitled to the proceeds from the Bond

and is now an innocent stakeholder faced with the possibility of multiple liability and additional costs which in the aggregate, are well in excess of the penal sum of the bond.

As a result, Old Republic Surety Company intends to interplead and unconditionally deposit the bond proceeds with the Court to allow your clients to resolve their claims to the funds unless your clients can reach a mutual agreement as to the division of the funds and release my client from any further obligation. As you are likely aware, Texas law allows my client to recover its reasonable attorney's fees and costs incurred to proceed with the interpleader action. Should your clients not be able to reach an agreement without the need for us to interplead the funds, Old Republic Surety Company will ask the Court to award its reasonable attorneys' fees.

Please let me know by October 14, 2015, if your clients are willing to agree to a distribution of the Bond proceeds or whether you will require Old Republic Surety Company to proceed with the interpleader action.

If you have any questions, don't hesitate to contact me.

Very truly yours,

Kendal B. Reed

KBR/cdn

cc: VIA EMAIL: TYSMITH@SMITHANDRAMIREZROOFING.COM
CERTIFIED MAIL # 9414 7266 9904 2040 5440 13
RETURN RECEIPT REQUESTED
Mr. Ty Smith
Smith & Ramirez Restoration, LLC
6425 Boeing Dr., Suite B-9
El Paso, Texas 79925

VIA EMAIL: GBCR_LAW@ATT.NET
CERTIFIED MAIL # 9414 7266 9904 2040 5440 20
RETURN RECEIPT REQUESTED
Mr. Lane C. Reedman
Guevara, Baumann, Coldwell & Reedman, L.L.P.
4171 N. Mesa, Suite B-201
El Paso, Texas 79902

1362.38

# EXHIBIT C

Filed 1/29/2016 4:29:16 PM
Norma L. Favela
District Clerk
El Paso County
2015DCV3677

IN THE COUNTY COURT AT LAW NUMBER THREE
COUNTY OF EL PASO, TEXAS

| | | |
|---|---|---|
| OLD REPUBLIC SURETY COMPANY, | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CAUSE NUMBER: 2015DCV03677 |
| | § | |
| ROBERT K. HUDNALL and | § | |
| BENJAMIN STEVENS, | § | |
| Defendants, | § | |
| | § | |
| and | § | |
| | § | |
| SMITH AND RAMIREZ | § | |
| RESTORATION, LLC, | § | |
| Intervenor. | § | |

### SMITH AND RAMIREZ RESTORATION, LLC'S ORIGINAL PETITION IN INTERVENTION AND REQUEST FOR DISCLOSURE

COMES NOW Intervenor, Smith and Ramirez Restoration, LLC, and files this Petition in Intervention and request for disclosure as a party-defendant and alleges as follows:

### PARTIES

1. Intervenor is a Limited Liability Corporation who conducts business in El Paso County.

2. Plaintiff is a corporation who conducts business in El Paso County. A copy of this petition will be forwarded to Kendal B. Reed, attorney of record for Plaintiff.

3. Defendant Robert K. Hudnall is an individual and has appeared and answered. A copy of this petition will be forwarded to Richard Deck, attorney of record for Defendant Hudnall.

4. Defendant Benjamin Stevens is an individual and has appeared and answered. A copy of this petition will be forwarded to Michael J. Zimprich, attorney for Defendant Stevens.

## THE ORIGINAL LAWSUIT

5. On October 30, 2015, Plaintiff filed its Original Petition.

6. On December 17 and 18, 2015, Defendants filed their respective answers.

## TIMELINESS

7. Intervenor is entitled to file this petition because judgment has not been entered.

## INTERVENOR'S INTEREST IN LAWSUIT

8. Intervenor holds Bond #W150126735, from Plaintiff.

9. Intervenor received communication from Plaintiff indicating that Plaintiff deposited funds from the bond in the above-captioned cause.

10. A party has a justiciable interest in a lawsuit when its interests will be affected by the litigation. *In re. Union Carbide Corp.*, 273 S.W.3d 152, 155 (Tex. 2008); *Law Offices of Windle Turley, P.C. v. Ghiasinejad*, 109 S.W.3d 68, 70 (Tex. App.—Fort Worth 2003, no pet.). A party may intervene in a suit if it would have been able to defeat all or part of the recovery if the suit had been filed against it. *Guar. Fed. Sav. Bank v. Horseshoe Operating Co.*, 793 S.W.2d 652, 657 (Tex. 1990); *Metromedia Long Distance, Inc. v. Hughes*, 810 S.W.2d 494, 497 (Tex. App.—San Antonio 1991, writ denied).

11. As it regards the instant case, liability for the underlying bond is still contested in two related causes of action. Therefore, liability must be established before the funds from the bond are released. Until that time, the funds of the bond should remain in the registry of the Court or else returned to Plaintiff or Intervenor.

## INTERVENOR'S CAUSES OF ACTION

12. Intervenor incorporates by reference and attachment, the causes of action listed in its Original Petition, filed in the cause numbered 2015DCV1113, and attaches the same to the instant Petition.

## DAMAGES

13. Intervenor seeks the damages detailed in his Original Petition, filed in the cause numbered 2015DCV1113, and attaches the same to the instant Petition.

14. Intervenor also requests that the bond filed in this Court not be released to any party until and after liability is determined in the underlying causes of action.

## REQUEST FOR DISCLOSURE

15. Under Texas Rule of Civil Procedure 194, intervenor requests that plaintiff and defendant disclose, within 30 days after service of this request, the information or material described in Rule 194.2.

## PRAYER

16. For these reasons, Intervenor asks the Court to render judgment for Intervenor that Defendants take nothing against it and award intervenor the damages requested and all other relief to which is it entitled to in both equity and law.

Respectfully submitted,

VALENZUELA LAW FIRM
Felix Valenzuela
State Bar No. 24076745
221 N. Kansas, Ste. 1200
El Paso, Texas 79901
T: (915) 209-2719
F: (915) 493-2404

By:   /s/ Felix Valenzuela
      Attorney for Intervenor

## CERTIFICATE OF SERVICE

I hereby certify that, on January 29, 2016, I provided a true and correct copy of the foregoing to Richard Deck, via facsimile at 1-877-434-6917; Michael J. Zimprich, via email to mjzimp@mjzlaw-ep.com.

/s/ Felix Valenzuela

Filed 4/3/2015 7:41:16 AM
Norma L. Favela
District Clerk
El Paso County
2015DCV1113



SMITH AND RAMIREZ                    )(
RESTORATION, LLC                     )(
                                     )(
            Plaintiff,               )(
                                     )(
vs.                                  )(
                                     )(          Cause No. 2015-
ROBERT K. HUDNALL and                )(
SHARON E. HUDNALL,                   )(
                                     )(
            Defendants.              )(

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW SMITH AND RAMIREZ RESTORATION, LLC, a limited liability company duly registered in the State of Texas, hereinafter called "Plaintiff," and files this its Original Petition complaining of ROBERT K. HUDNALL and SHARON E. HUDNALL, hereinafter sometimes collectively called "Defendant," or "Defendants," and for cause of action, Plaintiff would respectfully show the Court as follows:

### DISCOVERY CONTROL PLAN
I.

Discovery in this case is intended to be conducted under Level 2 of Rule 190, Texas Rules of Civil Procedure.

### CITATION
II.

Defendant, ROBERT K. HUDNALL and Defendant, SHARON E. HUDNALL, each are individual residents of El Paso County, Texas, who may be served with process by serving him and her at 297 Puesta Del Sol Lane, El Paso, Texas, 79912.

# EXHIBIT A

The Plaintiff's cause of action, or part thereof, arose in El Paso County, Texas. Each Defendant is an individual resident of El Paso County, Texas. El Paso County, Texas is therefore, a proper county for venue of this suit.

## BREACH OF CONTRACT
IV.

At Defendant's request, Plaintiff provided labor and materials for construction work done at Defendant's residence, 297 Puesta Del Sol Lane, El Paso, Texas, 79912. Attached hereto as Exhibit "A", and incorporated herein by reference, is a Contract signed by Plaintiff and by Defendants which constitutes a contract whereby Plaintiff provided labor and materials for construction work done at Defendants' residence.

V.

Plaintiff proceeded to perform work at Defendant's residence pursuant to the said Contract, but Defendant failed to make full payment as agreed. Plaintiff provided to Defendant an invoice that describes the amount billed and the amount paid. A copy of this invoice is attached hereto as Exhibit "B" and is incorporated herein by reference.

VI.

Defendant promised to pay Plaintiff for this account, but still owes the amount of $8,965.68, plus accrued interest on the account at the legal rate from and after thirty days after payment on the said invoice was due. Although often requested to do so, Defendants have failed and refused, and still fail and refuse, to pay the account, all to Plaintiff's damage in the sum of $8,965.68, plus interest and attorney's fees as hereinafter alleged.

## QUANTUM MERUIT
VII.

In the alternative, Plaintiff provided to Defendants, at Defendants' request, the labor and materials described hereinabove. Defendants received the labor and materials described hereinabove, and Defendants accepted the benefits thereof, and Plaintiff is entitled to recover the reasonable value of the benefits

conferred, all of which Plaintiff alleges to be the sum of at least $8,965.68, plus interest accrued thereon at the legal rate.

ATTORNEY'S FEES
VIII.

Plaintiff made demand upon Defendant for payment of the account more than thirty (30) days prior to the filing of this suit by the letters attached hereto as Exhibit "C", and pursuant to Tex. Civ. P. & R. Code Section 38.0012, et seq., Plaintiff is entitled to recover a reasonable amount as attorney's fees.

WHEREFORE, PREMISES CONSIDERED, Plaintiff prays the Court that Defendant be cited to appear and file answer herein, and on final hearing hereof, that the Plaintiff, SMITH AND RAMIREZ RESTORATION, LLC, does have and recover of and from the Defendant, ROBERT K. HUDNALL, and from the Defendant, SHARON E HUDNALL, judgment, individually, jointly and severally, in the sum of $8,965.68, together with prejudgment interest thereon at the legal rate accruing on the amount due from and after thirty (30) days after such amount was due, and post-judgment interest as allowed by law, reasonable attorney's fees, and all costs of court, and for such other and further relief to which Plaintiff may show himself to be justly entitled.

DATED this _2nd_ day of _April,_ , 2015.

Respectfully submitted,

GUEVARA, BAUMANN, COLDWELL & REEDMAN, LLP
4171 North Mesa Street, Suite B-201
El Paso, Texas 79902
Tel.:     (915) 544-6646
FAX.:   (915) 544-8305

By: _____
Lane C. Reedman
Texas State Bar No. 16698400

Attorneys for Plaintiff

# EXHIBIT D

CAUSE NO. 2015DCV3677

FILED
NORMA L. FAVELA
DISTRICT CLERK
2016 JUN 17 AM 10: 37
EL PASO COUNTY
BY _____
DEPUTY

| | | |
|---|---|---|
| OLD REPUBLIC SURETY COMPANY, | § | IN THE COUNTY COURT |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| v. | § | |
| | § | AT LAW NUMBER THREE |
| | § | |
| ROBERT K. HUDNALL and BENJAMIN | § | |
| STEVENS, | § | |
| | § | |
| *Defendants.* | § | EL PASO COUNTY, TEXAS |

## ORDER GRANTING OLD REPUBLIC SURETY COMPANY'S
## FIRST AMENDED PETITION IN INTERPLEADER

On this day came on to be considered Old Republic Surety Company's ("Plaintiff") Original Petition in Interpleader (the "Petition"). After review of the Petition, and all replies thereto, the Court finds that Plaintiff's Petition should be GRANTED in its entirety.

IT IS THEREFORE ORDERED as follows:

1. That Plaintiff is discharged from any and all liability to each of the Defendants herein, Robert K. Hudnall, Benjamin Stevens Smith and Ramirez Restoration, LLC, and their heirs, assigns, and beneficiaries, for the Surety Bond issued by Plaintiff for Smith and Ramirez Restoration, LLC.

2. That Plaintiff may recover its costs and attorney's fees from the amount tendered to the Registry of the Court, in an amount of $ 12,542. 24/XX .

IT IS THEREFORE ORDERED, ADJUDGED and DECREED that Old Republic Surety Company is discharged from this suit, and discharged from all liability on its Engineering and Construction Management Blanket Building and Construction Bond No. W150126735.

IT is further ORDERED that Robert Hudnall, Benjamin Stevens, Smith and Ramirez Restoration, LLC, and all other claimants, whether known or unknown are enjoined from pursuing any action on any Bond claims against Old Republic Surety Company.

The Court orders the District Clerk to deliver payment of $ 12,542.24 to Old Republic Surety Company in care of Kendal B. Reed, Anderson Tobin, PLLC, 13355 Noel Road, Suite 1900, Dallas, Texas 75240, for attorney's fees and costs incurred in the interpleader action.

This case shall continue on the merits between Robert Hudnall, Benjamin Stevens and Smith and Ramirez Restoration, LLC to determine their respective rights to any remaining funds on deposit in the registry of the court.

SIGNED on the 17th day of _____ June _____, 2016.

_____
JUDGE PRESIDING

**EXHIBIT E**

IN THE COUNTY COURT AT LAW NUMBER THREE
EL PASO COUNTY, TEXAS

OLD REPUBLIC SURETY COMPANY

v.                                          Cause No.  2015DCV3677

ROBERT K. HUDNALL
AND BENJAMIN STEVENS

### DISMISSAL ORDER FOR WANT OF PROSECUTION

    BE IT REMEMBERED THAT THE COURT, AFTER DUE NOTICE TO ALL
THE PARTIES THROUGH THEIR ATTORNEY(S) OF RECORD AND/OR PRO SE
PARTIES OF RECORD IN THE ABOVE STYLED AND NUMBERED CAUSE,
THAT SAID CAUSE WOULD BE DISMISSED ON **MARCH 23, 2018,** FOR WANT
OF PROSECUTION UNDER RULE 165a, TEXAS RULES OF CIVIL PROCEDURE,
ON THE GROUNDS STATED IN THE NOTICE OF INTENT TO DISMISS FOR
WANT OF PROSECUTION, UNLESS THERE WAS GOOD CAUSE BEING SHOWN
TO RETAIN ON THE COURT'S DOCKET.

    IT IS THE **ORDER** OF THE COURT THAT THE ABOVE STYLED AND
NUMBERED CAUSE BE DISMISSED FOR WANT OF PROSECUTION UNDER
RULE 165a, TEXAS RULES OF CIVIL PROCEDURE.   COURT COSTS ARE
TAXED AGAINST PLAINTIFF.

    SIGNED March 26, 2018.

JAVIER ALVAREZ, Judge Presiding

**ORIGINAL TO BE FILED**



DWOP.ORDER

E

**EXHIBIT F**

Filed 7/8/2019 8:51 AM
Norma Favela Barceleau
District Clerk
El Paso County
2015DCV3677

## IN THE COUNTY COURT AT LAW NUMBER THREE
## EL PASO COUNTY, TEXAS

**OLD REPUBLIC SURETY COMPANY**

**Cause No. 2015DCV3677**

**V.**

**ROBERT K. HUDNALL and**
**BENJAMIN STEVENS**

**And**

**SMITH AND RAMIREZ RESTORATION LLC**

### AMENDED MOTION FOR A DECLARATORY JUDGMENT

Comes now Robert K. Hudnall, defendant in the above styled action and files, this, his Motion for a Declaratory Judgment and show this Court as follows:

1. This **MOTION FOR DECLARATORY JUDGMENT** is filed under the Provisions of the TEXAS CIVIL PRACTICE AND REMEDIES CODE, Title 2, Subtitle C, Chapter 37, Section 37.003. Chapter 37 is also known as the Texas Uniform Declaratory Judgment Act (hereinafter referred to as TUDJA).

2. Under the provisions of the TUDJA, a court of record within its jurisdiction has power to declare rights, status and other legal relations whether or not further relief is or could be claimed. An action or proceeding is not open to objection on the grounds that a declaratory judgment or decree is prayed for.

As found in **Bonham State Bank v. Beadle, 907 S.W.2d 465 (Tex. 1995)**[1] a trial court has discretion to enter a declaratory judgment so long as it will serve a useful purpose or will terminate a controversy between the parties.

3. This have been said, though the trial courts have discretion with regard to entering declaratory judgements, courts are **obligated** to declare the rights of parties when such judgments will terminate the uncertainty or controversy giving rise to the lawsuit[2].

4. The purpose of this Chapter, as specified in Section 37.002(b) is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations. The stated purpose of the Statute is to grant remedial, not coercive relief[3]. The statute also specifies that this section is to be liberally construed and administered as the TUDJA is intended as a speedy and effective remedy for settling disputes before substantial damages are incurred and was enacted to provide a remedy that is simpler and less harsh than coercive relief if it appears that a declaration might terminate the potential controversy[4].

5. The TUDJA also states that a person interested under a deed, written contract

---

[1] Also see **United Interests, Inc. v. Brewington, Inc., 729 S.W.2d 897, 905 (Tex. App. – Houston [14th Dist.] 1987, writ ref'd n.r.e.)**

[2] **Public Util. Comm'n v. City of Austin, 728 S.W.2d 907, 910 (Tex.App. – Austin 1987, writ ref'd n..r.e.)**

[3] Under Texas law coercive relief requires a party to do or omit doing a specific act through injunctive relief or court order of specific performance.

[4] **Town of Annetta South v. Seadrift Development, L.P., 446 S.W.3d 823 (Tex. Civ. App – Fort Worth 2014, pet. Denied.)**

or other writings constituting a contract or whose rights, status or other legal relations are affected by a statute, municipal ordinance, contract or franchise may have determined any question of construction or validity arising under the instrument, statute, ordinance, contract, or franchise and obtain a declaration of rights, status or other legal relations thereunder[5].

6. Under the provisions of Section 37.008 of the TEXAS CIVIL PRACTICE AND REMEDIES CODE, the Court may refuse to render or enter a declaratory judgment or decree if the judgment or decree would not terminate the uncertainty or controversy giving rise to the proceeding. In this instance, the rendering of the declaratory judgment would terminate the uncertainty or controversy, therefore DEFENDANTS are entitled to the entry of a declaratory judgment in this matter.

7. It is specified in the TUDJA that a Declaratory Judgment is remedial and not coercive in nature, therefore, DEFENDANTS are not asking the Plaintiffs be ordered to do anything or required not to do anything, but merely to have the status of the case determined as it is today, which would be considered remedial in nature.

8. It is also Defendant, Robert K. Hudnall's position that this was not an adversarial proceeding, but rather one where the Plaintiff was required to

---

[5] Texas Civil Practice and Remedies Code, Section 37.004(a) (Vernon 2008).

3

deposit the bond, for which premiums had been paid with the court for the court to determine dispersal. There was no need for numerous calls, mails and conferences for Plaintiff's attorney and certainly no statutory basis for using the proceeds of the bond to pay Plaintiff's attorney for unnecessary actions.

9. The funds deposited with the Court by Old Republic Surety Company were the proceeds of a bond underwritten by Plaintiff for SMITH AND RAMIREZ RESTORATION, LLC that was required to be posted by El Paso City Ordinance in order for SMITH AND RAMIREZ RESTORATION, LLC to perform as a contractor (See Contractor Registration Requirements sheet at Exhibit A).

10. Under the provisions of Rule 201 of the Texas Rules of Evidence, Defendant Robert K. Hudnall does ask this court to take judicial notice of the fact that local ordinance requires the posting of said bond as part of the Contractor Registration Requirements as said requirement is generally known within the trial court's territorial jurisdiction and it can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned (Rule 201(b) of the Texas Rules of Evidence).

11. It is the position of Defendant, Robert K. Hudnall that the Court should have taken judicial notice on its own and had he been made aware of the action and the hearing in question, he would have brought this to the court's attention.

Under the provisions of Rule 201(c), Defendant Robert K. Hudnall would have requested said judicial notice and presented the Court with the necessary information.

12. Defendant Robert K. Hudnall does not ask the court to take judicial notice of the Contractor Registration Requirements as Rule 201(e), a party is entitled to be herd on the propriety of taking judicial notice and the nature of the fact to be noticed at any time in the proceeding (Rule 201(d)).

13. Defendant Robert K. Hudnall does show that the bond, in the amount of $25,000.00 was ordered to be posted as a protection for the prospective customers of SMITH AND RAMIREZ RESTORATION LLC and the Court should have taken judicial notice of local ordinances. The existence of this indisputable fact would have been conclusive under Texas law.

14. Finally, a fact of which judicial notice can be taken is a matter of evidence and knowledge on the part of courts which requires no formal proof[6].

15. Defendant Robert K. Hudnall does further show that that Defendant Robert K. Hudnall was a roofing customer of SMITH AND RAMIREZ RESTORATION LLC and thus one of the class the local ordinance was designed to protect.

---

[6] Harper v. Killion, 162 Tex. 481, 348 S.W.2d 521 (1961) (quoting Burtis v. Butler Bros., 148 Tex. 543 226 S.W.2d 825, 830 (1950)

16. Defendant Robert K. Hudnall does further show that the work of SMITH AND RAMRIEZ RESTORATION LLC and the ultimate product was defective and Defendant Hudnall's property was damaged as a direct result.

17. Defendant Robert K. Hudnall does show that he did call upon Plaintiff to pay said bond to Defendant to partially cover the damages to Defendant's property, but said bond was never paid to Defendant.

18. Defendant Robert K. Hudnall does show that he only became aware of the activities of Kendal B. Reed when Defendant Hudnall filed a notice of appearance to represent himself as a pro se as a result of his counsel of record withdrawing and the District Clerk's Office notifying him of funds being held in regard to this matter..

19. The record does show that Plaintiff did place the funds, in the amount of $25,000.00 with the court with Kendal B. Reed as attorney for the Plaintiff.

20. Defendant Robert K. Hudnall does further show that the bond was not used as required by city ordinance to assist the customers of SMITH AND RAMIREZ RESTORATION LLC, but rather to benefit ATTORNEY KENDAL B. REED at the expense of the intended beneficiaries. By using the bond proceeds to pay costs incurred by the Plaintiff (fees to Kendal B. Reed), Plaintiff in fact did not make available the sum of $25,000.00 required by city

ordinance, but rather used approximately one half of the amount for its own purposes.

21. Defendant Robert K. Hudnall does further show that in his opinion, the court lacked jurisdiction to make the award to Kendal B. Reed as it had no jurisdiction to hear the case or make the award of attorney's fees, nor grant Plaintiff protection from being sued by these Defendants for the following reasons:

- Defendant Robert K. Hudnall has no record nor knowledge of being served with process in this matter and the Sheriff's return of service does not show that Robert K. Hudnall signed said return of service nor is there any indication on the document in question that he ever saw it, and

- Richard Deck, as attorney for Defendant Robert K. Hudnall did file an answer, but this was based on knowledge of the action gained as Defendant's attorney in another action filed against SMITH AND RAMIREZ RESTORATION LLC in another court. The filing of the answer did not cure the failure to properly serve process on defendant as required by the Texas Rules of Civil Procedure.

- In the order setting the hearing dated March 11, 2016, Judge Javier Alvarez did order the requesting party, Kendal B. Reed to give notice

of the setting of the hearing to **all parties and counsel of record or Pro se**. A review of the case file as well as the meticulous billing records submitted by Kendal B. Reed does show that there was a failure to serve Defendant Robert K. Hudnall with notice of said setting, thus he violated the court order and Defendant, Robert K. Hudnall's right to due process of law was also violated.

22. It is also Defendant Robert K. Hudnall's position that even if the court had jurisdiction over this matter, to award almost one half of the total of a bond required by city ordinance for the protection of prospective clients of the contractor to the attorney for the bonding company is beyond understanding, not reasonable or necessary or equitable or just and is a clear violation of local ordinance which made clear the purpose of said bond.

23. Though a court has broad discretion in regard to the award of attorney's fees, there is a standard of review as to whether or not there has been an abuse of said discretion. The attorney's fees must be:

- Reasonable,
- Necessary
- Equitable, and
- Just,

24. To award one half of the total of a bond for attorney's fees for actions not germane to the case in question is not reasonable nor necessary, certainly not equitable or just. It was not for the Plaintiff to defend a claim against the bond as the bond was based on the success or failure of the contactor's work. Once it was determined that the contractor's work failed, the bond was forfeit, it was almost a strict liability situation, not one subject to litigation.

25. As a matter of local ordinance, the bond was to be posted in the amount of $25,000.00 to be used for the protection of the customers of the contractor. Nothing was said in the local ordinance about Plaintiff, the bonding company, paying their attorneys from the proceeds of the bond. This was unjust enrichment on the part of the Bonding company as well as their attorneys and a clear violation of local ordinance.

26. It is Defendant, Robert K. Hudnall's position that the way in which this bond was handled amounted to fraud as well as a violation of the El Paso ordinance regarding Contractor Registration Requirements. Said fraud could not have been successful without the Plaintiff and their attorneys working toward the same end.

27. As to attorneys, Texas follows the American Rule whereby parties are ordinarily required to bear their own attorney's fees absent explicit statutory

authority[7]. There was no statute authorizing payment of attorney's fees out of the bond in question which was posted for a specific purpose as per local ordinance, the protection of prospective customers of the contractor of which Defendant Robert K. Hudnall was one.

28. The bond was not ordered to be posted as a protection for the attorney for the Plaintiff, or to defray Plaintiff's attorneys fees, but rather as a protection for the customer of the contractor who posted the bond and it was ordered to be placed in the amount of $25,000.00, not $12,500.00.

29. Defendant Hudnall was a third-party beneficiary to the bond in question and as such was entitled to at least one half of the bond as posted, if not all of the bond since his damages far exceeded the $25,000.00 bond.

30. Since this case is still pending, this Court still has jurisdiction over the funds in question as well as the parties.

### PRAYER FOR RELIEF

Since a Declaratory Judgment is not coercive in nature but rather remedial, this court does make the following findings based on the record and local ordinance of which this court does take judicial notice. Based on the foregoing, Defendant, Robert K. Hudnall does ask this court for the entry of a Declaratory Judgment that:

---

[7] Tony Gullo Motors I, L.P. v. Chapa, 212 S.W.3d 299, 310-11 (Tex. 2006) (citing Buckhannon Bd. And Care Home, Inc. v. West Virginia Dept. Of Health and Human Res., 532 U.S. 598, 602, 121 S.Ct. 1835, 149 L.Ed.2d 855 (2001))

1. There was no initial service of process conclusively establishing service over this Defendant made a part of the record.

2. Local ordinance required the placing of the bond in question as a requirement of Contractor Registration.

3. Plaintiff did act as a surety in the posting of said $25,000.00 bond.

4. Defendant Hudnall did make demand for payment of the bond in question.

5. The Plaintiff did place the bond in the custody of the Court.

6. Attorney Kendal B. Reed did not serve notice of the setting of the hearing for April 28, 2016 on Defendant Robert K. Hudnall, a party to the action, as specifically ordered on March 11, 2016.

7. The attorney's fees granted to Attorney Kendal B. Reed by this court were not statutorily authorized nor envisioned by local ordinance and should not have been paid from the posted bond which was placed for the protection of prospective customers of the contractor not Plaintiff's attorney.

8. Under the American Rule, Plaintiff was and should have been responsible for its own attorneys' fees.

9. Since the end result of the actions of Plaintiff's attorney Kendal B. Reed resulted in Plaintiff not making the sum of $25,000.00 available to those protected by the local ordinance, Plaintiff should be required to comply with

the terms of the bond and submit the balance required to bring the total to the required $25,000.00.

Respectfully submitted,

/s/ ROBERT K. HUDNALL
ROBERT K. HUDNALL
PRO SE
5823 N. MESA, #839
EL PASO, TEXAS 79912
EMAIL: kenhudnall0@gmail..com
915-478-1114

## CERTIFICATE OF SERVICE

I certify that on July 5, 2019, a true and correct copy of this Motion for Declaratory Judgment was serviced on all parties and counsel electronically through the electronic filing manger.

/s/ ROBERT K. HUDNALL
PRO SE

# EXHIBIT G

Filed 7/2/2019 10:05 AM
Norma Favela Barceleau
District Clerk
El Paso County
2015DCV3677

IN THE COUNTY COURT AT LAW NUMBER THREE
EL PASO COUNTY, TEXAS

OLD REPUBLIC SURETY
COMPANY; SMITH AND RAMIREZ
RESTORATION, LLC

v.                                        Cause No. 2015DCV3677

ROBERT K. HUDNALL; BENJAMIN
STEVENS

### ORDER SETTING HEARING

**IT IS HEREBY ORDERED** that a ***MOTION HEARING*** is hereby scheduled for ***JULY 11, 2019*** at ***2:30 PM*** in the County Court at Law Number 3, 500 E. San Antonio Street, 10th Floor, Room 1001, El Paso, Texas 79901.

**ATTENTION: Parties shall provide a courtesy hard copy, MAILED OR HAND-DELIVERED, to the Court of motions, responses and pertinent supporting documents, no later than 7 working days before the hearing. Failure to comply with this order may result in cancellation of the hearing. **By Standing Order in Civil Matters signed and entered by the Council of Judges, pursuant to the Texas Supreme Court order mandating electronic filing of civil matters effective January 1, 2014.**

*YOUR CASE MAY BE DISMISSED FOR WANT OF PROSECUTION FOR FAILURE OF ANY PARTY SEEKING AFFIRMATIVE RELIEF TO APPEAR FOR ANY HEARING OR TRIAL OF WHICH THE PARTY HAD NOTICE.*

SIGNED on this the 2nd day of July, 2019.

*Javier Alvarez*

JAVIER ALVAREZ, Judge
County Court at Law Number 3

**eFile Texas Service:**
Kendal B Reed
Richard Deck
Michael J Zimprich

# EXHIBIT H

Filed 7/17/2019 9:13 AM
Norma Favela Barceleau
District Clerk
El Paso County
2015DCV3677

CAUSE NO. *2015DCV3677*

| | | |
|---|---|---|
| **Old Republic Surety Company,** | § | **IN THE COUNTY COURT** |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| | § | **EL PASO COUNTY, TEXAS** |
| *v.* | § | |
| | § | |
| **Robert K. Hudnall,** | § | |
| *Defendant.* | § | **COUNTY COURT AT LAW 3** |

## AMENDED ORDER RETURNING CASH BOND

The District Clerk is **ORDERED** to disburse to The Law Offices of Michael J. Zimprich,

PLLC, funds on deposit being held by the District Clerk in the sum of $12,457.76, in the above

styled and numbered cause, minus any administrative fee.

Signed this _17th_ day of _July_, 2019.

_____
Presiding Judge

APPROVED BY FORM AND SUBSTANCE:

_____
Michael J. Zimprich
Attorney for Plaintiff

_____
Robert K. Hudnall

# EXHIBIT I

IN THE DISTRICT COURT OF EL PASO COUNTY, TEXAS

448th JUDICIAL DISTRICT


SMITH and RAMIREZ RESTORATION

VS

CAUSE NO. 2015DCV1113

ROBERT K. HUDNALL and SHARON E.
HUDNALL

---

ORDER GRANTING SMITH and RAMIREZ RESTORATION'S
MOTION TO INVOKE PREEMPTIVE ARBITRATON CLAUSE

---

On this day, came on to be considered, Smith and Ramirez Restoration's Motion To

Invoke Preemptive Arbitration Clause which was E-filed on 8/12/2019 within Plaintiff's

Response to Defendant's Motion for Declaratory Judgment. The Court, having reviewed and

considered the Motion and Response filed is of the opinion and finds that the Motion should be

GRANTED.

IT IS THEREFORE ORDERED; ADJUDGED and DECREED that Smith and Ramirez

Restoration's Motion to Invoke Preemptive Arbitration Clause is GRANTED.

SIGNED this _28_ day of _AUGUST_, 2019.


JUDGE SERGIO H. ENRIQUEZ
448TH District Court

I

**EXHIBIT J**

297 Puesta Del Sol
El Paso, Texas 79912
September 17, 2020

American Arbitration Association
Attn: Dennis Bair
Manager of ADR Services
Email: Dennisbaird@adr.org

RE: Answer and Counterclaim

Dear Sir,

On September 11, 2020, Smith and Ramirez Restoration LLC, by and through their attorney Kurt G. Paxson did file a demand for arbitration. They maintain that they provided labor and materials for construction work done at Respondents[1]' residence pursuant to a contract entered into by claimant and respondents. They further maintain that the respondents failed for pay claimant for the work provided under said contract. This answering statement and counterclaim is filed with the AAA under the provisions of Rule R-4(c) i and ii.

1. **Answer** –

    a. Objection to Jurisdiction under Rule 9: While a contract was entered into for Smith and Ramirez Restoration, LLC to install a new roof on the Respondents' home it was breached in a number of ways by Smith and Ramirez as shown below:

       1. It is the belief of the Hudnalls that by initially filing suit in court, which was specifically prohibited by the Contract in question Smith and Ramirez waived their right to seek mediation. The sum for which they claim in this mediation was reimbursements for repairs they had to do on the residence which were caused by their own negligence.

---

[1] At the time of contract, Smith and Ramirez Restoration LLC was made fully aware that Respondent, Robert K. Hudnall, was a 100% disabled veteran who did not work. The roof would be paid for by homeowner's insurance with Liberty Mutual Insurance. After this Alex Ramirez continually made reference to all of the *free* VA money I could get and that they wanted half of it.

2. Said contract was unilaterally changed by Smith and Ramirez after Respondents' signed it and without their knowledge.

3. The roof installation failed city inspection (Exhibit 1) and Smith and Ramirez refused to stand behind their warranty or make any necessary repairs.

4. The following paragraphs of the contract were breached by the actions and/or omissions of Smith and Ramirez Restoration LLC:

   a. Paragraph 1 - Guarantee of Satisfaction: There was a guarantee that that the roofing system installed would perform as they stated. We contracted for a roof that would meet city specifications. Smith and Ramirez failed to furnish a satisfactory roof that met city specifications.

   b. Paragraph 3 – Entire Agreement – This clause specifies that this agreement is the entire agreement and yet Smith and Ramirez Restoration LLC made several side deals with the insurance adjuster for Liberty Mutual Insurance, that Respondents were never made aware of. Respondents agreed to pay the amount of $19,510.14 for a roof that would pass inspection. At no time was Respondents given an invoice for $31,879.82 and they were not made aware of the side deals or did they agree to any amounts other than the original invoice. In actuality Respondents, in addition to feeding the crew at our expense each day for lunch, paid Smith and Ramirez Restoration LLC the sum of $22,919.15.

   c. Paragraph 10 – Contractor's Warranty – Work was allegedly completed but has leaked continually. Smith and Ramirez Restoration, LLC has refused to do any warranty work. However, as a matter of Texas State Law, the work is not completed until the roof passed a city inspection. It has not done so to this date

2

as shown by the letter at Exhibit 1. In fact, the roof failed inspection badly and has only gotten worse with time. No representative of Smith and Ramirez Restoration LLC has set foot on Respondents' property since December 27, 2014. Therefore, respondents have not received the benefit of the contract for which they paid.

d. Paragraph 13 – Settlement of Disputes – According to the terms of the contract, in the event that any dispute shall arise between the parties to this contract, customer and Contractor agreed that final and binding Arbitration under the rules of the AAA shall be the sole and exclusive means of resolving such disputes. However, the first thing that Smith and Ramirez Restoration LLC did was file suit ignoring this paragraph in its entirety – after a large expenditure of time and money by Respondents to defend this frivolous suit, the Court referred the matter to the AAA. This force Respondents to pay again to litigate this matter and would be in effect a form of double jeopardy since their filing of suit in court required the payment of attorney's fees and costs for the court proceeding for which Respondents' received nothing.

e. The Contract called for a $25,000.00 bond to be put up by Smith and Ramirez Restoration LLC to indemnify respondents in case of issues. When Respondents tried to get the bond after roof failed, the attorney for Smith and Ramirez fought it being released to Respondents for almost 3 years. When it was released to Respondents by the Court on July 11, 2019, Respondents received only $6,000.00. The attorney for the bonding company demanded $12,500.00 for his need to come to El Paso and there was another claimant that

had also been seriously damaged by the substandard work of Smith and Ramirez Restoration LLC who demanded half of the bond. Thus, Respondents were not protected by a $25,000.00 bond as warranted by Smith and Ramirez.

f. The contract was also based upon Smith and Ramirez Restoration LLC having suitable liability insurance which has refused to pay anything to rectify these issues based on the refusal of Smith and Ramirez Restoration to file a claim.

2. **COUNTERCLAIM** – Under the provisions of Rule R-4(ii)

a. In addition to not getting the agreed upon roof (Replacement cost $25,000.00 plus), Respondents were damaged as follows and do counterclaim for $1,303,000.00 which is explained by for the following amounts.

1. As shown by a scientific report prepared by Sun City Analytics (Exhibit 2) the continual leaks caused due to the substandard roof caused the growth of toxic mold in and throughout the walls of the house.

2. As shown by medical reports (available upon request- protected by HIPPA due to confidential information contained in said reports), this continual exposure to the toxic mold caused Robert K. Hudnall a number of serious medical problems to include pulmonary disease with lung scarring which is a permanent condition and a long-term disability.

3. The widespread leaks were directly caused by the negligence of Smith and Ramirez Restoration, LLC and its employees.

4. In addition to the medical problems suffered by both respondents, the presence of toxic mold resulted in damage to furniture and the necessity for moving an art collection and book collection out of the house. The storage, restoration and care

of the art collection has cost as of the filing of this counterclaim in excess of $35,000.00 which has been fully paid by Respondents. The storage of the book collection has, to date, cost in excess of $15,000.00 which has been paid by Respondents.

5. Furniture damaged by leaking roof that could not be salvaged - $20,000.00.

6. It has been discovered that there were a number of areas that were damaged by the workmen and kept secret from Respondents. One of these was severe damage to the bathtub, ceiling and wallpaper in the guest room bathroom. Cost to repair/replace the fixtures, repairs the ceiling and repaper the walls in the bathroom $11,000.00.

7. Estimates to remove the mold, replace damaged drywall and insulation and restore the house to its original condition, according to the most recent estimate will cost in excess of $178,000.00 (proof available upon request).

8. Balance of the $25,000.00 bond that Respondents were entitled to but failed to receive due to multiple claimants for said funds, $19,000.00.

9. Medical costs for the respiratory problems and other permanent medical issues caused to both of the Respondents by the mold that has infested the house due to the substandard installation - $1,000,000.00 – estimated over projected lifetime.

Respectfully submitted

/s/ ROBERT K. HUDNALL
Robert K. Hudnall
297 Puesta Del Sol
El Paso, Texas 79912
915-478-1114
Kenhudnall0@gmail.com

/s/ SHARON E. HUDNALL
Sharon E. Hudnall
297 Puesta Del Sol
El Paso, Texas 79912
915-478-1114
kenhudnall@gmail.com

cc. Kurt G. Paxson paxson@mgmsg.com



### Planning & Inspections Department

Mayor
Oscar Leeser

Hudnall Robert
297 Puesta Del Sol Ln.
El Paso, Texas 79912

**City Council**

*District 1*
Ann Morgan Lilly

*District 2*
Larry Romero

*District 3*
Emma Acosta

*District 4*
Carl L. Robinson

*District 5*
Dr. Michiel R. Noe

*District 6*
Claudia Ordaz

*District 7*
Lily Limón

*District 8*
Cortney C. Niland

**City Manager**
Tommy Gonzalez

May 26, 2015

RE: BRFF14-01580

A building investigation was conducted on May 21, 2015 at 297 Puesta Del Sol Ln. and the following violations as per the 2009 International Residential Building Code and the El Paso Municipal Code of Ordinances Title 18 (Building and Construction):

1) IRC 2009 Section 903.1 General, Roof assemblies shall be designed and installed in accordance with this code and the approved manufacture's installation instructions as such that the roof assembly shall serve to protect the building or structure.( There are many collapsible spots on roof decking, Overlapping of roll roofing material flaps are not adhered properly at various locations.)

2) IRC 2009 Section 903.2 Flashing, Flashings shall be installed in a manner that prevents moisture from entering the wall and roof through joints in copings, through moisture permeable materials and at other penetrations through the roof plane.

3) IRC 2009 Section 904.2 Compatibility of materials, Roof assemblies shall be of materials that are compatible with each other and with the building or structure to which the materials are applied.

If you have any additional questions, please call me at (915) 235-7502.

*Wayne B. Fannin*

Wayne B. Fannin, Jr.
Residential Combination Inspector Supervisor



Planning & Inspections Department
City 3 | 801 Texas Avenue | El Paso, Texas 79901 | (915) 212-0083

*Dedicated to Outstanding Customer Service for a Better Community*

EXHIBIT 1

# EXHIBIT L

# AMERICAN ARBITRATION ASSOCIATION

In the matter of Arbitration Case No.: 01-20-0014-8456

Between

Smith and Ramirez Restoration, LLC

v.

Robert K. Hudnall and Sharon E. Hudnall

## ORDER RE EMERGENCY MOTION AND OBJECTION TO ARBITRATION

The Arbitrator has reviewed and considered Claimant's (Smith & Ramirez) Motion for Emergency Hearing dated March 29, 2021 and Hudnall's Response dated March 30, 2021 – no reply was filed nor was one deemed necessary by the Arbitrator. The Arbitrator is also in receipt of Hudnall's Legal Objection to Arbitration dated March 31, 2021.

Pursuant to notice issued by the Case Administrator Dennis Baird, a telephonic hearing was conducted with both parties and the Arbitrator on April 1, 2021. The hearing was attended by Counsel for Smith & Ramirez, James A. Martinez, Respondent Robert Hudnall, Case Administrator Dennis Baird, and Arbitrator, Guy W. Bluff. Upon agreement of the parties the hearing was recorded and then transcribed. A copy of the hearing transcript is attached to this Order.

## EMERGENCY MOTION

### April 2, 2021 Site Inspection

Smith and Ramirez advise that it presently has its Expert Consultant scheduled to perform the previously agreed Site Inspection of the roof which is the subject matter of the Arbitration. By Order dated March 15, 2021, the Arbitrator has previously ordered that a site inspection occur and provided the parties with the time limitations and COVID safe practices that would be in effect. The site inspection is scheduled for Friday, April 2, 2021.

Hudnall objects to the site inspection and advises that he will not permit the same to be conducted as he previously agreed or as scheduled. Hudnall informed the Arbitrator that he will legally trespass and seek removal through the authorities

any person who presents themselves at the inspection or who otherwise attempts to perform an inspection of the roof.

Based on Mr. Hudnall's objection, threat to trespass and seek the removal of all persons who attempt to access his property, the Site Inspection is cancelled. Based on Hudnall's refusal to permit a site inspection, the Arbitrator understands that Claimant's ability to submit its expert witness report may be impacted. Claimant shall make reasonable efforts to prepare and submit its expert witness report by the deadlines previously established in the January 18, 2021 Scheduling Order. Additional time may be permitted if necessary in the interest of justice. Hudnall's expert witness report deadline will not be extended.

<u>Deposition of Respondent</u>

Hudnall objects to the taking of his deposition for any purpose and advised the Arbitrator that he will not permit the same despite his prior agreement during the preliminary hearing and in violation of the Arbitrator's Scheduling Order dated Jan/18/2021, Section 3(b). Based on Hudnall's refusal to participate in a deposition, despite his prior agreement and the Arbitrator's prior orders, the deposition will not be scheduled.

## LEGAL OBJECTION TO ARBITRATION

This Arbitration and the related civil litigation stems from a June 9, 2014 construction contract between Robert Hudnall as the homeowner and Smith & Ramirez Restoration ("S&R") as the roofing contractor. S&R claims that it completed the roof repair and obtained a final inspection from the City of El Paso on October 30, 2014[1] and was thereafter due full payment of the contract amount.

The Jun/9/2014 contract contains a dispute resolution procedure which mandates Arbitration.

13. **Settlements of Disputes**. In the event any dispute shall arise between the parties to this contract, Customer [Hudnall] and Contractor [S&R] agree that final and binding Arbitration under the rules of the American Arbitration Association shall be the sole and exclusive means of resolving such dispute with all expenses of such arbitration divided equally between Customer and Contractor.

As set forth in greater detail below, the Arbitrator finds that Hudnall's <u>Objection to Arbitration</u> is not well founded, is misleading, and omits critical facts

---

[1]     This is a DISPUTED issue of fact that the Arbitrator will have to address at hearing.

which preclude the granting of the same. By Court Order dated August 28, 2019, (2015DCV1113) Judge Sergio H. Enriquez ordered the parties to participate in binding Arbitration administered by the American Arbitration Association (<u>See</u> Exhibit C).[2] The Arbitrator further finds that by filing his <u>Answer and Counterclaim</u>[3] with the American Arbitration Association on September 17, 2020, Hudnall has waived any right to object to the Arbitration or the Arbitrator's jurisdiction.

The court docket in the underlying litigation (2015DCV1113) filed April 3, 2015 shows a long history of litigation spanning more than five years – all culminating in a final non-appealable order and mandate requiring this present arbitration proceeding.[4]

## RES JUDICATA / COLLATERAL ESTOPPEL DO NOT APPLY

The Arbitrator further finds that Hudnall's arguments that Judge Alvarez has issued a FINAL ruling on the merits thus precluding this Arbitration is not supported by the evidence. To the contrary, the Arbitrator finds, based on a review of the various exhibits, filings, and statements and admissions by the parties during the April 1, 2021 hearing that:

1] Judge Alvarez's Amended Order Returning Cash Bond was procured by the false representations of attorney Michael J. Zimprich. Zimprich represented himself to the Court as Attorney for the original Plaintiff – Old Republic Surety Company. He was not.

2] **Kendal B. Reed** was the attorney of record for Plaintiff **Old Republic Surety Company**. Michael J. Zimprich was the attorney of record for Defendant in the Interpleader action Benjamin Stevens.[5] At the time, Richard Deck was the

---

[2] Hudnall's appeal was dismissed by the Court of Appeals for the Eighth District of Texas on July 17, 2020. Hudnall was also ordered to pay S&R all costs of the appeal.

[3] In his Counterclaim, Hudnall sought affirmative relief of $1,303,000.

[4] In January 2015, S&R's attorneys sent a demand letter to Hudnall seeking payment of the unpaid contract balance of $8,965.88.[4] When Hudnall refused to make payment, on April 3, 2015, S&R filed its Original Petition for Breach of Contract with the 448th District Court. The case was assigned Case Number 2015DCV1113.

[5] It is unclear why attorney Zimprich even made an appearance in the ORSC Interpleader action on December 17, 2015 since earlier that same month, S&R and Stevens had entered into a <u>Mediated Settlement Agreement</u> in which Benjamin Stevens comprehensively released all claims against S&R. <u>See</u> Exhibit D.

3

attorney of record for Defendant in the Interpleader action – Robert Hudnall.[6] Felix Valenzuela was attorney of record for Intervenor S&R.[7]

3] On June 17, 2016, Judge Alvarez issued an Order Granting Old Republic Surety Company ("ORSC") interpleader, awarded ORSC its attorneys fees of $12,542.29, and then directed the remaining parties (Hudnall, Stevens, and S&R) to proceed on the merits of their respective claims and defenses. The Clerk subsequently issued a check to Kendal J. Reed for this amount. The Order specifically provided:

> This case shall continue on the merits between Robert Hudnall, Benjamin Stevens, and Smith and Ramirez Restoration, LLC to determine their respective rights to any remaining funds on deposit in the registry of the court.

4] At the time of issuing his June 17, 2016 Order, S&R had, through its Petition in Intervention filed January 29, 2016, advised Judge Alvarez of the earlier filed action (2015DCV1113), provided a copy of that original petition, advised Judge Alvarez of S&R's claim of damages, and requested:

> 14. Intervenor (S&R) also requests that the bond filed in this Court not be released to any party until and after liability is determined in the underlying causes of action.[8]

5] Judge Alvarez's June 17, 2016 Order clearly set forth the parties and the remaining claims which would abide another evidentiary hearing or trial on the merits. The anticipate trial / hearing "on the merits" never occurred.

6] On February 22, 2018, following what was more than 20 months of inactivity in the case, Judge Alvarez issued an Order setting a Dismissal Hearing for March 23, 2018 (Doc ID#22). Without objection having been filed by any of the remaining parties, the Interpleader case was DISMISSED without prejudice. Notice of the March 23, 2018 dismissal judgment was sent to Hudnall, Stevens & S&R by the Clerk.

---

[6] On June 26, 2019, Robert Hudnall filed his Notice of Appearance, pro se, in the place of Richard Deck.

[7] On Jul/27/2017, Attorney Valenzuela was granted withdrawal (Doc ID #20).

[8] Pursuant to Judge Sergio H. Enriquez's Order dated August 28, 2019, and as affirmed by the 28th District Court of Appeals on July 17, 2020, Hudnall and S&R were ordered to ARBITRATE their respective disputes. That arbitration is still pending.

4

7]    On June 21, 2019, fifteen months AFTER the ORSC Interpleader case was dismissed, the Court Clerk, still in possession of the remaining interpleader funds (approximately $12,400) sent notification to the parties. See Doc ID #26, 27, 28, & 29).

8]    Hudnall, apparently unaware of the case dismissal sixteen months earlier, filed his Notice of Appearance and an Amended Motion for Declaratory Judgment. [9](Doc ID #32).  In Hudnall's Motion, he requested that the Court grant very specific relief[10] – all of which are germane to his current claims in the Arbitration.

9]    Nothing in Hudnall's Motion can be construed as seeking a ruling by Judge Alvarez (1) that the roof failed to meet the standards required by the City of El Paso Municipal Code, and failed inspection; (2) that the roof in question failed to meet local code; (3) or that Judge Alvarez found that the Oct/30/2014 Building Inspection "was conducted from [the inspector's] desk and not a physical inspection".

NONE of these allegations by Hudnall are supported by the Court's record and are in fact belied by Hudnall's own filings and pleadings in that and the other courts. Of note is the admission made by Hudnall during the April 1, 2021 hearing. When asked if a trial on the merits ever occurred before Judge Alvarez, Hudnall responded "There was not." Transcript at page 12, lns 6 to 9. See also, page 12, lines 14 to 16 "Q. Was there a trial in the Old Republic interpleader case between you and Smith and Ramirez? A. In my capacity, representing myself, no."

10]    In response to Hudnall's Motion, Judge Alvarez conducted a hearing at which time Attorney Michael J. Zimprich, appeared as did Robert Hudnall. S&R DID NOT appear due to lack of notice[11].  Recall also, that the case had been DISMISSED by the Court on March 23, 2018.

---

[9]    The Court Docket does not reflect an original motion.  The titling by Hudnall is either in error or his earlier filed motion is not reflected in the record.

[10]    Hudnall argues lack of personal service of the original Petition in Interpleader; lack of notice of the April 28, 2016 hearing; and a ruling that the attorney's fees awarded to ORSC (Kendall Reed) from the interplead funds be reversed.

[11]    Hudnall did not give notice of his Jul/8/2019 Motion to S&R.  The Court's Order Setting Hearing dated July 2, 2019, reflects service only on Kendal B. Reed (Attorney for Old Republic), Richard Deck (former Attorney for Robert Hudnall), and Michael J. Zimprich (Attorney for Benjamin Stevens).  During the April 1, 2021 hearing, S&R avowed that it was not provided nor did it receive notice of the hearing. Transcript at page 9, lns 1-2.

Smith & Ramirez v. Hudnall                                    Arbitrator Order
AAA 01-20-0014-8456

11]    At the hearing of July 11, 2019, Hudnall and attorney Zimprich negotiated[12] between themselves how they would proceed.[13] Zimprich prepared a form of order for presentment, identified himself as the "Attorney for Old Republic" and then obtained Hudnall's "approval" of the form of order. Notably absent is any approval by S&R.[14]

12]    Since the case was previously dismissed for want of prosecution (DWOP) and having been presented with an "approved" form of Order from the "Attorney for the Plaintiff", Judge Alvarez did exactly that which one would expect – he entered an order RETURNING the balance of the interplead funds to the original party (Old Republic Surety Company). Judge Alvarez's Order is quite specific. "AMENDED ORDER **RETURNING** CASH BOND.[15]"

13]    Hudnall attempts to now capitalize on what can be nothing less than a fraud upon the court and now seeks to avoid an agreed upon and Court Ordered Arbitration based on the principals of res judicata and collateral estoppel. Hudnall argues that there was a "final adjudication on the merits" by Judge Alvarez by way of the Order Returning Cash Bond (Doc ID #33), and the Amended Order Returning Cash Bond (Doc ID #34). See Attached Exhibits A and B.

Hudnall Fails to Establish Res Judicata or Collateral Estoppel

Res judicata bars litigation of all issues and defenses which, with the use of diligence, might have been tried in the prior suit. *Bonniwell v.*

---

[12]    During the April 1, 2021 hearing, Hudnall admitted that he negotiated with Zimprich to split the funds once they were received from the Court Registry. Transcript at page 21, lns 3 to 7.

[13]    Zimprich and Hudnall "negotiated" that Zimprich would receive $1,021.20 for his fee. Robert Stevens would receive $5,182.65, and Robert Hudnall would be paid $6,203.88. All three of these parties profited from the fraud perpetrated upon the court. Recall that Stevens previously released S&R from all claims and demands on Dec/9/2015.

[14]    Given the ongoing history of litigation dating back to April 2015, and the fact that the S&R and Hudnall were ACTIVELY litigating their liability dispute in 2015DCV1113, it is inconceivable that S&R would have intentionally failed to appear at the July 11, 2019 hearing before Judge Alvarez if they had been given notice. The final pre-trial hearing in 2015DCV1113 was scheduled before Judge Enriquez for **July 12, 2019**, and a jury trial scheduled for **July 16, 2019**.

[15]    If Judge Alvarez had intended there to be a trial on the merits or otherwise an evidentiary hearing on the competing claims of Hudnall and S&R, he would have retained the interplead funds until such time as the case was properly reinstated on the active calendar, ordered the parties to file appropriate lists of witnesses and exhibits, and set the matter for a full hearing. He did not.

Smith & Ramirez v. Hudnall                                        Arbitrator Order
AAA 01-20-0014-8456

*Beech Aircraft Corp.,* 663 S.W.2d 816, 818 (Tex.1984). When there has been a prior judgment in a subsequent suit in which there is identity of parties, issues, and subject matter, such judgment is treated as an absolute bar to retrial of claims pertaining to the same cause of action on the theory that they have merged into the judgment. *Id.; Abbott Labs. v. Gravis,* 470 S.W.2d 639, 642 (Tex.1971). **Summary judgment may be granted upon a proper plea of res judicata.** *Walker v. Sharpe,* 807 S.W.2d 442, 447 (Tex.App.—Corpus Christi 1991, no writ). **A party asserting** the defense[16] of **res judicata has the burden** to present sufficient evidence to establish that it should apply, **including proving the judgment and pleadings from the prior suit.** *Id.*

*Bell v. Moores*, 832 S.W.2d 749, 754 (Tex. App. 1992), <u>writ denied</u> (Oct. 21, 1992) (emphasis added).

Broadly speaking, res judicata is the generic term for a group of related concepts concerning the conclusive effects given final judgments. *Puga v. Donna Fruit Co.,* 634 S.W.2d 677, 679 (Tex.1982). Within this general doctrine, there are two principal categories: (1) claim preclusion (also known as res judicata); and (2) issue preclusion (also known as collateral estoppel). Res judicata, or claims preclusion, prevents the relitigation of a claim or cause of action that has been finally adjudicated, as well as related matters that, with the use of diligence, should have been litigated in the prior suit (citing *Gracia v. RC Cola–7–Up Bottling Co.,* 667 S.W.2d 517, 519 (Tex.1984)). Issue preclusion, or collateral estoppel, prevents relitigation of particular issues already resolved in a prior suit.

*Barr v. Resolution Tr. Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 628 (Tex. 1992).

To establish res judicata, the defendant must demonstrate "(1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action." *Amstadt v. U.S. Brass Corp.,* 919 S.W.2d 644, 652 (Tex.1996).

*Barnes v. Deadrick*, 464 S.W.3d 48, 53 (Tex. App. 2015).

---

[16]    The principals of the affirmative use of res judicata are not substantively or procedurally different that when used as a defense.

Smith & Ramirez v. Hudnall                                      Arbitrator Order
AAA 01-20-0014-8456

The standard of review has been clearly mandated by the Texas Supreme Court as follows:

1.    The movant for summary judgment (declaratory relief) has the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.

2.    In deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the non-movant will be taken as true.

3.    Every reasonable inference must be indulged in favor of the non-movant and any doubt resolved in its favor.

*Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985); *Montgomery v. Kennedy,* 669 S.W.2d 309, 310–11 (Tex.1984).

The record in this case demonstrates none of Hudnall's allegations support a claim of res judicata or collateral estoppel. Admittedly, Smith and Ramirez was a party to the ORSC Interpleader action and had there been a full adjudication on the merits, it is possible that some portion of Hudnall's claims might be subject to a collateral estoppel argument.

The facts of this instant case have only one of the essential elements – identity of parties. The July 11, 2019 Order Returning Cash Bond is not dispositive and surely did not constitute a final judgment on the merits especially in light of July 17, 2019 Amended Order Returning Cash Bond. What is apparent from this record is that following the March 26, 2018 dismissal for lack of prosecution, the Clerk of the Court still had undistributed funds from the interpleader which needed to be disposed of.

For some unknown reason, the attorney for DEFENDANT Benjamin Stevens appeared in court and submitted a form of order identifying himself as the attorney for PLAINTIFF Old Republic Surety Company when in fact the attorney for Old Republic was Kendal B. Reed. [17] There having been no prior hearing or adjudication on the merits, the Court clearly intended to return / refund the unused interpleader

_____

[17]    Attorney Michael J. Zimprich, had an affirmative duty to advise the Court that he was the representative for Defendant Benjamin Stevens. The fact that the order was "Approved by form and substance" by both Defendants (Stevens) and Hudnall, only makes sense in light of the original competing claims of these parties to the interplead funds. Obviously lacking from this stipulated form of Order is any approval by the real party in interest Smith & Ramirez Restoration.

monies to the original party - Old Republic Surety Company. The language of the order itself made this clear -- "Amended Order RETURNING Cash Bond." (Emphasis added).

Had the Court intended to make any other finding, *i.e.* making a determination on the merits as between the competing claims of Hudnall and Stevens, or ruling finding Smith and Ramirez, the Court would have made such a finding – it did not. Further, since the case had been previously dismissed for lack of prosecution in March 2018, and no timely appeal having been filed, it is unlikely that the Court retained jurisdiction[18] to perform any act other than the administrative function of RETURNING the unclaimed funds to the ORIGINAL interpleader.

Nothing in this record supports a conclusion that there was (1) "a prior final judgment on the merits by a court of competent jurisdiction", or (2) that there was "a second action based on the same claims as were raised or could have been raised in the first action."[19]

> If a party or a suit is dismissed without prejudice, or if the plaintiff takes a voluntary nonsuit, res judicata has not occurred. *Moore v. Texas Oil and Gas Corp.,* 580 S.W.2d 133, 136–37 (Tex.Civ.App.— Waco 1979, writ ref'd n.r.e.); *Transamerica Ins. Co. v. Frost Nat'l Bank of San Antonio,* 501 S.W.2d 418, 422 (Tex.Civ.App.— Beaumont 1973, writ ref'd n.r.e.).

*Bell v. Moores*, 832 S.W.2d 749, 755 (Tex. App. 1992), <u>writ denied</u> (Oct. 21, 1992)

The Court's dismissal for lack of prosecution on March 26, 2018 was without prejudice. It could not have been otherwise. *See e.g., Ransom v. Gibson*, 553 S.W.3d 89, 94 (Tex. App. 2018) ("A dismissal for failure to appear at trial or for want of prosecution should be without prejudice").

---

[18]    Upon proper application, the Court could have technically re-instated the action upon providing proper notice to all parties at which time the court would have then set and issued appropriate pre-trial orders regarding discovery, deadlines, and a trial setting.

[19]    Interestingly, the original Smith & Ramirez v. Hudnall (2015DCV1113 – filed Apr/03/2015) case was earlier filed than the ORSC Interpleader action (2015DCV3677 – filed Oct/30/2015). As a matter of procedure, the ORSC Interpleader action should have been consolidated into the earlier filed action to avoid the potential for inconsistent rulings by the two different Courts.

9

Hudnall's argument that the "allegation [of defective work] is deemed to have been confirmed by the investigation conducted by Old Republic Surety Company" is not supported by admissible relevant evidence.[20]

Having failed to establish all necessary elements of res judicata, Hudnall's requested relief is DENIED.

There remain, among other matters, disputed issues of material fact whether:

(1) the roofing system failed.

(2) the extent of the "failures".

(3) the date(s) and cause of such "failures".

(4) whether the roofing system was installed in accordance with the manufacture's specifications and applicable building codes.

(5) whether ORSC performed an independent investigation into the alleged roof failures and the results and findings, if any, of that investigation.

## ADDITIONAL ORDERS

Absent a specific final Order from a Court of Competent Jurisdiction directing the Arbitrator and American Arbitration Association to stay or otherwise terminate the current arbitration proceedings, they will proceed.

In the event Hudnall desires to invoke the doctrine of res judicata, he shall obtain a specific detailed order from Judge Alvarez which makes the following findings.

1. Smith and Ramirez was afforded full and fair opportunity to appear and present evidence at hearing or trial on the merits in 2015DCV3677.

---

[20]    Paragraph 9 of the interpleader makes generalized statements and reflects only that ORSC considered the "alleged" building code violations and claims of defective work. On this record, the only reasonable inference which can be drawn is that ORSC as a disinterested party to a relatively small amount of funds - $25,000 -- simply chose to avoid an expensive and protracted litigation by interpleading the funds and allowing the dispute over amounts and liability to be litigated among the three real parties in interest. Nothing in this record supports Respondent's claim that ORSC "confirmed" the allegations "by investigation."

2. The July 17, 2020 ruling by the 8th District Court of Appeals and the August 28, 2019 by Judge Enriquez do not apply to the dispute between Hudnall and S&R in 2015DCV3677.

3. Hudnall's roof, installed during 2015 by S&R failed to meet the standards required by the City of El Paso Municipal Code at the time it was installed.

4. Hudnall's roof failed inspection and failed to meet the requirements of all applicable building codes at the time it was installed;

5. The Oct/30/2014 Building Inspection "was conducted from the inspector's desk and not a physical inspection".

The parties are directed to abide by the Scheduling Order dated January 18, 2021.

Dated this 5th day of April 2021.

/s/ Guy W. Bluff 16:47 p.m. Apr/5/2021
Guy W. Bluff - Arbitrator

| | |
|---|---|
| 1 | **AMERICAN ARBITRATION ASSOCIATION** |
| 2 | |
| 3 | In the matter of Arbitration Case No.: 01-20-0014-8456 |
| 4 | |
| 5 | Between |
| 6 | |
| 7 | Smith and Ramirez Restoration, LLC |
| 8 | |
| 9 | v. |
| 10 | |
| 11 | Robert K. Hudnall and Sharon E. Hudnall |
| 12 | |
| 13 | **TRANSCRIPT OF HEARING** |

| | | |
|---|---|---|
| 14 | Arbitrator: | So with the party's concurrence, and with the knowledge of the |
| 15 | | AAA, I'm making a transcript and a recording of today's call, and I |
| 16 | | want to go through a number of items. I do have very specific |
| 17 | | questions for the parties today so if I'm asking questions of one |
| 18 | | party, I would appreciate it if the other party does not object. I will |
| 19 | | give everybody fair opportunity today to be heard on the issues. So |
| 20 | | what I have in front of me are two motions, essentially a motion for |
| 21 | | emergency hearing that was filed by the claimant, [Mr. Martinez |
| 22 | | 00:00:37] and I also have a legal objection to the arbitration that has |
| 23 | | been filed by Mr. Hudnall. |
| 24 | | So Mr. Martinez, on the motion for emergency hearing, I just want |
| 25 | | to make sure that I understand what's going on. You have |
| 26 | | requested a ruling as it relates to both my prior order addressing |
| 27 | | the site inspection that was supposed to have occurred, I guess the |
| 28 | | last date for it would be April 2, and then also, you've provided me |
| 29 | | with some information indicating that Mr. Hudnall has also not |
| 30 | | only objected to the site inspection, but also will not be |

| | | |
|---|---|---|
| 1 | | participating in depositions, in my understanding, the basis of your |
| 2 | | motion? |
| 3 | Mr. Martinez: | Yes, sir. I can give you more information if you'd like but yes, that |
| 4 | | is the basis of it. |
| 5 | Arbitrator: | Okay, why don't you go ahead and give me any additional relevant |
| 6 | | information, this is not argument, this is just provide me additional |
| 7 | | data. |
| 8 | Mr. Martinez: | Yes, sir, I understand. Mr. Hudnall had transmitted an email to me |
| 9 | | earlier on indicating he declined to participate in depositions and |
| 10 | | saying he would not permit an inspection. After that I filed the |
| 11 | | motion to force for an inspection to enter upon property and then |
| 12 | | the tribunal issued an order and I just assumed, "Okay, well, that |
| 13 | | gives me the authority to conduct the inspection." Then after that, |
| 14 | | Mr. Hudnall communicated again that no, he would not permit and |
| 15 | | inspection and the inspection is scheduled by being pursuant to the |
| 16 | | arbitrators order. I provided notice to Mr. Hudnall it is scheduled |
| 17 | | for noon on Friday, which is April 2nd and my inspector is coming |
| 18 | | from Dallas and I mean, I can read Mr. Hudnall's transmissions, I |
| 19 | | understand he said he wouldn't permit it. |
| 20 | | My only purpose in asking for this hearing, Mr. Bluff – I mean, it |
| 21 | | is expensive to get my expert out here. He's an architect and an |
| 22 | | engineer. He lives and works in Dallas so it's a bit of an effort for |
| 23 | | him to come out here and I don't want to waste the time or the |
| 24 | | money if no inspection will take place, and maybe at the extreme, |
| 25 | | if it's not obvious, I'm a lawyer. I'm not interested in the breach of |

2

| 1 | | the peace. The last thing I want to happen is to go out there with |
| 2 | | my engineer and have him halfway up on a ladder for police to |
| 3 | | arrive and say, "No, you can't do that. The owner says you're |
| 4 | | trespassing. Leave." I'm not interested in that kind of activity and |
| 5 | | I'm simply trying to avoid that. |
| 6 | Arbitrator: | Thank you very much, Mr. Martinez. Mr. Hudnall, can you |
| 7 | | respond to and let me know what your intention is relative to both |
| 8 | | the site inspection and then also the deposition? |
| 9 | Mr. Hudnall: | All right. Yes, sir, I understand you got my filing yesterday which |
| 10 | | was a legal objection to the arbitration as such. Everyone seems to |
| 11 | | overlook the fact that a separate court of competent jurisdiction |
| 12 | | found the roof failed. The city said the roof failed and here we are |
| 13 | | over six years later, they want to inspect the roof. If res judicata |
| 14 | | and collateral estoppel don't apply because we're now in |
| 15 | | arbitration, I would point out the court that made the decision the |
| 16 | | roof failed is not subject to arbitration. There was no arbitration |
| 17 | | agreement and the claimants had every opportunity to litigate and |
| 18 | | appeal that decision and did not. Now, either the law applies or it |
| 19 | | doesn't. In 1966, the US Supreme Court said- |
| 20 | Arbitrator: | Mr. Hudnall, we're going to address your legal objection to the |
| 21 | | arbitration separately. I'm dealing with the Motion for Emergency |
| 22 | | Hearing regarding the site inspection, and so I'll give you a fair |
| 23 | | opportunity to argue the legal objection memo. So I just want to |
| 24 | | know, as it relates to the site inspection, are you intending to allow |
| 25 | | it to go forward tomorrow? |

| | | |
|---|---|---|
| 1 | Mr. Hudnall: | I am not. |
| 2 | Arbitrator: | Okay. |
| 3 | Mr. Hudnall: | A couple of months, I had to have pressure replaced because the |
| 4 | | disintegrating roof material was destroyed. The people who came |
| 5 | | to install the new compressor were afraid to get on the roof for fear |
| 6 | | they would fall through. They had to do their work from a crane. I |
| 7 | | am not going to jeopardize anybody's life, allow anybody to put us |
| 8 | | in a position of allowing them to go on this roof and another |
| 9 | | inspection over six years after the fact can only be for harassment |
| 10 | | purposes. There is no legal reason to do it and whether just |
| 11 | | anybody shows up, we'll call the police. |
| 12 | Arbitrator: | All right. So if somebody does show up to perform a site |
| 13 | | inspection, it's your intention to not allow it to proceed and you |
| 14 | | will trespass them. Is that a fair statement? |
| 15 | Mr. Hudnall: | That is correct. |
| 16 | Arbitrator: | Okay. As it relates to the deposition, is it your intention to allow |
| 17 | | your deposition to proceed? |
| 18 | Mr. Hudnall: | Based on my belief that this arbitration is improper and they will |
| 19 | | be raising issues about the roof, no. |
| 20 | Arbitrator: | Okay. So I just want to make sure, we'll argue your Legal |
| 21 | | Objection to the Legal Arbitration in a minute, is it your intention |
| 22 | | to allow your deposition to proceed? Just yes or no? |
| 23 | Mr. Hudnall: | No. |

| 1 | Arbitrator: | So the site inspection, Mr. Martinez, I think you've heard it, Mr. |
| 2 | | Hudnall will not allow the site inspection to proceed forward at |
| 3 | | this time. It may be rescheduled depending on the court's ruling in |
| 4 | | the permanent injunction hearing and so we'll have to re address |
| 5 | | that issue at a later time and depending on the court's ruling, I'll |
| 6 | | issue a subsequent order relative to the site inspection. But it |
| 7 | | sounds like Mr. Hudnall's not going to allow it to proceed in any |
| 8 | | instance. Is that a fair statement, Mr. Hudnall, that regardless of the |
| 9 | | court's ruling at the permanent injunction hearing that no site |
| 10 | | inspection will ever be permitted? |
| 11 | Mr. Hudnall: | That is correct. |
| 12 | Arbitrator: | Okay. Is it also my understanding that regardless of the court's |
| 13 | | ruling on the permanent injunction that you will not allow yourself |
| 14 | | to be deposed? |
| 15 | Mr. Hudnall: | That is correct. |
| 16 | Arbitrator: | Okay. So Mr. Martinez, we'll proceed forward based on the |
| 17 | | respondents refusals to both permit the site inspection and also to |
| 18 | | allow his deposition to be taken, so... |
| 19 | Mr. Martinez: | I understand. |
| 20 | Arbitrator: | Thank you very much, sir. All right. Now, Mr. Hudnall, I do have |
| 21 | | some questions. We're going to move to your Legal Objection to |
| 22 | | the Arbitration and Mr. Martinez, I'm going to start with you. |
| 23 | | These are questions that I need answered, and I just need kind of |
| 24 | | yes or no. I don't need an explanation and I don't need argument, |
| 25 | | again. Fair enough? |

5

| 1 | Mr. Martinez: | Yes, sir. |
|---|---|---|

| 2 | Arbitrator: | Okay. So earlier, we have addressed what was a number of |
|---|---|---|
| 3 | | Motions for Summary Judgment and Motions for Sanctions and in |
| 4 | | the briefing on those various motions, you provided me with a |
| 5 | | number of exhibits that – I can't remember all of them – but one of |
| 6 | | them in particular was your Exhibit 2, which was... Maybe it was |
| 7 | | Exhibit 1. Let me make sure I've got the right one. Okay. You |
| 8 | | provided me with Exhibit 4, which was the mediated settlement |
| 9 | | agreement as between Benjamin Stevens and Smith and Ramirez. |
| 10 | | As I understand it, Benjamin Stevens filed a complaint against |
| 11 | | Smith and Ramirez regarding some alleged defects in the roof. He |
| 12 | | was also a party to the Old Republic interpleader action and after |
| 13 | | the interpleader action was filed, but before it was fully |
| 14 | | adjudicated, there was a mediated settlement agreement, which |
| 15 | | you've provided me as Exhibit 4, whereby Mr. Stevens agreed to |
| 16 | | allow Smith and Ramirez to remove and replace his roof. Have I |
| 17 | | got that timeline and story correct so far? |

| 18 | Mr. Martinez: | Yes, sir. I believe that's correct. |
|---|---|---|

| 19 | Arbitrator: | Okay. So after the mediated settlement agreement, was Mr. |
|---|---|---|
| 20 | | Stevens, as I read that his settlement agreement, he was fully |
| 21 | | compensated and satisfied and was entitled to no further relief. |
| 22 | | Would that be a fair statement? |

| 23 | Mr. Martinez: | Yes, sir. |
|---|---|---|

| 24 | Arbitrator: | Okay. So the Old Republic interpleader action was filed in October |
|---|---|---|
| 25 | | of 2015, if I remember. Smith and Ramirez filed an intervention |

6

| 1 | | pleading essentially asking to be, you know, you're the real party in |
| 2 | | interest and you asked to be joined into that action. Is that fair? |
| 3 | Mr. Martinez: | The line digitized for just a second, Mr. Bluff, can you repeat that? |
| 4 | Arbitrator: | Sure. So Old Republic filed their original petition for interpleader. |
| 5 | | You filed or your client filed an intervention, basically, on the |
| 6 | | basis that it was the real party in interest as it related to the two |
| 7 | | defendants and the bond in question. Have I got that right? |
| 8 | Mr. Martinez: | Yes, sir. |
| 9 | Arbitrator: | Okay. |
| 10 | Mr. Martinez: | Yes, I believe that's correct. |
| 11 | Arbitrator: | After the intervention by Smith and Ramirez, Old Republic |
| 12 | | essentially tendered the $25,000 bond into the court and then filed |
| 13 | | a motion to be released from the bond and also filed a motion for |
| 14 | | an award of their attorney's fees, which it looks like the court did |
| 15 | | by way of it's granted the motion of Old Republic and also allowed |
| 16 | | them to be awarded about $12,000 and change from the interplead |
| 17 | | funds to pay for their attorneys fees. Old Republic was therefore |
| 18 | | out of the case, correct? |
| 19 | Mr. Martinez: | Yes, that is how I read it. |
| 20 | Arbitrator: | Okay. Then after, as part of that order, the court said that the |
| 21 | | parties – in particular, Smith and Ramirez, Mr. Hudnall and Mr. |
| 22 | | Benjamin Stevens – would continue with what, as I read the court's |
| 23 | | order, that there would be a final ruling would abide a trial on the |
| 24 | | merits. Now, I have that correct so far? |

| 1 | Mr. Martinez: | Yes, sir. |
|---|---|---|

2   Arbitrator:   Okay. After Old Republic was granted a discharge and as part of
3              its order, Smith and Ramirez's prior counsel then filed a motion to
4              withdraw and that order of withdraw was granted in July of 2017,
5              correct?

6   Mr. Martinez:   I don't have it in front of me and I don't remember the specific
7              date, but that did occur. Yes, sir, and the timeline sounds roughly
8              right.

9   Arbitrator:   Okay. As I understand it, after the hearing, and I'm just reviewing
10            the documents that have been submitted by both parties in this
11            case…

12   Mr. Martinez:   Yes, sir.

13   Arbitrator:   …After the July withdrawal by Smith and Ramirez's prior counsel,
14            the case essentially just stayed stagnant for a while. Mr. Benjamin
15            Stevens had already been fully settled and resolved by way of the
16            mediated settlement agreement. Smith and Ramirez was still a real
17            party in interest, but their counsel had withdrawn and so the only
18            party remaining in the interpleader action would then be Mr.
19            Hudnall at that point.

20   Mr. Martinez:   Correct.

21   Arbitrator:   Okay. So was there a trial on the merits as it related to the dispute
22            regarding the roof between Smith and Romero's and Mr. Hudnall
23            in the interpleader action?

24   Mr. Martinez:   No, sir.

| | | |
|---|---|---|
| 1 | Arbitrator: | Okay. Was Smith and Ramirez provided notice of the motion |
| 2 | | hearing that was scheduled in July of 2019? |
| 3 | Mr. Martinez: | I have investigated that and it was not. No, sir. |
| 4 | Arbitrator: | Okay, because from the orders issued by the court, it does not |
| 5 | | appear that a representative – and I'm looking at the order setting |
| 6 | | the hearing for July 11, – and it says that it was served upon |
| 7 | | Kendall Reed and, as I understand it, Mr. Kendall Reed was the |
| 8 | | attorney for Old Republic. Is that right? |
| 9 | Mr. Martinez: | I believe that is correct. Yes, sir. |
| 10 | Arbitrator: | And Mr. Richard Deck was the attorney for Robert Hudnall, or at |
| 11 | | least the prior counsel for Robert Hudnall, correct? |
| 12 | Mr. Martinez: | That is my belief. Yes, sir. |
| 13 | Arbitrator: | Then Michael Zimprich was the attorney for Benjamin Stevens, |
| 14 | | correct? |
| 15 | Mr. Martinez: | Yes, sir. |
| 16 | Arbitrator: | So the order setting the hearing of July 11 2019 was only served, |
| 17 | | according to the court clerk, on those three parties. I see no record |
| 18 | | of it having been served on Smith and Ramirez Restoration, who |
| 19 | | was the intervener. So back to my question, to your knowledge |
| 20 | | was Smith and Ramirez Restoration provided notice of the motion |
| 21 | | hearing that was set for July 11 2019? |
| 22 | Mr. Martinez: | No, sir. |
| 23 | Arbitrator: | Okay. So apparently there was a motion hearing, it appears from |
| 24 | | the record that Michael Zimprich, and Mr. Hudnall both appeared |

9

| | | |
|---|---|---|
| 1 | | at that hearing, and then there was an order returning the remaining |
| 2 | | balance of the interpled funds, and that order was originally |
| 3 | | submitted in July 11th, and then there were some handwritten |
| 4 | | interlineation on it that that particular order returning the cash |
| 5 | | bond, which is docket number 33, was then amended by an |
| 6 | | amended order, dated July 17, 2017 and it's an amended order |
| 7 | | returning the cash bond. Are you familiar with that document? |
| 8 | Mr. Martinez: | Yes, sir. |
| 9 | Arbitrator: | That was signed by Judge Javier Alvarez, who was the judge of the |
| 10 | | third or the County Court at Law No. 3. In my review of that, it |
| 11 | | indicates that Michael Zimprich was the attorney for the plaintiff, |
| 12 | | Old Republic Surety. To your knowledge, did Mr. Zimprich ever |
| 13 | | appear or give notice of appearance that he was the new attorney |
| 14 | | for Old Republic? I asked that question because from the court |
| 15 | | record, it appears that Mr. Kendall Reed an entirely different law |
| 16 | | firm was the attorney for Old Republic. |
| 17 | Mr. Martinez: | To my knowledge, he did not – and I know Mr. Zimprich, I've |
| 18 | | known him for some time – I do not believe he ever represented |
| 19 | | Old Republic. |
| 20 | Arbitrator: | To your knowledge, did Mr. Zimprich represent Old Republic as |
| 21 | | counsel for the plaintiff, Old Republic, in the interpleader action, |
| 22 | | yes or no? |
| 23 | Mr. Martinez: | No, sir. No. |

| | | |
|---|---|---|
| 1 | Arbitrator: | Okay. I also noticed that on the amended order returning the cash |
| 2 | | bond that there is no signature line for any representative of Smith |
| 3 | | and Ramirez. Is that correct? |
| 4 | Mr. Martinez: | Yes. |
| 5 | Arbitrator: | So it appears that this amended order returning the cash bond was |
| 6 | | submitted by the attorney for Mr. Stevens, and it was signed by |
| 7 | | him as the attorney for Mr. Stevens and it was signed by Mr. |
| 8 | | Hudnall in his individual capacity, but it was not approved as the |
| 9 | | either form or content by Smith and Ramirez. Is that accurate? |
| 10 | Mr. Martinez: | Yes, sir. |
| 11 | Arbitrator: | Okay. Then at this point, my interpretation of the amended order is |
| 12 | | that this was the court's intention, because the case had already |
| 13 | | been dismissed in 2018, the court was still holding funds and after |
| 14 | | a case has been dismissed it is the courts process that any interpled |
| 15 | | funds after a case dismissal are returned to the original party |
| 16 | | depositing those funds. Is that the process that's handled in El Paso |
| 17 | | County? |
| 18 | Mr. Martinez: | In general, yes, I believe that is going to be how it's handled. |
| 19 | Arbitrator: | Okay. So was there ever a final determination? The reason I ask |
| 20 | | this question is that the case was dismissed for want of prosecution |
| 21 | | back in 2018 and whether the Old Republic or... not Old |
| 22 | | Republic… whether Smith and Ramirez obtained a copy of that at |
| 23 | | the time or not, really is not important. But the case was dismissed |
| 24 | | for lack of prosecution, which is essentially a dismissal without |
| 25 | | prejudice to the parties and can be refiled, correct? |

11

| | | |
|---|---|---|
| 1 | Mr. Martinez: | Yes, sir. |
| 2 | Arbitrator: | Okay. So I think you've answered all of my questions so far. So |
| 3 | | Mr. Hudnall, I am going to ask you some questions now. Are you |
| 4 | | ready? |
| 5 | Mr. Hudnall: | I'm ready. |
| 6 | Arbitrator: | Okay. So, first of all, was there a trial on the merits, as between |
| 7 | | Smith and Ramirez and yourself, regarding the work performed on |
| 8 | | your home in the interpleader action? |
| 9 | Mr. Hudnall: | There was not. In fact the issues that were presented to me by my |
| 10 | | attorney at the time was the court decided the roof lay on there was |
| 11 | | funds that needed to be a applied for - |
| 12 | Arbitrator: | Okay, so- |
| 13 | Mr. Hudnall: | I was not present. The record was present, so he says. |
| 14 | Arbitrator: | Okay. So back to my question: Was there a trial in the Old |
| 15 | | Republic interpleader case between you and Smith and Ramirez? |
| 16 | Mr. Hudnall: | In my capacity, representing myself, no. |
| 17 | Arbitrator: | Okay. |
| 18 | Mr. Hudnall: | Whether it my attorney at the time was involved in the hearing? If |
| 19 | | he was he did not make me aware of it. |
| 20 | Arbitrator: | Okay. From my review of the court record, it does not appear that |
| 21 | | there was a trial on the merits. You have cited on page two of your |
| 22 | | motion, that the final decision in that interpleader action, that the |
| 23 | | roof in question failed to meet code, and I have reviewed the |
| 24 | | record and I'm trying to find where in the original petition that was |

| 1 | | filed by Old Republic, did they acknowledge and/or admit that the |
| 2 | | roof failed? Can you cite to me a line and page because it is not |
| 3 | | there. Take your time. |
| 4 | Mr. Hudnall: | Yes, I've got the pack of documents. |
| 5 | Arbitrator: | You attached this as Exhibit 2 to your motion or to your Legal |
| 6 | | Objection to the Arbitration. |
| 7 | Mr. Hudnall: | Okay, what was submitted by Kendall Reed, and I talked with |
| 8 | | them at great lengths, under the local Municipal Code they had the |
| 9 | | poster bond, not a Blanket Building and Construction Bond. |
| 10 | Arbitrator: | I understand that – I'm asking where in the petition does Old |
| 11 | | Republic state that the roof failed to meet code? |
| 12 | Mr. Hudnall: | Okay. In the filing of the document, they did not put it in those |
| 13 | | words. What they said was they had claims, they investigated, and |
| 14 | | there were multiple claims, so they're giving the money to the |
| 15 | | court if in fact they the claims weren't valid, then they would not |
| 16 | | have placed the money with the court. |
| 17 | Arbitrator: | That's not- |
| 18 | Mr. Hudnall: | The courts are- |
| 19 | Arbitrator: | Okay. Mr. Hudnall, I want you to listen to my question. Where in |
| 20 | | the petition, did Old Republic say that the roof failed to meet code? |
| 21 | Mr. Hudnall: | Quite frankly, it is said by the fact that they put the bond with the |
| 22 | | court, they wouldn't have done that otherwise- |
| 23 | Arbitrator: | Well, they've- |
| 24 | Mr. Hudnall: | ... now. |

13

| 1 | Arbitrator: | That's a legal issue that I'm not going to argue with you about. I've |
| 2 | | read the petition. I've read it carefully. I read their statement of |
| 3 | | facts and what they've alleged in paragraphs 8 through 12 is |
| 4 | | essentially that there are two competing claims that exceed the |
| 5 | | amount of the bond that they have. They are a disinterested |
| 6 | | stakeholder and they have deposited the funds into the court for a |
| 7 | | determination by the court to determine who, if any, is entitled to |
| 8 | | the funds. So that's what their interpleader action was filed for. |
| 9 | | They also requested attorney's fees which were eventually granted. |
| 10 | | Where in the court's order entering or granting that interpleader, |
| 11 | | where in the court's order does it say that the roof failed to meet |
| 12 | | code? |
| 13 | Mr. Hudnall: | Okay. Have you got a copy of the full filing of the interpleader |
| 14 | | action- |
| 15 | Arbitrator: | I have a copy- |
| 16 | Mr. Hudnall: | ... where it shows that? |
| 17 | Arbitrator: | I have the original petition interpleader and I have the orders and I |
| 18 | | have the order granting the interpleader which you've attached as |
| 19 | | Exhibit 3. |
| 20 | Mr. Hudnall: | I would refer you to Exhibit 5 of my third motion for summary |
| 21 | | judgment. |
| 22 | Arbitrator: | Okay, just a second. Okay, just a second let me pull up Exhibit 5 to |
| 23 | | your third motion for summary judgment. That is a demand letter |
| 24 | | from Mr. Deck and Mr. Kendall Reed. |

| | | |
|---|---|---|
| 1 | Mr. Hudnall: | And Mr. Reed submitted that to the court as part of the exhibits of |
| 2 | | his interpleader action in effect accepting what was said by Mr. |
| 3 | | Deck, giving it to the court supporting his request, his interpleader |
| 4 | | and the court accepted it. When the court issued its decision |
| 5 | | granting the interpleader, the court accepted the allegations in the |
| 6 | | letter that, in fact, and we found out later this was true, that the so- |
| 7 | | called inspection was done from the inspector's desk. |
| 8 | Arbitrator: | Okay. So Mr. Hudnall, I'm going to direct you to Exhibit 3 to your |
| 9 | | Objection to the Arbitration, which is a copy of the court's order |
| 10 | | granting the first amended petition and interpleader and if you |
| 11 | | would go to the second page of that. Do you see the last paragraph |
| 12 | | and it says, "This case shall continue on the merits between Mr. |
| 13 | | Hudnall, Benjamin Stevens, and Smith and Ramirez to determine |
| 14 | | their respective rights to any remaining funds on deposit in the |
| 15 | | registry of the court." Do you see that language? |
| 16 | Mr. Hudnall: | I see that language. |
| 17 | Arbitrator: | Okay. That was June 17, 2016. After June 17, 2016, was there a |
| 18 | | trial on the merits between yourself and Smith and Ramirez in the |
| 19 | | interpleader action? And you've already told me the answer to that |
| 20 | | is, "no." Is that correct? |
| 21 | Mr. Hudnall: | In violation of Municipal Code and another court and hid the fact |
| 22 | | that 3677 had actually been filed. The court knew nothing about it. |
| 23 | Arbitrator: | Okay. Well, we're looking at 3677, your Exhibit 3, and it says that |
| 24 | | "the case shall continue on the merits between Mr. Hudnall, Mr. |

| 1 | | Benjamin, and Smith and Ramirez to determine their respective |
| 2 | | rights." Was there a trial on the merits after this June 17 order? |
| 3 | Mr. Hudnall: | I have responded three times, there was no additional… The only |
| 4 | | other action was for the court to call me in and say, "Okay, we're |
| 5 | | dividing this money. Here it is." There was no hearing on the |
| 6 | | merits, Smith and Ramirez was still represented secretly by Lane |
| 7 | | Reedman, who started this whole mess. As for Valenzuela, we |
| 8 | | knew nothing about him. The court assured us that everybody had |
| 9 | | been notified and it went from there. |
| 10 | Arbitrator: | Okay. Was- |
| 11 | Mr. Hudnall: | The court didn't- |
| 12 | Arbitrator: | Okay. Was Mr. Zimprich, was he the attorney for Old Republic or |
| 13 | | was he the attorney- |
| 14 | Mr. Hudnall: | He was not. |
| 15 | Arbitrator: | He was not. Okay. Did you provide Smith and Ramirez with notice |
| 16 | | of the July 11th, 2019, hearing? |
| 17 | Mr. Hudnall: | Did I? |
| 18 | Arbitrator: | Yes. |
| 19 | Mr. Hudnall: | In paper, no. At one conversation, yes. |
| 20 | Arbitrator: | Did you provide Smith and Ramirez with notice of the July 11, |
| 21 | | 2019, hearing? |
| 22 | Mr. Hudnall: | On paper, no. In one conversation with Alex Ramirez, yes. |

| 1 | Arbitrator: | Okay. When did the conversation with Alex Ramirez, when did |
| 2 | | that occur? |
| 3 | Mr. Hudnall: | The week before the hearings- |
| 4 | Arbitrator: | What did you tell him? |
| 5 | Mr. Hudnall: | ... but I can't give you more than that. |
| 6 | Arbitrator: | What did you tell him? |
| 7 | Mr. Hudnall: | I just said, "What does this hearing have to do with 1113? What is |
| 8 | | your all's rationale for this second hearing?" And I got no response. |
| 9 | | I ran into him at the Kona Grill. |
| 10 | Arbitrator: | Okay. Well, the hearing was requested by Mr. Zimprich, the |
| 11 | | attorney for Benjamin Stevens. So it is unlikely that Mr. Ramirez |
| 12 | | would know the purpose of the hearing since he did not initiate it |
| 13 | | nor did his counsel initiate it. Was a representative of Smith and |
| 14 | | Ramirez present during the July 11, 2019, hearing? |
| 15 | Mr. Hudnall: | Not in front of the bar, no. |
| 16 | Arbitrator: | Okay. Fair enough. I'm going back to some of the other allegations |
| 17 | | that you've raised in your Objection to the Arbitration. Where or |
| 18 | | what document in the original petition filed by Old Republic does |
| 19 | | it say that the roofs in question failed to meet the standards |
| 20 | | required by the Municipal Code? What paragraph alleges that? |
| 21 | Mr. Hudnall: | It is not specifically stated in the granting of the petition, that the |
| 22 | | bond would be paid. If you look at the Municipal Code, it very |
| 23 | | clearly states the bond is there to protect the clients and if it doesn't |
| 24 | | make code, the bond will be paid. That is the Municipal Code |

17

| 1 | | 18.02 I think. I just had it in front of me. 18.02, City of El Paso |
| 2 | | Municipal Code. |
| 3 | Arbitrator: | Okay. I'm asking you this question because you have affirmatively |
| 4 | | stated that Old Republic alleged that the proceeds of the bond be |
| 5 | | forfeited to you and Mr. Stevens because the roofs in question |
| 6 | | failed to meet the standards required by the Municipal Code. |
| 7 | Mr. Hudnall: | If you are looking at literal statement, it is not there. What that you |
| 8 | | will have there is the fact the bond was placed with the court. If the |
| 9 | | Old Republic did not believe the roof failed, unless you want to tell |
| 10 | | me that they were a philanthropic organization, Old Republic |
| 11 | | would not have placed the money with the court if they had any |
| 12 | | doubt in their mind that that roof failed inspection. Then you add |
| 13 | | into that the to two letters from the city which says the roof failed, |
| 14 | | it did not make code and once again we come back to an issue I've |
| 15 | | raised since the beginning of this procedure. |
| 16 | Arbitrator: | Okay. Just so you know, the letters from the city were not prior to |
| 17 | | the court issuing its order, so I doubt that the court had those letters |
| 18 | | in its possession at the time that it was returning the cash bond to |
| 19 | | the original interpleader. On page three of your motion, or your |
| 20 | | objection, you say that it has been found by a court of competent |
| 21 | | jurisdiction that the roof failed. What order or what document from |
| 22 | | the court states that the roof failed? |
| 23 | Mr. Hudnall: | By returning the bond, County Court of Law 3 agreed with the |
| 24 | | allegations or the assertions of Old Republic that the bond should |
| 25 | | be paid. Looking at the Municipal Code, the bond is paid if the |

| 1 | | roof fails to meet Municipal Code. You can ask 50 times, you'll |
|---|---|---|
| 2 | | get that same answer. It has not been stated in that order and I |
| 3 | | wasn't aware that we had to be literal in our approach to this. So if |
| 4 | | you're going to continue to ask me for specific language, then |
| 5 | | we're going to continue to go round and round in circles, which is |
| 6 | | the position I've been put in since this thing has started. |
| 7 | Arbitrator: | Okay. Mr. Hudnall, so the order returning cash bond… |
| 8 | Mr. Hudnall: | …Municipal Code… |
| 9 | Arbitrator: | I understand. I understand your argument. |
| 10 | Mr. Hudnall: | Then we'll stop right here. But you can't show it to me and I'll call |
| 11 | | Chris Wells in for a deposition myself to find out and get him to |
| 12 | | confirm he inspected the roof from his desk. If you want to also get |
| 13 | | down to the nitty gritty, the contract itself was illegally modified |
| 14 | | by Smith and Ramirez to get them additional funds. Everybody has |
| 15 | | overlooked that little fact even though I've submitted copies of |
| 16 | | what we signed and copies of what they came up with to you on, I |
| 17 | | think, three occasions. Now, if you want to say that a contract can |
| 18 | | be modified by one party and it's okay, then I don't know why |
| 19 | | we're here. |
| 20 | Arbitrator: | I have not made any final rulings as it relates to the contract itself |
| 21 | | or the amount of damages, if any, that would be awarded to any |
| 22 | | party. I have not prejudged your case. I am addressing the pending |
| 23 | | motions that are before me. |

| | | |
|---|---|---|
| 1 | Mr. Hudnall: | I want to point out that 367 does not, with all due respect, fall |
| 2 | | under your jurisdiction as arbitrator because there was no |
| 3 | | arbitration agreement attached to that particular case. |
| 4 | Arbitrator: | Smith and Ramirez was a party to the 367 interpleader case. The |
| 5 | | agreement that you have attached as Exhibit 1 to your Legal |
| 6 | | Objection contains an arbitration clause: Settlement of Disputes |
| 7 | | paragraph number 13 states that, "In the event any dispute shall |
| 8 | | arise between the parties to this contract customer, you, and |
| 9 | | contractor, Smith and Ramirez, agree that the arbitration shall be |
| 10 | | the sole and exclusive means for resolving such dispute." That |
| 11 | | was- |
| 12 | Mr. Hudnall: | [inaudible 00:38:34] |
| 13 | Arbitrator: | Smith and Ramirez was a party to the 3677 case, you were a party |
| 14 | | to the 3677 case. That arbitration clause applies to the 3667 case. |
| 15 | | My last question- |
| 16 | Mr. Hudnall: | Okay. |
| 17 | Arbitrator: | My last question is, at the time of the return of the funds that were |
| 18 | | submitted to Mr. Zimprich, who was the attorney for Mr. Benjamin |
| 19 | | Stevens, how did you and Mr. Zimprich decide which portion of |
| 20 | | those funds were going to be distributed to you and which portion |
| 21 | | of those funds were going to be distributed to his client, Mr. |
| 22 | | Stevens? |
| 23 | Mr. Hudnall: | The court wanted to use a trust account. They gave it to him, he |
| 24 | | gave me a portion of it. |

Smith & Ramirez v. Hudnall
AAA 01-20-0014-8456

Transcript of Apr/01/2021 Hearing

| | | |
|---|---|---|
| 1 | Arbitrator: | How did you decide between you and Mr. Stevens that portion that |
| 2 | | should be paid to you? |
| 3 | Mr. Hudnall: | Well, I wasn't aware that he had been made whole in the mediation |
| 4 | | agreement. So what we agreed was, it would be split and, in fact, I |
| 5 | | have submitted, I think, a copy of his trust account showing that |
| 6 | | half the funds came or a portion of the funds came to me. It was a |
| 7 | | little more than half. |
| 8 | Arbitrator: | Right and that was my question, how did you decide which portion |
| 9 | | came to you and how did the parties decide which portion went to |
| 10 | | Mr. Benjamin Stevens, who, according to the mediated settlement |
| 11 | | agreement, had already been made whole? |
| 12 | Mr. Hudnall: | We certainly have not been. |
| 13 | Arbitrator: | Okay. All right. Mr. Hudnall, is there any other matters that you |
| 14 | | want to bring to my attention today regarding either the Emergency |
| 15 | | Motion for the Site Inspection or your Legal Objection to |
| 16 | | Arbitration? Did you hear my question, Mr. Hudnall? |
| 17 | Mr. Hudnall: | Under water? |
| 18 | Arbitrator: | Are there any other matters that you want to bring to my attention |
| 19 | | today? |
| 20 | Mr. Hudnall: | Yes, I'm trying to answer. Number one, when you look at the |
| 21 | | contract – and I've shown proof that the contract is modified – I've |
| 22 | | also shown that they violated numerous clauses of the contract, but |
| 23 | | this arbitration still moves ahead as if I'm not saying anything. I |
| 24 | | have said numerous times that it's my belief that preferential |
| 25 | | treatment sneak into the "real life" attorneys versus, what a court |

21

| 1 | | according 1113 referred to as a *demo pro se*; all we have asked for |
| 2 | | is justice and we haven't received it. If the court did not believe |
| 3 | | that the roof didn't meet the code, then they wouldn't have issued |
| 4 | | that decision accepting the bond. Say what you will, the US |
| 5 | | Supreme Court has said that even arbitration, and I'll give you the |
| 6 | | case file if we want to get specific, is bound by res judicata and |
| 7 | | collateral estoppel. |
| 8 | Arbitrator: | I have reviewed your case that you cited, *United States versus* |
| 9 | | *Utah Construction and Mining Company*, the 1966 case that you |
| 10 | | have cited in your memorandum. I've reviewed all three of the |
| 11 | | cases that you have cited in your memorandum. Is there any other |
| 12 | | matters that you would like to bring to my attention today? |
| 13 | Mr. Hudnall: | Well, frankly, with all due respect, everybody concerned, it having |
| 14 | | become clear after you impassioned the defense of Smith and |
| 15 | | Ramirez in one of the documents you sent, that nothing I can say is |
| 16 | | going to change your mind if they don't walk on the water. I |
| 17 | | believe that I am being basically treated as a second-class citizen |
| 18 | | so-to-speak, for the mere fact I'm not a member of the Texas bar |
| 19 | | and I think that is having an impact on your decisions and for you |
| 20 | | to hold me specifically to language, specific language, and not |
| 21 | | apply that to Smith and Ramirez is biased. I firmly believe that this |
| 22 | | arbitration is being run in a bias fashion. I have done everything I |
| 23 | | can to cooperate to the point of where it's going to endanger |
| 24 | | people's lives and getting on my roof will definitely endanger |
| 25 | | people's lives. Some of the things that had been asked for by the |
| 26 | | other side are absolutely silly, but they've been supported by the |

| 1 | | actions of the AAA. So, seeing the handwriting on the wall, it's my |
|---|---|---|
| 2 | | position I've said what I'm being allowed to say and anything else |
| 3 | | would be redundant. |
| 4 | Arbitrator: | Okay. Mr. Alvarez, is there any other matters that you wish to |
| 5 | | bring to my... Not Mr. Alvarez, Mr. Martinez, is there any other |
| 6 | | matters that you wish to bring to my attention regarding, and I |
| 7 | | realize I have not allowed you to even speak as it relates to the |
| 8 | | Objection to the Arbitration. Had you had an opportunity to review |
| 9 | | that? |
| 10 | Mr. Martinez: | Briefly. I printed it out and read it for the first time this morning. |
| 11 | Arbitrator: | I understand and I'm sorry to put you with little prep, but based on |
| 12 | | what you have read, is there any other matters that you wish to |
| 13 | | bring to my attention today? |
| 14 | Mr. Martinez: | No, sir. |
| 15 | Arbitrator: | Okay. No responses required to be filed. I have a full brief based |
| 16 | | on documents that were previously submitted, the Legal Objection |
| 17 | | to the Arbitration is a rehash of arguments that have been |
| 18 | | previously raised. Both parties have provided me with a number of |
| 19 | | documents and exhibits which I truly have appreciated. I have re- |
| 20 | | reviewed them, I will re-review them one more time as part of my |
| 21 | | final order. The Legal Objection to Arbitration will be denied for |
| 22 | | the following reasons and a formal order will follow. Mr. Hudnall |
| 23 | | has made himself a... First of all, there is a binding enforceable |
| 24 | | arbitration agreement provided in paragraph 13 of the parties' |
| 25 | | Agreement to Arbitrate in their contract. |

1      The issue of whether the contract was modified, whether the

2      contract is void, whether the contract is voidable, are all matters

3      that are subject to a final arbitration hearing, and I have not ruled

4      nor have I decided whether or not the underlying agreement is void

5      or voidable, or whether it has been altered. Those are all issues of

6      disputed fact which cannot be ruled on in a Motion for Summary

7      Judgment or a Motion for Declaratory Relief. The Objection to the

8      Arbitration – In the law in Texas, as I have cited in my original

9      ruling on this, is that an arbitrator has the jurisdiction to determine

10     the arbitrability of the claims, and I will recite those in my ruling.

11     So all I have done is simply decided that the case is subject to

12     arbitration.

13     I have reviewed carefully the amended order returning the cash

14     bond, as well as the other documents from the court, which Mr.

15     Hudnall was kind enough to provide as Exhibit 4, which states that

16     the case is to continue on the merits between Mr. Hudnall, Mr.

17     Stevens is out of it because he settled, and Smith and Ramirez to

18     determine their respective rights to the remaining funds. From a

19     review of this record, it appears that Mr. Zimprich, misrepresented

20     to the court his position in representing that he was the party and

21     the attorney for Old Republic. The amended order returning the

22     cash bond makes it clear that the court, after the case had already

23     been dismissed for want of prosecution, with simply returning

24     funds held in the court's registry to the original interpleading party,

25     that was the intention of this order.

| 1 | | There was no finding as been admitted by both parties. There was |
| 2 | | never a trial on the merits as the dispute between Mr. Hudnall and |
| 3 | | Smith and Ramirez. There being no finding, no trial on the merits |
| 4 | | involving the same parties and the same issues, the principles of |
| 5 | | res judicata and collateral estoppel do not apply to this case, as I |
| 6 | | have previously addressed ad nauseum in one of my prior orders. I |
| 7 | | will rehash that as well. This case will proceed according to the |
| 8 | | original scheduling order. I will issue an order. I'm also going to |
| 9 | | have a copy of the transcript provided to both parties today. |
| 10 | | Mr. Martinez, I would appreciate it if you would provide to the |
| 11 | | court at the upcoming permanent injunction hearing a copy of my |
| 12 | | order as well as a copy of the transcript so that the court at the time |
| 13 | | of hearing the permanent injunction, because that court's ruling |
| 14 | | will impact the arbitration proceeding, I want to make sure that the |
| 15 | | court is fully apprised of the briefing and the decisions of the |
| 16 | | arbitrator and the basis for those decisions. If the court after… |
| 17 | Mr. Martinez: | Yes, sir. I will. |
| 18 | Arbitrator: | …If the court, after having been fully apprised, issues an |
| 19 | | injunction preventing the arbitration from going forward, I will |
| 20 | | abide that court's determination. |
| 21 | | If the court, however, does not issue a permanent injunction |
| 22 | | preventing this arbitration from going forward and, at the hearing, I |
| 23 | | would request that both parties simply ask Judge Alvarez if he ever |
| 24 | | made a final decision on the merits, and if the court in his order |
| 25 | | says that there has been a final adjudication on the merits, if the |

| 1 | | court issues an order that says that there was a code violation, if the |
| 2 | | court in its final determination says that there had been a final |
| 3 | | determination on the merits as between the dispute of Smith and |
| 4 | | Ramirez and Mr. Hudnall, I will abide that court's decision. |
| 5 | | So I will give you a comprehensive memorandum, it probably will |
| 6 | | not go out today, I want to make sure that I have given both parties |
| 7 | | addressed all of Mr. Hudnall's objections and positions and I want |
| 8 | | the court at the upcoming hearing to be fully apprised of the basis |
| 9 | | for my decisions. So that is going to be my ruling. The arbitration |
| 10 | | will proceed for the reasons that I've stated on the record and |
| 11 | | which will be clarified and exemplified in further detail in an order |
| 12 | | that I will issue. I will attach a copy of today's transcript to my |
| 13 | | order so that both parties know exactly what I have said and the |
| 14 | | arguments that have been raised by both parties. Are there any |
| 15 | | other matters that need to be heard today? |
| 16 | Mr. Martinez: | No, sir. |
| 17 | Arbitrator: | All right. Mr. Hudnall, is there any other matters that need to be |
| 18 | | heard today? |
| 19 | Mr. Hudnall: | Other than I would like to clarify that there will be no inspection. |
| 20 | Arbitrator: | You've made it clear, Mr. Hudnall, that you will not permit Smith |
| 21 | | and Ramirez representatives, their experts, their attorneys to be |
| 22 | | present on your site, and that if they appear on site that you will |
| 23 | | trespass them. Mr. Martinez has advised that he does not want to |
| 24 | | breach of the peace and as such, there will be no site inspection. |
| 25 | Mr. Hudnall: | Thank you. |

| 1 | Arbitrator: | Okay. Mr. Martinez, do you have any other questions? |
| 2 | Mr. Martinez: | No, sir. |
| 3 | Arbitrator: | Okay. I just want to make sure that everybody's had a fair |
| 4 | | opportunity to be heard today on the issues that have been |
| 5 | | presented before me. Thank you, both parties, for appearing at |
| 6 | | today's hearing. I appreciate it and my formal order will probably |
| 7 | | go out on Monday. |
| 8 | Mr. Martinez: | Very good. Thank you, sir. |
| 9 | Mr. Hudnall: | Very good. |
| 10 | | |
| 11 | | |

12  I certify that the above transcript is true and correct based on my review of
13 the audio file of the proceedings prepared on April 1, 2021

14
15
16                                     /s/ Alyson J. Nevitte

Smith & Ramirez v. Hudnall                    Transcript of Apr/01/2021 Hearing
AAA 01-20-0014-8456

## IN THE _____ JUDICIAL DISTRICT COURT
## EL PASO COUNTY, TEXAS

OLD Republic ,
**Plaintiff**

§
§
§

**VS.**

§
§
§

CAUSE NO. 2015DCV3677

Hudnall ,
**Defendant**

### ORDER RETURNING CASH BOND

The District Clerk is **ORDERED** to disburse to The Law Offices of Michael J. Zimprich PLLC the funds on deposit being held by the District Clerk in the sum of $ 12,492.24 in the above styled and numbered cause, minus any administrative fee.

SIGNED on this the 11th day of ___July___, 2019.

_Javier Alvarez_
Judge

**Judge Presiding**
**County Court at Law No. 3**

Approved:

Michael Zimprich

BK H Inell.

FILED
NORMA FAVELA BARCELEAU
DISTRICT CLERK
2019 JUL 11 PM 3:01
EL PASO COUNTY, TEXAS
BY_____ DEPUTY

Filed 7/17/2019 9:13 AM
Norma Favela Barceleau
District Clerk
El Paso County
2015DCV3677

Exhibit B

CAUSE NO. 2015DCV3677

| | | |
|---|---|---|
| *Old Republic Surety Company,* | § | *IN THE COUNTY COURT* |
| *Plaintiff,* | § | |
| | § | |
| | § | |
| | § | *EL PASO COUNTY, TEXAS* |
| *v.* | § | |
| | § | |
| *Robert K. Hudnall,* | § | |
| *Defendant.* | § | *COUNTY COURT AT LAW 3* |

## AMENDED ORDER RETURNING CASH BOND

The District Clerk is **ORDERED** to disburse to <u>The Law Offices of Michael J. Zimprich,</u>

<u>PLLC,</u> funds on deposit being held by the District Clerk in the sum of <u>$12,457.76,</u> in the above

styled and numbered cause, minus any administrative fee.

Signed this 17th day of July, 2019.

Presiding Judge

APPROVED BY FORM AND SUBSTANCE:

Michael J. Zimprich
Attorney for Plaintiff

Robert K. Hudnall

Filed 8/28/2019 9:00 AM
Norma Favela Barceleau
District Clerk
El Paso County
2015DCV1113

Exhibit C

IN THE DISTRICT COURT OF EL PASO COUNTY, TEXAS

448th JUDICIAL DISTRICT

SMITH and RAMIREZ RESTORATION

VS

CAUSE NO. 2015DCV1113

ROBERT K. HUDNALL and SHARON E.
HUDNALL

---

### ORDER GRANTING SMITH and RAMIREZ RESTORATION'S MOTION TO INVOKE PREEMPTIVE ARBITRATON CLAUSE

---

On this day, came on to be considered, Smith and Ramirez Restoration's Motion To

Invoke Preemptive Arbitration Clause which was E-filed on 8/12/2019 within Plaintiff's

*Response to Defendant's Motion for Declaratory Judgment.* The Court, having reviewed and

considered the Motion and Response filed is of the opinion and finds that the Motion should be

GRANTED.

IT IS THEREFORE ORDERED; ADJUDGED and DECREED that Smith and Ramirez

Restoration's Motion to Invoke Preemptive Arbitration Clause is GRANTED.

SIGNED this _28_ day of _AUGUST_, 2019.

JUDGE SERGIO H. ENRIQUEZ
448TH District Court



AAA 01-20-0014-8456

Arbitrator Order

IN THE COUNTY COURT AT LAW # 5
EL PASO COUNTY, TEXAS

| | | |
|---|---|---|
| BENJAMIN STEVENS | § | |
| | § | |
| v. | § | Cause No. 2015DCV2673 |
| | § | |
| SMITH AND RAMIREZ | § | |
| RESTORATION, L.L.C. | § | |

<u>MEDIATED SETTLEMENT AGREEMENT</u>

On the 9th day of December 2015 the undersigned parties mediated the above-captioned cause. This Mediated Settlement Agreement, generated at the conclusion of the mediation, shall be a record of the parties' mutually acceptable resolution and understanding of the issues discussed and resolved. The mediator gives no opinion regarding the legal effect of this Mediated Settlement Agreement or any resolution that has been reached.

1. The parties agree to settle, pursuant to Texas Rule of Civil Procedure 11 and Texas Civil Practice and Remedies Code, Section 154.071.

2. The parties agree that all court costs, expenses and attorney's fees are to be borne by the party incurring same.

3. The parties and their respective counsel acknowledge that the mediator has not represented or warranted to any party any federal income tax consequences of the settlement reflected by this Agreement. Further, the parties and their counsel hereby release the Mediator from any and all responsibility and liability incident to the drafting of this Agreement.

4. Counsel for Plaintiff and counsel for Defendant agree to cooperate in the drafting of the final settlement agreement and comprehensive release of all claims referenced herein and agree that all parties shall approve the language contained in the final settlement agreement and comprehensive release of all claims, but further agree that such approval shall not be unreasonably withheld.

5. As consideration for the final settlement agreement and mutual releases of all claims in the above-captioned cause that the parties and their related entities, individuals, attorneys, and those in privity with the parties, may have against one another, the parties agree that:

    A. Plaintiff Benjamin Stevens shall permit Defendant Smith and Ramirez Restoration, L.L.C. access to Plaintiff's property for the purpose of removing the existing roof and replacing same in its entirety. Plaintiff agrees that he will not interfere with any work being performed or any inspection being made.

    B. Defendant Smith and Ramirez Restoration, L.L.C. shall, at its own cost, within forty five (45) days from the date of this Mediated Settlement

1

Agreement, remove the existing roof from Plaintiff Benjamin Stevens' property located at 10905 Walden Pond Ln., El Paso, Texas 79934 and shall replace the roof on the residence in its entirety. All work performed to the roof by Defendant Smith and Ramirez Restoration, L.L.C. shall be as per the original contract between the parties.

1. Defendant Smith and Ramirez Restoration agrees to replace any under sheeting or decking on the roof which bear evidence of water damage. Plaintiff shall have the opportunity to inspect and note any damaged decking. In the event that the parties cannot agree as to whether any particular sheeting or decking bears water damage, Larry Shashey shall make such determination. In the event that Plaintiff disagrees with Mr. Shashey's determination, Plaintiff may pay for material and reasonable labor costs for the installation of any additional decking.

2. Defendant shall remove the 1"x 4" board and flashing previously installed on the roof, identified in a series of photographs numbered "1" in the Armendariz Inspection Service Property Inspection Report, repair any damage caused by the removal of said 1" x 4", and reinstall new flashing.

3. Plaintiff agrees that Defendant is not responsible for any damage to the exterior wall identified in a series of photographs and numbered "1" in the Armendariz Inspection Service Property Inspection Report, or for any leakage through that wall, except for any damages which may occur as a result of the removal of the board and flashing and the reinstallation of same.

C. Defendant Smith and Ramirez Restoration, L.L.C. shall purchase, at its own cost, a warranty for materials and workmanship through GAF. Both parties understand and acknowledge that GAF will inspect the materials and workmanship before issuing the Warranty. Defendant shall repair any deficiencies identified by GAF during its final inspection.

D. As a condition of this Mediated Settlement Agreement, Defendant Smith and Ramirez Restoration, L.L.C. agrees to waive any claim that it may have for outstanding payment for the amount of four thousand nine hundred sixty two dollars and four cents ($4,962.04) under the contract dated May 10, 2014 between Plaintiff and Defendant.

E. Plaintiff Benjamin Stevens agrees that it is a condition of this Mediated Settlement Agreement that he shall be responsible for any damages caused by leaks in the roof with respect to the interior of his residence and completion of interior work in the parties interior contract.

2

F. The parties agree that Plaintiff shall, within ten (10) days of GAF issuing the warranty referenced herein, after completion of the new roof, file a motion to dismiss all claims, with prejudice, in the County Court at Law Number 5. The parties understand and agree that any claim that Plaintiff may have against Defendant's bond company shall be dismissed, with prejudice, at the same time.

6. This Mediated Settlement Agreement contains all of the material terms of the settlement between Plaintiff and Defendant despite the fact that the parties and their counsel intend to prepare and execute more detailed documentation at a later date.


_____
BENJAMIN STEVENS, Plaintiff

_____
MICHAEL J. ZIMPRICH, Counsel for Plaintiff


**SMITH AND RAMIREZ RESTORATION, L.L.C.**

_____
By: TY SMITH, Manager, Defendant

_____
LANE REEDMAN, Counsel for Defendant


**THIS SPACE INTENTIONALLY LEFT BLANK**


**THIS SPACE INTENTIONALLY LEFT BLANK**


**THIS SPACE INTENTIONALLY LEFT BLANK**


3

# EXHIBIT M

## JUDGE FRANK MONTALVO

### IN THE UNITED STATES DISTRICT COURT
### FOR THE WESTERN DISTRICT OF TEXAS
### EL PASO DIVISION

F I L E D

2021 MAY 12 PM 2: 52

CLERK US DISTRIC
ESTERN DISTRICT   TE A.

BY_____
DEPTY

| | | |
|---|---|---|
| ROBERT K. HUDNALL AND SHARON ELIAS HUDNALL<br><br>Plaintiff,<br><br>v.<br><br>TY SMITH, Individually and as agent for SMITH AND RAMIRE RESTORATION LLC, ALEJANDRO C. RAMIREZ, individually and agent for SMITH AND RAMIREZ RESTORATION LLC, KURT G. PAXSON, individually and agent for Mounce, Green, Myers, Safi, Paxson and Galatzan, GARRETT J. YANCEY, individually and as agent for Mounce, Green, Myers, Safi, Paxson and Galatzan, JAMES A. MARTINEZ, individually and as agent for MOUNCE, GREEN, MYERS, SAFI, PAXSON AND GALATZAN and the firm of MOUNCE, GREEN, MYERS, SAFRI, PAXSON & GALATZAN, EVANSTON INSURANCE, Insurance company for SMITH AND RAMIREZ RESTORATION LLC AND GUY BLUFF, ARITRATOR and Does 1-100<br><br>Defendant. | § § § § § § § § § § § § § § § § § § § § § § § § § § | Cause No.<br><br><br><br>**EP21CV0106** |

### NOTICE OF REMOVAL UNDER 28 U.S.C. §1441(a) and § 1331
### (FEDERAL QUESTION)

I

Defendants Kurt G. Paxson, Garrett J. Yancey, James A. Martinez, and Mounce, Green,

Myers, Safi, Paxson & Galatzan file this Notice of Removal, removing Cause No. 2021DCV1187

from the County Court at Law No. 6 of El Paso County, Texas, to this Court pursuant to 28

U.S.C.§§ 1441(a) and 1331.  The grounds for removal are as follows:

### FACTS

1.  Plaintiffs Robert K. Hudnall and Sharon Elias Hudnall filed their state court Complaint

styled *Robert K Hudnall and Sharon Elias Hudnall v. Ty Smith, Individually and as agent for*

*Smith and Ramirez Restoration LLC et. al,* Cause No. 2021DCV1187 in the County Court at Law

No. 6 of El Paso County, Texas on April 9, 2021.  (See Plaintiffs' Complaint, Appendix A).

2.  Plaintiffs served Defendant Paxson on April 20, 2021; Defendant Yancey on May 5,

2021; Defendant Martinez on April 30, 2021; and Defendant Mounce, Green, Myers, Safi, Paxson

& Galatzan on April 20, 2021.

3.  This action is a civil action over which this Court has original jurisdiction under 28

U.S.C. § 1331 and is one which may be removed to this Court pursuant to the provisions of 28

U.S.C. § 1441(a) because Plaintiffs plead causes of action arising under federal law.  Specifically,

Plaintiffs plead for relief under the Federal Racketeer Influenced and Corrupt Organizations Act,

18 U.S.C. §§ 1961, 1962. (Plaintiffs' Complaint, Appendix A, pp.15-27 [Counts I through IV])

Plaintiffs also plead violations of federal statutes as RICO predicate acts. (Plaintiffs' Complaint,

Appendix A, pp. 11-15).

4.  Plaintiffs plead Texas state law causes of action for fraud/fraudulent inducement;

fraudulent misrepresentation, breach of contract, and promissory estoppel. (Plaintiffs' Complaint,

Appendix A, pp. 28-39 [Counts V through VIII]).  The Court has supplemental jurisdiction under

28 U.S.C. § 1367 over these claims because they are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the U.S. Constitution. In this regard, the Plaintiffs' state law fraud and breach of contract claims arise from the contract, transaction, and alleged representations between Plaintiffs and Defendant Smith and Ramirez Restoration LLC for the re-roofing of Plaintiffs' home. (Plaintiffs' Complaint, Appendix A, pp. 28-39 [Counts V through VIII]) Plaintiffs' RICO allegations are founded in the Defendants' allegedly fraudulent insistence that the roof was constructed according to: 1) the contract between Plaintiffs and Smith & Ramirez, 2) any alleged representations between the parties to the contract, and 3) the El Paso municipal code. (Plaintiffs' Complaint, Appendix A) Consequently, whether the roof was properly installed according to the contract, alleged representations, and El Paso municipal code is the central issue to both Plaintiffs' federal and state law causes of action.

5. Defendants Paxson, Yancey, Martinez and Mounce, Green , Myers, Safi, Paxson and Galatzan file this Notice of Removal within 30 days after receiving Plaintiffs' initial pleading.

6. There are five other named defendants in this action. All other defendants consent to this removal and have or will timely file notices of consent. 28 U.S.C. § 1446 (b)(2)(A)(B).

7. Plaintiffs also sue Does 1-100. Consent of the Doe defendants is unnecessary because they are unknown. *Green v. America Online,* 318 F.3d. 465, 470 (3rd Cir. 2003); See also, *Doleac v. Michalson,* 264 F.3d 470, 475 (5th Cir. 2001)(noting citizenship of unknown Doe defendants is irrelevant in removal based on diversity jurisdiction).

8. Pursuant to 28 U.S.C. § 1446(a) all process, pleadings and orders filed in the state court action are attached jointly as Appendix A and incorporated herein by reference. The attached

copies are not certified. On May 11, 2021, Counsel's office contacted the El Paso County District Clerk's Office to request certified copies of the Clerk's docket sheet and all filings for *Robert K Hudnall and Sharon Elias Hudnall v. Ty Smith, Individually and as agent for Smith and Ramirez Restoration LLC et. al,* Cause No. 2021DCV1187 in the County Court at Law No. 6 of El Paso County, Texas.

Due to the Covid 19 Pandemic, the El Paso County District Clerk's office is closed to the public and not currently providing document copies for in-person pick-up.   Instead, the Clerk's Office provides e-mail copies of requested documents, with the certified paper copies to follow by mail. Counsel received the uncertified e-mail documents on May 11, 2021, with explanation that the physical copies had been sent to Counsel's office by U.S. mail.  As of the day of filing this Notice of Removal, Counsel has not received the physical certified copies.  Accordingly, Defendants Paxson, Yancey, Martinez and Mounce, Green attach to their Notice of Removal as Appendix 1 true and correct copies of the e-mail documents received from the El Paso County District Clerk's office on May11, 2021.  Defendants will supplement this filing with certified copies of the Clerk's docket sheet and all filings for *Robert K Hudnall and Sharon Elias Hudnall v. Ty Smith, Individually and as agent for Smith and Ramirez Restoration LLC et. al,* Cause No. 2021DCV1187 in the County Court at Law No. 6 of El Paso County, Texas as soon as they are received.

8. Defendants Paxson, Yancey, Martinez and Mounce, Green , Myers, Safi, Paxson and Galatzan request that this Notice of Removal be received and filed, that the County Court at Law

4

No. 6  of El Paso County, Texas proceed no further, and that this cause be removed to this Court for all further proceedings.

Respectfully submitted,

**ROBLES BRACKEN & HUGHES, PLLC**
*Attorneys for Defendants Kurt G. Paxson, Garrett J. Yancey, James A. Martinez, and Mounce, Green, Myers, Safi, Paxson and Galatzan*
310 N. Mesa, Suite 700
El Paso, Texas 79901-1364
(915) 544-1144 [Office]
(915) 544-1288 [Facsimile]
Email: rrobles@rbch.net

By: _____
Ruben S. Robles
State Bar No. 17118400

5

## CERTIFICATE OF SERVICE

I hereby certify that on this _12_ day of May, 2021, a true and correct copy of the foregoing document was filed with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following known counsel of record:

Mr. Robert K. Hudnall
Ms. Sharon Elias Hudnall
297 Puesta Del Sol
El Paso, Texas 79912
*Plaintiff Pro Se*

_____ Facsimile Unknown
_____ Hand Delivery
__✓__ Regular Mail
_____ Email: Unknown


Ruben S. Robles

6

# EXHIBIT N

El Paso County - County Court at Law 6

Filed 4/9/2021 12:20 PM
Norma Favela Barcelea[...]
District Cler[...]
El Paso Count[...]
2021DCV118[...]



**ROBERT K. HUDNALL AND** ) **IN THE DISTRICT COURT**
**SHARON ELIAS HUDNALL** )
**Plaintiffs** )
)
)
**V.** ) _____ **JUDICIALL DISTRICT**
)
)
**TY SMITH, Individually and as agent for** )
**SMITH AND RAMIREZ RESTORATION LLC,** )
**ALEJANDRO C RAMIREZ, individually and agent for** )
**SMITH AND RAMIREZ RESTORATION LLC,** ) **OF EL PASO COUNTY,**
**KURT G. PAXSON, individually and as agent** )
**for Mounce, Green, Myers, Safi, Paxson & Galatzan,** )
**GARRETT J. YANCEY, individually and as agent** )
**for Mounce, Green, Myers, Safi, Paxson and** )
**Galatzan, JAMES A. MARTINEZ, individually and as** )
**agent for MOUNCE, GREEN, MYERS, SAFI, PAXSON** )
**AND GALATZAN and the firm of MOUNCE, GREEN,** )
**MYERS, SAFI, PAXSON & GALATZAN,** )
**EVANSTON INSURANCE. Insurance company for** )
**SMITH AND RAMIREZ RESTORATION LLC and** )
**GUY BLUFF, ARBITRATOR and DOES 1-100** )

## COMPLAINT

Plaintiffs do bring this complaint for Civil RICO, Breach of Contract. Fraud, and

Conspiracy against these Defendants and shows this Court as follows:

## INTRODUCTION

1. On June 9, 2014, Plaintiffs did contract with SMITH AND RAMIREZ RESTORATION

   LLC by and through its owners TY SMITH AND ALEJANDRO C. RAMIREZ. The

   parties did enter into a contract on June 9, 2014 (EXHIBIT ONE-A). Said contract did

   specify that that, a Dura-Last Roofing System would be installed on Plaintiffs' property

   and that, among other things, that arbitration would be the sole means of resolving disputes.

1

2. The promised five-day installation of said Dura-Last Roof took six months and was not finished until December 23, 2014.

3. After the initial installation of the Dura-Last Roofing System, due to heavy rains in El Paso in early July of 2014, the home flooded a number of times. At such time ALEJANDRO C. RAMIREZ assured Plaintiffs that all damages would be repaired at Defendant, SMITH AND RAMIREZ RESTORATION LLC'S expense.

4. ON October 30, 2014, Defendants TY SMITH, ALEJANDRO C. RAMIREZ AND SMITH AND RAMIREZ RESTORATION LLC, without the knowledge of the Plaintiffs, did enter into an illegal agreement with a city roofing inspector by the name of CHRIS WELLS to rate the roof as passed without bothering to conduct a physical inspection of said roof.

5. After the last day that SMITH AND RAMIREZ RESTORATION LLC worked on the roof, their employees left the job unfinished and never returned. The roof began to deteriorate almost immediately, and SMITH AND RAMIREZ RESTORATION LLC refused to honor any warranty and demanded more money beyond the agreed upon amount.

6. The parties had agreed upon a price of $19,500.00 for the roof, but SMITH AND RAMMIREZ RESTORATION LLC continually raised the price and secretly agreed with the adjuster for our homeowner's policy to let them get addition funds for reimbursement for repairs they had to make due to damage they caused by their substandard work.

7. Plaintiff, ROBERT K. HUDNALL, is a 100% disabled veteran and SMITH AND RAMIREZ RESTORATION LLC knew that Plaintiff and his wife had had some work done on the property under the DEPARTMENT OF VETERANS AFFAIRS SPECIAL

ADAPTIVE HOUSING PROGRAM and demanded that an amounted equal to half of those funds[1] be paid to them for no other reason than they wanted them. Plaintiffs refused.

8. The work on the roof performed by Defendant SMITH AND RAMIREZ RESTORATION LLC was so bad that Plaintiff complained to the city that there had been no inspection of the roof and was shocked to learn about the inspection allegedly performed by CHRIS WELLS on behalf of SMITH AND RAMIREZ RESTORATION LLC that showed that the roof passed the requirements of the municipal code.

9. PLAINTIFFS had paid SMITH AND RAMIREZ RESTORATION LLC over $4,000.00 more than called for in the contract, but on April 28, 2015, in violation of the terms of the contract[2], SMITH AND RAMIREZ RESTORATION LLC, by and through LANE REEDMAN of the law firm of GUEVARA, BAUMANN, COLDWELL AND REEDMAN filed suit on behalf of SMITH AND RAMIREZ RESTORATION LLC for approximately $9,000.00[3]. At that time, Plaintiffs' requests for arbitration as required by the contract between the parties was ignored.

10. On May 15, 2015, after numerous attempts to get the city involved in the roofing issue, a supervising inspector from the City of El Paso's Department of Planning and Inspection did an audit of the supposed inspection performed by CHRIS WELLS and found that the roof failed to meet municipal code. SMITH AND RAMIREZ RESTORATION LLC

---

[1] The demands were made by Alejandro C. Ramirez for their share of that "free" VA money they knew that Plaintiff had access to as a disabled veteran.
[2] Paragraph 13 of the contract stipulated that only arbitration would be resorted to in order to solve all disputes that might arise under the contract.
[3] Andrew Guevara and Colbert Coldwell had both represented Plaintiff Robert K. Hudnall, and Bauman had been retained to act on Plaintiff Robert Hudnall's behalf and thus it was a conflict of interest for Lane Reedman to bring suit against Plaintiffs. An appeal was made to the Texas Br and he stated to both Plaintiffs and the Bar that he would cease involvement. However, according to the 448th District Court he remained attorney of record for an additional 2 years.

3

refused to respond to all requests for warranty repairs or for the arbitration called for in paragraph 13 of the contract between the parties.

11. Plaintiffs did immediately by and through their attorney demand the payment of the Blanket Building and Construction Bond that SMITH AND RAMIREZ RESTORATION LLC was required to post with the City of El Paso under the provisions of Municipal Code section 18.02 before they could get a permit for construction.

12. On October 30, 2015, OLD REPUBLIC SURETY COMPANY, the Surety Company that had posted the bond on behalf of SMITH AND RAMIREZ RESTORATION LLC, did file an Original Petition in Interpleader in a case cited as 2015DCV3677 (EXHIBIT TWO) stating that there were multiple claimants for the bond proceeds and that after an investigation it was determined that the bond should be paid out at the roof had failed to meet requirements of the El Paso municipal code.

13. On June 17, 2017, COUNTY COURT OF LAW NUMBER THREE, a court of competent jurisdiction, did issue an order granting OLD REUBLIC SURETY COMPANY'S FIRST AMENDED PETION IN INTERPLEADER. As a matter of law, this was a final decision that the proceeds of the bond should be paid to Plaintiffs based on the assertion of SMITH AND RAMIREZ RESTORAITON LLC'S own surety company that the roof installed on not only Plaintiffs' house but that of Benjamin Stevens[4] by SMITH AND RAMIREZ RESTORATION LLC failed to meet the code requirements. SMITH AND RAMIREZ RESTORATION LLC was represented in this action by FELIX VALENZUELA, SBOT NO. 24076745 and had every opportunity to litigate the issues raised in the proceeding.

---

[4] Represented in 2015DCV3677 by attorney Michael Zimprich.

14. While this was playing out the suit that SMITH AND RAMIREZ RESTORATION LLC filed against Plaintiffs in violation of the terms of the contract between the parties, was being heard in the 448th DISTRICT COURT in a case cited as 2015DCV1113. Though they were fully aware of the issues raised in 2015DCV3677, Defendants failed to make the court aware of the filing of the case in the County Court of Law #3. Plaintiffs in this action, though one of the Defendants in the case cited as 2015DCV3677, were never personally served with the complaint filed. Plaintiffs were not aware of this case until their attorney, Richard Deck withdrew from representing them citing his opportunity to be appointed to a judgeship if he would withdraw from this case. At that time, he made us aware of the decision reached in 2015DCV3677.

15. Before Plaintiffs could get the facts regarding the case cited as 2015DCV3677, the judge in 2015DCV1113, rather than rule on a motion for Summary Judgment filed by the current plaintiffs, sent the case to arbitration. The final decision in 2015DCV3677 should have ended the matter in both cases as the claim brought by SMITH AND RAMIREZ RESTORATION LLC IN 2015DCV1113 was that the roof passed municipal code inspection and that they did not get paid what they wanted. However, the decision in 2015DCV3677 was hidden from both the Plaintiffs in this action as well as the Court.

16. In arbitration, SMITH AND RAMRIEZ RESTORATION LLC was asked specifically what their specific claim consisted of and they replied that the roof passed inspection and they didn't get paid what they wanted. Plaintiff responded with the fact that in 2015DCV3677 it was determined that the roof failed to meet municipal code. The response of Defendants was to start an attempt to relitigate the entire matter in violation of both Res Judicata and Collateral Estoppel by demanding full discovery and the right to conduct a

site inspection. They are demanding to inspect the roof seven years after the city determined that the roof failed to meet municipal code and they also demand full discovery (EXHIBIT THREE). The Arbitrator has refused to afford Plaintiffs' their right to due process and allow them the benefit of the previous decisions made in 2015DCV3677.

## JURISDICTION AND VENUE

17. This Court has subject matter jurisdiction over this action pursuant to **18 U.S.C. Section 1964** and the ruling of the U.S. Supreme Court in **Tafflin v. Levitt, 493 U.S. 455** which hold that State Courts have concurrent jurisdiction over civil RICO claims. In fact, there is a presumption in favor of such jurisdiction.

18. Venue is also proper un this judicial district pursuant to **18 U.S.C., Section 1965** and **28 U.S.C., Section 1391** because all defendants are subject to personal jurisdiction in this judicial district and either reside or are party to the current arbitration regarding Plaintiffs' property which is located in this district.

## PARTIES

19. Plaintiff, ROBERT K. HUDNALL is a natural person that has been injured by the actions of the defendants.

20. Plaintiff, SHARON ELIAS HUDNALL, is a natural person that has been injured by the actions of the defendants.

21. Defendant, TY SMITH, is a natural person who is co-owner of SMITH AND RAMIREZ RESTORATION LLC[5], located at 1719 Wyoming Avenue, El Paso Texas 79902, with an additional office in Las Cruces, New Mexico.

---

[5] SmithandRamirezroofing.com

22. Defendant, ALEJANDRO C. RAMIREZ, is a natural person who is a founding partner in SMITH AND RAMIREZ RESTORATION LLC, which is located at 1719 Wyoming Avenue, El Paso, Texas 79902.

23. SMITH AND RAMIREZ RESTORATION LLC is a Limited Liability Corporation with its principal place of business at 1719 Wyoming Avenue, EL Paso, Texas 79902. Said company also has offices in Las Cruces, New Mexico.

24. KURT G. PAXSON, is a natural person and works for the law firm of MOUNCE, GREEN, SAFI, PAXSON, & GALATZAN.

25. GARRET J. YANCEY is a natural person and works for the law firm of MOUNCE, GREEN, SAFI, PAXSON & GALATZAN.

26. J. W. MARTINEZ is a natural person and works for the law firm of MOUNCE, GREEN, SAFI, PAXSON & GALATZAN.

27. MOUNCE, GREEN SAFI, PAXSON & GALATZAN is a professional corporation located in El Paso at 100 N. Stanton, El Paso, Texas 79901.

28. EVANSTON INSURANCE COMPANY is a division of MERKEL CORPORATION and is the liability insurance carrier for SMITH AND RAMIREZ RESTORATION LLC. It is located at 10275 W. Higgins Road, Suite 750, Rosemond, Illinois 60018 but which is a party to the current action as the insurer for SMITH AND RAMIREZ RESTORATION LLC.

29. GUY BLUFF of Bluff & Associates, located at 5520 Midway Park Pl NE, Albuquerque, NM. is the arbitrator in the current action where SMITH AND RAMIREZ RESTORATION LLC is continuing to push its claims raising the same issues that were decided in the case cited as 2015DCV3677 in favor of the Plaintiffs.

## <u>FACTUAL ALLEGATIONS COMMON TO ALL RICO COUNTS</u>

The following allegations are common to all of the RICO counts enumerated in this petition. Each of the defendants are either enterprises or culpable persons who have conducted an enterprise which affects interstate commerce (the Dura Last Roofing System was placed in the stream of commerce by a company from Michigan) and have been involved in a pattern of activity designed to defraud Plaintiffs. These violations have injured Plaintiffs. Defendants, TY SMITH and ALEANDRO C. RAMIREZ, through their enterprise, SMITH AND RAMIREZ RESTORATION LLC, did dork to defraud Plaintiffs and deny them the fruits of their entitlements under the contract between the parties.

30. **CULPABLE PERSON/ENTERPRISE**: All defendants in this matter are either natural persons or an enterprise as defined under the RICO statute. There are three defendants which can be classified as enterprises –

- SMITH AND RAMIREZ RESTORATION LLC is a limited liability company formed under the laws of the state of Texas.
- MOUNCE, GREEN SAFI, PAXSON & GALATZAN is a professional corporation located in El Paso at 100 N. Stanton, El Paso, Texas 79901.
- EVANSTON INSURANCE COMPANY, LIABILITY CARRIER for SMITH AND RAMIREZ RESTORATION LLC.
- TY SMITH AND ALEXANDRO J. RAMIREZ are owners/officers of SMITH AND RAMIREZ RESTORATION LLC.
- KURT PAXSON, GARRETT YANCEY are attorneys with the firm of MOUNCE, GREEN SAFI, PAXSON & GALATZAN, a professional corporation.
- GUY BLUFF is an attorney and arbitrator based in ALBUQUERQUE, NM.

8

31. **INTERSTATE COMMERCE**: The DURA-LAST roofing system was designed and manufactured by DURA-LAST Corporation located at 525 Morley Drive, Saginaw, Michigan 48601. Whether made at the parent plant or at one of their subsidiary facilities this roofing system was involved in interstate commerce. Said manufactured roofing system was sold by Smith and Ramirez Restoration LLC. SMITH AND RAMIREZ RESTORATION LLC is an enterprise involved in interstate commerce as it has offices in Las Cruces, New Mexico.

32. **AIDING AND ABETTING**: Some of these defendants are attorneys who are representing SMITH AND RAMIREZ RESTORATION LLC. In the normal course of events attorneys are not defendants, however, in regard to this RICO complaint, the conduct of the attorney defendants gives rise to liability. While Texas does not have an explicitly recognized cause of action for aiding and abetting, it does recognize a cause of action for knowing participation in a breach of fiduciary duty[6]. As a direct result of the contract between the parties, SMITH AND RAMIREZ RESTORAITON LLC had a fiduciary duty to Plaintiffs to act in their best interests and exercise care. A court of competent jurisdiction, OLD REPUBLIC SURETY COMPANY, the security company for SMITH AND RAMIREZ RESTORAITON LLC, as well as the City of El Paso, Texas Department of Planning and Inspection found that the roof failed to meet the requirements of the municipal code, but these attorneys have continued for seven years to claim that the roof passed inspection.

33. **PATTERN OF RACKETEERING**: Section 1961(5) of the RICO statute defines a pattern of activity as at least two acts of racketeering activity. The statute also provides that the acts must be related and continuous to form a pattern of racketeering. Related is defined

---

[6] **Meadows v. Hartford Life Ins. Co., 492 F.3d 634, 639 (5th Cir. 2007)** (quoting **Kinzbach Tool Co. v. Corbett-Wallace Corp., 138 Tex. 565, 160 S.W.2d 509, 514 (Tex. 1942).**

as acts that have the same or similar purposes, results, participants, victims, methods of commission or otherwise interrelated by distinguishing characteristics and are not isolated events.

The predicate acts alleged are related by having the same or similar purposes, results, participants, victims (customers), methods of commissions or are otherwise interrelated by certain characteristics.

Plaintiffs would show that in the case cited as 2015DCV3677, the original petition in interpleader referenced multiple claimants for the Blanket Building and Construction Bond proceeds. While the specific language was not used, the intent of the Interpleader filed by OLD REPUBLIC SURETY COMPANY was that the roofs in question failed to meet municipal code and therefore, the BLANKET CONSTRUCITON BOND proceeds were subject to payment to the damaged clients. This was the final decision of the court by the final decision of the court in the acceptance of the Interpleader filed by OLD REPUBLIC SURETY COMPANY.

It was alleged that the same substandard work was performed for others as was performed for Plaintiffs. There was also the issue common to all that the terms of the contract entered into by SMITH AND RAMIREZ RESTORATION LLC with Plaintiffs was not honored, but Defendants, TY SMITH, ALEJANDRO C. RAMIREZ AND SMITH AND RAMIREZ RESTORAITON LLC attempted through improper legal action to extort money form PLAINTIFFS. Defendant, TY SMITH, ALEJANDRO C RAMIREZ AND SMITH AND RAMIREZ RESTORATION LLC have used the courts and the arbitration system to attempt to obtain funds to which they are not entitled for almost seven years though they refused to honor their contractual agreement with Plaintiffs.

Defendants, KURT G. PAXSON, GARRETT YANCEY, JAMES A. MARTINEZ, the law firm of MOUNCE, GREEN, MYERS, SAFI PAXSON AND GALATZAN, being attorneys and officers of the court have violated their duties as officers of the court and ignored the decision of the Court in 2015DCV3677 that the roof failed to meet municipal code and conspired with Defendants, TY SMITH, ALEJANDRO C. RAMIREZ and SMITH AND RAMIREZ RESTORATION LLC to defraud and extort funds from PLAINTIFFS. ARBITRATOR GUY BLUFF, being an attorney based in New Mexico, has conspired with the other named defendants to cause PLAINTIFFS injury and to increase his payment from the AMERICAN ARBITRATION ASSOCIATION for his services as arbitrator by refusing to grant summary judgment based on both the finding by the court as well as the City of El Paso Department of Planning and Inspection that the roof in question did fail to meet municipal code.

Additionally, the following sections of 18 USC, Section 1961(a) were violated by the activity of the parties as shown in the following Counts:

Section 201 – Bribery – As stated by defendant, Alejandro C. Ramirez, to Plaintiffs and by statements made by various officials, both currently employed and previously employed with the City of El Paso Planning and Inspection Department it was discovered that on a routine basis Defendant, TY SMITH, ALEJANDRO C. RAMIREZ and SMITH AND RAMIREZ RESTORATION LLC did take inspectors employed by the City of El Paso's Department of Planning and Inspection out to lunch or bring them hamburgers in order to curry favor and put Defendants in the position to ask for favors in regard to passing roofs that actually failed to meet the municipal code standards.

11

Section 1341 – Mail Fraud – Defendants Ty Smith and Alejandro C. Ramirez sent letters and other communications to Jake Bryant, adjuster for Plaintiffs' homeowner's insurer painting Plaintiffs as being in violation of the terms of the policy and inquiring into information regarding payments made and to be made to Plaintiffs by their own Insurance company. These communications misled Plaintiffs homeowners policy insurer into believing that the roof in fact passed the municipal code and Plaintiffs were trying to unjustly enrich themselves at Insurer's expense.

Section 1343 – Relating to wire fraud – Emails were sent between Defendants Ty Smith and Alejandro C. Ramirez and Jake Bryant regarding payments made to Plaintiffs under their homeowner's policy. Usually, Defendants were aware of the payments being made to Plaintiffs before plaintiffs were. Defendants also communicated with Plaintiffs mortgage company in an attempt to garner more unwarranted payments.

Through electronic means, GUY BLUFF, as arbitrator in the ongoing arbitration did refuse to grant PLAINTIFFS' their right to due process of law by refusing to accept either, the determination by the Court in 2015DCV3677 or the Department of Planning and Inspection of the City of El Paso determinations that the roof in question did fail to meet municipal code.

Section 1512 – Tampering with a witness, victim or an informant – Defendants Ty Smith and Alejandro C. Ramirez did tamper with City Inspector, Chris Wells, in order to get him to pass the roof installed on Plaintiffs' home without inspecting it in violation of the requirements of Municipal Ordinances.

Section 1513 – Retaliating against a witness, victim or an informant – All defendants have retaliated against Plaintiffs (victim) in continuing to assert that the roof in

question passed City inspection when both the Court, in 2015DCV3677 and the City Department of Planning and Inspection found that the roof failed inspection and thus failed to meet the requirements of the municipal code.

Section 277 – Defendants did improperly assist certain undocumented aliens to enter the United States and work here in that most of their work crews were not legally authorized to work in the United States. Their wages were not in keeping with the requirements for payment for those who were legally authorized to work in this country. The use of undocumented immigrants by defendants Ty Smith, Alejandro C. Ramirez and Smith and Ramirez Restoration LLC was for financial gain due to their willingness to accept lower wages than U.S. Citizens. When proof was requested by Plaintiffs showing that their crews were able to work here legally, said proof was refused by Smith and Ramirez Restoration LLC.

34. **INJURY**: Plaintiffs meet the RICO standing requirements as follows:

Plaintiffs are natural persons as defined by statute who have sustained injury to their property by reason of defendant's violation of 18 USC, Section 1962. Said injury stemmed from predicate acts as outlined pursuant to 18 USC 1962(c) and Section 1962(d) regarding overt acts committed in furtherance of the conspiracy.

The acts of all defendants are in violation of the following sections of 18 USC:

a. 18 USC, Section 371 – Conspiracy to Commit Offense or to Defraud the United States refers to Defendants Ty Smith and Alejandro C. Ramirez attempts to force Plaintiff to give them access to some of the "free" VA money they believed was available to Plaintiff ROBERT K. HUDNALL.

b. 18 USC, Section 241 – Conspiracy Against Rights refers to two or more people conspiring to injure, oppress or threaten or intimidate any person in any State, Territory, Commonwealth or Possession or District in the free exercise or enjoyment of any right or privilege secured by the Constitution or laws of the United States – All defendants have conspired to ignore the final decision in 2015DCV3677 as well as the findings of the final inspection by the City's Department of Planning and Inspection and force Plaintiffs to pay them funds to which they are not entitled.

c. 18 USC 242 – DEPRIVATION OF RIGHTS UNDER COLOR OF LAW – By refusing the accept the final decision in 2015DCV3677 and continuing to try and relitigated the issues decided therein through arbitration, Defendants are depriving Plaintiffs of rights, privileges or immunities secured or protected by the laws of the United States through their refusal to accept the findings of a court of competent jurisdiction under the case cited as 2015DCV3677. Plaintiffs are also part of a protected class being senior citizens and Plaintiff, ROBERT K. HUDNAL is a 100% disabled veteran. He is being subjected to this continued fraudulent conduct primarily due to his status as a 100% disabled veteran and Defendants' mistaken belief he has access to "free" VA money.

d. 18 USC 286 – CONSPIRACY TO DEFRAUD THE GOVERNMENT WITH RESPECT TO CLAIMS: Defendants, TY SMITH, ALEXJANDRO J. RAMIREZ and SMITH AND RAMIREZ RESTORATION LLC continued to insist that claims be filed with the Department of Veterans Affairs for some of that free VA money that they insisted they were entitled to be paid half of.

14

e. 42 USC, Section 1985 – Conspiracy to Interfere with Civil Rights – All defendants are attempting to relitigate a final decision in 2015DCV3677 that the roof in question failed to meet Municipal Code requirements contrary to law. The current claim with the arbitrator is based on ignoring both this decision in 2015DCV3677 as well as the letter from the Supervising Inspector from the El Paso City's Department of Planning and Inspection confirming that the roof in question failed to meet municipal code requirements and these actions are denying Plaintiffs' right to due process of law. The Arbitrator's refusal to accept either the decision of the court in 2015DCV3677 or the inspection report that the roof in question failed to meet municipal requirements is denying Plaintiffs due process of law in order to unjustly enlarge his payment from the American Arbitration Association for his services as an Arbitrator.

**STATUTE OF LIMITATIONS**: The actions of Defendants and the injuries to Plaintiffs began in 2015 and have continued to this date. Thus, the statute of limitations is not an issue in this matter.

## COUNT I

## RICO SECTION 1962(C)

35. The allegations of paragraphs 1 through 33 are hereby incorporated herein by reference.

36. This count is against Defendants TY SMITH, ALEJANDRO C. RAMIREZ, KURT PAXSON, GARRETT YANCEY, J. W. MARTINEZ, EVANSTON INSURANCE COMPANY, SMITH AND RAMIREZ RESTORATION LLC, and the enterprise of MOUNCE, GREEN, SAFI, PAXSON & GALATZAN a professional corporation.

37. EVANSTON INSURANCE COMPANY, SMITH AND RAMIREZ RESTORATION LLC, and MOUNCE, GREEN SAFI, PAXSON & GALATZAN a professional corporation are enterprises engaged in and whose activities affect interstate commerce. Defendants TY SMITH, ALEJANDRO C. RAMIREZ, KURT PAXSON, GARRETT YANCEY, AND J. W. MARTINEZ are principles in, or partners employed by, or associated with, the enumerated enterprises. GUY BLUFF is an attorney and arbitrator working for the AMERICAN ARBITRATION ASSOCIATION and is furthering the racketeering activity of the other Defendants by refusing to accept the decisions reached in 2015DCV3677 or by the City of El Paso Department of Planning and Inspection that the roof in question did not meet the municipal code.

38. The COUNT I Defendants agreed to and did conduct and participate in the conduct of the enterprises' through a pattern of racketeering activity and for the unlawful purpose of defrauding Plaintiffs. Specifically, Defendants TY SMITH and ALEJANDRO C. RAMIREZ did commit the acts of Bribery of employees of the City of El Paso, Texas in an attempt to commit a fraud upon Plaintiffs. Defendants KURT G. PAXSON, GARRETT YANCEY, JAMES W. MARTINEZ and the professional corporation of MOUNCE, GREEN, MYERS, SAFI, PAXSON AND GALATZAN did conspired with Defendants TY SMITH, ALEJANDRO C. RAMIREZ and SMITH AND RAMIREZ RESTORATION LLC to defraud Plaintiffs and violate their civil rights. Defendant GUY BLUFF as arbitrator has furthered the racketeering activities of the other Defendants in the hopes of increasing his payment from the AMERICAN ARBITRATION ASSOCIATION by stretching out the arbitration.

39. Defendant EVANSTON INSURANCE COMPANY did fund said criminal enterprise and conspired with Defendants TY SMITH, ALEJANDRO C. RAMIREZ AND SMITH AND RAMIREZ RESTORATION LLC to defraud Plaintiff and violate their civil rights.

40. The Court I defendants, TY SMITH, ALEJANDRO C. RAMIREZ did agree to and conduct and participate in the conduct of the enterprises' affairs through a pattern of racketeering activity and for the unlawful purpose of intentionally defrauding Plaintiffs. Specifically, breaching the contract between the parties, illegally modifying the contract (EXHIBIT 1B), refusing to accept the determination by the Court in 2015DCV3677 and the City of El Paso's Department of Planning and Inspection that the roof in question failed to meet municipal code.

41. Pursuant and in furtherance of their fraudulent scheme, Defendants committed multiple acts of fraud, breach of contract, attempted extortion, denial of civil rights based upon being members of a protected class, harassment and attempting to defraud the government with respect to filing of false claims as well as invasion of PLAINTIFFS' privacy.

42. The acts of fraud, breach of contract, attempted extortion, denial of civil rights based upon being members of a protected class, harassment and attempting to defraud the government with respect to filing of false claims as well as invasion of privacy were committed in furtherance of their racketeering activity.

43. Defendants KURT PAXSON, GARRETT YANCEY, J. W. MARTINEZ, EVANSTON INSURANCE COMPANY, and the enterprise of MOUNCE, GREEN SAFI, PAXSON & GALATZAN a professional corporation have worked in conjunction with Defendants TY SMITH, ALEJANDRO C. RAMIREZ AND SMITH AND RAMIREZ RESTORATION

LLC to further the conspiracy to defraud Plaintiffs through a pattern of racketeering activity described above in violation of 18 USC 1962 (c).

44. As a direct and proximate result of the Count I Defendants' racketeering activities and violations of 18 USC 1962(c) Plaintiffs have been injured in their property in that the removal of the mold caused by the improperly installed roof, repairs and replacements of furnishings as well as reimbursement for long term storage of an art collection runs to $370,000.00.

45. A foreseeable exposure of Plaintiffs to toxic mold caused directly and proximately by the defective roof has caused Plaintiffs permanent medical disabilities which will require long term care.

WHEREFORE, Plaintiffs requests that this Court enter judgment against each of the Count I Defendants as follows:

- $370,000.00 Compensatory damages for property damages caused by Defendants TY SMITH, ALEJANDRO C. RAMIREZ, and SMITH AND RAMIREZ RESTORATION LLC.

- $500, 000.00 punitive damages for damage to property caused by the above named, defendants and

- $1,000,000.00 compensatory damages for long term disabilities caused to Plaintiffs by Defendants' improper actions and

- $1,000,000.00 punitive damages for long term disabilities caused to Plaintiffs' by Defendants' improper actions.

- The damages caused by Defendants SMITH AND RAMIREZ RESTORATION LLC have been acerbated by the aiding and abetting of their fraudulent conduct by Defendants,

KURT PAXSON, GARRETT YANCEY, J. W. MARTINEZ, EVANSTON INSURANCE COMPANY, SMITH AND RAMIREZ RESTORATION LLC, and the enterprise of MOUNCE, GREEN SAFI, PAXSON & GALATZAN a professional corporation

- Plaintiff does ask for the sum of $1,000,000.00 compensatory damages from each of defendants KURT G. PAXSON, GARRETT YANCEY AND J.W. MARTINEZ. Plaintiffs also ask for as well as $1,000,000.00 punitive damages from each of these defendants.

- Plaintiff does ask for compensatory damages of $5,000,000.00 from MOUNCE, GREEN SAFI, PAXSON & GALATZAN as well as $5,000,000.00 punitive damages.

- Plaintiff does ask for $5,000,000.00 in compensatory damages from EVANSTON INSURACNE COMPANY as well as $5,000,000.00 punitive damages.

- Treble damages from all Count I Defendants.

## COUNT II
## RICO SECTION 1962(a)

46. The allegations of paragraphs 1 through 43 are hereby incorporated herein by reference.

47. This Count is against Defendants TY SMITH, ALEJANDRO C. RAMIREZ, KURT PAXSON, GARRETT YANCEY, J. W. MARTINEZ, EVANSTON INSURANCE COMPANY, SMITH AND RAMIREZ RESTORATION LLC, and the enterprise of MOUNCE, GREEN SAFI, PAXSON & GALATZAN a professional corporation (The Count II Defendants).

48. SMITH AND RAMIREZ RESTORATION LLC is an enterprise engaged in and whose activities affect interstate commerce.

49. EVANSTON INSURANCE COMPANY is an enterprise engaged in and whose activities affect interstate commerce.

50. MOUNCE, GREEN, MYERS, WSAFI, PAXSON AND GALATZAN is an enterprise engaged in and whose activities affect interstate commerce.

51. The Count II Defendants used and invested income that was derived from a pattern of racketeering activity in an interstate enterprise.

52. The Count II defendants used and invested income that was derived form a pattern of racketeering activity in an interstate enterprise. Specifically, TY SMITH, ALEJANDRO C. RAMIREZ, SMITH AND RAMIREZ RESTORATION LLC, EVANSTON INSURACNE COMPANY, KURT PAXSON, GARRETT YANCEY AND J. W. MARTINEZ are paid by, directly or indirectly by funds paid by interstate companies to carry out a pattern of defraud Plaintiffs.

53. The racketeering activity listed above constitute a pattern of racketeering activity pursuant to 18 USC 1961(5).

54. As a direct and proximate result of the Count I Defendants' racketeering activities and violations of 18 USC 1962(c) Plaintiffs have been injured in their property in that the removal of the mold caused by the improperly installed roof, repairs and replacements of to furnishings as well as reimbursement for long term storage of an art collection runs $370,000.00.

55. A foreseeable exposure of Plaintiffs to toxic mold caused directly and proximately by the defective roof has caused Plaintiffs permanent medical disabilities which will require long term care.

56. As a direct and proximate result of the Count I Defendants' racketeering activities and violations of 18 USC 1962(c) Plaintiffs have been injured in their property in that the removal of the mold caused by the improperly installed roof, repairs and replacements of

furnishings as well as reimbursement for long term storage of an art collection runs $370,000.00.

57. A foreseeable exposure of Plaintiffs to toxic mold caused directly and proximately by the defective roof has caused Plaintiffs permanent medical disabilities which will require long term care.

WHEREFORE, Plaintiffs requests that this Court enter judgment against each of the Count II Defendants as follows:

- $370,000.00 Compensatory damages for property damages caused by Defendants TY SMITH, ALEJANDRO C. RAMIREZ, and SMITH AND RAMIREZ RESTORATION LLC.

- $500, 000.00 punitive damages for damage to property caused by the above named, defendants and

- $1,000,000.00 compensatory damages for long term disabilities caused to Plaintiffs by Defendants' improper actions and

- $1,000,000.00 punitive damages for long term disabilities caused to Plaintiffs' by Defendants' improper actions.

- The damages caused by Defendants SMITH AND RAMIREZ RESTORATION LLC have been made worse by the aiding and abetting of their fraudulent conduct by Defendants, KURT PAXSON, GARRETT YANCEY, J. W. MARTINEZ, EVANSTON INSURANCE COMPANY, SMITH AND RAMIREZ RESTORATION LLC, and the enterprise of MOUNCE, GREEN SAFI, PAXSON & GALATZAN a professional corporation and the tacit support of GUY BLUFF arbitrator in refusing to accept the decision in 2015DCV3677 and the letters from the City of El Paso Department of Planning and Inspection.

- Plaintiff does ask for the sum of $1,000,000.00 compensatory damages from each of defendants KURT G. PAXSON, GARRETT YANCEY AND J.W. MARTINEZ. Plaintiffs also ask for as well as $1,000,000.00 punitive damages from each of these defendants.

- Plaintiff does ask for compensatory damages of $5,000,000.00 from MOUNCE, GREEN SAFI, PAXSON & GALATZAN as well as $5,000,000.00 punitive damages.

- Plaintiff does ask for $5,000,000.00 in compensatory from EVANSTON INSURANCE COMPANY as well as $5,000,000.00 punitive damages.

- From Defendant GUY BLUFF, Arbitrator, $1,000,000.00 compensatory damages and $1,000,000 punitive damages.

- Treble damages from all Count II Defendants.

## COUNT III
## RICO SECTION 1962(B)

58. The allegations of paragraphs 1 through 55 are incorporated herein by reference.

59. This Count is against Defendants TY SMITH, ALEJANDRO C. RAMIREZ, SMITH AND RAMIREZ RESTORATION LLC. (The Count III Defendants)

60. SMITH AND RAMIREZ RESTORATION LLC is an enterprise engaged in and whose activities affect interstate commerce.

61. The COUNT III Defendants acquired and maintained interests in and control of the enterprise through a pattern of racketeering acidity. Much of their income was acquired through the same of a roofing system that was in interstate commerce. The then improperly installed it, illegally modified contracts with their customers and made a habit of suing for funds they felt that they were owed for the defective work.

62. The racketeering activity listed above constitutes a pattern of racketeering activity pursuant to 18 USC 1961(5).

63. The COUNT III Defendants have directly and indirectly acquired and maintained interests in and control of the enterprise through the pattern of racketeering activity described above in violation of $18 USC 1962(b).

64. As a direct and proximate result of the Count III Defendants' racketeering activities and violations of 18 USC 1962(c) Plaintiffs have been injured in their property in that the removal of the mold caused by the improperly installed roof, repairs and replacements of furnishings as well as reimbursement for long term storage of an art collection runs $370,000.00.

65. A foreseeable exposure of Plaintiffs to toxic mold caused directly and proximately by the defective roof has caused Plaintiffs permanent medical disabilities which will require long term care.

WHEREFORE, Plaintiffs requests that this Court enter judgment against each of the Count II Defendants as follows:

- $370,000.00 Compensatory damages for property damages caused by Defendants TY SMITH, ALEJANDRO C. RAMIREZ, and SMITH AND RAMIREZ RESTORATION LLC.

- $500, 000.00 punitive damages for damage to property caused by the above named, defendants and

- $1,000,000.00 compensatory damages for long term disabilities caused to Plaintiffs by Defendants' improper actions and

- $1,000,000.00 punitive damages for long term disabilities caused to Plaintiffs' by Defendants' improper actions.

- The damages caused by Defendants SMITH AND RAMIREZ RESTORATION LLC have been made worse by the aiding and abetting of their fraudulent conduct by Defendants, KURT PAXSON, GARRETT YANCEY, J. W. MARTINEZ, EVANSTON INSURANCE COMPANY, SMITH AND RAMIREZ RESTORATION LLC, and the enterprise of MOUNCE, GREEN SAFI, PAXSON & GALATZAN a professional corporation and the tacit support of GUY BLUFF arbitrator in refusing to accept the decision in 2015DCV3677 and the letters from the City of El Paso Department of Planning and Inspection.

- Plaintiff does ask for the sum of $1,000,000.00 compensatory damages from each of defendants KURT G. PAXSON, GARRETT YANCEY AND J.W. MARTINEZ. Plaintiffs also ask for as well as $1,000,000.00 punitive damages from each of these defendants.

- Plaintiff does ask for compensatory damages of $5,000,000.00 from MOUNCE, GREEN SAFI, PAXSON & GALATZAN as well as $5,000,000.00 punitive damages.

- Plaintiff does ask for $5,000,000.00 in compensatory from EVANSTON INSURANCE COMPANY as well as $5,000,000.00 punitive damages.

- From Defendant GUY BLUFF, Arbitrator, $1,000,000.00 compensatory damages and $1,000,000 punitive damages.

- Treble damages from all Count II Defendants.

### COUNT IV
### RICO SECTION 1962(D)

66. The allegations of paragraphs 1 through 63 are hereby incorporated herein by reference.

67. This Count is against Defendants TY SMITH, ALEJANDRO C. RAMIREZ, KURT PAXSON, GARRETT YANCEY, J. W. MARTINEZ, EVANSTON INSURANCE

COMPANY, SMITH AND RAMIREZ RESTORATION LLC, and the enterprise of MOUNCE, GREEN SAFI, PAXSON & GALATZAN a professional corporation (The Count IV Defendants).

68. SMITH AND RAMIREZ RESTORATION LLC is an enterprise engaged in and whose activities affect interstate commerce.

69. EVANSTON INSURANCE COMPANY is an enterprise engaged in and whose activities affect interstate commerce.

70. MOUNCE, GREEN, MYERS, WSAFI, PAXSON AND GALATZAN is an enterprise engaged in and whose activities affect interstate commerce.

71. As set forth above, the County IV Defendants agreed and conspired violate 18 USC Section 1962(a) (b) (c). Specifically, they worked jointly and severally to use or invest income that is derived for a pattern of racketeering activity in an interstate enterprise (Section 1962(a)); worked jointly and severally to acquire or maintain interests in the enterprise through a pattern of racketeering activity (Section 1962(b)); or conducted and participated in the conduct of the affairs through a pattern of racketeering activity (Section 1962(c)).

72. The Count IV Defendants have intentionally conspired and agreed to directly and indirectly use or invest income that is derived from a pattern of racketeering activity in an interstate enterprise, acquire or maintain interests in the enterprise through a pattern of racketeering activity and conduct and participate in the conduct of the affairs of the enterprise through a pattern of racketeering activity. The Count IV Defendants knew that their predicate acts were part of a pattern of racketeering activity and agreed, whether directly or indirectly to the commission of those acts to further their schemes described above. That conduct

constitutes a conspiracy to violation 18 USCA Sections 1962(a) (b) and (c) in violation of 18 USC Section 1962(d).

73. As a direct and proximate result of the County IV Defendants conspiracy, the overt acts taken in furtherance of that conspiracy and violations of 18 USC Section 1962(d), Plaintiffs have been injured in their property in that As a direct and proximate result of the Count III Defendants' racketeering activities and violations of 18 USC 1962(c) Plaintiffs have been injured in their property in that the removal of the mold caused by the improperly installed roof, repairs and replacements of furnishings as well as reimbursement for long term storage of an art collection runs $370,000.00.

74. A foreseeable exposure of Plaintiffs to toxic mold caused directly and proximately by the defective roof has caused Plaintiffs permanent medical disabilities which will require long term care.

75. Defendants, TY SMITH and ALEJANDRO C. RAMIREZ, and Defendant SMITH AND RAMIREZ RESTORATION LLC, singled out veterans and disabled veterans to victimize through the fraud underlying their racketeering activities.

WHEREFORE, Plaintiffs requests that this Court enter judgment against each of the Count IV Defendants as follows:

- $370,000.00 Compensatory damages for property damages caused by Defendants TY SMITH, ALEJANDRO C. RAMIREZ, and SMITH AND RAMIREZ RESTORATION LLC.

- $500, 000.00 punitive damages for damage to property caused by the above named, defendants and

- $1,000,000.00 compensatory damages for long term disabilities caused to Plaintiffs by Defendants' improper actions and

- $1,000,000.00 punitive damages for long term disabilities caused to Plaintiffs' by Defendants' improper actions.

- The damages caused by Defendants SMITH AND RAMIREZ RESTORATION LLC have been made worse by the aiding and abetting of their fraudulent conduct by Defendants, KURT PAXSON, GARRETT YANCEY, J. W. MARTINEZ, EVANSTON INSURANCE COMPANY, SMITH AND RAMIREZ RESTORATION LLC, and the enterprise of MOUNCE, GREEN SAFI, PAXSON & GALATZAN a professional corporation and the tacit support of GUY BLUFF arbitrator in refusing to accept the decision in 2015DCV3677 and the letters from the City of El Paso Department of Planning and Inspection that the roof in question failed to meet the requirements of municipal code.

- Plaintiff does ask for the sum of $1,000,000.00 compensatory damages from each of defendants KURT G. PAXSON, GARRETT YANCEY AND J.W. MARTINEZ. Plaintiffs also ask for $1,000,000.00 punitive damages from each of these defendants.

- Plaintiff does ask for compensatory damages of $5,000,000.00 from MOUNCE, GREEN SAFI, PAXSON & GALATZAN as well as $5,000,000.00 punitive damages.

- Plaintiff does ask for $5,000,000.00 in compensatory from EVANSTON INSURANCE COMPANY as well as $5,000,000.00 punitive damages.

- From Defendant GUY BLUFF, Arbitrator, $1,000,000.00 compensatory damages and $1,000,000 punitive damages.

- Treble damages from all Count IV Defendants.

<u>**COUNT V**</u>

<u>**FRAUD/FRAUDULENT INDUCEMENT**</u>

76. The allegations of paragraphs 1 through 75 are hereby incorporated herein by reference.

77. This Count against Defendants TY SMITH, ALEJANDRO C. RAMIREZ AND SMITH AND RAMIREZ RESTORATION LLC.

78. As to the claim of fraud, TY SMITH, ALEJANDRO C. RAMIREZ AND SMITH AND RAMIREZ RESTORATION LLC did, without Plaintiffs' knowledge change the terms of the contract entered into between the parties, to the detriment of Plaintiffs.

79. The elements of fraud in Texas are:

- The Defendant made a representation to the Plaintiffs

  (1) Under the contract between the parties (EXHIBIT ONE) in paragraph 1 Defendants did guarantee that the roofing system would perform as stated – i.e., meet code and fitness of purpose. Also, in paragraph 1 - It was guaranteed that if Plaintiffs were dissatisfied, Defendants would remove the roofing system and refund 100% of Plaintiffs investment.

  (2) Defendants did assert that they would warrant their work – Plaintiffs paid the amount of the agreed upon invoice, but warranty work by Defendants was refused.

  (3) Paragraph 13 made it very clear that Arbitration was the sole methods of settling disputes between the parties. Then when the Defendants were not happy, they immediately filed suit in breach of the contract.

- The representation was material

The guarantee that the roofing system would perform as stated, this is meet code and fitness of purpose the warranty clause and the resort to Arbitration in case of a disagreement were material representations in the minds of the Plaintiffs.

- The representation was false

  The guarantee of satisfaction and the promise to remove the roofing system and refund 100% of the funds paid if Plaintiffs were not satisfied were false. When Plaintiffs told Defendants the roofing system was not satisfactory and asked for the roofing system to be repaired or replaced, Defendants walked off the job. Instead of honoring their contract, Defendants have conducted a campaign that has bordered on extortion to obtain more funds than called for under the contract, keeping this matter either in the courts of arbitration for almost seven years.

  The warranty clause was ignored by Defendants

  The arbitration clause in Paragraph 13 was ignored in that Defendants immediately sued Plaintiffs.

- When the Defendant made the representation, the Defendant knew it was false or made the representation recklessly and without knowledge of its truth:

  Based upon further investigation it has been shown that Defendants has a history of not abiding by their contractual agreements, so they knew that their promises were false, made the promises recklessly or without knowledge of its truth.

- Defendant made the representation with the intent that the Plaintiff act upon it:

  The contract was presented to Plaintiffs with assurances that this document would govern the actions between the parties, protecting both sides.

- Plaintiff relied on the representation; and

Plaintiffs did rely on the terms of the contract.

- The representation caused the Plaintiff injury[7].

  Reliance on the assertions contained within the contract have caused Plaintiffs' injuries.

80. Fraudulent inducement is a particular species of fraud that arises only in the context of a contract and requires the existence of a contract as part of its proof. Plaintiffs were induced to sign the contract by Defendants. Otherwise, the elements of fraud must be established as they relate to an agreement between the parties[8].

WHEREFORE, Plaintiffs requests that this Court enter judgment against each of the Count V Defendants as follows:

- $370,000.00 Compensatory damages for property damages caused by Defendants TY SMITH, ALEJANDRO C. RAMIREZ, and SMITH AND RAMIREZ RESTORATION LLC breach of contract and fraudulent inducement.

- $500, 000.00 punitive damages for damage to property caused by the above named, defendants as a result of their breach of contract and fraudulent inducement and

- $1,000,000.00 compensatory damages for long term disabilities caused to Plaintiffs by Defendants' breach of contract and fraudulent inducement and

- $1,000,000.00 punitive damages for long term disabilities caused to Plaintiffs' by Defendants' breach of contract and fraudulent inducement and

- The damages caused by Defendants SMITH AND RAMIREZ RESTORATION LLC have been made worse by the aiding and abetting of their fraudulent conduct

---

[7] **Shandong Yinguang Chem. Indus. Joint Stock Co., LTD. V. Potter**, 607 F.23d 1029, 1032-33 (5th Cir. 2010.
[8] **Bohnsack v. Varco, LP,** 668 F.3d 262, 277 (5th Cir. 2012)

by Defendants, KURT PAXSON, GARRETT YANCEY, J. W. MARTINEZ, EVANSTON INSURANCE COMPANY, SMITH AND RAMIREZ RESTORATION LLC, and the enterprise of MOUNCE, GREEN SAFI, PAXSON & GALATZAN a professional corporation and the tacit support of GUY BLUFF arbitrator in refusing to accept the decision in 2015DCV3677 and the letters from the City of El Paso Department of Planning and Inspection that the roof in question failed to meet the requirements of municipal code.

- Plaintiff does ask for the sum of $1,000,000.00 compensatory damages from each of defendants KURT G. PAXSON, GARRETT YANCEY AND J.W. MARTINEZ. Plaintiffs also ask for $1,000,000.00 punitive damages from each of these defendants.

- Plaintiff does ask for compensatory damages of $5,000,000.00 from MOUNCE, GREEN SAFI, PAXSON & GALATZAN as well as $5,000,000.00 punitive damages.

- Plaintiff does ask for $5,000,000.00 in compensatory from EVANSTON INSURANCE COMPANY as well as $5,000,000.00 punitive damages.

- From Defendant GUY BLUFF, Arbitrator, $1,000,000.00 compensatory damages and $1,000,000 punitive damages.

## COUNT VI

### FRAUDULENT MISREPRESENTAITON

81. The allegations of Paragraph 1 through 80 are hereby incorporated by reference.

82. As to the claim of fraudulent misrepresentation, the elements include proof that:

- The Defendant made a material misrepresentation:

1. Under the contract between the parties (EXHIBIT ONE) in paragraph 1 Defendants did guarantee that the roofing system would perform as stated – i.e., meet code and fitness of purpose. Also, in paragraph 1 - It was guaranteed that if Plaintiffs were dissatisfied, Defendants would remove the roofing system and refund 100% of Plaintiffs investment.

2. Defendants did assert that they would warrant their work – Plaintiffs paid the amount of the agreed upon invoice, but warranty work by Defendants was refused.

3. Paragraph 13 made it very clear that Arbitration was the sole methods of settling disputes between the parties. Then when the Defendants were not happy, they immediately filed suit in breach of the contract.

- The representation was false

   The paragraphs of the contract enumerated above were not honored by Defendants, TY SMITH, ALEJANDRO C. RAMIREZ AND SMITH AND RAMIREZ RESTORAITON LLC thus they were falsely made.

- The Defendants knew that the representation was false wen made or made it recklessly without any knowledge of the truth and as a positive assertion

   By their actions, Defendants TY SMITH, ALEJANDRO C. RAMIREZ, AND SMITH AND RAMIREZ RESTORATION LLC knew that they no intention of honoring the terms of the contract.

- The defendant made the representation with the intention that it should be acted upon:

Defendants, TY SMITH, ALEJANDRO C. RAMIREZ AND SMITH ANDRAMIREZ RESTORAIOTN made the representations contained in the contract that was subsequently entered into between the parties with the intention they should be acted upon.

- The representation was in fact justifiably relied upon and

  Plaintiffs did rely on the representations contained within the contract and acted upon them.

- Plaintiff was damaged as a result.

  As a result of relying upon the representations made by Defendants, Plaintiff did enter into the contract and were damaged.

83. WHEREFORE, Plaintiffs requests that this Court enter judgment against each of the Count VI Defendants as follows:

- $370,000.00 Compensatory damages for property damages resulting from the fraudulent misrepresentations of Defendants TY SMITH, ALEJANDRO C. RAMIREZ, and SMITH AND RAMIREZ RESTORATION LLC.

- $500, 000.00 punitive damages for damage to property resulting from the fraudulent misrepresentation made by the above named, defendants and

- $1,000,000.00 compensatory damages for long term disabilities resulting from the fraudulent misrepresentations made to Plaintiffs by Defendants' and

- $1,000,000.00 punitive damages for long term disabilities resulting from the fraudulent misrepresentations made to Plaintiffs' by Defendants.

- The damages caused by Defendants SMITH AND RAMIREZ RESTORATION LLC have been made worse by the aiding and abetting of their fraudulent conduct by Defendants,

KURT PAXSON, GARRETT YANCEY, J. W. MARTINEZ, EVANSTON INSURANCE COMPANY, SMITH AND RAMIREZ RESTORATION LLC, and the enterprise of MOUNCE, GREEN SAFI, PAXSON & GALATZAN a professional corporation and the tacit support of GUY BLUFF arbitrator in refusing to accept the decision in 2015DCV3677 and the letters from the City of El Paso Department of Planning and Inspection that the roof in question failed to meet the requirements of municipal code.

- Plaintiff does ask for the sum of $1,000,000.00 compensatory damages from each of defendants KURT G. PAXSON, GARRETT YANCEY AND J.W. MARTINEZ for their aiding and abetting of Defendants, TY SMITH, ALEJANDRO C. RAMIREZ AND SMITH AND RAMIREZ RESTORATION LLC breach of the fiduciary duty owed to Plaintiffs. Plaintiffs also ask for $1,000,000.00 punitive damages from each of these defendants.

- Plaintiff does ask for compensatory damages of $5,000,000.00 from MOUNCE, GREEN SAFI, PAXSON & GALATZAN as well as $5,000,000.00 punitive damages for aiding and abetting of Defendants, TY SMITH, ALEJANDRO C. RAMIREZ AND SMITH AND RAMIREZ RESTORATION LLC in their breach of the fiduciary duty owed to plaintiffs.

- Plaintiff does ask for $5,000,000.00 in compensatory from EVANSTON INSURANCE COMPANY as well as $5,000,000.00 punitive damages for their aiding and abetting Defendants TY SMITH, ALEJANDRO C. RAMIREZ AND SMITH AND RAMIREZ RESTORAIOTN LLC in their breach of the fiduciary duty owed to Plaintiffs.

- From Defendant GUY BLUFF, Arbitrator, $1,000,000.00 compensatory damages and $1,000,000 punitive damages for aiding and abetting Defendants TY SMITH,

ALEJANDRO C. RAMIREZ AND SMITH AND RAMIREZ RESTORAITON LLC in their breach of the fiduciary duty owed to Plaintiffs.

## COUNT VII

## BREACH OF CONTRACT

84. The allegations of Paragraphs 1 through 83 are hereby incorporated by reference.

85. The essential elements of a breach of contract claim in Texas are:

- The existence of a valid contract.

  At the tine Plaintiffs entered into the contract it was assumed by all parties to be valid.

- Performance or tendered performance by the Plaintiff:

  Plaintiffs did tender almost $4,000.00 more than the agreed upon price for the roofing system.

- Breach of the contract by the Defendant:

  Defendants did unilaterally modify the contract secretly and then demand more money while refusing to honor the terms of the contract in question.

- Damages sustained by the Plaintiff as a result of the breach[9].

  Plaintiffs were damaged by the actions of Defendants.

WHEREFORE, Plaintiffs requests that this Court enter judgment against each of the Count VII Defendants as follows:

- 370,000.00 Compensatory damages for property damages caused by Defendants TY SMITH, ALEJANDRO C. RAMIREZ, and SMITH AND RAMIREZ RESTORATION LLC breach of contract.

---

[9] **Mullins v. TestAmerica, Inc.,** 564 F.3d 386, 418 (5th Circ. 2009)

- $500, 000.00 punitive damages for damage to property caused by the above named, defendants breach of contract and

- $1,000,000.00 compensatory damages for long term disabilities caused to Plaintiffs by Defendants' improper actions in breaching the contract and

- $1,000,000.00 punitive damages for long term disabilities caused to Plaintiffs' by Defendants' breach of contract.

- The damages caused by Defendants TY SMITH, ALEJANDRO C. RAMIREZ AND SMITH AND RAMIREZ RESTORATION LLC breaching of the contract between the parties have been made worse by the aiding and abetting of their breach of their fiduciary duty owed under the breached contract to Plaintiffs. This breach of the fiduciary duty owed by Defendants under the contract was aided by Defendants, KURT PAXSON, GARRETT YANCEY, J. W. MARTINEZ, EVANSTON INSURANCE COMPANY, SMITH AND RAMIREZ RESTORATION LLC, and the enterprise of MOUNCE, GREEN SAFI, PAXSON & GALATZAN a professional corporation and the tacit support of GUY BLUFF arbitrator in refusing to accept the decision in 2015DCV3677 and the letters from the City of El Paso Department of Planning and Inspection that the roof in question failed to meet the requirements of municipal code.

- Plaintiff does ask for the sum of $1,000,000.00 compensatory damages from each of defendants KURT G. PAXSON, GARRETT YANCEY AND J.W. MARTINEZ for aiding and abetting Defendants TY SMITH, ALEJANDRO C. RAMIREZ AND SMITH AND RAMIREZ RESTORATION LLC in violating their fiduciary duties

in the breaching of their contract with Plaintiffs. Plaintiffs also ask for $1,000,000.00 punitive damages from each of these defendants.

- Plaintiff does ask for compensatory damages of $5,000,000.00 from MOUNCE, GREEN SAFI, PAXSON & GALATZAN as well as $5,000,000.00 punitive damages.

- Plaintiff does ask for $5,000,000.00 in compensatory from EVANSTON INSURANCE COMPANY as well as $5,000,000.00 punitive damages.

- From Defendant GUY BLUFF, Arbitrator, $1,000,000.00 compensatory damages and $1,000,000 punitive damages.


## COUNT VIII

## PROMISSORY ESTOPPEL

86. The allegations of Paragraphs 1 through 85 are hereby incorporated by reference.

87. Promissory estoppel is a narrow exception to the statute of frauds[10]. The elements of Promissory Estoppel in Texas are:

- A promise:

  On July 10, 2014, when the Plaintiffs' house flooded due to holes left in the roof, Defendant, ALLEJANDRO C. RAMIREZ, after surveying the damage did promise Plaintiffs that all damage caused by the flooding would be repaired at SMITH AND RAMIREZ RESTORAITON LLC'S.

- Foreseeability of reliance on the promise by the promisor, and

  It was foreseeable that Plaintiff would rely on said promise.

---

[10] **Trammel Crow Co. v. Harkinson**, 944 S.W.2d 631, 636 (Tex. 1997)

- Foreseeability of detrimental reliance by the promisee[11].

  Damage to Plaintiffs by the refusal of SMITH AND RAMIREZ RESTORATION LLC to keep that promise was foreseeable.

WHEREFORE, Plaintiffs requests that this Court enter judgment against each of the Count VIII Defendants as follows:

- $370,000.00 Compensatory damages for property damages caused by Defendants TY SMITH, ALEJANDRO C. RAMIREZ, and SMITH AND RAMIREZ RESTORATION LLC failing to keep the promise to repair all damages caused by the leaking roof.

- $500, 000.00 punitive damages for damage to property caused by the above named, defendants failure to keep the promise to repair all damages caused by the leaking roof and

- $1,000,000.00 compensatory damages for long term disabilities caused to Plaintiffs by Defendants' improper actions and failure to keep the promise to repair all damages caused by the leaking roof

- $1,000,000.00 punitive damages for long term disabilities caused to Plaintiffs' by Defendants' improper actions and failure to keep the promise to repair all damages caused by the leaking roof.

- The damages caused by Defendants SMITH AND RAMIREZ RESTORATION LLC have been made worse by the aiding and abetting of their fraudulent conduct and their failure to keep the promise to repair all damages caused by the leaking roof by Defendants, KURT PAXSON, GARRETT YANCEY, J. W. MARTINEZ,

---

[11] **Metropolitan Life Ins. Co. v. Haden & Co.**, 158 F.3d 584, 584 (5th Cir. 1998)

EVANSTON INSURANCE COMPANY, SMITH AND RAMIREZ RESTORATION LLC, and the enterprise of MOUNCE, GREEN SAFI, PAXSON & GALATZAN a professional corporation and the tacit support of GUY BLUFF arbitrator in refusing to accept the decision in 2015DCV3677 and the letters from the City of El Paso Department of Planning and Inspection that the roof in question failed to meet the requirements of municipal code.

- Plaintiff does ask for the sum of $1,000,000.00 compensatory damages from each of defendants KURT G. PAXSON, GARRETT YANCEY AND J.W. MARTINEZ. Plaintiffs also ask for $1,000,000.00 punitive damages from each of these defendants.

- Plaintiff does ask for compensatory damages of $5,000,000.00 from MOUNCE, GREEN SAFI, PAXSON & GALATZAN as well as $5,000,000.00 punitive damages.

- Plaintiff does ask for $5,000,000.00 in compensatory from EVANSTON INSURANCE COMPANY as well as $5,000,000.00 punitive damages.

- From Defendant GUY BLUFF, Arbitrator, $1,000,000.00 compensatory damages and $1,000,000 punitive damages.

**PLAINTIFFS DEMAND TRIAL BY JURY.**

Respectfully submitted,

/s/ ROBET K. HUDNALL AND SHARON ELIAS HUDNALL
PLAINTIFFS
915-478-1114

## CERTIFICATE OF SERVICE

I, ROBERT K. HUDNALL, do hereby certify that on the 9th day of April 2021, a true and correct copy of the foregoing document was sent electronically to Defendants in the above styled action through their attorneys of record.

/s/ ROBERT K.  HUDNALL

# EXHIBIT O

# AMERICAN ARBITRATION ASSOCIATION
## Construction Industry Arbitration Tribunal

In the matter of Arbitration Case No.: 01-20-0014-8456

Between

Smith and Ramirez Restoration, LLC

v.

Robert K. Hudnall and Sharon E. Hudnall

## ARBITRATION RULINGS AND AWARD

I, Guy W. Bluff, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into between the above-named parties, and having been duly sworn, do hereby, FIND AND AWARD, as follows:

### Preliminary Matters.

On October 18, 2021, beginning at 9:00 a.m. El Paso time, the videoconference Arbitration Hearing was conducted in the above-referenced matter. The Arbitrator, Claimant's counsel – James Martinez and Reid Rendon, and Claimant's fact witness – Alejandro Ramirez, representative of Smith and Ramirez Restoration LLC, all appeared at the scheduled time. AAA Case Manager Dennis Baird was also present.

Neither Robert K. Hudnall nor Sharon E. Hudnall[1], Respondents (collectively "Hudnall") appeared as scheduled, and the Arbitrator waited until 9:25 a.m. before beginning the presentation of evidence by Claimant. Neither Respondent contacted the Claimant, the Arbitrator, or the American Arbitration Association ("AAA"), to otherwise request a postponement, as allowed by Rule R-31. Prior to the date and time of the hearing, the Arbitrator was not advised of any federal or state court order in place staying or otherwise directing the AAA or the Arbitrator to not proceed with the scheduled evidentiary hearing.

The Hearing was timely and properly noticed to the parties by the AAA by written Notice of Hearing, dated August 19, 2021. Prior to the start of evidence, the Case Manager

---

[1]     From time to time during these proceedings, Robert Hudnall has alleged that he suffers from certain medical conditions precluding his involvement. No medical evidence has ever been presented to substantiate these claims to the Arbitrator. Further, at no time has any evidence been presented by Sharon Hudnall to indicate that she was not available to participate herself.

confirmed that no request for postponement or other requests by Hudnall which had not been previously ruled on by the Arbitrator had been received. Claimant's attorney James Martinez also confirmed that no contact from Respondent had been received by his office. Pursuant to Rule R-32, the Arbitration was permitted to proceed without the attendance of the Respondents / Counterclaimants[2].

No record of hearing, as provided by Rule R-29, was requested by the parties.

This Arbitration has involved substantial pre-hearing motion practice, discovery disputes, and scheduling orders. The arbitration hearing was originally scheduled to commence on June 16, 2021. That hearing was vacated to accommodate Hudnall's April 2021 Complaint filed in the County Court at Law 6, El Paso County, which case was then removed to the United States District Court for the Western District of Texas, El Paso Division, Cause Number 3:21-cv-00106. On August 19, 2021, following notice from the AAA, another scheduling conference was conducted as reflected in the August 19, 2021, Scheduling Order issued by the Arbitrator.

The August 19, 2021 Scheduling Order established the following schedule for the designation of disclosures, witnesses, and exchange of exhibits.

> **Exhibits**: On or before Friday, **October 1, 2021**, each party shall provide the opposing party with a list of exhibits AND full and complete copies of the same. Such exhibits shall be deemed timely submitted if mailed postage prepaid on or before the deadline.

> Only those exhibits which have been previously exchanged, provided to the opposing party, AND timely uploaded to the Hearing Exhibits tab shall be permitted to be introduced at hearing. Simply referencing any previously submitted exhibit which may have been filed with the prior motions or responses will not be permitted.

> **Witnesses:** On or before Friday, **October 8, 2021**, each party shall provide the opposing party with a NEW detailed list of all witnesses intended to be called at the hearing together with a reasonable paragraph summary of the witnesses' affiliation with the case and anticipated testimony.

> **Evidentiary Hearing:** The evidentiary hearing has been scheduled for **October 18, 2021** and **October 19, 2021**. Beginning at 9:00 a.m. El Paso time and continuing until approximately 5:00 p.m. each day. Given the rise of COVID-19 cases, and given Mr. Hudnall's prior health related issues, the hearing will be conducted by video-conference (Zoom). Reasonable

---

[2] On September 17, 2020, Hudnall filed their Answer to the September 11, 2020 Demand for Arbitration and also filed a Counterclaim as provided by Rule R-4. Both the Demand for Arbitration and the Counterclaim were the subject of the Arbitration Hearing.

accommodation for breaks will be provided for Mr. Hudnall due to his previously stated health issues.

On September 30, 2021, Claimant requested that the deadline for the parties to exchange exhibits be extended due to a death in the family of the principal attorney working on the same. Finding good cause and no prejudice to either party, the exchange deadline was extended for both parties as reflected in the Arbitrator's October 1, 2021, Order.

S&R timely submitted and exchanged its exhibits and witness list and designations.

Hudnall did not provide to Claimant, or cause to be filed with the AAA, any documents, witnesses, or evidence as ordered. A review of the AAA website portal also did not reflect the filing of any of the required filings. James Martinez and Reid Rendon for Claimant further confirmed that they had not separately received any filings by Hudnall. No witness list was provided by Hudnall. Hudnall did not request an extension or otherwise provide good cause to explain this failure.

**Presentation of Evidence**

Claimant's witness was sworn. Claimant moved for the admission of all of Claimants listed exhibits C-01 to C-18. Without objection the same were admitted into evidence.

Alejandro Ramirez – Principal of S&R, testified competently to his personal knowledge of the exterior roof and interior restorative work performed by Claimant. He further testified regarding his personal observations of the pre-existing water damage in the bedroom, foyer, garage, study, and office areas. He explained the negotiations leading up to the contract signing and his understanding from Robert Hudnall that the leaky roof had persisted over many years. He testified competently as to the pre-existing roof type and the new roofing material and product which was ordered by Hudnall and installed by S&R.

Mr. Ramirez testified as to the notations reflected on the upper left-hand corner of Exhibit C-01. Contrary to the prior assertions by Robert Hudnall that such handwritten notations reflected confidential, protected health care information, Mr. Ramirez competently testified that the notation was actually a reference to the contact for the mortgage company which would be necessary for purposes of obtaining necessary releases and authorizations by S&R following the work and to receive payment.

Mr. Ramirez further testified that the new Duro-Last Roofing System had been installed in accordance with the manufacturer's installation instructions and applicable building code, and that as a pre-requisite to the manufacturer issuing its warranty, the new roofing system was inspected and approved by the manufacturer's representative, Glenn Wurst, as meeting their requirements and that the installation was verified as having been properly installed. Mr. Ramirez further testified that during the original installation and upon completion, the new roofing work was also personally inspected by Robert Hudnall who joined the other individuals on the roof via a ladder and then at times also via access from a window and rear balcony which provided access to the roof. Mr. Ramirez testified

that Mr. Hudnall never objected to the work either during installation or at the time of inspection by the manufacturer's representative.

Mr. Ramirez testified as to the reason for the roof inspection "fail" reflected on Exhibit C-06 (July 18, 2014 Inspection) was the result of Hudnall's failure to provide access and not because of any construction or installation defects. Following a short recess and at the request of the arbitrator, Exhibit C-19 was marked and admitted into evidence. Exhibit C-20, the October 30, 2014 inspection notes, which reflects the subsequent re-inspection status as "Pass" was also thereafter admitted into evidence. Mr. Ramirez further testified that to his knowledge there was no material change in the condition of the roof between July 18, 2014 and October 30, 2014.

As to Exhibit C-07, Mr. Ramirez competently testified that the type of roofing system used by S&R was designed to breathe (as opposed to being firmly affixed to the pre-existing roof) and that such design condition was intended for the new roofing system to function properly. He further testified that based on his personal knowledge, many of the El Paso building inspectors were unfamiliar with this type of roofing system and may therefore "fail" a new roof due to their lack of experience and knowledge. S&R was not notified of the May 21, 2015 re-inspection and therefore was not present to explain or demonstrate to Inspector Wayne Fannin how the new roofing system did in fact meet both code and the manufacturer's installation instructions.

Following the May 21, 2015, inspection, Hudnall did not request that S&R make any repairs nor did Hudnall provide any photographs or video evidence to demonstrate the conditions being complained of. During the course of the arbitration, subsequent requests by Claimant to perform an inspection to independently verify the alleged conditions were all rebuffed by Hudnall. Exhibit C-21 was marked and admitted into evidence without objection at the direction of the arbitrator.

Mr. Ramirez further testified that following the May 21, 2015 inspection and May 26, 2015 letter, there was no adverse action taken by the City of El Paso against S&R and the City continued to issue building permits and perform inspections on other projects.

At the conclusion of Mr. Ramirez's testimony, the Arbitrator reviewed in detail the claims by S&R, the computation of the outstanding contract balance due, the attorney's fees and costs requested, and the statutory rate of pre-award interest which was sought by Claimant. Mr. Martinez testified that from and after the August 10, 2021 invoice #127908 and the date of the hearing, his law firm incurred an additional amount of $12,120.00 in attorneys fees prosecuting the claims. He also testified that the ordinary course of payment for fee billings averaged approximately 90 days following billing.

During the course of Claimant's presentation of evidence, the Arbitrator asked questions of Mr. Ramirez and counsel as necessary to insure a thorough understanding of the evidence and testimony. Following the presentation of evidence and testimony of Mr. Ramirez by Claimant, the Arbitrator offered opportunity for any other party to cross examine witnesses or to otherwise offer any evidence or testimony in defense of the Claims and demands.

At the close of Claimant's case in chief, the Arbitrator opened the hearing to Hudnall's counterclaim as set forth in its September 17, 2020 Answer and Counterclaim filed.[3] James Martinez advised that during the course of the arbitration proceedings no evidence, documents, or other materials had been provided by Hudnall as to any of the enumerated issues, causes of action, or damage claims set forth beginning on page 4.

Specifically, as relates to Counterclaim ¶(a)1, Hudnall never provided a copy of the Sun City Analytics report referenced and a review of all pleadings and filings by Hudnall reflect that this report "(Exhibit 2)" was never provided to Claimant or to the Arbitrator.

As relates to Counterclaim ¶(a)2, no evidence was provided to Claimant or otherwise presented by Hudnall regarding any of the alleged existence of toxic mold, or as to causation of any serious medical problems, pulmonary disease or lung scarring, resulting in any permanent medical condition or long-term disability.

Counterclaim ¶(a)3 no evidence was provided to Claimant or otherwise presented by Hudnall to support the allegation that there are widespread leaks in the roof or that the work performed by S&R was performed negligently.

Counterclaim ¶(a)4 no evidence was provided to Claimant or otherwise presented by Hudnall to support the allegation that there was toxic mold in the house or that there was resulting damage to furniture or the necessity for moving an art collection and book collection out of the house. No evidence was presented by Hudnall to support the alleged storage costs, restoration or care of the art collection or book collection.

Counterclaim ¶(a)5 no evidence was provided to Claimant or otherwise presented by Hudnall to support the allegation that there was damage to furniture cause by a leaking roof. No evidence was presented regarding the cost of the furniture alleged damaged and which could not be salvaged.

Counterclaim ¶(a)6 no evidence was provided to Claimant or otherwise presented by Hudnall to support the allegation that there was damage caused by S&R to various areas of the interior including the bathtub, ceiling and wallpaper in the guest room bathroom. No evidence was presented regarding the cost of repairs or replacement.

Counterclaim ¶(a)7 no evidence was provided to Claimant or otherwise presented by Hudnall to support the allegation that there was mold, damaged drywall and insulation which was caused by or the legal responsibility of S&R. No evidence was presented regarding the cost of repairs or replacement.

Counterclaim ¶(a)8 no evidence was provided to Claimant or otherwise presented by Hudnall to support the allegation that they are entitled to any portion of the bond which was the subject matter of the Old Republic Interpleader action 2015 DCV 3677. To the

---

[3] The Arbitrator was advised by the AAA Case Manager that Respondent Hudnall did not ever remit their filing fees for their Counterclaim. The Counterclaim was addressed during the hearing for completeness.

contrary, the Arbitrator finds that the distribution already made to Hudnall was made following a fraud and intentional misrepresentation to Judge Alvarez by attorney Michael Zimprich and Robert Hudnall.

Counterclaim ¶(a)9 no evidence was provided to Claimant or otherwise presented by Hudnall to support the allegations that either Robert or Sharon Hudnall have experienced any respiratory problems, that they have experience any permanent medical issues, that there was a mold infestation in the house which was attributable to any work performed by S&R, or any alleged failures in the work performed by S&R. No evidence was presented regarding any personal injuries or medical expenses which may be incurred by Hudnall over their "projected" lifetimes.

By permission, Exhibits C-19 to C-22 were admitted into evidence and Claimants were directed to transmit the same to the Case Manager for distribution to Hudnall and to the Arbitrator. Following the conclusion of all evidence, the hearing was called to a close at 11:51 a.m. in accordance with Rule R-40(a).

**Findings**

1]    S&R bears the burden of proof as to its claim demand of $8,965.68, pre-award interest, costs and AAA fees paid for administrative and arbitrator compensation, and their request for attorney's fees of $50,069.00.

2]    Robert and Sharon Hudnall bear the burden of proof as to all claims and amounts set forth in their Counterclaim.

3]    S&R presented competent admissible evidence sufficient to support Hudnall's liability for all damages claimed and the specific amounts which were sought or otherwise due.

4]    Robert and Sharon Hudnall presented no evidence, testimony, or documents in support of their claims set forth in their Counterclaim dated September 17, 2020.

5]    S&R completed all contracted for work in a timely and workmanship manner. The roof installed was approved by the manufacturer and the City of El Paso at the time of the installation. Without direct evidence and testimony by the City of El Paso building inspector, photographs or video of the alleged defective conditions, based on an inspection performed nearly a year after the original installation, the Arbitrator rejects Hudnall's argument that the roof, when installed, failed due to any responsibility of S&R. The contradictory "evidence" submitted by Hudnall during the course of these proceedings lacks foundation, is based on speculation and conjecture, or is otherwise not reliable and is therefore rejected.

6]    Following completion of the work, S&R timely requested payment from Hudnall of the contract amount which was properly due. As detailed on Exhibit C-04 and supported by the testimony of Mr. Ramirez, S&R agreed to perform the contracted scope

of work for the amount paid by the insurance company - $30,515.12.[4] Of that amount, S&R acknowledged having previously received payment of $22,914.14 leaving a contract balance due of $7,600.98.

7] Hudnall materially breached its contractual obligations with Claimant by failing to pay such amount when due making this arbitration necessary for Claimant to protect its rights. The amount of $7,600.98 is a liquidated sum, capable of computation with reasonable certainty and without need for opinion or speculation. As a liquidated sum, Claimant is entitled to an award of pre-award interest at the statutory rate of 5.00% per annum simple interest[5] from the date of demand until paid.

8] The Demand for Arbitration constitutes a claim for rendered serves, the performance of labor, and for furnished materials. It also arises out of a written contract agreement and in particular a written construction contract. S&R is the prevailing party and is entitled to an award of its reasonable attorney's fees and other costs as additional compensatory damages resulting from Hudnall's material breach of contract and failure to pay.

9] Hudnall failed to present any photographs, video, or expert report demonstrating that the roof work performed by S&R was not installed in accordance with the applicable building code or manufacturer's installation instructions at the time of the original work. Claimant presented competent admissible evidence that all work was properly performed, passed inspection by the City of El Paso and was approved by the manufacturer for purposes of ongoing warranty obligations.

10] Following issuance of the May 26, 2015 letter from the City of El Paso, Hudnall never requested S&R to make repairs, never provided any photographs, and actively interfered with S&R's efforts to properly investigate the allegations of poor workmanship or failures. To the extent that there were any actual failures in the work, Hudnall failed to comply with the contract requirements of providing notice and an opportunity to cure. The active interference by Hudnall and threats to have the workmen of S&R arrested for trespass are sufficient to obviate any legal responsibility by S&R to make any such repairs.

11] The attorney's fees sought by S&R are reasonable. The hourly rates charged, work performed, and amounts billed are sufficiently supported by competent, relevant, and admissible evidence. Of the total sought ($50,069.00)[6], S&R is entitled to

---

[4] See Exhibit C-01 page 1 "Upon acceptance by Smith & Ramirez Restoration LLC of the Insurer's estimate this proposal shall be binding and Smith & Ramirez Restoration LLC shall receive all the insurance proceeds for the work completed."

[5] See Texas Finance Code, Chapter 304, Section 304.001 *et sec.* and particularly Sec. 304.003(c)(2).

[6] At hearing, S&R requested permission to supplement the record and to seek the attorney's fees incurred by its prior counsel in filing the collection action 2015DCV1113,

the full amount less a small adjustment to account for the fact that the amount awarded is slightly less than the original demand. After having considered all the evidence and testimony on such fees, the Arbitrator finds that a reasonable award to be $48,401.45. In addition to this amount, S&R is also awarded its other reasonable costs and expenses totaling $1,018.96.

12] S&R also sought award of its costs and expenses of the arbitration – specifically the initial filing fee of $750.00, the final fee of $800, and the Arbitrator's Compensation. The parties contract provides otherwise. Specifically, the parties agreed that "all expenses of such arbitration [shall be] divided equally between Customer [Hudnall] and Contractor [S&R]. Accordingly, S&R's request for reimbursement of these expenses is denied.

13] During the preliminary matters, Hudnall provided extensive briefing and arguments alleging that Judge Alvarez's prior orders in July 2019 constituted res judicata / collateral estoppel and that the Arbitrator lacked jurisdiction to hear the dispute. The Arbitrator has previously rejected these legal arguments for the reasons stated in the Arbitrator's January 18, 2021, February 14, 2021, March 18, 2021, and April 5, 2021 Orders. Hudnall was advised that they were free to raise these legal arguments again at the evidentiary hearing and that they could present new or additional evidence or arguments on these legal claims.

14] Having failed to present any new evidence or argument, the Arbitrator reaffirms its prior rulings. Specifically, the arbitrator has sufficient and proper jurisdiction to hearing all issues and claims raised in the Demand for Arbitration and the Hudnall's September 17, 2020 Counterclaim. As to Hudnall's claim of res judicata / collateral estoppel, for the reasons stated in its prior orders, the Arbitrator finds that these claims also fail.

The Arbitrator, after having considered all of the relevant and admissible evidence, hereby finds in favor of Claimant Smith & Ramirez Restoration, LLC and against Robert and Sharon Hudnall, jointly and severally in all respects and as follows:

| | |
|---|---|
| Unpaid Contract Balance | $ 7,600.98 |
| Pre-award Interest (to 10/18/2021) | 2,664.66 |
| Attorney's Fees | 48,401.45 |
| Costs and Expenses | 1,018.96 |
| AAA Filing Fees Reimbursement | 0.00 |
| Arbitrator Compensation Reimbursement | 0.00 |
| **Total Award** | **$59,686.05** |

and in participating in the Old Republic Interpleader action 2015DCV3677. Having failed to demonstrate good cause why an affidavit or other evidence of these fees was not previously and timely disclosed, the Arbitrator denied this request.

In addition to the above, Claimant is entitled to post award interest computed at the per diem rate of $7.81 from and after the date of this Award until paid in full.

As to Hudnall's Counterclaim, the Arbitrator finds that despite fair and reasonable notice and an opportunity to be heard, Hudnall failed to present evidence (beyond the barebones Counterclaim allegations) to support their claims or damages sought. Hudnall's Counterclaim is denied in all respects.

The administrative fees and expenses of the American Arbitration Association totaling $1,750.00 and the compensation and expenses of the Arbitrator totaling $18,200.00 shall be borne as incurred.

This Award is in full settlement of all claims and counterclaims submitted to this Arbitration. All claims and counterclaims not expressly granted herein are hereby denied.

_____  11/12/2021
Guy W. Bluff, Esq. - Arbitrator

# EXHIBIT P

Filed 12/27/2021 12:47 PM
Norma Favela Barceleau
District Clerk
El Paso County
2021DCV4380

**IN THE _____JUDICIAL DISTRICT COURT
IN THE COUNTY COURT AT LAW NUMBER \_\_\_\_\_
OF EL PASO COUNTY, TEXAS**

| | |
|---|---|
| SMITH AND RAMIREZ RESTORATION, LLC § § § Plaintiff/Counter-Defendant, § § v. § § ROBERT K. HUDNALL AND § SHARON E. HUDNALL, § § Defendants/Counter-Plaintiffs. § | Cause No. 2021DCV_____ |

SMITH AND RAMIREZ
RESTORATION, LLC

§
§
§

    Plaintiff/Counter-Defendant,

§
§

v.

§
§

.Cause No. 2021DCV_____

ROBERT K. HUDNALL AND
SHARON E. HUDNALL,

§
§
§

    Defendants/Counter-Plaintiffs.

§
§

## ORIGINAL PETITION TO CONFIRM ARBITRATION AWARD

TO THE HONORABLE JUDGE OF THIS COURT:

**COMES NOW** SMITH AND RAMIREZ RESTORATION, LLC., ("Plaintiff/Counter-Defendant") petitioning to confirm an arbitration award against ROBERT K. HUDNALL AND SHARON HUDNALL ("Defendants/Counter-Plaintiffs" or "HUDNALLS") and would respectfully show as follows:

    1.    To the extent even applicable to a proceeding under Section 171.001 et.seq. of the Texas Civil Practice & Remedies Code, discovery in this case should be governed by Level 2 under Texas Rules of Civil Procedure 190.2.

    2.    This Petition represents an application pursuant to Section 171.001 et. Seq. of the Texas Civil Practice & Remedies Code [including, without limitation, Sections 171.085, 171.086(b)(6), and 171.087].

    3.    HUDNALLS are natural persons and may be served at 297 Puesta Del Sol, El Paso, Texas 79912.

    4.    Venue is proper in El Paso County, Texas insofar as the Hudnall's principal place



of residence is El Paso County, Texas, the Award [as defined below] was entered in El Paso County, Texas, and all or a substantial part of the underlying dispute occurred in El Paso County, Texas.

5.     This Court has subject-matter jurisdiction over this cause under Section 171.081 of the Texas Civil Practice & Remedies Code.

6.     This Court has personal jurisdiction over the Hudnalls since they reside in El Paso County, Texas.

7.     To the extent even applicable to a proceeding under Section 171.001 et. Seq. of the Texas Civil Practice & Remedies Code, Smith and Ramirez seeks monetary relief of $1,000,000.00 or more.

8.     Smith and Ramirez entered into an agreement/contract dated June 9, 2014. True and correct copies of relevant excepts from the agreement/contract are attached hereto as Exhibit "A" and are incorporated herein.

9.     A dispute later arose between Smith and Ramirez and the Hudnalls regarding payment. Smith and Ramirez then commenced the arbitration process with American Arbitration Association with Guy Bluff as the arbitrator. A true and correct copy of the original Scheduling Order in Arbitration is attached hereto as Exhibit "B" and incorporated herein.

10.     Proceedings ensued in the Arbitration, and the final hearing date was continued several times.

11.     On October 18, 2021, the Final Arbitration Hearing was held and the Arbitrator duly and properly ruled upon the matters in dispute in and pursuant to the Arbitration, and then entered an award in the Arbitration (the "Award"). A true and correct copy of the Award is attached hereto as Exhibit "C" and incorporated herein.

2

12.     Pursuant to Sections 171.086(b)(6) and 171.087 of the Texas Civil Practice & Remedies, Smith and Ramirez petitions, applies for, and moves that this Court confirm the Award in all respects and then enter a Final Judgment in conformance with its confirmation order and the Award.

13.     Smith and Ramirez reserve the right to amend or supplement this pleading.

**WHEREFORE, PREMISES CONSIDERED,** the Plaintiff/Counter-Defendant respectfully requests that this Court grant final judgment to Smith and Ramirez consistent with it confirmation order and the Award, and that this Court grant Smith and Ramirez such other and further relief, general or special, legal or equitable to which the it is justly entitled to receive.


Respectfully submitted,

**MOUNCE, GREEN, MYERS,
SAFI, PAXSON & GALATZAN**
A Professional Corporation
P.O. Box 1977
El Paso, Texas 79999-1977
Telephone: (915) 532-2000
Facsimile: (915) 541-1597
Email: martinez@mgmsg.com


By: */s/ James A. Martinez*
**JAMES A. MARTINEZ**
State Bar No. 00791192


Attorneys for Smith and Ramirez Restoration, LLC

3

Ocwen #
Shanavas

    
500 Thunderbird Dr., Suite 103, El Paso, Texas 79912 • (915) 600-2868 Office
www.smithandramirezroofing.com • fax (877) 631-1557

PROJECT MANAGER _Luis Stiles_   REP CELL _996-6832_   DATE _6-9-14_

CUSTOMER _Ken Hudnall_   HOME PH. _4178-1114_   ALT PH. _____

ADDRESS _297 Puesta Del Sol Lane_   CITY _El Paso_   ST _TX_ ZIP _79912_

☐ Is this a rental property? If yes, please provide billing address

**LEFT COLUMN**

☒ We will obtain necessary permits.
☒ We will provide insurance and worker's comp as required by the state.
☒ We will inspect material and prepare job site for safety.
☒ We will remove and haul away _____ layers(s) of existing roofing.
☒ Slope factor _flat_
☐ 1-story ☒ 2-story ☐ 2-story with 1-story access ☐ 3-story

☐ Garage ☐ Shed ☐ Patio Cover ☐ Other _____
☐ Install _____ squares of _____

☒ We will clean the roof and gutters.
☒ We will clean grounds and haul off debris.
☒ We will sweep the ground with a magnet to pick up nails.
☒ We will haul off excess material.
☒ Final Quality Control Inspection.

| Standard | | "El Paso's Best Roofing Warranty!" |
|---|---|---|
| 5 YRS | 10 YRS | Installers Workmanship Coverage |
| | | Cost of ALL LABOR, MATERIALS,& DISPOSAL |
| OR | | Manufacturer's Defect on Material Coverage |
| | | Cost of SHINGLES replacement |
| 5 | 10 YRS | Cost of LABOR |
| 5 | 10 YRS | Cost of TEAR-OFF and DISPOSAL |
| FREE | $300 | Cost of Warranty Package |

**RIGHT COLUMN**

☐ DECKING
☐ Inspect decking for fastener adhesion
We will remove and replace up to _____ sheets (☐ as needed) o decking for $ _____ per sheet or ☐ remove and replace all decking.
☐ UNDERLAYMENT
We will install _____ (#) felt over the entire roof area.
We will add an additional layer of _____ in all valleys.
We will install Ice & Water Leak Proof Shield around chimney, Flashings, and protrusions as needed for $ _____
We will install _____ additional rolls of Ice & Water Leak Proof Shield for $ _____ per roll (☐ be needed).
☐ SHINGLES
We will install _____ (yr) ☐ Architectual ☐ 3-Tab _____ (brand) _____ (color) using 6 nails per shingle.
We will double unclose and seal valleys.
We will install factory epsellic starter. Triple seal eaves and rakes.
We will install matching 3-Tab Ridge or _____ with 4 nails per shingle and coat.
☐ FLASHING
We will step flash around walls, skylights and chimneys as needed.
We will keep / replace all _____ (color) metal edging.
☐ VENTILATION
We will cut in / replace ridge vent _____ lineal feet for $ _____ /ft.
We will replace _____ (#) wind turbines and/or _____ (#) low profiles to match roof color.
We will replace _____ 1¼" _____ 2" _____ 3" _____ 4" plumbing vents.
We will paint stacks and vents with matching color paint and seal bases.

☐ See Contract Addendum

_____
_____
_____

TERMS: This is a proposal only and Customer is not obligated unless the Customer's insurer provides an estimate of damage or recovery to the Customer which is acceptable to Smith & Ramirez Restoration LLC. The Customer authorizes Smith & Ramirez Restoration LLC. to pursue the Customer's best interest for the replacement or repair work outlined herein at a price agreeable to the Insurer and to Smith & Ramirez Restoration LLC. with NO ADDITIONAL COST to the Customer except for (i) the deductible, (ii) in the case of an ACV policy, any applicable non-recoverable depreciation, and (iii) any additional work requested by the Customer not covered by insurance. Upon acceptance by Smith & Ramirez Restoration LLC. of the Insurer's estimate this proposal shall be binding and Smith & Ramirez Restoration LLC. shall receive all the Insurance proceeds for the work completed.

Customer expressly authorizes his/their insurance company and his/their mortgage company to provide any appropriate information to Smith & Ramirez Restoration LLC. and authorizes Smith & Ramirez Restoration LLC. to communicate directly with such insurer and mortgagee for the purpose of securing payment or applying for supplemental claims as necessary for work completed.

☒ WILL DO JOB FOR PRICE DESIGNATED BY YOUR INSURANCE COMPANY. (See Above) OR Contract Amount $ _As Per Insurance_

ACCEPTANCE: Customer certifies having read and accepted the work specifications, prices and terms and conditions above on the reverse hereof. _Store_

X _____   _6-5-2014_   X _____
Customer's Signature   Date   Customer's Signature   Date

_____   _Policy #_   _Claim #_   Insurance Contact Phone Number
Mortgage Company

_____   Loan Number   Mortgage Company
District Manager   _6/9/14_
Date

Generated by CamScanner

EXHIBIT "A"

1. GUARANTEE OF SATISFACTION: We guarantee that the roofing system we install will perform as we have stated. If you are not 100% satisfied with your roofing system, we will remove it and 100% of your investment.

2. CANCELLATION OF CONTRACT: Customer shall have the right of rescission of this contract until midnight of the third day after the date hereof which right shall be exercised by written notice to Contractor of Customer's election to rescind. This Contract is subject to approval by contractor's management, which reserves the right to reject a contract for any reason. Any completed contract, signed by Customer and Contractor's representative, shall be considered a proposal only until the same shall have been examined and approved by management. After acceptance by Contractor's Management and expiration of the Customer's 3-day right of rescission period, this contract shall be cancellable by Customer only upon payment of a restocking fee equal to 20% of the total cost of the job, whether or not delivered to the premises. If Contractor shall, at its behalf or with the consent of Customer, have been redone or instrumental in securing an insurance approval acceptable to the Customer for the work to be performed, than any requested cancellation of this agreement shall be accompanied by Customer's payment to contractor of not less than 10% of such insurance appraisal as compensation for Contractor's time and expertise in the negotiation and securing thereof, and this contract would not be entered into by Contractor without this explicit agreement on the part of Customer. No request or demand by Contractor for cancellation of this contract shall be effective unless sent certified mail with return receipt requested and directed to the address of Contractor for the reverse hereof and enclosing payment, for a partial refund, of the amounts described above. Once work on Customer's roof shall have commenced and any amounts have been installed in the structure, this contract shall not be cancellable by Customer except upon payment of the full amount provided for herein.

3. ENTIRE AGREEMENT: Any representations, understandings or other communications not within in this contract are agreed to be abandoned, are not binding upon either party, and do not survive the execution of this contract. Any changes or additions to this contract must be in writing in the contract addendum form and signed by both parties.

4. OTHER REPAIRS NECESSARY: Replacement of deteriorated decking, facia boards, roof jacks, ventilators, flashing, metal edging or other material, unless stated in the contract, is not itemized and will be charged extra on a time and material basis over that above the original contract price.

5. DAMAGES TO UTILITY LINES: Contractor is not responsible for any damaged gas or other utility lines or pipes that are improperly placed within 3 inches of the roof decking or otherwise in violation of the Building Code, and Customer agrees that he shall not seek to hold Contractor liable for any damages, injuries or losses occasioned therefrom.

6. CONTRACTOR'S RIGHT TO SUPPLEMENT: Without regard to whether the work herein provided is priced at the insurance allowance or a "contract amount" Contractor reserves the right to file the Customer's insurer for a supplemental claim if necessary. Based upon any increase in cost of materials or labor between the time the contract was entered into and the time such items and amounts were supplied or installed, and any such supplemental amount allowed by the insurance company shall be paid over to Contractor and shall be held the full amount of such amount were invested in the

"insurance allowance" or "contract amount" from the beginning. Under no circumstances shall Customer be liable for such amounts unless approved and paid for by the insurance company.

7. DELAYS: Customer accepts that there may be delays caused by weather or other acts of nature or government, labor disputes, material shortages, or insurance approval which may cause inconvenience to customer, and agrees that Contractor shall not be liable for any loss or damage resulting from any such delays.

8. ACCESS TO PREMISES: Customer agrees to grant full access to the property for staging and execution of work including, but not limited to water and electricity.

9. CONTRACTOR'S NON-LIABILITY: Contractor is not liable for any situations arising from improper preparation on behalf of the Customer.

10. CONTRACTOR'S WARRANTY: Contractor's warranty provided herein is contingent upon customer full payment of the invoice for within ninety (90) days of completion. The warranty begins to run from the date of completion of the work hereunder and is not in effect until contract has been paid in full.

11. MANNER OF MAKING PAYMENTS: For the Customer's protection, all payments to the Contractor, if by check, shall payable to Smith & Ramirez Restoration LLC. And under no circumstances shall Customer make any check payable to an individual, to another contractor, sub-contractor, or any other firm name. Cash payments are strongly discouraged, and if customer desires to make a payment on this contract in cash such payment shall only be made to Contractor's office shown on the reverse, to the office Manager thereof, and with accept demanded and received for such cash payment. Customer shall remain liable to Contractor for any sums or amounts paid on this contract in violation of this provision.

12. CUSTOMER'S PAYMENT OF NOTICE: The full amount of the invoice for work described under this contract shall be due upon receipt by Customers of insurance proceeds, but no event later than 30 days after completion of such work by Contractor. Any coupons, discounts, allowances or concessions of any nature whatsoever promised or provided to Customer, whether or not shown on this Contract, shall expire 30 days after the date of Contractor's invoice shall not have then been paid in full by Customer.

13. SETTLEMENTS OF DISPUTES: In the event any dispute shall arise between the parties to this contract, Customer and Contractor agree that final and binding Arbitration under the rules of the American Arbitration Association shall be sole and exclusive means of resolving such dispute with an expense of such arbitration divided equally between Customer and Contractor. A single Arbitrator shall be selected by agreement between parties from among a list of qualified Arbitrators provided by the AAA, and if the parties cannot agree upon a single individual shall ask the AAA to nominate the Arbitrator, which choice shall be final. Nothing in the foregoing shall limit Contractor's right to file a Mechanics or Material's Lien and thereafter to file any necessary action for enforcement and foreclosure of such lien if Customer shall fail or refuse to pay Contractor's invoice within 60 days after completion of all work under this Contract.

14. CASH DISCOUNT: The "Insurance Allowance" or "Contract Amount" on the reverse hereof, and all other prices stated herein are the "cash discount price" and should be paid with cash or check. If the Customers desire to pay any amount due hereunder with credit card the cash discount will not apply.

# AMERICAN ARBITRATION ASSOCIATION

In the matter of Arbitration Case No.: 01-20-0014-8456

Between

Smith and Ramirez Restoration, LLC

v.

Robert K. Hudnall and Sharon E. Hudnall

## SCHEDULING ORDER

On August 19, 2021, beginning at 10:00 a.m., a preliminary schedule hearing was conducted by the Arbitrator pursuant to the August 12, 2021, Notice of Hearing issued by the AAA Case Administrator, Dennis Baird. James Martinez was present for Claimant. Respondent did not appear either through Robert K. Hudnall nor Sharon E. Hudnall. The Arbitrator waited until 10:15 a.m. before proceeding with the hearing to allow Respondents sufficient time to appear.

Despite having received notice of today's hearing, Respondents did not submit a written request or otherwise seek postponement as required by Rule R-31. In accordance with Rule R-32, the Arbitrator, in exercise of his discretion, elected to proceed forward with scheduling the final Arbitration Hearing and setting of deadlines as provided herein.

### A.    Arbitration Hearing

The evidentiary hearing has been scheduled for **October 18, 2021** and **October 19, 2021**. Beginning at 9:00 a.m. El Paso time and continuing until approximately 5:00 p.m. each day. Given the rise of COVID-19 cases, and given Mr. Hudnall's prior health related issues, the hearing will be conducted by video-conference (Zoom). Reasonable accommodation for breaks will be provided for Mr. Hudnall due to his previously stated health issues.

This final evidentiary hearing will not be continued absent good cause.

### B.    Order and Presentation of Evidence

Claimant shall be prepared to put on its proofs regarding its claims first followed by Respondent's defense and presentation of its Counterclaims. Claimant

1

EXHIBIT

B

shall thereafter present its Rebuttal case and response / defense to the Counterclaims. Respondent / Counterclaimants shall have the final opportunity to present any rebuttal case on their counterclaims.

### C. Identification, Marking, and Exchange of Exhibits.

On or before Friday, **October 1, 2021**, each party shall provide the opposing party with a list of exhibits AND full and complete copies of the same. Such exhibits shall be deemed timely submitted if mailed postage prepaid on or before the deadline. An affidavit of mailing / or delivery shall be submitted to the Arbitrator together with the list of exhibits not later than Monday **October 4, 2021**.

Copies of all exhibits shall also be UPLOADED to the AAA Web portal using the Hearing Exhibits tab which has already been activated by the Arbitrator not later than 5:00 p.m. on Monday, **October 4, 2021**. If either party needs assistance with the process of uploading such exhibits they are directed to contact the case administrator Dennis Baird.

Claimant / Counterdefendant shall mark its exhibits beginning with the designation C-01.

Respondent / Counterclaimant shall mark its exhibits beginning with the designation R-01.

Only those exhibits which have been previously exchanged, provided to the opposing party, AND timely uploaded to the Hearing Exhibits tab shall be permitted to be introduced at hearing. Simply referencing any previously submitted exhibit which may have been filed with the prior motions or responses will not be permitted. It is the arbitrator's intention to avoid and minimize argument by either party that they were not timely provided or have access to the exact exhibit which is intended for the Arbitrator's final consideration.

The parties are directed to redact from all exhibits filed or otherwise exchanged, any personally identifying information which may be protected by the Health Insurance Portability and Accountability Act of 1996 (HIPAA), and the Texas Medical Records Act. Such redaction shall be in black and shall include redaction of such information as date of birth, social security numbers and all other information which is not reasonably required to be viewed or considered by the Arbitrator as relevant to a party's claims or defenses.

**D.     Final Witnesses List and Witness Designations; Subpoenas.**

On or before Friday, **October 8, 2021**, each party shall provide the opposing party with a NEW detailed list of all witnesses intended to be called at the hearing together with a reasonable paragraph summary of the witnesses' affiliation with the case and anticipated testimony.   Previous lists of witnesses, if any, shall be RESUBMITTED.

Requests for Subpoenas seeking a witness's attendance at the hearing shall be submitted to the Arbitrator not later than Monday **October 11, 2021** at 5:00 p.m. MST.

Only those witnesses who have been previously identified on the final list of witnesses shall be permitted to testify.  Any witness who has not been listed or whose testimony has not been fairly designated will not be permitted to testify at hearing absent a showing of good cause and lack of prejudice to the opposing party.

**E.     Attorney's Fees / Sanctions Requests.**

Both parties have requested sanctions and attorneys fees.   Any party requesting attorney's fees or other monetary sanctions should be prepared to present, as part of its case in chief, such requests.  Attorney's fees requests shall be supported by affidavit together with a detailed time billing record sufficient to permit the arbitrator and the opposing party the opportunity to respond to such request.  The hourly rate actually billed to the client shall be included in the fee affidavit. Any requests for other monetary sanctions shall be specifically stated and detailed together with citation to applicable legal authority.

The parties are reminded that there shall be no direct communication with the Arbitrator.   All communications and filings relating to the arbitration shall continue to be submitted through the AAA case administrator.

Dated this 19th day of August 2021.

/s/ Guy W. Bluff 12:57 p.m. Aug/19/2021
Guy W. Bluff - Arbitrator

In the matter of Arbitration Case No.: 01-20-0014-8456

Between

Smith and Ramirez Restoration, LLC

v.

Robert K. Hudnall and Sharon E. Hudnall

### ARBITRATION RULINGS AND AWARD

I, Guy W. Bluff, THE UNDERSIGNED ARBITRATOR, having been designated in accordance with the arbitration agreement entered into between the above-named parties, and having been duly sworn, do hereby, FIND AND AWARD, as follows:

**Preliminary Matters.**

On October 18, 2021, beginning at 9:00 a.m. El Paso time, the videoconference Arbitration Hearing was conducted in the above-referenced matter. The Arbitrator, Claimant's counsel – James Martinez and Reid Rendon, and Claimant's fact witness – Alejandro Ramirez, representative of Smith and Ramirez Restoration LLC, all appeared at the scheduled time. AAA Case Manager Dennis Baird was also present.

Neither Robert K. Hudnall nor Sharon E. Hudnall[1], Respondents (collectively "Hudnall") appeared as scheduled, and the Arbitrator waited until 9:25 a.m. before beginning the presentation of evidence by Claimant. Neither Respondent contacted the Claimant, the Arbitrator, or the American Arbitration Association ("AAA"), to otherwise request a postponement, as allowed by Rule R-31. Prior to the date and time of the hearing, the Arbitrator was not advised of any federal or state court order in place staying or otherwise directing the AAA or the Arbitrator to not proceed with the scheduled evidentiary hearing.

The Hearing was timely and properly noticed to the parties by the AAA by written Notice of Hearing, dated August 19, 2021. Prior to the start of evidence, the Case Manager

---

[1] From time to time during these proceedings, Robert Hudnall has alleged that he suffers from certain medical conditions precluding his involvement. No medical evidence has ever been presented to substantiate these claims to the Arbitrator. Further, at no time has any evidence been presented by Sharon Hudnall to indicate that she was not available to participate herself.



confirmed that no request for postponement or other requests by Hudnall which had not been previously ruled on by the Arbitrator had been received. Claimant's attorney James Martinez also confirmed that no contact from Respondent had been received by his office. Pursuant to Rule R-32, the Arbitration was permitted to proceed without the attendance of the Respondents / Counterclaimants[2].

No record of hearing, as provided by Rule R-29, was requested by the parties.

This Arbitration has involved substantial pre-hearing motion practice, discovery disputes, and scheduling orders. The arbitration hearing was originally scheduled to commence on June 16, 2021. That hearing was vacated to accommodate Hudnall's April 2021 Complaint filed in the County Court at Law 6, El Paso County, which case was then removed to the United States District Court for the Western District of Texas, El Paso Division, Cause Number 3:21-cv-00106. On August 19, 2021, following notice from the AAA, another scheduling conference was conducted as reflected in the August 19, 2021, Scheduling Order issued by the Arbitrator.

The August 19, 2021 Scheduling Order established the following schedule for the designation of disclosures, witnesses, and exchange of exhibits.

> **Exhibits**: On or before Friday, **October 1, 2021**, each party shall provide the opposing party with a list of exhibits AND full and complete copies of the same. Such exhibits shall be deemed timely submitted if mailed postage prepaid on or before the deadline.
>
> Only those exhibits which have been previously exchanged, provided to the opposing party, AND timely uploaded to the Hearing Exhibits tab shall be permitted to be introduced at hearing. Simply referencing any previously submitted exhibit which may have been filed with the prior motions or responses will not be permitted.
>
> **Witnesses**: On or before Friday, **October 8, 2021**, each party shall provide the opposing party with a NEW detailed list of all witnesses intended to be called at the hearing together with a reasonable paragraph summary of the witnesses' affiliation with the case and anticipated testimony.
>
> **Evidentiary Hearing**: The evidentiary hearing has been scheduled for **October 18, 2021** and **October 19, 2021**. Beginning at 9:00 a.m. El Paso time and continuing until approximately 5:00 p.m. each day. Given the rise of COVID-19 cases, and given Mr. Hudnall's prior health related issues, the hearing will be conducted by video-conference (Zoom). Reasonable

---

[2]     On September 17, 2020, Hudnall filed their Answer to the September 11, 2020 Demand for Arbitration and also filed a Counterclaim as provided by Rule R-4. Both the Demand for Arbitration and the Counterclaim were the subject of the Arbitration Hearing.

accommodation for breaks will be provided for Mr. Hudnall due to his previously stated health issues.

On September 30, 2021, Claimant requested that the deadline for the parties to exchange exhibits be extended due to a death in the family of the principal attorney working on the same. Finding good cause and no prejudice to either party, the exchange deadline was extended for both parties as reflected in the Arbitrator's October 1, 2021, Order.

S&R timely submitted and exchanged its exhibits and witness list and designations.

Hudnall did not provide to Claimant, or cause to be filed with the AAA, any documents, witnesses, or evidence as ordered. A review of the AAA website portal also did not reflect the filing of any of the required filings. James Martinez and Reid Rendon for Claimant further confirmed that they had not separately received any filings by Hudnall. No witness list was provided by Hudnall. Hudnall did not request an extension or otherwise provide good cause to explain this failure.

**Presentation of Evidence**

Claimant's witness was sworn. Claimant moved for the admission of all of Claimants listed exhibits C-01 to C-18. Without objection the same were admitted into evidence.

Alejandro Ramirez – Principal of S&R, testified competently to his personal knowledge of the exterior roof and interior restorative work performed by Claimant. He further testified regarding his personal observations of the pre-existing water damage in the bedroom, foyer, garage, study, and office areas. He explained the negotiations leading up to the contract signing and his understanding from Robert Hudnall that the leaky roof had persisted over many years. He testified competently as to the pre-existing roof type and the new roofing material and product which was ordered by Hudnall and installed by S&R.

Mr. Ramirez testified as to the notations reflected on the upper left-hand corner of Exhibit C-01. Contrary to the prior assertions by Robert Hudnall that such handwritten notations reflected confidential, protected health care information, Mr. Ramirez competently testified that the notation was actually a reference to the contact for the mortgage company which would be necessary for purposes of obtaining necessary releases and authorizations by S&R following the work and to receive payment.

Mr. Ramirez further testified that the new Duro-Last Roofing System had been installed in accordance with the manufacturer's installation instructions and applicable building code, and that as a pre-requisite to the manufacturer issuing its warranty, the new roofing system was inspected and approved by the manufacturer's representative, Glenn Wurst, as meeting their requirements and that the installation was verified as having been properly installed. Mr. Ramirez further testified that during the original installation and upon completion, the new roofing work was also personally inspected by Robert Hudnall who joined the other individuals on the roof via a ladder and then at times also via access from a window and rear balcony which provided access to the roof. Mr. Ramirez testified

that Mr. Hudnall never objected to the work either during installation or at the time of inspection by the manufacturer's representative.

Mr. Ramirez testified as to the reason for the roof inspection "fail" reflected on Exhibit C-06 (July 18, 2014 Inspection) was the result of Hudnall's failure to provide access and not because of any construction or installation defects. Following a short recess and at the request of the arbitrator, Exhibit C-19 was marked and admitted into evidence. Exhibit C-20, the October 30, 2014 inspection notes, which reflects the subsequent re-inspection status as "Pass" was also thereafter admitted into evidence. Mr. Ramirez further testified that to his knowledge there was no material change in the condition of the roof between July 18, 2014 and October 30, 2014.

As to Exhibit C-07, Mr. Ramirez competently testified that the type of roofing system used by S&R was designed to breathe (as opposed to being firmly affixed to the pre-existing roof) and that such design condition was intended for the new roofing system to function properly. He further testified that based on his personal knowledge, many of the El Paso building inspectors were unfamiliar with this type of roofing system and may therefore "fail" a new roof due to their lack of experience and knowledge. S&R was not notified of the May 21, 2015 re-inspection and therefore was not present to explain or demonstrate to Inspector Wayne Fannin how the new roofing system did in fact meet both code and the manufacturer's installation instructions.

Following the May 21, 2015, inspection, Hudnall did not request that S&R make any repairs nor did Hudnall provide any photographs or video evidence to demonstrate the conditions being complained of. During the course of the arbitration, subsequent requests by Claimant to perform an inspection to independently verify the alleged conditions were all rebuffed by Hudnall. Exhibit C-21 was marked and admitted into evidence without objection at the direction of the arbitrator.

Mr. Ramirez further testified that following the May 21, 2015 inspection and May 26, 2015 letter, there was no adverse action taken by the City of El Paso against S&R and the City continued to issue building permits and perform inspections on other projects.

At the conclusion of Mr. Ramirez's testimony, the Arbitrator reviewed in detail the claims by S&R, the computation of the outstanding contract balance due, the attorney's fees and costs requested, and the statutory rate of pre-award interest which was sought by Claimant. Mr. Martinez testified that from and after the August 10, 2021 invoice #127908 and the date of the hearing, his law firm incurred an additional amount of $12,120.00 in attorneys fees prosecuting the claims. He also testified that the ordinary course of payment for fee billings averaged approximately 90 days following billing.

During the course of Claimant's presentation of evidence, the Arbitrator asked questions of Mr. Ramirez and counsel as necessary to insure a thorough understanding of the evidence and testimony. Following the presentation of evidence and testimony of Mr. Ramirez by Claimant, the Arbitrator offered opportunity for any other party to cross examine witnesses or to otherwise offer any evidence or testimony in defense of the Claims and demands.

At the close of Claimant's case in chief, the Arbitrator opened the hearing to Hudnall's counterclaim as set forth in its September 17, 2020 Answer and Counterclaim filed.[3] James Martinez advised that during the course of the arbitration proceedings no evidence, documents, or other materials had been provided by Hudnall as to any of the enumerated issues, causes of action, or damage claims set forth beginning on page 4.

Specifically, as relates to Counterclaim ¶(a)1, Hudnall never provided a copy of the Sun City Analytics report referenced and a review of all pleadings and filings by Hudnall reflect that this report "(Exhibit 2)" was never provided to Claimant or to the Arbitrator.

As relates to Counterclaim ¶(a)2, no evidence was provided to Claimant or otherwise presented by Hudnall regarding any of the alleged existence of toxic mold, or as to causation of any serious medical problems, pulmonary disease or lung scarring, resulting in any permanent medical condition or long-term disability.

Counterclaim ¶(a)3 no evidence was provided to Claimant or otherwise presented by Hudnall to support the allegation that there are widespread leaks in the roof or that the work performed by S&R was performed negligently.

Counterclaim ¶(a)4 no evidence was provided to Claimant or otherwise presented by Hudnall to support the allegation that there was toxic mold in the house or that there was resulting damage to furniture or the necessity for moving an art collection and book collection out of the house. No evidence was presented by Hudnall to support the alleged storage costs, restoration or care of the art collection or book collection.

Counterclaim ¶(a)5 no evidence was provided to Claimant or otherwise presented by Hudnall to support the allegation that there was damage to furniture cause by a leaking roof. No evidence was presented regarding the cost of the furniture alleged damaged and which could not be salvaged.

Counterclaim ¶(a)6 no evidence was provided to Claimant or otherwise presented by Hudnall to support the allegation that there was damage caused by S&R to various areas of the interior including the bathtub, ceiling and wallpaper in the guest room bathroom. No evidence was presented regarding the cost of repairs or replacement.

Counterclaim ¶(a)7 no evidence was provided to Claimant or otherwise presented by Hudnall to support the allegation that there was mold, damaged drywall and insulation which was caused by or the legal responsibility of S&R. No evidence was presented regarding the cost of repairs or replacement.

Counterclaim ¶(a)8 no evidence was provided to Claimant or otherwise presented by Hudnall to support the allegation that they are entitled to any portion of the bond which was the subject matter of the Old Republic Interpleader action 2015 DCV 3677. To the

---

[3]     The Arbitrator was advised by the AAA Case Manager that Respondent Hudnall did not ever remit their filing fees for their Counterclaim. The Counterclaim was addressed during the hearing for completeness.

contrary, the Arbitrator finds that the distribution already made to Hudnall was made following a fraud and intentional misrepresentation to Judge Alvarez by attorney Michael Zimprich and Robert Hudnall.

Counterclaim ¶(a)9 no evidence was provided to Claimant or otherwise presented by Hudnall to support the allegations that either Robert or Sharon Hudnall have experienced any respiratory problems, that they have experience any permanent medical issues, that there was a mold infestation in the house which was attributable to any work performed by S&R, or any alleged failures in the work performed by S&R. No evidence was presented regarding any personal injuries or medical expenses which may be incurred by Hudnall over their "projected" lifetimes.

By permission, Exhibits C-19 to C-22 were admitted into evidence and Claimants were directed to transmit the same to the Case Manager for distribution to Hudnall and to the Arbitrator. Following the conclusion of all evidence, the hearing was called to a close at 11:51 a.m. in accordance with Rule R-40(a).

**Findings**

1] S&R bears the burden of proof as to its claim demand of $8,965.68, pre-award interest, costs and AAA fees paid for administrative and arbitrator compensation, and their request for attorney's fees of $50,069.00.

2] Robert and Sharon Hudnall bear the burden of proof as to all claims and amounts set forth in their Counterclaim.

3] S&R presented competent admissible evidence sufficient to support Hudnall's liability for all damages claimed and the specific amounts which were sought or otherwise due.

4] Robert and Sharon Hudnall presented no evidence, testimony, or documents in support of their claims set forth in their Counterclaim dated September 17, 2020.

5] S&R completed all contracted for work in a timely and workmanship manner. The roof installed was approved by the manufacturer and the City of El Paso at the time of the installation. Without direct evidence and testimony by the City of El Paso building inspector, photographs or video of the alleged defective conditions, based on an inspection performed nearly a year after the original installation, the Arbitrator rejects Hudnall's argument that the roof, when installed, failed due to any responsibility of S&R. The contradictory "evidence" submitted by Hudnall during the course of these proceedings lacks foundation, is based on speculation and conjecture, or is otherwise not reliable and is therefore rejected.

6] Following completion of the work, S&R timely requested payment from Hudnall of the contract amount which was properly due. As detailed on Exhibit C-04 and supported by the testimony of Mr. Ramirez, S&R agreed to perform the contracted scope

of work for the amount paid by the insurance company - $30,515.12.[4] Of that amount, S&R acknowledged having previously received payment of $22,914.14 leaving a contract balance due of $7,600.98.

7] Hudnall materially breached its contractual obligations with Claimant by failing to pay such amount when due making this arbitration necessary for Claimant to protect its rights. The amount of $7,600.98 is a liquidated sum, capable of computation with reasonable certainty and without need for opinion or speculation. As a liquidated sum, Claimant is entitled to an award of pre-award interest at the statutory rate of 5.00% per annum simple interest[5] from the date of demand until paid.

8] The Demand for Arbitration constitutes a claim for rendered serves, the performance of labor, and for furnished materials. It also arises out of a written contract agreement and in particular a written construction contract. S&R is the prevailing party and is entitled to an award of its reasonable attorney's fees and other costs as additional compensatory damages resulting from Hudnall's material breach of contract and failure to pay.

9] Hudnall failed to present any photographs, video, or expert report demonstrating that the roof work performed by S&R was not installed in accordance with the applicable building code or manufacturer's installation instructions at the time of the original work. Claimant presented competent admissible evidence that all work was properly performed, passed inspection by the City of El Paso and was approved by the manufacturer for purposes of ongoing warranty obligations.

10] Following issuance of the May 26, 2015 letter from the City of El Paso, Hudnall never requested S&R to make repairs, never provided any photographs, and actively interfered with S&R's efforts to properly investigate the allegations of poor workmanship or failures. To the extent that there were any actual failures in the work, Hudnall failed to comply with the contract requirements of providing notice and an opportunity to cure. The active interference by Hudnall and threats to have the workmen of S&R arrested for trespass are sufficient to obviate any legal responsibility by S&R to make any such repairs.

11] The attorney's fees sought by S&R are reasonable. The hourly rates charged, work performed, and amounts billed are sufficiently supported by competent, relevant, and admissible evidence. Of the total sought ($50,069.00)[6], S&R is entitled to

---

[4]     See Exhibit C-01 page 1 "Upon acceptance by Smith & Ramirez Restoration LLC of the Insurer's estimate this proposal shall be binding and Smith & Ramirez Restoration LLC shall receive all the insurance proceeds for the work completed."

[5]     See Texas Finance Code, Chapter 304, Section 304.001 et sec. and particularly Sec. 304.003(c)(2).

[6]     At hearing, S&R requested permission to supplement the record and to seek the attorney's fees incurred by its prior counsel in filing the collection action 2015DCV1113,

the full amount less a small adjustment to account for the fact that the amount awarded is slightly less than the original demand. After having considered all the evidence and testimony on such fees, the Arbitrator finds that a reasonable award to be $48,401.45. In addition to this amount, S&R is also awarded its other reasonable costs and expenses totaling $1,018.96.

12] S&R also sought award of its costs and expenses of the arbitration – specifically the initial filing fee of $750.00, the final fee of $800, and the Arbitrator's Compensation. The parties contract provides otherwise. Specifically, the parties agreed that "all expenses of such arbitration [shall be] divided equally between Customer [Hudnall] and Contractor [S&R]. Accordingly, S&R's request for reimbursement of these expenses is denied.

13] During the preliminary matters, Hudnall provided extensive briefing and arguments alleging that Judge Alvarez's prior orders in July 2019 constituted res judicata / collateral estoppel and that the Arbitrator lacked jurisdiction to hear the dispute. The Arbitrator has previously rejected these legal arguments for the reasons stated in the Arbitrator's January 18, 2021, February 14, 2021, March 18, 2021, and April 5, 2021 Orders. Hudnall was advised that they were free to raise these legal arguments again at the evidentiary hearing and that they could present new or additional evidence or arguments on these legal claims.

14] Having failed to present any new evidence or argument, the Arbitrator reaffirms its prior rulings. Specifically, the arbitrator has sufficient and proper jurisdiction to hearing all issues and claims raised in the Demand for Arbitration and the Hudnall's September 17, 2020 Counterclaim. As to Hudnall's claim of res judicata / collateral estoppel, for the reasons stated in its prior orders, the Arbitrator finds that these claims also fail.

The Arbitrator, after having considered all of the relevant and admissible evidence, hereby finds in favor of Claimant Smith & Ramirez Restoration, LLC and against Robert and Sharon Hudnall, jointly and severally in all respects and as follows:

| | |
|---|---|
| Unpaid Contract Balance | $ 7,600.98 |
| Pre-award Interest (to 10/18/2021) | 2,664.66 |
| Attorney's Fees | 48,401.45 |
| Costs and Expenses | 1,018.96 |
| AAA Filing Fees Reimbursement | 0.00 |
| Arbitrator Compensation Reimbursement | 0.00 |
| **Total Award** | **$59,686.05** |

and in participating in the Old Republic Interpleader action 2015DCV3677. Having failed to demonstrate good cause why an affidavit or other evidence of these fees was not previously and timely disclosed, the Arbitrator denied this request.

In addition to the above, Claimant is entitled to post award interest computed at the per diem rate of $7.81 from and after the date of this Award until paid in full.

As to Hudnall's Counterclaim, the Arbitrator finds that despite fair and reasonable notice and an opportunity to be heard, Hudnall failed to present evidence (beyond the barebones Counterclaim allegations) to support their claims or damages sought. Hudnall's Counterclaim is denied in all respects.

The administrative fees and expenses of the American Arbitration Association totaling $1,750.00 and the compensation and expenses of the Arbitrator totaling $18,200.00 shall be borne as incurred.

This Award is in full settlement of all claims and counterclaims submitted to this Arbitration. All claims and counterclaims not expressly granted herein are hereby denied.

_____ 11/12/2021
Guy W. Bluff, Esq., Arbitrator

# Automated Certificate of eService

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Barbara Divis on behalf of James Martinez
Bar No. 791192
BDivis@mgmsg.com
Envelope ID: 60313949
Status as of 12/30/2021 9:53 AM MST

Associated Case Party: Smith and Ramirez Restoration, LLC

| Name | BarNumber | Email | TimestampSubmitted | Status |
|------|-----------|-------|--------------------|--------|
| Barbara Divis | | bdivis@mgmsg.com | 12/27/2021 1:47:07 PM | SENT |
| James A.Martinez | | martinezja@jmeplaw.com | 12/27/2021 1:47:07 PM | SENT |
| James Martinez | | eservice@jmeplaw.com | 12/27/2021 1:47:07 PM | SENT |

# EXHIBIT Q

## 800 Final Building Inspection (2770040, Optional)

297 PUESTA DEL SOL

Print

## Status

## Details

Pass
10/30/2014 11:25 AM
Desired Date: TBD

*Last updated*
Chris J Wells 503-9757
10/30/2014 11:45 AM

**Record**
BRFF14-01580
Roofing Permit

## Related Inspections

Showing 0-0 of 0

| ID | Inspection Name | Relationship | Status |
|----|-----------------|--------------|--------|

No records found.