**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

| | | |
|---|---|---|
| **ROBERT K. HUDNALL,** | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | |
| | § | |
| **STATE OF TEXAS; CITY OF EL** | § | **CAUSE NO. EP-22-CV-36-KC-RFC** |
| **PASO; JUDGE SERGIO ENRIQUEZ;** | § | |
| **ALEJANDRO C. RAMIREZ; TYRONE** | § | |
| **SMITH d/b/a SMITH AND RAMIREZ** | § | |
| **RESTORATION LLC; GUY BLUFF;** | § | |
| **AMERICAN ARBITRATION** | § | |
| **ASSOCIATION; and EVANSTON** | § | |
| **INSURANCE COMPANY,** | § | |
| **Defendants.** | § | |

## REPORT AND RECOMMENDATIONS
## OF THE MAGISTRATE JUDGE

The Court considers the following: (1) Defendant State of Texas's Motion to Dismiss (ECF No. 6); (2) Defendant Judge Sergio Enriquez's Motion for Judgment on the Pleadings (ECF No. 7); (3) Defendant Evanston Insurance Company's Motion to Dismiss (ECF No. 8); (4) Defendants American Arbitration Association and Guy Bluff's Motion to Dismiss (ECF No. 10); (5) Plaintiff's Motion for Judgment on the Pleadings (ECF No. 16); (6) Plaintiff's Motion for Declaratory Judgment (ECF No. 18); and (7) Plaintiff's Second Motion for Declaratory Judgment (ECF No. 26).

On March 1, 2022, U.S. District Judge Kathleen Cardone referred the above-captioned matter to U.S. Magistrate Judge Robert Castañeda "pursuant to 28 U.S.C. § 636(b) to hear all pre-trial matters." (ECF No. 19.) For the reasons set forth below, the Court recommends that: (1) Defendant State of Texas's Motion to Dismiss (ECF No. 6) be granted; (2) Defendant Judge Sergio Enriquez's Motion for Judgment on the Pleadings (ECF No. 7) be granted; (3) Defendants

1

American Arbitration Association and Guy Bluff's Motion to Dismiss (ECF No. 10) be granted; (4) Defendant Evanston Insurance Company's Motion to Dismiss (ECF No. 8) be granted; (5) Plaintiff's Motion for Judgment on the Pleadings (ECF No. 16) be denied; (6) Plaintiff's Motion for Declaratory Judgment (ECF No. 18) be denied; and (7) Plaintiff's Second Motion for Declaratory Judgment (ECF No. 26) be denied.

## I.    FACTUAL AND PROCEDURAL BACKGROUND[1]

On December 2, 2021, Plaintiff ("Plaintiff" or "Hudnall") filed suit against Defendants in County Court at Law Number 6 of El Paso County, Texas under Cause Number 2021DCV4135. (ECF No. 1-3:2.)  On December 20, 2021, Hudnall filed an Amended Petition in that same action ("Amended Complaint").  (*Id.* at 64.)  Hudnall's Amended Complaint explains that "[t]his action stems from a contract for the replacement of a roof on our home entered into between Plaintiff and Defendant, Smith and Ramirez Restoration LLC in June of 2014" and the subsequent roof replacement ("roofing incident").  (*Id.* at 68); *see also* (*id.* at 71.)

Hudnall's Amended Complaint also implicates several lawsuits concerning the roofing incident.  (*Id.* at 68.)  The Amended Complaint explains that after the roofing incident, under Cause Number 2015DCV3677, a state court held that a bond issued on behalf of Defendant Smith and Ramirez Restoration LLC ("S&R") for completion of Plaintiff's roof replacement "would be forfeited as the roof did not meet code."  (*Id.* at 73.)  Under Cause Number 2015DCV1113, Defendant S&R sued Hudnall, "claiming that the roof passed inspection and they were not paid." (*Id.*)  Defendant Judge Enriquez ("Judge Enriquez") presided over that case and sent it to arbitration.  (*Id.* at 73–74.)  "Plaintiff then filed a RICO [Racketeer Influenced and Corrupt Organizations Act] action . . . against the arbitrator, the roofers and their attorneys" in state court

---

[1] While recounting the factual and procedural background, the Court addresses only the facts relevant to the immediate Report and Recommendation.

under Cause Number 2021DCV1187, which was removed to federal court.  (*Id.* at 75); *see also* (ECF No. 1:2–3.)

In the instant matter, Hudnall asserts that Defendants violated his rights under the U.S. Constitution, the Americans with Disabilities Act and the Americans with Disabilities Act Amendments Act ("ADA/ADAAA"), and the Texas Human Resources Code ("Texas HR Code"), and violated Texas state law in other respects by committing such acts as intimidation, coercion, bribery, invasion of privacy, conspiracy, abuse of process, elder abuse, fraud, forgery, breach of contract, conflict of interest, denial of rights to third party beneficiary, and causing him to suffer "Legal Abuse Syndrome."  (ECF No. 1-3:76–101.)

On January 26, 2022, Defendant Evanston Insurance Company ("Evanston") filed a Notice of Removal with this Court pursuant to 28 U.S.C. §§ 1331 and 1441.  (ECF No. 1.)  On February 1, 2022, Plaintiff moved for remand back to state court.  (ECF No. 4.)  On March 21, 2022, this Court issued a Report and Recommendation recommending denial of Plaintiff's Motion for Remand.  (ECF No. 36.)  On May 2, 2022, the District Court issued an Order Adopting the Report and Recommendation.  (ECF No. 41.)

On February 8, 2022, Defendants State of Texas ("Texas") and Evanston filed their respective Motions to Dismiss (ECF Nos. 6; 8), and Judge Enriquez filed his Motion for Judgment on the Pleadings (ECF No. 7.)  On February 14, 2022, Defendants Guy Bluff ("Bluff") and American Arbitration Association ("AAA") filed a Motion to Dismiss.  (ECF No. 10.)  To date, Hudnall has not responded to any of Defendants' Motions.

On February 18, 2022, Plaintiff filed a Motion for Judgment on the Pleadings.  (ECF No. 16.)  Responses to Plaintiff's Motion for Judgment on the Pleadings were filed by Judge Enriquez (ECF No. 17), Evanston (ECF No. 21), City of El Paso ("El Paso") (ECF No. 22), Defendants

Alejandro Ramirez, Tyrone Smith, and S&R (collectively, "the Roofers") (ECF No. 23), and AAA and Bluff (ECF Nos. 24–25).

On February 28, 2022, Plaintiff filed a Motion for Declaratory Judgment.  (ECF No. 18.)  Responses to Plaintiff's Motion for Declaratory Judgment were filed by AAA and Bluff (ECF No. 29), El Paso (ECF No. 30), and the Roofers (ECF Nos. 31; 33).  On March 7, 2022, Plaintiff filed a Second Motion for Declaratory Judgment (ECF No. 26), but the Court Operations Department marked it deficient for reasons of illegibility (ECF No. 27).  To date, Plaintiff has not corrected the deficiency.

## II.   LEGAL STANDARDS

### A.  Rule 12(b)(1) Motion to Dismiss

A case may be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.  The court must consider a Rule 12(b)(1) motion "before other challenges since the court must find jurisdiction before determining the validity of a claim."  *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994) (internal quotation marks and citations omitted).

"The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction."  *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  When considering a Rule 12(b)(1) motion, the court may consider disputed matters of fact.  *Id.*  "Ultimately, a motion to dismiss for lack of subject matter jurisdiction should be granted only if it appears certain that the plaintiff cannot prove any set of facts in support of his claim that would entitle plaintiff to relief."  *Id.*

### B.  Rule 12(b)(6) Motion to Dismiss

Rule 12(b)(6) provides for dismissal of a complaint when a defendant shows that the plaintiff has "fail[ed] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The factual matter in the complaint must allege actual facts, not legal conclusions masquerading as facts.  *Id.*

To resolve a Rule 12(b)(6) motion, courts must determine "whether in the light most favorable to the plaintiff and with every doubt resolved on his behalf, the complaint states any valid claim for relief."  *Gregson v. Zurich Am. Ins. Co.*, 322 F.3d 883, 885 (5th Cir. 2003) (citation omitted).  A complaint states a "plausible claim for relief" when the factual allegations contained therein allow the court to infer actual misconduct on the part of the defendant, not a "mere possibility of misconduct."  *Iqbal*, 556 U.S. at 679.  The complaint "'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).

*Pro se* pleadings are reviewed under a less stringent standard than those drafted by attorneys, and such pleadings are entitled to a liberal construction that includes all reasonable inferences that can be drawn from them.  *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (per curiam).  However, even a *pro se* complaint may not merely set forth conclusory allegations.  The *pro se* litigant must still set forth facts giving rise to a claim on which relief may be granted. *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993) (per curiam).

### C.  Rule 12(c) Motion for Judgment on the Pleadings

A party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial."  Fed. R. Civ. P. 12(c).  Motions under Rule 12(c) are "designed to dispose of cases where the material facts are not in dispute and a judgment on the merits can be

rendered by looking to the substance of the pleadings and any judicially noticed facts." *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 312 (5th Cir. 2002) (quoting *Hebert Abstract Co. v. Touchstone Props., Ltd.*, 914 F.2d 74, 76 (5th Cir. 1990) (per curiam)).

Similar to the Rule 12(b)(6) standard, "[w]hen construing a motion for judgment on the pleadings, the Court is required to assume that the allegations of fact presented by the opposing party are true, and must further view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party." *Allstate Ins. Co. v. Mauldin*, 869 F. Supp. 478, 479 (W.D. Tex. 1994); *see Machete Prods., L.L.C. v. Page*, 809 F.3d 281, 287 (5th Cir. 2015).

## III.    DISCUSSION

### A.  Texas's Motion to Dismiss

Texas argues for dismissal of Hudnall's claims on a number of grounds.  (ECF No. 6:4–6.) To date, Hudnall has not responded to Texas's Motion.  The Court will first consider Texas's jurisdictional arguments before the arguments on the merits.  *Moran*, 27 F.3d at 172.

#### 1.  Standing

Texas first argues that this Court lacks jurisdiction to hear Hudnall's claims because he lacks standing.  (ECF No. 6:3–4.)  A plaintiff must establish standing by first showing that he "suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent, not conjectural or hypothetical.'"  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks and citations omitted).  Second, the plaintiff must show "a causal connection between the injury and the conduct complained of."  *Id.* Finally, the injury must be likely to be redressed by a favorable federal court decision.  *Id.* at 561. To survive a motion to dismiss for lack of standing, the plaintiff "must allege facts that give rise

to a plausible claim of standing." *Hooker v. Dall. Indep. Sch. Dist.*, No. 3:09-CV-1289-D, 2010 WL 4025877, at *3 (N.D. Tex. Oct. 13, 2010) (citing *Cornerstone Christian Sch. v. Univ. Interscholastic League*, 563 F.3d 127, 134 (5th Cir. 2009)).

Here, Hudnall alleges that Texas committed intimidation and coercion, violated Title II of the ADA/ADAAA, and violated the Fourteenth Amendment due process and equal protection clauses. (ECF No. 1-3:76–78.) To support these claims, Hudnall alleges that various state agencies including the Office of the Attorney General "ignored" his complaints regarding the roofing incident. (*Id.*) He also states that the Texas Ranger Division "was abusive to Plaintiff's attempts to get assistance . . . and made every effort to coerce Plaintiff [into] dropping his complaint." (*Id.* at 78.) He further states that "the Fraud Department of the Texas Department of Insurance (TDI) continued to protect Liberty Mutual and Evanston Insurance Company at the expense of Plaintiff." (*Id.*) He further states that Texas agents told him that "he had better watch who he complained about as they were connected" and "senior members of that department often went to work for Liberty Mutual after retiring from the State and for this reason no complaint [of Hudnall's] would be processed." (*Id.*)

Based on Texas's arguments, Hudnall's claims, and the doctrine of standing, it is unclear but plausible that Hudnall has standing to bring his claims against Texas. Out of an abundance of caution, the Court presumes that Hudnall has established standing. *See Lujan*, 504 U.S. at 561; *Montez v. Dep't of Navy*, 392 F.3d 147, 150 (5th Cir. 2004); *Cornerstone*, 563 F.3d at 134. Therefore, Court moves forward with Texas's remaining jurisdictional argument.

### 2. Sovereign Immunity

Texas argues that the Court lacks jurisdiction to hear Hudnall's claims because they are barred by state sovereign immunity under the Eleventh Amendment. (ECF No. 6:4.) The Eleventh

Amendment to the U.S. Constitution "bars suits in federal court by citizens of a state against their own state or a state agency or department." *Voisin's Oyster House, Inc. v. Guidry*, 799 F.2d 183, 185 (5th Cir. 1986)).  Sovereign immunity may apply "regardless of the nature of the relief sought." *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).

A state and its agencies have Eleventh Amendment sovereign immunity and can only be sued in federal court if "the state consents to suit or Congress has clearly and validly abrogated the state's sovereign immunity." *Perez v. Region 20 Educ. Serv. Ctr.*, 307 F.3d 318, 326 (5th Cir. 2002).  The state's consent to suit, or "waiver" of immunity, must be voluntary and "unequivocal." *Pennhurst*, 465 U.S. at 99.

The Fifth Circuit has held that sovereign immunity encompasses both "immunity from suit," a jurisdictional bar, and "immunity from liability," which the state can assert as a defense. *See Meyers ex rel. Benzing v. Texas*, 410 F.3d 236, 252–53 (5th Cir. 2005) ("[T]he Constitution permits a state whose law provides that it possesses an immunity from liability separate from its immunity from suit to show that its waiver of one does not affect its enjoyment of the other.").  In short, if the state waives immunity from suit, it cannot seek Rule 12(b)(1) dismissal for lack of jurisdiction, but it may seek immunity from liability, for example under Rule 12(b)(6).  *See, e.g.*, *Gordon v. Neugebauer*, No. 1:14-CV-0093-J, 2014 WL 5531850, at *6 (N.D. Tex. Oct. 31, 2014).

"Whether [the state] has retained a separate immunity from liability is an issue that must be decided according to that state's law." *Meyers*, 410 F.3d at 255; *see Brown & Gay Eng'g, Inc. v. Olivares*, 461 S.W.3d 117, 121 (Tex. 2015).  Under Texas law, "immunity from liability is waived if either the Legislature waived this immunity 'by clear and unambiguous language,' or if the defendant failed to assert sovereign immunity as an affirmative defense." *Skinner v. Gragg*,

650 F. App'x 214, 218 (5th Cir. 2016) (internal citations omitted) (quoting *DeWitt v. Harris Cnty.*, 904 S.W.2d 650, 652 (Tex. 1995)).

One way in which a state may waive its immunity from suit, while not necessarily waiving its immunity from liability, is by removing a case from state court to federal court, or by consenting to removal if instigated by another party.  *See Meyers*, 410 F.3d at 242–44, 255 (citing *Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613 (2002)); *Kelley v. Papanos*, No. H-11-0626, 2012 WL 208446, at *2–3 (S.D. Tex. Jan. 24, 2012).

Here, Defendant Evanston filed the Notice of Removal on January 26, 2022.  *See* (ECF No. 1.)  In the Notice of Removal, Evanston stated that "[a]ll parties who have appeared in the state court matter have consented to this removal." (*Id.* at 3.)  Proof of executed service of process on Texas was filed in the state court proceeding on January 19, 2022.  *See* (ECF No. 1-3:196–99). Evanston noted that at the time of removal, Texas had not yet filed an answer.  (ECF No. 1:2.) However, Evanston also noted that at the time of removal, "Evanston ha[d] not yet formally received a copy of the Plaintiff's Amended Petition, but was informed by the Texas Department of Insurance that the Department received a copy of the pleading on January 18, 2022, and would be mailing a copy to Evanston on January 24, 2022." (*Id.* at 1.)  Based on the foregoing, the Court finds that Texas consented to the removal and thus waived its immunity from suit.  Therefore, the Court finds that it has jurisdiction to hear Hudnall's claims against Texas.

Further, the Court finds that Texas has not waived its immunity from liability.  Texas argues for immunity in its Motion.  (ECF No. 6:4–6.)  Further, Hudnall has not demonstrated that the Texas Legislature has clearly and unambiguously waived Texas's immunity from liability on any of his claims.  Nor can the Court find any such waiver.  *Skinner*, 650 F. App'x at 218; Tex. Civ. Prac. & Rem. Code § 107.002(b) ("A resolution granting permission to sue [Texas] does not

waive to any extent immunity from liability."); *see, e.g.*, *Garza v. Tex. Dep't of Aging & Disability Servs.*, No. A-17-CA-686-SS, 2017 WL 4681799, at *3 (W.D. Tex. Oct. 17, 2017) (regarding claims under the ADAAA, "this Court finds no waiver of liability upon review of Texas law"); *Lindsey v. State*, 811 S.W.2d 731, 733 (Tex. App. 1991), *writ denied* (Oct. 2, 1991) (finding that a Texas Senate Concurrent Resolution waived state's immunity from suit but did not waive immunity from liability for a claim under 42 U.S.C. § 1983. By finding that Texas retains its arguments for immunity from liability, the Court now considers the merits of those arguments.

For Hudnall's Section 1983 claims, Texas asserts immunity from liability because Congress has not validly abrogated state immunity for such claims. (ECF No. 6:4–5.) For Hudnall's ADA/ADAAA Title II claims, Texas argues that the requisite conditions for valid abrogation are not met here. *See* (*id.* at 5) (applying *United States v. Georgia*, 546 U.S. 151, 159 (2006), and arguing that there is no valid abrogation here because "Plaintiff does not allege any facts from which the Court could conclude that [Texas's] conduct violated Title II"). Finally, Texas argues that Hudnall's claims of "intimidation" and "coercion" "are not causes of action for which sovereign immunity has been waived or abrogated." (*Id.* at 6.)

The Court agrees that Texas is immune from liability for Hudnall's due process and equal protection claims because Congress has not abrogated state immunity under 42 U.S.C. § 1983. *See Pennhurst*, 465 U.S. at 99 (citing *Quern v. Jordan*, 440 U.S. 332, 342 (1979)); *see also Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989) (holding that states cannot be liable as "persons" under 42 U.S.C. § 1983).

To bring a valid ADA/ADAAA Title II claim, Hudnall must allege "(1) that he has a qualifying disability; (2) that he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity;

and (3) that such discrimination is by reason of his disability." *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011). Hudnall does not allege any conduct by Texas that could be remotely construed as discrimination against him by reason of his disability. *See* (ECF No. 1-3:76–78.) Thus, Hudnall's ADA/ADAAA claims against Texas fail, and without a plausible Title II claim, the Court cannot find that Congress abrogated Texas's immunity in this context. *See United States v. Georgia*, 546 U.S. at 159 (presenting the first step for determining abrogation as identifying "which aspects of the State's alleged conduct violated Title II").

Regarding Hudnall's claims of "intimidation" and "coercion," Texas asserts that such claims "are not causes of action for which sovereign immunity has been waived or abrogated." (ECF No. 6:6.) Hudnall's Amended Complaint does not clearly identify the legal basis for these claims. Under the "Jurisdiction" section of his Amended Complaint, Hudnall states that "Congress also saw fit to pass federal law 2 U.S.C. [§] 12202[,] which protects advocates against any and all retaliation, coercion, threats[,] and intimidation." (ECF No. 1-3:67.) However, the Court is unable to locate 2 U.S.C. § 12202. To the extent that Hudnall intended to cite 42 U.S.C. § 12202, the Court has already found that Hudnall's claims under the ADA/ADAAA fail.

To the extent that Hudnall intended to bring "intimidation" and "coercion" as tort claims, the Court construes them as intentional torts. *See, e.g.*, *City of Houston v. Downstream Env't, L.L.C.*, 444 S.W.3d 24, 37 (Tex. App. 2014) (assessing allegations of "duress, coercion, bullying, or harassment" under tort law); *James Roa v. City of Denison*, No. 4:18-CV-168-ALM-CAN, 2019 WL 1306212, at *9 (E.D. Tex. Feb. 18, 2019), *report and recommendation adopted*, No. 4:18-CV-168, 2019 WL 1411248 (E.D. Tex. Mar. 28, 2019) (treating claims of intimidation and deceptive practices as intentional torts). Congress has not abrogated state immunity for tort claims. *See, e.g.*, *Tolliver v. Prairie View A&M, Univ.*, No. H-18-1192, 2018 WL 4701571, at *3 (S.D.

Tex. Oct. 1, 2018) (citing *Duncan v. Univ. of Tex. Health Sci. Ctr. at Hous.*, 469 F. App'x. 364, 367 & n.3 (5th Cir. 2012) and *Sherwinski v. Peterson*, 98 F.3d 849, 852 (5th Cir. 1996)). Additionally, the Texas Tort Claims Act does not waive sovereign immunity for intentional torts. *See* Tex. Civ. Prac. & Rem. Code § 101.057(2); *Goodman v. Harris Cnty.*, 571 F.3d 388, 394 (5th Cir. 2009).  Thus, to the extent Hudnall alleges tort claims, Texas is immune from liability.

For the foregoing reasons, the Court recommends granting Texas's Motion to Dismiss for all of Plaintiff's claims because Texas is immune from liability.

**B.  Judge Enriquez's Motion for Judgment on the Pleadings**

Defendant Judge Enriquez seeks judgment on the pleadings on a number of grounds.  (ECF No. 7.)  To date, Hudnall has not responded to Judge Enriquez's Motion.  The Court will first consider Judge Enriquez's jurisdictional arguments before the arguments on the merits.  *Moran*, 27 F.3d at 172.

**1.  Standing**

Judge Enriquez first argues that this Court lacks jurisdiction to hear Hudnall's claims because he lacks standing.  (ECF No. 7:3–4.)  Judge Enriquez reasons that there is no "justiciable controversy" here because "Plaintiff's claims against Judge Enriquez are solely based on his actions in a state court proceeding in his adjudicatory capacity."  (*Id.* at 4) (citing *Bauer v. Texas*, 341 F.3d 352, 359 (5th Cir. 2003) for the proposition that "[t]he requirement of a justiciable controversy is not satisfied where a judge acts in his adjudicatory capacity").  More specifically, Judge Enriquez argues that Hudnall has not alleged an actual injury that is fairly traceable to Judge Enriquez's conduct.  (*Id.*)  He further claims that Hudnall fails to meet the redressability prong for standing because "[m]onetary damages are unavailable because of judicial and sovereign immunity" and "[i]njunctive relief is not available 'because federal courts have no authority to

12

direct state courts or their judicial officers in the performance of their duties.'" (*Id.*) (quoting *LaBranche v. Becnel*, 559 F. App'x 290, 291 (5th Cir. 2014)).

Hudnall alleges that Judge Enriquez violated Title II of the ADA/ADAAA, the Texas HR Code, and the due process and equal protection clauses of the Fourteenth Amendment. (ECF No. 1-3:81–90.) He also alleges that Judge Enriquez committed conspiracy, abuse of process, and elder abuse, and caused Hudnall to suffer "Legal Abuse Syndrome." (*Id.*) To support his claims, Hudnall alleges that during Judge Enriquez's adjudication of the roofing incident litigation under Cause Number 2015DCV1113, Judge Enriquez exhibited an "anti-*pro se* litigant stance" in various ways, such as "attacking Plaintiff for deciding to represent himself" and limiting his ability to "fully participate" in the litigation. (*Id.* at 87–88.) He also alleges that Judge Enriquez "refus[ed] to apply res judicata and collateral estoppel" with respect to the bond forfeiture order in 2015DCV3677. (*Id.* at 83–87.) Plaintiff further states that Judge Enriquez "assisted [Defendant Roofers] in committing fraud." (*Id.* at 87.)

Based on Judge Enriquez's arguments, Hudnall's claims, and the doctrine of standing, it is unclear whether Hudnall has standing to bring his claims against Judge Enriquez. Hudnall is not challenging a state law's constitutionality, which has often been the premise in cases where a plaintiff lacked standing to sue a state judge, including *Bauer*. *Bauer*, 341 F.3d at 359; *see, e.g.*, *Machetta v. Moren*, 726 F. App'x 219, 220 (5th Cir. 2018) (per curiam) (discussing *Bauer* within the specific context of standing to challenge the constitutionality of a statute); *Serafine v. Crump*, 800 F. App'x 234, 236–37 (5th Cir. 2020) (per curiam).

Additionally, Hudnall primarily seeks monetary damages from Judge Enriquez. (ECF No. 1-3:104–05.) Hudnall's only other request is that "the decision made by Judge Sergio Enriquez in 2015DCV1113 that the matter be sent to arbitration be [p]ermanently set aside as all issues in the

matter were previously decided in 2015DCV3677." (*Id.* at 105.)  The Court treats that request as

for retroactive, rather than prospective, relief.  *See, e.g.*, *Bowling v. McCraw*, No. 4:18-CV-610-

ALM-CAN, 2019 WL 2517834, at *5 (E.D. Tex. Mar. 7, 2019), *report and recommendation

adopted sub nom. Bowling v. Dahlheimer*, No. 4:18-CV-610, 2019 WL 3712025 (E.D. Tex. Aug.

7, 2019) (finding a request to vacate or reverse a prior state court order to be a request for

retroactive relief).  Other courts that found a plaintiff lacked standing to sue a state judge spoke

only to the plaintiff's claims for prospective injunctive or declaratory relief rather than retroactive

or monetary relief.  *See, e.g.*, *Bauer*, 341 F.3d at 358–59.[2]

For the foregoing reasons and out of an abundance of caution, the Court presumes that

Hudnall has established standing to sue Judge Enriquez.  *Cornerstone*, 563 F.3d at 134; *Montez*,

392 F.3d at 150.  The Court moves forward with Judge Enriquez's remaining arguments.

### 2.  Sovereign Immunity

Next, Judge Enriquez claims that he is immune from liability for Hudnall's claims under

the Eleventh Amendment.  (ECF No. 7:5.)  Sovereign immunity is available to state actors in their

official capacity.  *Will*, 491 U.S. at 71.  As "the presiding judge of the 448th District Court of El

Paso County, Texas," Judge Enriquez is a state actor and is thus eligible for sovereign immunity

in his official capacity.  (ECF No. 7:8); Tex. Gov't Code § 24.592; *Davis v. Tarrant Cnty.*, 565

F.3d 214, 228 (5th Cir. 2009).

---

[2] *See also, e.g.*, *Serafine*, 800 F. App'x at 237–38.  In *Serafine*, the Fifth Circuit discusses cases in which the court denied plaintiffs monetary relief against judges due to judicial immunity while denying other prospective relief due to lack of standing.  *See id.* (citing *Adams v. McIlhany*, 764 F.2d 294 (5th Cir. 1985) and *Soc'y of Separationists, Inc. v. Herman*, 959 F.2d 1283 (5th Cir. 1992)).  The Fifth Circuit concluded that these cases, together with *Bauer*, established that "to have standing to seek *prospective declaratory or injunctive relief* against a state-court judge, plaintiff must demonstrate a substantial likelihood she will encounter the same judge, in sufficiently similar circumstances, and with sufficiently similar results to establish an immediate, rather than speculative, threat of repeated injury."  *Id.* at 238 (emphasis added).

The Court reads Judge Enriquez's arguments as being solely for immunity from liability, rather than a jurisdictional argument of immunity from suit. *See* (ECF No. 7:5.)  Nonetheless, the Court notes that, as was the case for Defendant Texas, Judge Enriquez waived immunity from suit by consenting to Evanston's removal of the case from state court to federal court, so there is no jurisdictional bar here. *See* (ECF Nos. 1:3; 1-3:108–12); *Meyers*, 410 F.3d at 242–44, 255.

However, Judge Enriquez has not waived immunity from liability.  Hudnall does not argue that the Texas Legislature explicitly waives sovereign immunity for state judges, nor can the Court locate any statutes indicating such. *See, e.g.*, *Skinner*, 650 F. App'x at 218; Tex. Civ. Prac. & Rem. Code § 107.002(b); *id.* § 101.053 (providing that the Texas Tort Claims Act, including its limited waiver of immunity, does not apply to judicial officers in their official capacity).  By finding that Judge Enriquez retains his arguments for immunity from liability, the Court now considers the veracity of those arguments.

For Hudnall's Section 1983 and ADA/ADAAA claims, Judge Enriquez makes the same arguments for immunity as Texas did. *See* (ECF No. 7:5–6.)  For Hudnall's state tort claims, Judge Enriquez argues that the limited waiver of immunity in the Texas Tort Claims Act does not apply here.  (*Id.* at 7.)  Further, Judge Enriquez argues that Hudnall's "Legal Abuse Syndrome" and Texas HR Code claims "are not causes of action for which sovereign immunity has been waived or abrogated in federal court."  (*Id.*)

For Hudnall's Section 1983 claims, the Court finds that Judge Enriquez is immune from liability since there is no congressional abrogation of state immunity under Section 1983. *See Pennhurst*, 465 U.S. at 99; *Herrera v. Texas*, No. SA-21-CV-01266-XR, 2022 WL 817816, at *5 (W.D. Tex. Mar. 16, 2022).  For Hudnall's ADA/ADAAA claims, the Court finds that Hudnall does not allege any conduct by Judge Enriquez that could be remotely construed as discrimination

against him by reason of his disability. *See* (ECF No. 1-3:81–90.) Thus, without a plausible Title II claim, the Court cannot find that Congress abrogated Judge Enriquez's immunity in this context. *See Hale*, 642 F.3d at 499; *United States v. Georgia*, 546 U.S. at 159.

The Court treats Hudnall's claims of conspiracy, abuse of process, and elder abuse, as state tort claims. *See Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 640 (5th Cir. 2007) ("Under Texas law, civil conspiracy is a derivative tort."); *Duffie v. Wichita Cnty.*, 990 F. Supp. 2d 695, 716 (N.D. Tex. 2013) (treating abuse of process as tort); *Matter of Linn Energy, L.L.C.*, 936 F.3d 334, 339 (5th Cir. 2019) (treating elder abuse as tort). Congress has not abrogated state immunity for tort claims. *See, e.g.*, *Tolliver*, 2018 WL 4701571, at *3. The limited waiver of immunity in the Texas Tort Claims Act does not apply to Judge Enriquez in his official capacity as a judge. Tex. Civ. Prac. & Rem. Code § 101.053. Thus, Judge Enriquez is entitled to immunity for Hudnall's tort claims.

Finally, Hudnall does not have a viable claim against Judge Enriquez under the Texas Human Resources Code or for "Legal Abuse Syndrome." (ECF No. 1-3:88). There is no cause of action for "Legal Abuse Syndrome" under Texas law. *Reeves v. Wells Fargo Bank, NA*, No. EP-14-CV-00187-DCG, 2014 WL 12493287, at *8 (W.D. Tex. Dec. 18, 2014). For the Texas HR Code, Judge Enriquez's immunity from liability has not been waived or abrogated. *See Glueck v. Nat'l Conf. of Bar Examiners*, No. SA-17-CV-451-XR, 2017 WL 11664437, at *7 (W.D. Tex. Oct. 16, 2017); *Hawkins v. Montague Cnty.*, No. 7:10-CV-19-O, 2012 WL 13019679, at *6 (N.D. Tex. Mar. 28, 2012).

For the foregoing reasons, the Court recommends granting Judge Enriquez's Rule 12(c) Motion for Hudnall's claims brought against him in his official capacity because there are no

disputes of material fact pertaining to these claims[3] and Hudnall's claims fail to overcome Judge Enriquez's sovereign immunity or otherwise fail as a matter of law.

### 3. Judicial Immunity

The Court notes that, although it appears that Hudnall is suing Judge Enriquez in his official capacity, it is not clear. *See* (ECF No. 1-3:67, 82–83, 104.)  To the extent that Hudnall sues Judge Enriquez in his individual capacity, the Court next considers Judge Enriquez's arguments for judicial immunity.  The doctrine of judicial immunity establishes immunity from civil liability for judges in the performance of their judicial duties when sued in their individual capacities.  *See Davis*, 565 F.3d at 221; *Skelton v. Camp*, 234 F.3d 292, 296 & n.2 (5th Cir. 2000) (distinguishing Eleventh Amendment immunity and judicial immunity).

Judicial immunity can be overcome in two circumstances.  "'First, a judge is not immune from liability for nonjudicial actions, *i.e.*, actions not taken in the judge's judicial capacity.'  'Second, a judge is not immune for actions, though judicial in nature, taken in the complete absence of all jurisdiction.'  Allegations of bad faith or malice are not sufficient to overcome judicial immunity."  *Davis*, 565 F.3d at 221 (quoting *Mireles v. Waco,* 502 U.S. 9, 11 (1991)) (internal citations omitted).

To determine whether an act was done in a judicial capacity, courts weigh the following factors:

> (1) whether the precise act complained of is a normal judicial function; (2) whether the acts occurred in the courtroom or appropriate adjunct spaces such as the judge's chambers; (3) whether the controversy centered around a case pending before the court; and (4) whether the acts arose directly out of a visit to the judge in his official capacity.

---

[3] Judge Enriquez does not explicitly dispute material facts, but rather argues that Hudnall fails to allege facts sufficient to support his claims as a matter of law.  *See generally* (ECF No. 7.)

*Ballard v. Wall*, 413 F.3d 510, 515 (5th Cir. 2005) (quoting *Malina v. Gonzales*, 994 F.2d 1121, 1124 (5th Cir. 1993)).

Judge Enriquez argues that he is protected by judicial immunity because "Plaintiff has alleged no actions taken by Judge Enriquez that are non-judicial acts or acts taken in the clear absence of all jurisdiction." (ECF No. 7:8.)  Hudnall argues that Judge Enriquez is not entitled to judicial immunity because his decision to refer the case to arbitration was "administrative and ministerial" rather than judicial. (ECF No. 1-3:82.)

The Court finds that Judge Enriquez is entitled to judicial immunity. "Texas courts employ the same judicial immunity analysis as the federal courts in this Circuit." *Thomas v. State*, 294 F. Supp. 3d 576, 601 (N.D. Tex. 2018), *report and recommendation adopted*, No. 3:17-CV-0348-N-BH, 2018 WL 1254926 (N.D. Tex. Mar. 12, 2018) (internal quotation marks and citation omitted). All of Hudnall's claims against Judge Enriquez stem from Judge Enriquez's decision-making in the 2015DCV1113 state court proceeding, particularly his decision to send that case to arbitration. *See* (ECF No. 1-3:75, 81–88.)  Such actions meet all four factors to indicate a judicial nature. *Ballard*, 413 F.3d at 515.  Further, Judge Enriquez asserts that he had jurisdiction to make such decisions, and the Court agrees. (ECF No. 7:8–9); *see* Tex. Gov't Code §§ 24.007, 24.008, 24.592. Hudnall has not presented anything to indicate that Judge Enriquez lacked jurisdiction.

Therefore, to the extent that Hudnall sues Judge Enriquez in his individual capacity, the Court recommends granting Judge Enriquez's Rule 12(c) Motion because there are no disputes of material fact pertaining to these claims and Judge Enriquez is entitled to judicial immunity as a matter of law.

### C.  AAA and Bluff's Motion to Dismiss

Defendants AAA and Bluff argue for dismissal of Plaintiff's claims on a number of grounds under Rule 12(b)(6).  (ECF No. 10.)  The Court notes that AAA and Bluff's Motion to Dismiss is untimely because it was filed after AAA and Bluff had already answered.  *See* (*id.*; ECF No. 1-3:113–17); *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (per curiam).  However, the Court will construe AAA and Bluff's Motion as a motion for judgment on the pleadings under Rule 12(c).  *Jones*, 188 F.3d at 324.

First, AAA and Bluff argue that arbitral immunity bars all of Hudnall's claims.  (ECF No. 10:3–9.)  Arbitral immunity parallels judicial immunity in that it establishes immunity from civil liability for arbiters, and their sponsoring organizations, in the performance of their arbitral duties. *Jason v. Am. Arb. Ass'n, Inc.*, 62 F. App'x 557 (5th Cir. 2003) (per curiam) (citing *Hawkins v. Nat'l Ass'n of Sec. Dealers Inc.*, 149 F.3d 330, 332 (5th Cir. 1998), *abrogated on other grounds by Merrill Lynch, Pierce, Fenner & Smith Inc. v. Manning*, 578 U.S. 374 (2016)).  "The arbitrator's 'quasi-judicial' immunity arises from his resemblance to a judge. The scope of his immunity should be no broader than this resemblance. . . . [H]e should be immune from liability only to the extent that his action is functionally judge-like." *E.C. Ernst, Inc. v. Manhattan Const. Co. of Tex.*, 551 F.2d 1026, 1033 (5th Cir.), *opinion modified on reh'g*, 559 F.2d 268 (5th Cir. 1977).

To date, Hudnall has not responded to AAA and Bluff's Motion.  In his Amended Complaint, Hudnall alleges that Bluff committed conspiracy, invasion of privacy, and elder abuse, and violated Title II of the ADA/ADAAA, the due process clause, and conflict of interest rules. (ECF No. 1-3:94–97.)  He also alleges that AAA committed conspiracy and fraud and violated ADA/ADAAA Title II.  (*Id.* at 97–99.)

Hudnall's claims against Bluff all stem from Bluff's actions as arbitrator.  *See* (*id.* at 94–97.)  Specifically, Hudnall claims that Bluff improperly ruled in the Roofers favor during the arbitration, for example by failing to apply res judicata and collateral estoppel, by declining to recuse himself from the matter, and by "conspiring" with the Roofers.  (*Id.* at 94–97.)  Hudnall further claims that Bluff "intentionally set hearings on days he knew that Plaintiff was unable to take part in order to favor the Roofers."  (*Id.* at 96.)  Additionally, Hudnall complains of the purported arbitration fees.  (*Id.* at 97.)  The Court finds that Bluff's actions are functionally judge-like and Hudnall's claims are directly related to Bluff's role as arbitrator.  *E.C. Ernst*, 551 F.2d at 1033.

Further, Hudnall's claims against AAA all stem from AAA's actions as administrator of the arbitration agreement.  (ECF No. 1-3:97–99.)  Specifically, Hudnall argues that AAA created a conflict of interest and otherwise prejudiced Hudnall when it appointed Bluff as the arbitrator.  (*Id.*)  He further claims that AAA failed to respond to Hudnall's objections to the arbitration on res judicata and collateral estoppel grounds.  (*Id.*)  The Court finds these tasks to be "integrally related to arbitration."  *Jason*, 62 F. App'x at *1.

Further, Hudnall does not dispute that the roofing contract between Hudnall and the Roofers contained an arbitration clause.  (ECF No. 1-3:73); *see Hawkins*, 149 F.3d at 332 (granting arbitral immunity to an organization "for the acts of its arbitrators in the course of conducting contractually agreed-upon arbitration proceedings").  Additionally, the Court finds that Hudnall's allegations of wrongdoing do not overcome arbitral immunity.  *See Hawkins*, 149 F.3d at 331; *Jason*, 62 F. App'x at *1 (finding that AAA's alleged violation of its own internal rules is "immaterial" to the question of arbitral immunity).

20

For the foregoing reasons, the Court finds that AAA and Bluff are protected from Hudnall's claims by arbitral immunity.  Thus, the Court recommends granting AAA and Bluff's Motion under the Rule 12(c) standard because there are no disputes of material fact pertaining to these claims[4], and AAA and Bluff are entitled to arbitral immunity as a matter of law.

### D.  Evanston's Motion to Dismiss

Defendant Evanston argues for Rule 12(b)(6) dismissal for all of Plaintiff's claims against it because "Plaintiff fails to allege any facts supporting those claims."  (ECF No. 8:3.)  To date, Hudnall has not responded to Evanston's Motion.  In his Amended Complaint, Hudnall alleges that Evanston committed fraud, conspiracy, breach of contract, and "denial of rights as third party beneficiary."  (ECF No. 1-3:100–01.)

The Court applies Texas substantive law for each of Plaintiff's claims against Evanston because they stem from state tort law.  *See Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 427 (1996) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938)) (holding that a federal court hearing state law claims under diversity or supplemental jurisdiction shall apply state substantive law and federal procedural law); *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 500–01 (5th Cir. 2000) (treating third-party beneficiary claims under state contract law and fraud under state tort law); *Meadows*, 492 F.3d at 640 (treating conspiracy as state tort).

#### 1.  Fraud

To bring a claim of fraud under Texas law, the claimant must show that:

> (1) a material representation was made; (2) it was false when made; (3) the speaker either knew it was false, or made it without knowledge of its truth; (4) the speaker made it with the intent that it should be acted upon; (5) the party acted in reliance; and (6) the party was injured as a result.

---

[4] AAA and Bluff do not explicitly dispute material facts, but rather argue that Hudnall fails to allege facts sufficient to support his claims as a matter of law.  *See generally* (ECF No. 10.)

*Herrmann Holdings Ltd. v. Lucent Techs. Inc.*, 302 F.3d 552, 563 n.3 (5th Cir. 2002).  The claimant must present evidence of the offending party's "intent to deceive," and such evidence "must be relevant to [the party's] intent at the time the representation was made."  *Formosa Plastics Corp. USA v. Presidio Eng'rs & Contractors, Inc.*, 960 S.W.2d 41, 48 (Tex. 1998); *see U.S. Quest Ltd. v. Kimmons*, 228 F.3d 399, 403 (5th Cir. 2000).

Hudnall states that Evanston, "through merger, became the general liability insurance company furnishing liability coverage for the roofers in regard to Plaintiff's roof."  (ECF No. 1-3: 100.)  Hudnall alleges that Evanston, "in conjunction with the roofers in an attempt to defraud Plaintiff has funded the 8-year harassment campaign conducted by the roofers against Plaintiff."  (*Id.* at 100–01.)

Hudnall does not clearly identify a "material representation" made to him by Evanston.  Even leaving that issue open for interpretation, the Court finds that Hudnall does not present any evidence to show Evanston's intent to deceive Hudnall.  Thus, the Court finds that Hudnall fails to state a plausible claim of fraud against Evanston and recommends granting Evanston's Motion with respect to the fraud claim.

### 2.  Conspiracy

Under Texas law, "[t]he elements of a civil conspiracy are: (1) two or more persons; (2) an end to be accomplished; (3) meeting of the minds on the end or course of action; (4) one or more overt, unlawful acts; and (5) proximately resulting in injury."  *Lane v. Halliburton*, 529 F.3d 548, 564 (5th Cir. 2008) (quoting *Eagle Props., Ltd. v. KPMG Peat Marwick*, 912 S.W.2d 825, 828 (Tex. App. 1995)).

Hudnall presents the same arguments regarding conspiracy as for his fraud claim.  *See* (ECF No. 1-3:100-01.)  While the exact "end to be accomplished" alleged by Hudnall is unclear,

at a minimum, the Court finds that Hudnall has not alleged any facts to show a "meeting of the minds" between Evanston and the Roofers to either "defraud" Hudnall or subject him to an "8-year harassment campaign." (*Id.*)  Hudnall's allegations are conclusory.  Thus, Hudnall has failed to state a plausible claim against Evanston for conspiracy, and the Court recommends granting Evanston's Motion as to the conspiracy claim.

### 3. Breach of Contract and Third-Party Beneficiary Rights

"In Texas, '[t]he essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.'" *Smith Int'l, Inc. v. Egle Grp., LLC*, 490 F.3d 380, 387 (5th Cir. 2007) (alteration in original) (quoting *Valero Mktg. & Supply Co. v. Kalama Int'l, L.L.C.*, 51 S.W.3d 345, 351 (Tex. App. 2001)).

Hudnall does not allege that he entered into a contract with Evanston directly.  (ECF No. 1-3:100.)  Rather, his claims stem from the liability insurance contract between Evanston and the Roofers, to which Hudnall claims he became a third-party beneficiary.  (*Id.*)  Hudnall claims that "[e]ven though a court of competent jurisdiction found that the surety bond should be forfeited due to the work not meeting code, Evanston has refused to honor its obligation owed to Plaintiff in a clear breach of contract."  (*Id.*)

Under Texas law, "a third-party beneficiary as plaintiff 'cannot enforce the policy directly against the insurer until it has been established, by judgment or agreement, that the insured has a legal obligation to pay damages to the injured party.'" *Turner v. Cincinnati Ins. Co.*, 9 F.4th 300, 309 (5th Cir. 2021) (quoting *State Farm Cnty. Mut. Ins. Co. v. Ollis*, 768 S.W.2d 722, 723 (Tex. 1989)).  Evanston contends that no such judgment or agreement exists.  (ECF No. 8:5–6.)  The

Court is unable to locate a judgment or agreement establishing Evanston's liability to Hudnall. Thus, Hudnall has not presented valid claims against Evanston under contract law. Therefore, the Court recommends granting Evanston's Motion as to Hudnall's breach of contract and third-party beneficiary rights claims.

For the foregoing reasons, the Court finds that Hudnall fails to allege any plausible claims against Evanston. Therefore, the Court recommends granting Evanston's Motion to Dismiss under Rule 12(b)(6).

### E.  Plaintiff's Motion for Judgment on the Pleadings

Next, the Court evaluates Hudnall's Motion for Judgment on the Pleadings ("MJP"). (ECF No. 16.) Based on the foregoing analysis of Defendants' Motions, the Court recommends denying Hudnall's MJP with respect to his claims against Texas, Judge Enriquez, AAA, Bluff, and Evanston. *See Greenberg v. Gen. Mills Fun Grp., Inc.*, 478 F.2d 254, 256 (5th Cir. 1973) ("A motion for judgment on the pleadings . . . should be granted only if there is no issue of material fact and if the pleadings show that the moving party is entitled to prevail as a matter of law.") The Court will assess Hudnall's MJP only as it pertains to Defendants El Paso and the Roofers.

Hudnall's MJP rehashes many of the arguments contained in his Complaint. *See* (ECF No. 16:1–9.) Additionally, Hudnall argues that he is entitled to judgment on the pleadings because "[n]one of the defendants have submitted anything to show that any of the documents supporting Plaintiff's allegations are incorrect, invalid[,] or wrongfully interpreted." (*Id.* at 2.) He further claims that El Paso and the Roofers have "fail[ed] to state facts sufficient to constitute a defense to the complaint." (*Id.* at 7.) However, the Court finds that these contentions are incorrect. *See* (ECF Nos. 1-3:118–22, 155–57; 22:3; 23:3–4.) With respect to Hudnall's claims against El Paso and the Roofers, the Court finds that Hudnall has not shown there to be no dispute of material fact

or that he is otherwise entitled to judgment as a matter of law.  Thus, the Court finds that Hudnall is not entitled to judgment on the pleadings.  *Great Plains*, 313 F.3d at 312.  Therefore, the Court recommends denying Hudnall's Motion for Judgment on Pleadings.

### F.  Plaintiff's Motion for Declaratory Judgment

Finally, the Court considers Hudnall's Motion for Declaratory Judgment (ECF No. 18) ("MDJ") and Second Motion for Declaratory Judgment (ECF No. 26) ("Second MDJ").  Hudnall moves for a declaratory judgment to declare "that the roof in question failed [to] meet local code." (ECF No. 18:3.)  El Paso and the Roofers argue that a *motion* for declaratory judgment is procedurally improper because Hudnall should have instead brought "an ordinary civil *action*" for declaratory judgment.  (ECF Nos. 30:2; 31:2–3) (citing Fed. R. Civ. P. 57 and *Int'l Bhd. of Teamsters v. E. Conf. of Teamsters*, 160 F.R.D. 452, 456 (S.D.N.Y. 1995)).

The Court agrees that Hudnall's MDJ is procedurally deficient and further finds that such deficiency warrants denial of the motion.  *See, e.g.*, *Matrix Partners VIII, LLP v. Nat. Res. Recovery, Inc.*, No. 1:08-CV-547-TH, 2009 WL 10677790, at *1–2 (E.D. Tex. May 22, 2009); *Ecoquij-Tzep v. Le Arlington, Inc.*, No. 3:16-cv-625-BN, 2018 WL 1737658, at *5 (N.D. Tex. Apr. 10, 2018).  Therefore, the Court recommends denying Hudnall's MDJ.  The Court also recommends denying Hudnall's Second MDJ because the Court Operations Department marked the document deficient for reasons of illegibility, and to date, Plaintiff has not filed a corrected version.  *See* (ECF No. 27.)

### IV.    CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that:

- Defendant State of Texas's Motion to Dismiss (ECF No. 6) be **GRANTED**;

- Defendant Judge Sergio Enriquez's Motion for Judgment on the Pleadings (ECF No. 7) be **GRANTED**;

- Defendants American Arbitration Association and Guy Bluff's Motion to Dismiss (ECF No. 10) be **GRANTED**;

- Defendant Evanston Insurance Company's Motion to Dismiss (ECF No. 8) be **GRANTED**;

- Plaintiff's Motion for Judgment on the Pleadings (ECF No. 16) be **DENIED**;

- Plaintiff's Motion for Declaratory Judgment (ECF No. 18) be **DENIED**; and

- Plaintiff's Second Motion for Declaratory Judgment (ECF No. 26) be **DENIED**.

**SIGNED** this 9th day of August, 2022.

**ROBERT F. CASTAÑEDA**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THE FOREGOING REPORT, WITHIN FOURTEEN DAYS OF SERVICE OF SAME, MAY BAR DE NOVO DETERMINATION BY THE DISTRICT JUDGE OF AN ISSUE COVERED HEREIN AND SHALL BAR APPELLATE REVIEW, EXCEPT UPON GROUNDS OF PLAIN ERROR, OF ANY UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS AS MAY BE ACCEPTED OR ADOPTED BY THE DISTRICT COURT.**