**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | | |
|---|---|---|
| **ROBERT K. HUDNALL,** | § | |
| *Plaintiff*, | § | |
| | § | |
| **v.** | § | |
| | § | |
| **STATE OF TEXAS, CITY OF EL PASO,** | § | **CAUSE NO. EP-22-CV-36-KC-RFC** |
| **JUDGE SERGIO ENRIQUEZ,** | § | |
| **ALEJANDRO C. RAMIREZ, TYRONE** | § | |
| **SMITH d/b/a SMITH AND RAMIREZ** | § | |
| **RESTORATION LLC, GUY BLUFF,** | § | |
| **AMERICAN ARBITRATION** | § | |
| **ASSOCIATION, and EVANSTON** | § | |
| **INSURANCE COMPANY,** | § | |
| *Defendants*. | § | |

## REPORT AND RECOMMENDATIONS

The Court considers the motions to dismiss filed by Defendants Alejandro C. Ramirez, Tyrone Smith, and Smith and Ramirez Restoration LLC ("S&R") (collectively, the "Roofers") (ECF No. 62) ("Roofers' Motion") and Defendant City of El Paso ("City") (ECF No. 64) ("City's Motion"). Plaintiff has not responded to either Motion.

On March 1, 2022, United States District Judge Kathleen Cardone referred the above-captioned matter to United States Magistrate Judge Robert Castañeda "pursuant to 28 U.S.C. § 636(b) to hear all pre-trial matters." (ECF No. 19.) For the following reasons, the Court recommends that: (1) the Roofers' Motion (ECF No. 62) be **GRANTED**; and (2) the City's Motion (ECF No. 64) be **GRANTED**.

## I.      BACKGROUND[1]

On December 2, 2021, Plaintiff ("Plaintiff" or "Hudnall") sued all named Defendants in County Court at Law Number 6 of El Paso County, Texas under Cause Number 2021DCV4135. (ECF No. 1-3:2.)  Hudnall amended his state-court petition on December 20, 2021 ("Amended Complaint"), explaining that "[t]his action stems from a contract for the replacement of a roof on our home entered into between Plaintiff and Defendant, [S&R] in June of 2014" ("Contract") and the subsequent roof replacement.  (*Id.* at 68.)  Hudnall alleges that "[a]fter six months of delays and several instances of the home flooding due to holes left in the roof . . . , [S&R] walked off the job and refused to honor the warranty in the contract unless Plaintiff allowed them to overbill for work not done." (*Id.* at 71.)  Based on these events, Hudnall claims that Defendant S&R, and the other named Defendants, violated his rights under the Constitution, the Americans with Disabilities Act and the Americans with Disabilities Act Amendments Act ("ADA/ADAAA"), and the Texas Human Resources Code ("Texas HR Code"), and violated Texas state law in other respects by committing such acts as extortion, bribery, invasion of privacy, conspiracy, abuse of process, elder abuse, fraud, forgery, and breach of contract.  (*Id.* at 76–101.)

Hudnall's Amended Complaint implicates several other lawsuits.  (*Id.* at 68.)  After the roofing incident, under Cause Number 2015DCV1113, Defendant S&R sued Hudnall in state court, "claiming that the roof passed inspection and they were not paid." (*Id.* at 73.)  Defendant Judge Enriquez presided over that case and sent it to arbitration.  (*Id.* at 73–74.)  Defendant Guy Bluff ("Arbitrator") conducted the arbitration and issued his findings on November 12, 2021, in Arbitration Case No. 01-20-0014-8456 ("Arbitration").  (*Id.* at 155–68.)  On April 26, 2022, in

---

[1] While recounting the factual and procedural background, the Court addresses only the facts relevant to the instant Report and Recommendations.

2

Cause No. 2021DCV4380, El Paso County Court at Law No. 6 rendered judgment on the Arbitrator's findings ("Amended Final Judgment") (together with the Arbitration, the "Arbitration Proceedings").  (ECF No. 62-2:1–2.)  Meanwhile, under Cause Number 2015DCV3677, El Paso County Court at Law No. 3 held that a bond issued on behalf of Defendant S&R for completion of Hudnall's roof replacement "would be forfeited as the roof did not meet code."  (ECF No. 1-3:73); *see* (*id.* at 48–60.)  Hudnall later filed a RICO action in El Paso County Court at Law No. 6 under Cause Number 2021DCV1187, which was removed to the United States District Court for the Western District of Texas.  (*Id.* at 75); *see* Cause No. 3:21-cv-00106-FM (ECF No. 1).

On January 26, 2022, Defendant Evanston Insurance Company ("Evanston") removed the instant case to this Court pursuant to 28 U.S.C. §§ 1331 and 1441.  (ECF No. 1.)  The Court denied Hudnall's request for remand.  (ECF Nos. 36; 41.)  To date, Hudnall's claims against Defendants State of Texas, Judge Enriquez, Guy Bluff, American Arbitration Association, and Evanston have been dismissed, and his requests for judgment on the pleadings and declaratory judgment have been denied.  (ECF Nos. 46; 50.)  The Court now considers Hudnall's remaining claims against the Roofers and the City.

## II.    LEGAL STANDARDS

### A.  Rule 12(b)(1) Motion to Dismiss

A case may be dismissed under Federal Rule of Civil Procedure 12(b)(1) for lack of subject matter jurisdiction.  The court must consider a Rule 12(b)(1) motion "before other challenges since the court must find jurisdiction before determining the validity of a claim."  *Moran v. Kingdom of Saudi Arabia*, 27 F.3d 169, 172 (5th Cir. 1994) (internal quotation marks and citations omitted).

"The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001).  The court may consider disputed matters of fact for 12(b)(1) purposes.  *Id.*

### B.  Rule 12(b)(6) Motion to Dismiss

Rule 12(b)(6) provides for dismissal of a complaint when a defendant shows that the plaintiff has "fail[ed] to state a claim upon which relief can be granted."  Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The factual matter in the complaint must allege actual facts, not legal conclusions masquerading as facts.  *Id.*

To resolve a Rule 12(b)(6) motion, courts must determine "whether in the light most favorable to the plaintiff and with every doubt resolved on his behalf, the complaint states any valid claim for relief."  *Gregson v. Zurich Am. Ins. Co.*, 322 F.3d 883, 885 (5th Cir. 2003) (citation omitted).  A complaint states a "plausible claim for relief" when the factual allegations contained therein allow the court to infer actual misconduct on the part of the defendant, not a "mere possibility of misconduct."  *Iqbal*, 556 U.S. at 679.  The complaint "'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007) (quoting *Twombly*, 550 U.S. at 555).  In ruling on a 12(b)(6) motion, courts may consider "the facts stated in the complaint and the documents either attached to or incorporated in the complaint," as well as "matters of which [courts] may take judicial notice."  *Lovelace v. Software Spectrum Inc.*, 78 F.3d 1015, 1017–18 (5th Cir. 1996).

*Pro se* pleadings are reviewed under a less stringent standard than those drafted by attorneys, and such pleadings are entitled to a liberal construction that includes all reasonable inferences that can be drawn from them. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (per curiam). However, even a *pro se* complaint may not merely set forth conclusory allegations. The *pro se* litigant must still set forth facts giving rise to a claim on which relief may be granted. *Johnson v. Atkins*, 999 F.2d 99, 100 (5th Cir. 1993) (per curiam).

### C. Rule 12(c) Motion for Judgment on the Pleadings

A party may move for judgment on the pleadings "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). "The standard for Rule 12(c) motions for judgment on the pleadings is identical to the standard for Rule 12(b)(6) motions to dismiss for failure to state a claim." *Waller v. Hanlon*, 922 F.3d 590, 599 (5th Cir. 2019). For Rule 12(c) motions, courts may consider the contents of and attachments to the complaint, answer, and the reply to the answer, if there is a reply. *Bosarge v. Miss. Bureau of Narcotics*, 796 F.3d 435, 440 (5th Cir. 2015).

## III.   DISCUSSION

### A. The Roofers' Motion

Hudnall claims that the Roofers committed "fraud, elder abuse, exploitation, abuse of process, invasion of privacy, breach of contract, forgery, conspiracy, extortion, and bribery." (ECF No. 1-3:89.) Specifically, he alleges that the Roofers violated the Texas HR Code by "failing to properly replace [his] roof," which caused leakage and "mold exposure caus[ing] pulmonary disease with lung scarring on Plaintiff." (*Id.* at 90.) He asserts that the Roofers committed fraud by misrepresenting the suitability of the roof installation and "propos[ing] that phony invoices be submitted in order to gain funds from grants to which Plaintiff was entitled." (*Id.* at 91, 94.)

Likewise, Hudnall asserts that the Roofers "unilaterally modif[ied] the contract . . . in an attempt to illegally obtain more money" and "intentionally breach[ed] the original contract . . . by refusing to honor the warranty in the contract." (*Id.* at 90–91.) Additionally, he claims the Roofers "attempted to use the resources of Plaintiff for monetary or personal benefit" through "baseless legal actions" regarding the roofing incident and used a "forged contract submitted to arbitration." (*Id.* at 90); *see* (*id.* at 92–93.)

Further, Hudnall claims that the Roofers bribed City inspectors in violation of Texas Penal Code Title 8 Section 36.02 "to ensure preferential treatment" as to the inspection of Hudnall's roof. (*Id.* at 93); *see* (*id.* at 81.) Similarly, Hudnall claims that the Roofers conspired with "Chris Wells, a former employee of the Department of Planning and Inspection for the City of El Paso to pass the roof without an inspection" and "conspire[d] with their various attorneys to obtain funds from Plaintiff to which they were not entitled by law." (*Id.* at 91.) Finally, Hudnall claims that the Roofers "violate[d] Plaintiff's right to due process of law by continuing to claim that the roof in question passed inspection when it has been found deficient." (*Id.* at 90); *see* (*id.* at 101.)

The Roofers ask the Court to dismiss all of Hudnall's allegations for failure to state any claims upon which relief may be granted. (ECF No. 62:8.) As a preliminary matter, the Court notes that the Roofers filed their Motion after having already filed their Answer. *See* (ECF No. 1-3:155–68.) Nonetheless, the Court will construe the Roofers' Motion as a 12(c) motion for judgment on the pleadings. *Jones v. Greninger*, 188 F.3d 322, 324 (5th Cir. 1999) (deeming it appropriate to construe a 12(b)(6) motion as a 12(c) motion); *Briggs v. Toyota Mfg. of Tex.*, No. SA-07-CA-1031-FB, 2008 WL 11417205, at *5 (W.D. Tex. Sept. 17, 2008) (construing a 12(b)(6) motion as a 12(c) motion when defendant answered in state court prior to removal).

### 1. Claim and Issue Preclusion

The Roofers argue that a number of Hudnall's claims—including fraud, abuse of process, and breach of contract—are barred by res judicata, or "claim preclusion," and collateral estoppel, or "issue preclusion," based on the Arbitration Proceedings.  (ECF No. 62:12–15, 17–19) (citing ECF No. 62-2)).[2]

Courts apply state law when considering the preclusive effect of a state court judgment— here, the Court considers the Amended Final Judgment in Cause No. 2021DCV4380, El Paso County Court at Law No. 6, affirming the Arbitration findings (ECF No. 62-2:1–2).  *Cox v. Nueces County*, 839 F.3d 418, 420–21 & n.3 (5th Cir. 2016).  Under Texas law, claim preclusion "prevents the relitigation of a claim or cause of action that has been finally adjudicated, as well as related matters that, with the use of diligence, should have been litigated in the prior suit."  *Barr v. Resol. Tr. Corp. ex rel. Sunbelt Fed. Sav.*, 837 S.W.2d 627, 628–29 (Tex. 1992).  On the other hand, issue preclusion "prevents relitigation of particular issues already resolved in a prior suit."  *Id.*  A showing of claim preclusion requires: "(1) a prior final judgment on the merits by a court of competent jurisdiction; (2) identity of parties or those in privity with them; and (3) a second action based on the same claims as were raised or could have been raised in the first action."  *Amstadt v. U.S. Brass Corp.*, 919 S.W.2d 644, 652 (Tex. 1996).  Alternatively, issue preclusion

> applies when (1) the issue of fact or law sought to be litigated in the second action was fully and fairly litigated in the first action; (2) that issue of fact or law was essential to the judgment in the first action; and (3) the party against whom the doctrine is asserted was a party or was in privity with a party in the first action.

---

[2] The Court considers the Arbitration ruling, attached to the Roofers' Motion, because the Roofers also attached it to their Answer.  *See* (ECF No. 1-3:155–68); *Bosarge*, 796 F.3d at 440.  Additionally, Hudnall refers to the Arbitration Proceedings in his Amended Complaint and makes them central to his claims.  *See, e.g.*, (ECF No. 1-3:73–76, 90, 92–93, 102); *Bosarge*, 796 F.3d at 440–41.  Finally, the Court considers public documents from the Arbitration Proceedings because such documents "are of a kind that must always be considered in disposition of a res judicata defense in a Rule 12(c) motion."  *Van Duzer v. U.S. Bank Nat'l Ass'n*, 582 F. App'x 279, 283 (5th Cir. 2014).

*City of San Antonio v. Cortes*, 468 S.W.3d 580, 586 (Tex. App. 2015). "An arbitration award is conclusive on the parties as to all matters of fact and law submitted to the arbitrators because the award has the effect of a judgment of a court of last resort." *Zea v. Valley Feed & Supply, Inc.*, 354 S.W.3d 873, 877 (Tex. App. 2011) (citing *CVN Grp., Inc. v. Delgado*, 95 S.W.3d 234, 238 (Tex. 2002)); *see also Premium Plastics Supply, Inc. v. Howell*, 537 S.W.3d 201, 205 (Tex. App. 2017) ("An arbitration award has preclusive effect for purposes of res judicata.").

Before addressing the merits of these arguments, the Court confirms that it has jurisdiction to do so. In *Gilbert v. Donahoe*, the Fifth Circuit stated that "[a] district court lacks subject matter jurisdiction over a case and should dismiss it pursuant to [Rule] 12(b)(1) when the parties' dispute is subject to binding arbitration." 751 F.3d 303, 306 (5th Cir. 2014). However, the court later clarified that in *Gilbert*, the term "subject matter jurisdiction" was used "imprecisely." *Ruiz v. Donahoe*, 784 F.3d 247, 249 (5th Cir. 2015). Instead, "agreements to arbitrate implicate forum selection and claims-processing rules," rather than subject matter jurisdiction. *Id.* at 250; *see, e.g.*, *In re Acis Cap. Mgmt., L.P.*, 604 B.R. 484, 514–15 (N.D. Tex. 2019), *aff'd sub nom. Matter of Acis Cap. Mgmt., L.P.*, 850 F. App'x 302 (5th Cir. 2021). Further, as explained in the Court's Report and Recommendation dated March 21, 2022, the Court has supplemental jurisdiction over Hudnall's state law claims. *See* (ECF No. 36:7–8, 11–13); *see also* (ECF No. 41) (adopting the Report and Recommendation).

Based on the available record of the Arbitration Proceedings, the exact nature of Hudnall's counterclaims raised in those proceedings is unclear. But from the Arbitrator's descriptions of Hudnall's counterclaims and the Arbitrator's ultimate conclusions, the Court finds that Hudnall's breach of contract, fraud, and abuse of process claims are all barred by issue preclusion. *See* (ECF No. 62-2:7–11.) First, the Arbitration Proceedings constitute a full and fair litigation on the merits.

8

*See* (*id.*); *Zea*, 354 S.W.3d at 877; *Premium Plastics*, 537 S.W.3d at 205. Second, the Arbitration Proceedings and the instant case involve parties who are the same or are privy to one another. *See* (ECF No. 62-2) (listing parties to the Arbitration as Smith and Ramirez Restoration, LLC, Robert K. Hudnall, and Sharon E. Hudnall). Finally, Hudnall's breach of contract, fraud, and abuse of process claims turn on issues that were essential to the Arbitration Proceedings. For Hudnall's breach of contract claim—i.e., that the Roofers failed to suitably replace his roof (ECF No. 1-3:90–94)—the Arbitrator "reject[ed] Hudnall's argument that the roof, when installed, failed due to any responsibility of S&R," instead finding that "S&R completed all contracted for work in a timely and workmanship manner." (ECF No. 62-2:8); *see also* (*id.* at 9) (stating that Hudnall failed to provide evidence showing that "the roof work performed by S&R was not installed in accordance with the applicable building code or manufacturer's installation instructions at the time of the original work," and "[t]o the extent that there were any actual failures in the work, Hudnall failed to comply with the contract requirements of providing notice and an opportunity to cure"); *see also* (*id.* at 9) (stating that S&R "presented competent admissible evidence that all work was properly performed, passed inspection by the City of El Paso and was approved by the manufacturer for purposes of ongoing warranty obligations").

As for Hudnall's fraud claim—i.e., that the Roofers exploited Hudnall under the Contract (ECF No. 1-3:90–94)—the Arbitrator found that S&R "timely requested payment from Hudnall of the contract amount which was properly due." (ECF No. 62-2:8.) Finally, as to the abuse of process claim—i.e., that the Roofers improperly sought arbitration of the dispute (ECF No. 1-3:88, 92–93)—the Arbitrator determined that he had jurisdiction over the matter. (ECF No. 62-2:1, 9.)

Accordingly, the Court finds that Hudnall's breach of contract, fraud, and abuse of process claims against the Roofers are barred by issue preclusion. For that reason, the Court recommends

granting the Roofers' Motion as to those claims and dismissing those claims with prejudice.  Fed. R. Civ. P. 41(b); *see, e.g.*, *Milliken v. Grigson*, 986 F. Supp. 426, 433 (S.D. Tex. 1997), *aff'd*, 158 F.3d 583 (5th Cir. 1998) (dismissing claims with prejudice on collateral estoppel grounds).

## 2.   Lack of Cognizable Claims

The Roofers further argue that Hudnall has no cognizable claims for elder abuse, forgery, extortion, bribery, constitutional violations, or conspiracy.  (ECF No. 62:16–17, 20–25.)

Hudnall seeks relief for the Roofers' alleged elder abuse under Texas HR Code Chapter 48.  (ECF No. 1-3:89–90.)  However, as the Roofers correctly argue, this claim fails because Hudnall has not plausibly shown that the Roofers had a reporting duty under Texas HR Code Chapter 48.  *See* (ECF No. 62:16–17); Tex. Hum. Res. Code §§ 48.002(6), 48.051(c) (defining "protective services agency," and assigning the duty to report abuse "to a person whose knowledge concerning possible abuse, neglect, or exploitation is obtained during the scope of the person's employment or whose professional communications are generally confidential, including an attorney, clergy member, medical practitioner, social worker, employee or member of a board that licenses or certifies a professional, and mental health professional"); *see, e.g.*, *Pannell v. Wells Fargo Home Mortg.*, No. 4:18-CV-0141, 2018 WL 3321442, at *4–5 (S.D. Tex. June 14, 2018) (recommending dismissal of claim under Texas HR Code Chapter 48 with prejudice where plaintiff failed to show that defendant had a reporting duty under the statute), *report and recommendation adopted*, (ECF No. 81) (S.D. Tex. July 5, 2018).

Hudnall also alleges that the Roofers committed forgery by "unilaterally modify[ing] the contract" and using a forged contract at the Arbitration.  (ECF No. 1-3:90); *see* (*id.* at 75–76.)  He also alleges that the Roofers committed extortion and bribed city inspectors.  (*Id.* at 89, 93.)  However, as the Roofers correctly point out, Hudnall has no cognizable civil claim against the

Roofers for forgery, bribery, or extortion under Texas law.  *See* (ECF No. 62:20) (citing Tex. Penal Code § 32.21 for the crime of forgery and citing, e.g., *Mathis v. DCR Mortg. III Sub, I, LLC*, 952 F. Supp. 2d 828, 836 (W.D. Tex. 2013), to show that forgery is not a civil action); (*id.* at 24–25) (citing Tex. Penal Code § 36.02 for the crime of bribery and citing, e.g., *Smith v. Hous. Indep. Sch. Dist.*, 229 F. Supp. 3d 571, 580 (S.D. Tex. 2017), *abrogated on other grounds by Tercero v. Tex. Southmost Coll. Dist.*, 989 F.3d 291 (5th Cir. 2021), which states that "[t]he Texas Penal Code does not create a private cause of action for bribery" or for extortion "outside of claims against bail bondsmen"); *see also* Tex. Penal Code § 31.02 (treating extortion as a crime).  Dismissal of such claims with prejudice is warranted because, "[s]imply, a private citizen cannot enforce criminal statutes in a civil action."  *Florance v. Buchmeyer*, 500 F. Supp. 2d 618, 626 (N.D. Tex. 2007); *see id.* at 635.

Hudnall also seems to argue that the Roofers violated his constitutional rights to due process and equal protection.  *See* (ECF No. 1-3:89–93.)  However, the Roofers correctly argue that Hudnall cannot bring such claims because the Roofers are private actors whose relevant actions—roof repairs—were not the equivalent of government actions.  *See Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982) ("Because the [Fourteenth] Amendment is directed at the States, it can be violated only by conduct that may be fairly characterized as 'state action.'"); *Gibson v. Univ. of Phoenix Inc.*, No. H-07-947, 2007 WL 9754328, at *2–3 (S.D. Tex. June 29, 2007) (collecting cases in which private actions were not public functions for purposes of liability under the Fourteenth Amendment or the Texas Constitution).

Finally, Hudnall alleges that the Roofers conspired with City inspector Chris Wells "to pass the roof without an inspection" and with their attorneys "to obtain funds from Plaintiff."  (ECF No. 1-3:91.)  He also alleges that the Roofers, as individual members of the roofing company,

conspired with one another to "unjustly enrich themselves at Plaintiff's expense." (*Id.* at 92.) "Under Texas law, civil conspiracy is a derivative tort." *Meadows v. Hartford Life Ins. Co.*, 492 F.3d 634, 640 (5th Cir. 2007).  In other words, "a civil conspiracy claim is connected to the underlying tort and survives or fails alongside it." *Agar Corp. v. Electro Cirs. Int'l, LLC*, 580 S.W.3d 136, 141 (Tex. 2019).  Here, the Court agrees with the Roofers that "Plaintiff's conspiracy claims fail because no underlying torts support them." (ECF No. 62:22.)  Moreover, any potential tort claims would be time-barred, which makes the conspiracy claim time-barred as well.  *See* (*id.* at 23–24) (collecting cases regarding statutes of limitations for torts).

For the foregoing reasons, the Court recommends granting the Roofers' Motion as to Hudnall's claims of elder abuse, forgery, extortion, bribery, constitutional violations, and conspiracy, and further recommends dismissing those claims with prejudice.  *See Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505–06 (2001) (explaining dismissal with and without prejudice); *Long v. Simmons*, 77 F.3d 878, 880 (5th Cir. 1996) (noting that a dismissal based on a statute of limitations "operates as a dismissal with prejudice").

### 3.   Failure to Raise Factual Allegations Against the Roofers

For Hudnall's final remaining claim against the Roofers, the Roofers posit that Hudnall merely lists "invasion of privacy" as a claim without providing any corresponding facts attributable to the Roofers. (ECF No. 62:19.)  The Court agrees.  *See* (ECF No. 1-3:89–94.)  Accordingly, the Court recommends granting the Roofers' Motion as to that claim and dismissing the claim without prejudice.  *See Alderson v. Concordia Par. Corr. Facility*, 848 F.3d 415, 423–24 (5th Cir. 2017) (finding dismissal without prejudice appropriate when "it is not clear that [plaintiff] amended his complaint with a sufficient understanding of the inadequacies in his original pleading or that he has pleaded his best case").

**B.  City's Motion**

As stated, Hudnall claims that the City and the Roofers engaged in bribery.  (ECF No. 1-3:79, 81.)  Additionally, Hudnall claims that the City violated his rights under the ADA/ADAAA, the Fourteenth Amendment, and local ordinances, by failing to investigate or otherwise remedy his complaints about the roofing incident.  (*Id.* at 65, 67, 78–81.)  Specifically, Hudnall argues that the City should have taken action after it found that the roof failed code.  (*Id.* at 79, 81) (describing his efforts to contact City Council members, Texas State Representative Joe Moody, the Department of Planning and Inspection, the Office of the City Manager, the Office of the Mayor, and the Office of the District Attorney, and "was rebuffed each time").  Hudnall claims that the El Paso Police Department misplaced his report regarding the Roofers and otherwise failed to properly investigate it.  (*Id.* at 80.)  He also alleges that, as an "invasion of [his] right to privacy under [s]tate law," El Paso police officers told him that "since he did not pay property taxes, the City was not going to spend money helping him."  (*Id.*)

Further, Hudnall claims that the El Paso County Attorney's Office "demanded a police report before they would accept a complaint, but when said police report was furnished, they almost immediately claimed that the office lost the submitted documents and claimed they knew nothing about them."  (*Id.* at 79); *see* (*id.* at 80.)  He also claims that the "El Paso District Attorney's Office refused to even accept a complaint on the matter of fraud committed by the roofing company."  (*Id.* at 80.)

The City argues that each of Hudnall's claims should be dismissed for failure to state a claim upon which relief may be granted.  (ECF No. 64:4–5.)  The City's Motion is untimely because it was filed after the City had already filed its Answer to Hudnall's Complaint.  *See* (ECF

No. 1-3:118–24.)   Nonetheless, the Court construes the City's Motion as a 12(c) motion for judgment on the pleadings and addresses each of its arguments in turn.  *Jones*, 188 F.3d at 324.

### 1.  Claims Against Entities Other than the City

First, the Court agrees with the City's contention that it is not an appropriately named party for Hudnall's claims against the El Paso County Attorney's Office, the El Paso District Attorney's Office, or Texas State Representative Joe Moody.  (ECF No. 64:10–11.)  Accordingly, the Court recommends granting the City's Motion as to those claims and dismissing them with prejudice as to the City, but without prejudice as to other entities.  *Petrus v. Bowen*, 833 F.2d 581, 582–83 (5th Cir. 1987).

### 2.  ADA/ADAAA Claim

Hudnall seems to claim that the City violated Title II of the ADA/ADAAA by failing to give him an equal opportunity to benefit from the City's services.  (ECF No. 1-3:79–80.)  To bring a valid ADA/ADAAA Title II claim, Hudnall must allege that: (1) "he has a qualifying disability;" (2) "he is being denied the benefits of services, programs, or activities for which the public entity is responsible, or is otherwise discriminated against by the public entity;" and (3) "such discrimination is by reason of his disability."  *Hale v. King*, 642 F.3d 492, 499 (5th Cir. 2011) (per curiam); *see* 42 U.S.C. §§ 12131–12134.

In its Motion, the City first explains the roofing inspection requirements under El Paso Municipal Code §§ 18.02.107.1 and 18.02.107.4.  (ECF No. 64:5–6.)  Then, the City describes the "three inspections" of Hudnall's roof conducted by the City's Planning and Inspections Department.  (*Id.* at 6) (citing (ECF No. 64-1:59–60)).[3]  The City argues that by conducting those

---

[3] The Court considers the attachments provided at (ECF No. 64-1:49–60)—the Arbitration ruling and the January 27, 2021, letter sent from the City's Planning and Inspections Department to Hudnall—for the same reasons discussed in footnote 2 *supra*.  *See also* (ECF No. 1-3:47, 72) (showing that Hudnall attached the January 27, 2021, letter to his original Complaint and later referred to it in his Amended Complaint).

inspections "and alert[ing] Plaintiff of its finding[s]," it did not deny Hudnall benefits or otherwise discriminate against him because "[i]t was then Plaintiff's responsibility to alert [the Roofers] of the City's conclusion and progress from there.  The Plaintiff, however, failed to inform [the Roofers] and now wishes for the City to go beyond its authority to remedy the situation."  (*Id.*) (citing (ECF No. 64-1:49–58)).

Hudnall has not conceivably shown that the City denied him the benefits of inspection services for which the City was responsible.  *See* (ECF No. 1-3:78–81.)  Nor has he otherwise demonstrated that the City discriminated against him on the basis of his disability.  *See* (*id.*)  The Court recommends granting the City's Motion as to Hudnall's ADA/ADAAA Title II claim and dismissing that claim without prejudice.  *Alderson*, 848 F.3d at 423–24.

### 3.  Constitutional Claims

The Court presumes that Hudnall brings his due process and equal protection claims against the City under 28 U.S.C. § 1983.  *See* (ECF No. 1-3:65) (stating that the City is "subject to suit for violation of the Fourteenth Amendment"); U.S. Const. amend. XIV ("[N]or shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."); *Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 690–701 (1978) (holding that municipalities can be held liable for constitutional violations under Section 1983.  A municipality can only be held liable for actions that it directly sanctions, not for "actions of its non-policy-making employees under a theory of *respondeat superior*." *Williams v. Kaufman County*, 352 F.3d 994, 1013 (5th Cir. 2003).  Thus, to sustain a Section 1983 claim against a municipality, a plaintiff must show that (1) a municipal policymaker (2) had actual or constructive knowledge of (3) a municipal policy or custom, which (4) was the

"moving force" or direct cause of (5) a constitutional violation.  *Monell*, 436 U.S. at 694; *World Wide St. Preachers Fellowship v. Town of Columbia*, 591 F.3d 747, 753 (5th Cir. 2009).

### i.  Equal Protection

Hudnall argues that the City violated his rights to equal protection by "refus[ing] to enforce ordinances" due to Hudnall's status as "elderly" and "disabled."  (ECF No. 1-3:78–79); *see supra* Section III.B.  The City argues that this claim fails because, as with his ADA/ADAAA claim, Hudnall has not shown that the City failed to enforce ordinances.  (ECF No. 64:5–6.)

The Equal Protection Clause directs "that all persons similarly situated should be treated alike."  *City of Cleburne  v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  "A violation of the equal protection clause occurs only when, *inter alia*, the governmental action in question classifies or distinguishes between two or more relevant persons or groups."  *Vera v. Tue*, 73 F.3d 604, 609–10 (5th Cir. 1996).  Hudnall does not plausibly show whether and how the City's actions differentiated between Hudnall and similarly situated individuals on the basis of disability or age.  (ECF No. 1-3:78–80.)  Accordingly, the Court recommends granting the City's Motion as to Hudnall's equal protection claim and dismissing that claim without prejudice.  *Alderson*, 848 F.3d at 423–24.

### ii.  Due Process

Hudnall presents the same arguments for his due process claim as for his equal protection claim—that the City "refused to enforce ordinances" for Hudnall's benefit.  (ECF No. 1-3:78); *see supra* Section III.B.  The City argues that, without a constitutionally-protected interest, Hudnall fails to allege a substantive or procedural due process claim.  (ECF No. 64:7.)

Both procedural and substantive due process claims require, *inter alia*, a showing of "a liberty or property interest which has been interfered with by the State."  *Ky. Dep't of Corr. v.*

*Thompson*, 490 U.S. 454, 460 (1989); *see Simi Inv. Co. v. Harris County*, 236 F.3d 240, 249 (5th Cir. 2000).  "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or interest created by state laws or policies." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) (citations omitted).  A property interest entails a "legitimate claim of entitlement," rather than simply "an abstract need or desire" or "unilateral expectation."  *Bd. of Regents of State Colls. v. Roth*, 408 U.S. 564, 577 (1972) (discussing property interests in the context of welfare benefits and employment).

As discussed in Section III.B.2. above, Hudnall does not conceivably show that the City's actions after the roof's failed inspection were improper.  As for his due process claims regarding other interactions with the El Paso Police Department, City Council, Department of Planning and Inspection, and the Offices of the City Manager and Mayor, at minimum, Hudnall does not provide sufficient facts to "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555; *see* (ECF No. 1-3:81); *see also Starrett v. City of Richardson*, 766 F. App'x 108, 110 (5th Cir. 2019) (affirming dismissal of claims that a police department failed to investigate harassment allegations because plaintiff "does not point to an official policy motivating the City's refusal [to investigate]" and also noting that "[t]here is no federal constitutional right to compel an investigation" (citing *Oliver v. Collins*, 914 F.2d 56, 60 (5th Cir. 1990))).  Accordingly, the Court recommends granting the City's Motion as to Hudnall's due process claim and dismissing that claim without prejudice.  *Alderson*, 848 F.3d at 423–24.

### 4. Bribery

In its Motion, the City discusses Hudnall's bribery claim within the context of Section 1983 and *Monell*.  (ECF No. 64:8–10.)  To the extent that Hudnall intended to bring his bribery claim under federal law, the Court agrees with the City's position that Hudnall fails to demonstrate a

widespread practice of bribery to constitute a municipal policy or custom.  *See* (*id.*) (citing *Gomez v. Galman*, 18 F.4th 769 (5th Cir. 2021)).

However, the Court reads Hudnall's bribery claim against the City and the Roofers as arising under Texas Penal Code Title 8 Section 36.02.  *See* (ECF No. 1-3:81, 93.)  As discussed in Section III.A.2. *supra*, this statute does not provide Hudnall with a civil cause of action.  *Smith*, 229 F. Supp. 3d at 580.  Accordingly, the Court recommends granting the City's Motion as to Hudnall's bribery claim and dismissing that claim with prejudice.  *Florance*, 500 F. Supp. 2d at 626, 635.

### 5.   Invasion of Privacy

Finally, Hudnall claims that the City invaded his privacy "under State law," by making the "knowledge" that he did not pay property taxes "freely available to [police] officers."  (ECF No. 1-3:80.)  Invasion of privacy is an intentional tort.  *Billings v. Atkinson*, 489 S.W.2d 858, 860–61 (Tex. 1973).  The Texas Tort Claims Act ("TTCA") contains a waiver of sovereign immunity, but that waiver does not apply to intentional torts.  Tex. Civ. Prac. & Rem. Code §§ 101.025(a), 101.057(2); *see Peña v. City of Rio Grande City*, 879 F.3d 613, 625 (5th Cir. 2018).

For state political subdivisions, including municipalities, there are additional immunity requirements.  Absent a waiver of immunity, political subdivisions are immune from suit and liability when acting in a governmental capacity.  *Rogers v. City of Houston*, 627 S.W.3d 777, 794 (Tex. App. 2021) (citing *Wasson Ints., Ltd. v. City of Jacksonville*, 489 S.W.3d 427, 429–30 (Tex. 2016)).  However, governmental immunity does not apply when political subdivisions "act in a proprietary, non-governmental capacity."  *Id.*  Governmental functions "are enjoined on a municipality by law and are given it by the state as part of the state's sovereignty, to be exercised by the municipality in the interest of the general public."  Tex. Civ. Prac. & Rem. Code §

101.0215(a).   On the other hand, a municipality may perform a proprietary function "in its discretion, . . . in the interest of the inhabitants of the municipality."   *Id.* § 101.0215(b).   Put differently, "a municipality's proprietary functions are those conducted 'in its private capacity, for the benefit only of those within its corporate limits, and not as an arm of the government,' while its governmental functions are 'in the performance of purely governmental matters solely for the public benefit.'"   *Tooke v. City of Mexia*, 197 S.W.3d 325, 343 (Tex. 2006) (quoting *Dilley v. City of Houston*, 222 S.W.2d 992, 993 (Tex. 1949)); *see Wasson*, 489 S.W.3d at 436.

The Court finds that the City's maintenance of property tax records, which may be accessible to various City departments, is a governmental function for which the City has governmental immunity.   *See* Tex. Civ. Prac. & Rem. Code § 101.0215(a) (listing examples of governmental functions, including "tax collection"); *cf. F-Star Socorro, L.P. v. City of El Paso*, 281 S.W.3d 103, 106 (Tex. App. 2008) (treating property tax records as public records). Accordingly, without jurisdiction to hear Hudnall's claim, the Court recommends dismissal without prejudice pursuant to Federal Rule of Civil Procedure 12(b)(1).   *In re Great Lakes Dredge & Dock Co. LLC*, 624 F.3d 201, 209 (5th Cir. 2010).

## IV.    CONCLUSION

For the foregoing reasons, the Court finds that Hudnall fails to allege any plausible claims against the Roofers or the City.   Therefore, the Court **RECOMMENDS** that:

- Defendants Alejandro C. Ramirez, Tyrone Smith, and Smith and Ramirez Restoration, LLC ("S&R")'s Motion to Dismiss (ECF No. 62) be **GRANTED**;

- Defendant City of El Paso's Motion to Dismiss for Failure to State a Claim (ECF No. 64) be **GRANTED**;

- Hudnall's invasion of privacy claims against both the Roofers and the City be **DISMISSED WITHOUT PREJUDICE**;

- Hudnall's ADA/ADAAA and Fourteenth Amendment claims against the City be **DISMISSED WITHOUT PREJUDICE**;

- Hudnall's claims implicating entities other than the City be **DISMISSED WITH PREJUDICE** only as raised against the City; and

- All other claims against the Roofers and the City be **DISMISSED WITH PREJUDICE**.

**SIGNED** this 2nd day of March, 2023.

**ROBERT F. CASTAÑEDA**
**UNITED STATES MAGISTRATE JUDGE**

## NOTICE

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS, AND RECOMMENDATIONS CONTAINED IN THE FOREGOING REPORT, WITHIN FOURTEEN DAYS OF SERVICE OF SAME, MAY BAR DE NOVO DETERMINATION BY THE DISTRICT JUDGE OF AN ISSUE COVERED HEREIN AND SHALL BAR APPELLATE REVIEW, EXCEPT UPON GROUNDS OF PLAIN ERROR, OF ANY UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS AS MAY BE ACCEPTED OR ADOPTED BY THE DISTRICT COURT.**